IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § | |
| ERIN ENERGY CORPORATION, *et al.*,[1] | § § | Case No. 18-32106 |
| Debtors. | § § § § | Chapter 11 |

**DEBTORS' EMERGENCY MOTION FOR THE ENTRY OF AN
ORDER PURSUANT TO SECTIONS 105(a) AND 362 OF THE
<u>BANKRUPTCY CODE EXTENDING THE AUTOMATIC STAY</u>**

**A HEARING WILL BE CONDUCTED ON THIS MATTER ON MAY 9, 2018 AT 10:45 A.M. IN COURTROOM 404, 4th FLOOR, UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF TEXAS, 515 RUSK STREET, HOUSTON, TEXAS 77002. IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY-FOUR (24) DAYS FROM THE DATE YOU WERE SERVED WITH THIS PLEADING. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

**EMERGENCY RELIEF HAS BEEN REQUESTED, IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER, IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELEIVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

TO THE HONORABLE MARVIN ISGUR, U.S. BANKRUPTCY JUDGE:

The above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby file this emergency motion (the "Motion") for entry of an order pursuant to sections

---

[1] The last four digits of Erin Energy Corporation's ("ERN") federal tax identification number are 9798. The other Debtors in these cases are: Erin Energy Limited ("EEL"); Erin Energy Kenya Limited ("EEKL"); and Erin Petroleum Nigeria Limited ("EPNL"). The Debtors' service address is: 1330 Post Oak Blvd., Suite 2250, Houston, TX 77056.

105(a) and 362 of the bankruptcy code extending the automatic stay. In support thereof, the Debtors state as follows:

### I. JURISDICTION AND VENUE

1. This Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of these chapter 11 cases in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested in this Motion are §§ 105(a) and 362 of the Bankruptcy Code.

### II. BACKGROUND

2. On April 25, 2018 (the "Petition Date"), the Debtors, filed voluntary petitions for relief (the "Bankruptcy Cases") under chapter 11, title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Court"). The Debtors continue to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

*Company Overview*

3. ERN operates through its subsidiaries as an independent oil and gas exploration and production ("E&P") company focused on energy resources in Africa with headquarters located at 1330 Post Oak Blvd., Suite 2250, Houston, Texas 77056. In total, ERN has ten (10) wholly owned subsidiaries and one partially owned subsidiary. EEL is a wholly owned subsidiary of ERN organized under the laws of the Cayman Islands. EEL was founded in 2012 and is also the parent of EEKL. EPNL is a limited company incorporated under the laws of the Federal Republic of Nigeria. Founded in 2009, EPNL is currently the main operating subsidiary of ERN in Nigeria and accounts for almost all of ERN's revenues.

4.EEKL is a subsidiary of EEL and is organized under the laws of the Republic of Kenya.  Founded in 2012, EEKL is the operating subsidiary of ERN in the country of Kenya.  Although EEKL holds two licenses in the country, there are no ongoing operations in Kenya.

5.The Debtors focus their efforts on acquiring and developing high-potential E&P assets in Sub-Saharan Africa, and exploring those assets through strategic partnerships with national oil companies, indigenous local partners, and other independent oil companies.  The Debtors' current asset portfolio consists of five licenses across Nigeria, Ghana and The Gambia covering an area of approximately 1.5 million acres.  The Debtors' strategic acquisitions and aggressive E&P strategies have helped sustain their growth and success.

6.A number of factors – including regulation and the prolonged commodity downturn – have had a material adverse effect on the Debtors' financial condition.  The most significant impact has been in Nigeria where certain pending legal matters culminated in armed agents of Nigerian Agip Exploration Limited ("NAEL") boarding the EPNL offtake vessel and seizing valuable assets.  NAEL's wrongful actions resulted in ERN and EPNL's inability to operate and market crude oil from the Oyo Field offshore Nigeria.

7.The disruption of operations in Nigeria coupled with the Debtors' inability to service mounting debt obligations and other trade payable obligations has resulted in a severe cash-flow shortage.  Through these Bankruptcy Cases, the Debtors seek protection and enforcement of the automatic stay with respect to the Debtors' assets while the Debtors seek alternative sources of funding pending resolution of the Nigerian litigation.

