## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **ERIN ENERGY CORPORATION**, *et al.*,[1] | § | **Case No. 18-32106** |
| | § | |
| Debtors. | § | **Chapter 11** |
| | § | |
| | § | **(Jointly Administered)** |

**DEBTOR'S EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO SECTION 363(C) OF THE BANKRUPTCY CODE; (II) GRANTING ADEQUATE PROTECTION FOR THE USE THEREOF; AND (III) SCHEDULING A FINAL HEARING PURSUANT TO <u>BANKRUPTCY RULE 4001 AS TO USE OF CASH COLLATERAL</u>**

**A HEARING WILL BE CONDUCTED ON THIS MATTER ON MAY 9, 2018 AT 10:45 A.M. IN COURTROOM 404, 4th FLOOR, UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF TEXAS, 515 RUSK STREET, HOUSTON, TEXAS 77002. IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY-FOUR (24) DAYS FROM THE DATE YOU WERE SERVED WITH THIS PLEADING. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

**EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELEIVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

---

[1] The last four digits of Erin Energy Corporation's ("ERN") federal tax identification number are 9798. The other Debtors in these cases are: Erin Energy Limited ("EEL"); Erin Energy Kenya Limited ("EEKL"); and Erin Petroleum Nigeria Limited ("EPNL"). The Debtors' service address is: 1330 Post Oak Blvd., Suite 2250, Houston, TX 77056.

TO THE HONORABLE MARVIN ISGUR, U.S. BANKRUPTCY JUDGE:

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), by and through their undersigned proposed attorneys, hereby file this Emergency Motion for Interim and Final Orders (i) Authorizing Use of Cash Collateral Pursuant to Section 363(c) of the Bankruptcy Code, (ii) Granting Adequate Protection for the Use Thereof, and (iii) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001 as to Use of Cash Collateral (the "Motion") and in support hereof, respectfully states as follows:

## I.
## JURISDICTION AND VENUE

1.       This Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicate for the relief requested in this Motion are Bankruptcy Code §§ 105, 361, 362, and 363 and Bankruptcy Rules 2002, 4001, and 9014.

## II.
## BACKGROUND

2.       On April 25, 2018 (the "Petition Date"), the Debtors, filed voluntary petitions for relief (the "Bankruptcy Cases") under chapter 11, title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Court").  The Debtors continue to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

### A.  The Debtors' Business

3.       ERN operates through its subsidiaries as an independent oil and gas exploration and production ("E&P") company focused on energy resources in Africa with headquarters

located at 1330 Post Oak Blvd., Suite 2250, Houston, Texas 77056.  In total, ERN has ten (10) wholly owned subsidiaries and one partially owned subsidiary.  EEL is a wholly owned subsidiary of ERN organized under the laws of the Cayman Islands.  EEL was founded in 2012 and is also the parent of EEKL.  EPNL is a limited company incorporated under the laws of the Federal Republic of Nigeria.  Founded in 2009, EPNL is currently the main operating subsidiary of ERN in Nigeria and accounts for almost all of ERN's revenues.

4.     EEKL is a subsidiary of EEL and is organized under the laws of the Republic of Kenya.  Founded in 2012, EEKL is the operating subsidiary of ERN in the country of Kenya.  Although EEKL holds four licenses in the country, there are no ongoing operations in Kenya.

5.     The Debtors focus their efforts on acquiring and developing high-potential E&P assets in Sub-Saharan Africa, and exploring those assets through strategic partnerships with national oil companies, indigenous local partners, and other independent oil companies.  The Debtors' current asset portfolio consists of five licenses across Nigeria, Ghana and The Gambia covering an area of approximately 1.5 million acres.  The Debtors' strategic acquisitions and aggressive E&P strategies have helped sustain their growth and success.

6.     A number of factors – including regulation and the prolonged commodity downturn – have had a material adverse effect on the Debtors' financial condition.  The most significant impact has been in Nigeria where certain pending legal matters culminated in armed agents of Nigerian Agip Exploration Limited ("NAEL") boarding the EPNL offtake vessel and seizing valuable assets.  NAEL's wrongful actions resulted in ERN and EPNL's inability to operate and market crude oil from the Oyo Field offshore Nigeria.