***Erin Energy Gambia Ltd.***

8.Erin Energy Gambia Ltd. ("EEGL") is a wholly-owned subsidiary of ERN.  The Debtors' management chose not to seek chapter 11 protection for EEGL, however, in order to be

sure that the filing would be seen as an event triggering default (and automatic forfeiture) under the current Joint Operating Agreements ("JOA's").[2]  EEGL's only material assets are held by these JOA's, as 20% working interest owners in certain mineral interest concessions in the country of The Gambia.

9.  EEGL had previously been in negotiations with FAR Gambia Pty Ltd ("FAR") to sell this 20% interest for as much as $16,000,000.00.[3]  With FAR being the majority interest owner and operator under the JOA's, the parties relationship has not always been cordial.  In January of this year, for example, FAR sent two separate default notices for cash calls to EEGL.[4] EEGL timely responded to these letters, contesting FAR's position.[5]  On April 27, 2018, EEGL received four additional default letters from FAR.[6]

10.  The two April 27 default letters that referenced the prior January 21, 2018 correspondence, completely ignored EEGL's January 24, 2018 Response (wherein EEGL not only contested that any amount was owed, but specifically referenced certain actions that were not necessary or appropriate under the JOA's).  The other two April 27 default letters state that because of ERN's bankruptcy filing, EEGL is insolvent, constituting an additional default under the JOA's.  In short, FAR is attempting to use ERN's bankruptcy as a basis to declare a default under the JOA's, thereby automatically taking EEGL's 20% interest via assignment, without compensating EEGL in any form or fashion.

---

[2] The JOA's are attached hereto as Exhibits A and B.
[3] EEGL previously owned 100% of the mineral interest prior to selling approximately 80% of that interest to FAR Gambia Pty Ltd.
[4] January 21, 2018 Default Notice letters are attached hereto as Exhibits C and D.
[5] January 24, 2018 Response Letter is attached hereto as Exhibit E.
[6] April 27, 2018 Default Notice letters are attached hereto as Exhibits F, G, H and I.

### III. RELIEF REQUESTED

11. Pursuant to sections 105(a) and 362 of the Bankruptcy Code, the Debtors request the entry of an order extending the automatic stay to the above-mentioned assets, currently owned by ERN's wholly owned subsidiary.

12. Specifically, the Debtors request that all persons (including but not limited to FAR, and all entities and individuals set forth in Debtors' Motion to Enforce the Automatic Stay), be restrained and enjoined from:

   (a) commencing or continuing (including the issuance or employment of process) any judicial, administrative, or other action or proceeding against EEGL that was or could have been commenced before the commencement of the Debtors' chapter 11 cases or recovering a claim against EEGL that arose before the commencement of the Debtors' chapter 11 cases;

   (b) enforcing, against EEGL or against property of EEGL, a judgment or order obtained before the commencement of the Debtors' chapter 11 cases;

   (c) taking any action to obtain possession of property of EEGL or to exercise control over property of EEGL;

   (d) taking any action to create, perfect, or enforce any lien against property of EEGL;

   (e) taking any action to create, perfect, or enforce against property of the Debtors any lien to the extent that such lien secures a claim that arose prior to the commencement of the Debtors' chapter 11 cases;

   (f) taking any action to collect, assess, or recover a claim against EEGL that arose prior to the commencement of the Debtors' chapter 11 cases; and,

   (g) offsetting any debt owing to EEGL that arose before the commencement of the Debtors' chapter 11 cases against any claim against EEGL.

### IV. BASIS FOR RELIEF

13. By this Motion, the Debtors seek entry of an order, pursuant to sections 105(a) and 362 of the Bankruptcy Code, extending the automatic stay to EEGL and its assets. Extension of the automatic stay in this instance is particularly appropriate given that certain of ERN's and EEGL's creditors are attempting to inappropriately use ERN's bankruptcy filing as

grounds for actions against EEGL. Accordingly, defending against such action will require significant attention from ERN's employees and professionals and will impede ERN's efforts to reorganize.