7.     The disruption of operations in Nigeria coupled with the Debtors' inability to service mounting debt obligations and other trade payable obligations has resulted in a severe

cash-flow shortage. Through these Bankruptcy Cases, the Debtors seek protection and enforcement of the automatic stay with respect to the Debtors' assets while the Debtors seek alternative sources of funding pending resolution of the Nigerian litigation.

## B.  The Secured Debt

### (1) Loan facility from Zenith Bank PLC

8.      On or about September 30, 2014, EPNL, as borrower, and Zenith Bank PLC ("Zenith"), as lender, entered into a term loan facility not to exceed US$ 100,000,000.00 (the "Zenith Facility"). The Zenith Facility is secured by in substantially all of EPNL's assets, including EPNL's cash on deposit with Zenith. Zenith currently holds approximately $2,600,000.00 of EPNL's cash in a restricted account. As of the Petition Date, the outstanding balance on the Zenith Facility was $79,757,834.05.

### (2) Loan facility with MCB

9.      On or about February 6, 2017, ERN and EPNL, as borrowers, and The Mauritius Commercial Bank Ltd ("MCB" and collectively with Zenith, the "Lenders"), as lender, entered into a Pre-Export Finance Facility not to exceed US$ 100,000,000.00 (the "MCB Facility"). The MCB Facility is secured by a US$100,000,000.00 Payment Guarantee issued by The Standard Bank of South Africa Limited issued at the request of Public Investment Corporation Soc Ltd. ("PIC"), a significant shareholder of ERN, who is a guarantor under the MCB Facility. The MCB Facility is also secured by a subordinated lien in certain of the Debtors' accounts, including accounts with Zenith. MCB currently holds $10 million of the Debtors' cash in a restricted account. Although such the use of such funds by the Debtors is restricted, the funds are counted in the Debtors' outstanding balance under the MCB Facility and the Debtors are

4

paying interest on these funds.  As of the Petition Date, the outstanding balance on the MCB

Facility was $66,736,452.05

## III.
## RELIEF REQUESTED

10.     Pursuant to Bankruptcy Rule 4001(b), the following summarizes the material

terms of the Interim Order.  The Debtors seek authority to use the Cash Collateral (as defined

below).  The Debtor seeks to use such Cash Collateral as working capital in the operation of its

business for the purposes specified in, and at least for the period defined in the attached budget.

Further, the Debtors seek an order requiring MCB to release the funds it currently holds in

reserve to the Debtors in order to allow the Debtors to spend such funds consistent with the

budget (the "Budget") attached hereto as Exhibit A.  As adequate protection for the diminution in

value of Cash Collateral, the Debtor will (i) maintain the value of its business as a going-

concern, and (ii) provide replacement liens upon now owned and after-acquired cash to the

extent of any diminution in value of Cash Collateral.

11.     By this Motion, pursuant to Bankruptcy Code §§ 105, 361, 362, and 363 and

Bankruptcy Rules 2002, 4001, and 9014, the Debtor requests that the Court enter an order

(i) approving the Debtor's use of Cash Collateral, (ii) providing adequate protection for, and to

the extent of, any diminution in the value of the Cash Collateral, and (iii) scheduling a final

hearing (the "Final Hearing") for this Court to consider entry of a final order (the "Final Order")

authorizing and approving the relief requested in this Motion.

## IV.
## APPLICABLE AUTHORITY

12.     Under 11 U.S.C. § 363(c)(2), a debtor may use cash collateral if each entity that

has an interest in such cash collateral consents or if the Court, after notice and a hearing,

5

authorizes the use of the cash collateral.  Cash collateral is defined as, "[C]ash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest […]."  11 U.S.C. § 363(a).  Pursuant to 11 U.S.C. § 363(c)(3), the Court must condition a debtor's use of cash collateral as is necessary to provide adequate protection of the interest in the cash collateral claimed by a party.