*The Automatic Stay*

14. As a result of the commencement of these cases, and by operation of law pursuant to section 362 of the Bankruptcy Code, the automatic stay enjoins all persons from, among other things, taking any action to obtain possession of property of the estate or to exercise control over property of the estate. The injunction contained in section 362 of the Bankruptcy Code constitutes a fundamental protection for Debtors, which, in combination with other provisions of the Bankruptcy Code, provides these Debtors with a "breathing spell from [their] creditors" that is essential to the Debtors' ability to reorganize successfully. *See e.g., Browning v. Navarro*, 743 F.2d 1069, 1083 (5th Cir. 1984) (citations omitted).

15. Given its fundamental importance to a debtor's reorganization, courts broadly construe the stay provisions of section 362. As such, the stay has been held to preclude unilateral actions by non-debtor parties to terminate contracts without court order. *See, e.g., Bonneville Power Admin. v. Mirant Corp. (In re Mirant Corp.)*, 440 F.3d 238 (5th Cir. 2006) (noting that non-debtor termination of agreement was prohibited by the automatic stay and required court approval under section 362(d)). Section 362 of the Bankruptcy Code has also been held to apply extraterritorially. *See Hong Kong & Shanghai Banking Corp. v. Simon (In re Simon)*, 153 F.3d 991, 996 (9th Cir. 1998) ("Given this clear expression of intent by Congress in the express language of the Bankruptcy Code, we conclude that Congress intended extraterritorial application of the Bankruptcy Code as it applies to property of the estate."); *Nakash v. Zur (In re Nakash)*, 190 B.R. 763, 768 (Bankr. S.D.N.Y. 1996) ("Based upon the

applicable Code sections [and] other indicia of congressional intent, . . . the automatic stay applies extraterritorially."); *In re McLean Indus.*, 74 B.R. 589, 601 (Bankr. S.D.N.Y. 1987) ("[t]he automatic stay applies extraterritorially").

### *Extension of the Automatic Stay*

16. Section 105(a) of the Bankruptcy Code authorizes the Court to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 105(a) therefore authorizes bankruptcy courts to issue injunctions and take other necessary steps in aid of their jurisdiction. *United States v. Sutton*, 786 F.2d 1305, 1307 (5th Cir. 1986). Pursuant to the Bankruptcy Code, this Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a) (2008). As recognized by the Fifth Circuit, this Court has the power and jurisdiction, pursuant to section 105(a) of the Bankruptcy Code, to extend the automatic stay to protect EEGL's assets. *See, e.g., Reliant Energy Servs. Inc. v. Enron Canada Corp.*, 349 F.3d 816, 825 (5th Cir. 2003); *S.I. Acquisition, Inc. v. Eastway Delivery Service, Inc.* (*In re S.I. Acquisition, Inc.*), 817 F.2d 1142, 1146 n.3 (5th Cir. 1987) ("[s]ection 105 does empower the bankruptcy court to stay proceedings against nonbankrupt entities").

17. Admittedly, extending the automatic stay to a wholly-owned non-bankrupt subsidiary is "extraordinary relief" requiring "unusual circumstances." *Zale Corp. v. Feld* (In re Zale), 62 F.3d 746, 761 (5th Cir.1995). However, these Bankruptcy Cases present exactly the type of unusual circumstances that justify the extraordinary relief of extending the automatic stay to EEGL. The most fundamental purposes behind the Bankruptcy Code are: (i) to provide a breathing spell to enable debtors to do what is best for their estates and their creditors; and (ii) to prevent a race to the courthouse that ends in the dismemberment of debtors, with one or two

creditors receiving full payment at the expense of all others. Furthermore, the automatic stay is intended to preserve the assets of a debtor and to provide an equitable procedure for all creditors. *In re Holtkamp*, 669 F.2d 505, 508 (7th Cir. 1982) (citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 340 (1977)). These exact same concerns are present with respect to EEGL and the Debtors, and because of these considerations, there is a strong public interest in extending the stay for "the promotion of successful reorganizations." *In re Spiers Graff Spiers*, 190 B.R. 1001, 1012 (Bankr. N.D. Ill. 1996).