13.     Bankruptcy Rule 4001(b) and (d) governs the procedure for consideration of motions to use cash collateral, and both of these subsections provide for expedited consideration of such motions for cases in which immediate interim relief may be crucial to the success of a reorganization.

14.     At a hearing on a debtor's motion for the use of cash collateral, the debtor bears the burden of proof on the issue of adequate protection, and the party claiming an interest in the cash collateral bears the burden of proof on the issue of the validity, priority, or extent of the lien.  11 U.S.C. § 363(p)(2) ("In a hearing under [§ 363], the entity asserting an interest in property has the burden of proof on the issue of the validity, priority, or extent of such interest.").

**A.     Failure to Obtain the Immediate Interim Use of Cash Collateral Would Cause Immediate and Irreparable Harm.**

15.     As set forth in the Declaration of Sakiru Adefemi (Femi) Ayoade In Support of the Debtors' Chapter 11 Petitions and First Day Motions [ECF # 5], the Debtors' inability to access cash pre-petition forced to Debtors to cease operation of its producing assets. Accordingly, the Debtors face "immediate and irreparable harm to the estate" absent the emergency consideration of the relief requested in this motion.  The immediate use is necessary, and it will stabilize the Debtors' operations and revenue by allowing the Debtors to maintain

minimal staffing levels sufficient to operate the Debtors' business.  Without authority to use Cash Collateral, the Debtors will not be able to function as a going concern and will not be able to proceed to consideration of a plan of reorganization.  The Debtors possess substantial assets which could be lost entirely if the Debtors are unable to resume operations.  Accordingly, authority to use Cash Collateral is necessary to avoid the shutdown of the Debtor's business, and will be in the best interests of the Debtors, their estates and their creditors.

**B.**     **The Proposed Adequate Protection is Sufficient.**

16.     The Debtors intend to provide adequate protection, to the extent of the aggregate diminution in value of Cash Collateral from and after the Petition Date, to Lenders for the use of the Cash Collateral by:

a.  maintaining the going concern value of the Debtors' business by using the Cash Collateral to continue to operate the business and administer this Chapter 11 Case; and

b.  providing to Zenith a postpetition replacement lien pursuant to 11 U.S.C. § 361(2) in the accounts receivable of the Debtors, including cash generated or received by the Debtors subsequent to the Petition Date, but only to the extent that Zenith had valid, perfected prepetition liens and security interests in such collateral as of the Petition Date.  The priority of any postpetition replacement liens granted to Zenith shall be the same as existed as of the Petition Date.

17.     The Debtors believe that both Lenders are adequately protected for the use of the Cash Collateral in that the orderly operation of the Debtor's business generates sufficient revenues to protect any diminution in value of the Cash Collateral.  Indeed, the continuation of the Debtors' operations presents the best opportunity for the Lenders to receive the greatest

7

recovery on account of their claims.  Further, the Debtors contend that Zenith is significantly oversecured by its liens EPNL's non-cash assets.  Likewise, via the PIC Guaranty, MCB's claim is fully secured by assets other than the Debtors' cash.  Accordingly, the Debtors submit that use of the Cash Collateral will allow the Debtor to continue its operations and thereby protect the Lenders' interests.

18.     Courts have consistently recognized that the preservation of the going concern value of secured creditor's collateral constitutes adequate protection of such creditors' interest in the collateral. *See, e.g., In re Pursuit Athletic Footwear, Inc.*, 193 B.R. 713, 716 (Bankr. D. Del. 1996) (holding that if there is no actual diminution of value of collateral and the debtor can operate profitably postpetition, then the secured creditor is adequately protected); *In re 499 W. Warren St. Assocs., Ltd. P'ship*, 142 B.R. 53, 56 (Bankr. N.D.N.Y. 1992) (finding a secured creditor's interest in collateral adequately protected when cash collateral was applied to normal operating and maintenance expenditures on the collateral property); *In re Willowood E. Apartments of Indianapolis II, Ltd.*, 114 B.R. 138, 143 (Bankr. S.D. Ohio 1990) (same); *In re Stein*, 19 B.R. 458, 460 (Bankr. E.D. Pa. 1982) (creditors' secured position would be enhanced by the continued operation of the debtors' business); *In re Aqua Assocs.*, 124 B.R. 192, 196 (Bankr. E.D. Pa. 1991) ("The important question, in determining whether the protection to a creditor's secured interest is adequate, is whether that interest, whatever it is, is being unjustifiably jeopardized.") (citation omitted).