18. As stated by the Fifth Circuit, "[t]he decision to stay a proceeding pursuant to section 105 is within the court's discretion and requires 'the balancing of relevant interests.'" *In re S.I. Acquisition, Inc.*, 817 F.2d at 1146 n.3. At its most basic, extending the automatic stay requires a determination that permitting third-party litigation to continue will adversely impact the debtor and its reorganization. *See, e.g., Venzke Steel Corp. v. LLA, Inc.* (*In re Venzke Steel Corp.*), 142 B.R. 183, 184-85 (Bankr. N.D. Ohio 1992) *Noel Mfg. Co. v. Marathon Mfg. Co.*, 69 B.R. 120, 121 (N.D. Ala. 1985); *In re Johns-Manville Corp.*, 33 B.R. 254, 263 (Bankr. S.D.N.Y. 1983). The Fifth Circuit likewise recognizes that one of the situations in which extending the automatic stay is appropriate is where "the third-party action will have an adverse impact on the debtor's ability to accomplish reorganization." *In re Zale*, 62 F.3d at 761.

19. Extending the automatic stay also protects an estate by ensuring that extra-bankruptcy pressure is not applied so as to prejudice the bankruptcy decision-making process: a stay may issue if the guarantee suit "would adversely affect the bankruptcy estate and pressure the debtor through that third party." *River Family Farms Inc. v. Federal Land Bank of Omaha* (*In re River Family Farms Inc.*), 85 B.R. 816, 819 (Bankr. N.D. Iowa 1987*); In re Spiers Graff Spiers*, 190 B.R. 1001, 1012 (Bankr. N.D. Ill. 1996) (noting availability of remedy when "the

creditor is seriously impeding the debtor through action against a third party"); *Otero Mills Inc. v. Security Bank & Trust* (*In re Otero Mills Inc*.), 21 B.R. 777, 778 (Bankr. N.M. 1982) (stay appropriate where continuing suit "would adversely or detrimentally influence and pressure the debtor through that third party"). And finally, extending the stay to protect a significant source of funding for a plan of reorganization, has likewise been sufficient cause to extend the stay. *See In re Third Eighty-Ninth Assocs*., 138 B.R. at 147–48.

20. The granting of the relief requested will help ensure that creditors, such as FAR, do not seize EEGL's assets or take any other action in violation of the automatic stay. Granting the relief requested herein will facilitate a smooth and orderly transition into chapter 11 and minimize the disruption of the Debtors' business affairs.

### V.    BASIS FOR EMERGENCY RELIEF

21. The Debtors respectfully request emergency consideration of this motion in accordance with Bankruptcy Local Rule 9013(i). The Debtors believe that the relief requested in this Motion is critical to an immediate and orderly transition into chapter 11 that will preserve the value of the Debtors' estates and maintain the viability of the Debtors' operations. Accordingly, the Debtors respectfully request that the Court approve the relief requested in this motion on an emergency basis.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form filed herewith, granting the relief requested in this Motion, and such other and further relief as may be just and proper under the circumstances.

DATED: May 4, 2018.

Respectfully submitted,

**OKIN ADAMS LLP**

By:     /s/ *Matthew S. Okin*
    Matthew S. Okin
    Texas Bar No. 00784695
    mokin@okinadams.com
    David L. Curry, Jr.
    Texas Bar No. 24065107
    dcurry@okinadams.com
    John Thomas Oldham
    Texas Bar No. 24075429
    joldham@okinadams.com
    Ryan A. O'Connor
    Texas Bar No. 24098190
    roconnor@okinadams.com
    1113 Vine St., Suite 201
    Houston, Texas 77002
    Tel: 713.228.4100
    Fax: 888.865.2118

**PROPOSED ATTORNEYS FOR THE DEBTORS**

## CERTIFICATE OF SERVICE

I hereby certify that on May 4, 2018 the foregoing Motion was served upon filing via the Court's EM/ECF electronic system on all parties subscribing thereto, as well as by regular mail on the Debtors' Master Service List and via email and regular mail to the following:

Ben Clube
Executive Director and Chief Operating Officer
FAR Limited
Level 17 | 530 Collins Street | Melbourne VIC 3000 | Australia
T: +61 3 9618 2550 | F: +61 3 9620 5200 | M: +61 404 489 823
b.clube@far.com.au
www.far.com.au

David M. Bennett
Thompson & Knight LLP
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, Texas 75201
David.Bennett@tklaw.com
www.tklaw.com

**COUNSEL FOR FAR LIMITED**

                                      */s/ Matthew S. Okin*
                                      Matthew S. Okin