**V.**
**REQUEST FOR INTERIM RELIEF**

19.     An immediate need exists for the Debtors to obtain approval of the use of Cash Collateral in order to meet key expenses as described above and as identified in the Budget

attached hereto as Exhibit A.  Without the immediate use of the Cash Collateral for an interim period, the Debtors will be unable to resume operations and risks the loss of significant assets. Clearly this would have a severe negative impact upon the Debtors' going concern value and ability to successfully create value for all creditors.  The Debtors' business, as a going concern, has a value far in excess of any value that might be obtained in a chapter 7 liquidation. Accordingly, it is imperative that a preliminary hearing be set immediately.

20.     Pursuant to Bankruptcy Rule 4001, the Debtors request that the Court set a preliminary hearing on the use of Cash Collateral, and that at such preliminary hearing, the Court (i) authorize the temporary use of Cash Collateral consistent with the Budget, in order to avoid immediate and irreparable harm to these bankruptcy estates pending a final hearing and (ii) direct the MCB release the reserve funds it currently holds to the Debtors in order to provide the Debtors to sufficient cash to fund the expenses shown in the Budget.

## VI.
## REQUEST FOR FINAL HEARING

21.     Pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), the Debtors also request that the Court set a date for a final hearing as soon as practicable and fix the time and date prior to the Final Hearing for parties to file objections to this Motion.

## VII.
## NOTICE

22.     Notice of this Motion will be provided by email, when available, or by traditional mail to: (i) the Office of the United States Trustee for the Southern District of Texas; (b) the Debtor's secured creditors, including the Lenders; (c) the parties listed on the Debtors' master service list.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## VIII.
## <u>BASIS FOR EMERGENCY RELIEF</u>

23.     An emergency exists because the Debtors face immediate and irreparable harm to the estate absent the emergency consideration of the relief requested in this Motion.  The immediate use is necessary, and it will stabilize the Debtors' operations and revenue by paying ordinary, postpetition operating expenses, as well as any court approved prepetition expenses that may be at issue.  As a result, if an emergency hearing is not set, the Debtors will be unable to operate.

WHEREFORE, the Debtor requests that this Court enter an order, in substantially the form filed herewith, granting the relief requested in this Motion, and such other and further relief as may be just and proper under the circumstances.

Respectfully submitted this 4th day of May, 2018.

**OKIN ADAMS LLP**

By: _____/s/ *David L. Curry, Jr.*_____
      Matthew S. Okin
      Texas Bar No. 00784695
      mokin@okinadams.com
      David L. Curry, Jr.
      Texas Bar No. 24065107
      dcurry@okinadams.com
      John Thomas Oldham
      Texas Bar No. 24075429
      joldham@okinadams.com
      Ryan A. O'Connor
      Texas Bar No. 24098190
      roconnor@okinadams.com
      1113 Vine St., Suite 201
      Houston, Texas 77002
      Tel: 713.228.4100
      Fax: 888.865.2118

**PROPOSED ATTORNEYS FOR THE DEBTORS**

### CERTIFICATE OF ACCURACY PURSUANT TO LOCAL RULE 9013-1(I)

I hereby certify to the accuracy of the matters set forth in the foregoing motion.

By: _____/s/ *David L. Curry, Jr.*_____
      David L. Curry, Jr.

### CERTIFICATE OF SERVICE

I hereby certify that on May 4, 2018 the foregoing Motion was served upon filing via the Court's EM/ECF electronic system on all parties subscribing thereto, as well as by regular mail on the Debtors' Master Service List.

*/s/ David L. Curry*_____
      David L. Curry

11