**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS**

**HOUSTON DIVISION**

| | |
|---|---|
| In re: ) | Case No. 18-32106 (MI) |
| ERIN ENERGY CORPORATION, *et. al.*,[1] ) | |
| Debtors. ) | Chapter 11 |
| ) | (Jointly Administered) |

**OBJECTION OF FAR GAMBIA LTD TO DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER PURSUANT TO SECTIONS 105(A) AND 362 OF THE BANKRUPTCY CODE EXTENDING THE AUTOMATIC STAY**

FAR Gambia Ltd f/k/a Meridian Minerals (Mauritius) Ltd ("FAR Gambia") respectfully submits this objection (the "Objection") to the *Debtors' Emergency Motion For Entry Of an Order Pursuant to Sections 105(a) and 362 of the Bankruptcy Code Extending the Automatic Stay* [Dkt. No. 27] (the "Non-Debtor Stay Motion"), filed by the Debtors.

**I.
INTRODUCTION**

1. It is axiomatic that the automatic stay is triggered by the filing of a bankruptcy petition and applies only to actions against a "debtor" and "property of the estate." In fact, the Debtors acknowledge that the "extraordinary relief" of extending the stay to protect a non-debtor is only appropriate in "unusual circumstances."[2] Further, the party requesting that the automatic stay be applied in favor of a non-debtor bears the burden of "persuasion on the merits" and "must justify the stay by clear and convincing circumstances outweighing the potential harm to the

---

[1] The other Debtors in these cases are: Erin Energy Limited ("EEL"); Erin Energy Kenya Limited ("EEKL"); and Erin Petroleum Nigeria Limited ("EPNL" and collectively with ERN, EEL, and EEKL, the "Debtors").
[2] Non-Debtor Stay Motion at ¶ 17.

party against whom it is to be operative." *Matter of S.I. Acquisition, Inc.*, 817 F.2d 1142, 1146 n. 3 (5th Cir. 1987). Here, the Debtors have not carried that burden.

2. As an initial matter, this Court lacks jurisdiction over non-Debtor Erin Energy Gambia Ltd. ("EEGL"), its assets, which are not property of the estate and are not located in the United States, and its stakeholders, including FAR Gambia and The Gambian government. EEGL, an entity organized under the laws of the Cayman Islands, and whose principal assets are located in West Africa, is not a debtor, has not initiated a case under the Bankruptcy Code, and has not established nor even alleged that it is eligible to do so.

3. The Debtors further fail to allege any facts to show that EEGL has even a single creditor that is subject to the personal jurisdiction of this Court. For example, FAR Gambia, which owns a working interest in an oil and gas prospect in The Gambia in West Africa (as more fully described below), is a foreign company organized under the laws of Mauritius. FAR Gambia has no assets, offices, or employees in the United States, but rather owns and operates oil and gas interests entirely outside the United States. Similarly, the Debtors have not shown how the Court can exercise jurisdiction over The Gambian government or *in rem* jurisdiction over non-estate assets located in The Gambia. Nevertheless, the Debtors seek the extraordinary relief of extending the Debtors' automatic stay to include non-debtor EEGL, all of its assets, and its stakeholders. In the absence of jurisdiction over such entities and assets, the relief requested by the Debtors should be denied.

4. Furthermore, even if the jurisdictional issues somehow were resolved, the relief the Debtors seek is impermissible under applicable law. Unlike the narrow relief granted in the unusual cases cited by the Debtors in which courts have extended the automatic stay to enjoin specific parties from taking specific acts against non-debtors, the Debtors are seeking to extend

the automatic stay to enjoin acts by "all persons" against a non-debtor entity and non-estate property.

5. The Debtors also entirely ignore that an extension of the automatic stay to non-debtors requires the issuance of an injunction that can only be sought in an adversary proceeding, which the Debtors have not initiated. So, in addition to its jurisdictional defects, the Debtors' request for an extension of the automatic stay should be denied on procedural grounds.

6. Moreover, the Debtors cannot meet the substantive requirements for the issuance of an injunction. Among other things, the Debtors have not shown that they are likely to prevail on the merits, that the legal redress that they could seek in the absence of an extension of the stay is inadequate, or that an insolvency remedy in a court that has jurisdiction over EEGL and its assets is unavailable.

7. Further, the Debtors have acknowledged that the extension of the stay is an "extraordinary remedy" that is only granted in "unusual circumstances," but the Debtors have failed to show that any such circumstances exist in these Cases. The Debtors highlight the fact that there is interlocking ownership of the non-debtor entity and that the Debtors' ownership stake could be impacted by actions against the non-debtor. But the fact that the Debtors own an equity stake in a non-debtor entity is not at all unusual, and therefore, does not constitute the type of circumstance in which this Court may extend the automatic stay.

8. Accordingly, the Court lacks jurisdiction to grant the relief requested, the request for an extension of the stay is procedurally improper, and the Debtors have not alleged either a factual or legal basis to support such extraordinary – indeed, unprecedented – relief. Therefore, the Non-Debtor Stay Motion should be denied.

## II.
## BACKGROUND

### A. General Background

9. On April 25, 2018 (the "Petition Date"), the Debtors filed voluntary petitions for relief (the "Bankruptcy Cases") under chapter 11, title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Court"). The Debtors continue to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

### B. The Non-Debtor Stay Motion

10. In the Non-Debtor Stay Motion, the Debtors seek to extend the automatic stay to non-debtor foreign entity EEGL, a wholly-owned subsidiary of ERN incorporated under the laws of the Cayman Islands. EEGL owned working interests (also known as Participating Interests) in certain mineral concessions in the country of The Gambia ("The Gambian Properties").[3]

11. FAR Gambia is the operator of and owns a working interest in The Gambian Properties. FAR Gambia is a Mauritius company that has no offices, assets, or employees in the United States. The nature and extent of EEGL's current ownership interest is in dispute due to EEGL's defaults in respect of its contractual obligations related to such interests. As a result of those defaults, EEGL currently has, at most, bare legal title in The Gambian Properties.

12. The interests of FAR Gambia and EEGL in The Gambian Properties arise under Licenses issued by The Gambian government (the "Licenses"), which are subject to The Gambian law. Upon information and belief, EEGL has unpaid tax liabilities to The Gambian government, which may subject EEGL to penalties and/or seizure of its interest, if any, in The Gambian Properties.

---

[3] Non-Debtor Stay Motion at ¶ 8.

13. According to the Debtors, EEGL did not seek bankruptcy protection: "in order to be sure that the filing would [not] be seen as an event triggering default (and automatic forfeiture) under the current Joint Operating Agreements ("JOA's")."[4]

14. Nevertheless, despite its decision not to seek bankruptcy protection, the Debtors seek to extend the automatic stay in its entirety to include EEGL and to enjoin action of "all persons" against EEGL and its assets.[5]

## III.
## ARGUMENT

**A. The Non-Debtor Stay Motion Cannot Be Granted Because the Court Lacks Jurisdiction to Grant Such Relief.**

15. This Court lacks jurisdiction over EEGL, its assets, and its stakeholders. It is axiomatic that the automatic stay is triggered by the filing of a bankruptcy petition and applies only to actions against a "debtor" and "property of the estate." *See* 11 U.S.C. § 362(a). Here, EEGL is a foreign non-debtor entity organized under the laws of the Cayman Islands, with principal assets outside the United States. It has not filed for bankruptcy protection under U.S. or any other law.

16. Nevertheless, the Debtors are requesting that the Court extend the Debtors' automatic stay to include EEGL. While the Bankruptcy Code in some circumstances provides *in rem* jurisdiction over property of the Debtor held abroad, the *in rem* jurisdiction of a U.S. Bankruptcy Court simply does not include property owned by a non-debtor affiliate.

17. The cases cited by the Debtors are inapposite. For example, in *Hong Kong & Shanghai Banking Corp. v. Simon (In re Simon)*, the court began "with the presumption that 'the legislation of Congress, unless a contrary intent appears, is meant to apply only within the

---

[4] Non-Debtor Stay Motion at ¶ 8.
[5] *See* Non-Debtor Stay Motion at ¶ 12.

territorial jurisdiction of the United States.'" 153 F.3d 991, 995 (9th Cir. 1998) (*citing Foley Bros. v. Filardo*, 336 U.S. 281, 285, 69 S.Ct. 575, 93 L.Ed. 680 (1949)). Nevertheless, the court found that a foreign creditor that had offices in the United States, transacted substantial business here, and had filed a proof of claim in the bankruptcy case was subject to the discharge granted to a chapter 7 debtor such that the creditor could not commence a collection action against property of the debtor's estate. *In re Simon,* 153 F. 3d at 997. The court reasoned that "as to actions against the bankruptcy estate," Congress intended extraterritorial application of the automatic stay to the debtor's property because (i) the Bankruptcy Code created an "estate comprised of the debtor's legal or equitable interests in property '*wherever located and by whomever held*'" and (ii) the court obtains "exclusive *in rem* jurisdiction over all of the property of the estate." *Id.* at 996 (emphasis added).

18. Whereas the statutory language gives rise to extraterritorial jurisdiction over a "debtor's legal or equitable interests in property wherever located and by whomever held," Congress made no such proclamation regarding non-debtor property. And, whereas a court has exclusive *in rem* jurisdiction over property of the estate, bankruptcy courts simply do not have jurisdiction over non-estate property that is outside the United States.

19. The Debtors also cite *Nakash v. Zur (In re Nakash)* to support their request but nothing in that case provides support for the Non-Debtor Stay Motion's jurisdictional deficiencies. 190 B.R. 763, 768 (Bankr. S.D.N.Y. 1996). In *Nakash*, an Israeli receiver (the "Receiver") was appointed to take possession of an Israeli banking institution. *Id*. at 766. The Receiver obtained a judgment against the bank and an equity owner of the bank, and sought to enforce the judgment against the equity holder in a district court in the United States. *Id*. The equity holder ultimately filed for chapter 11 protection in the United States, which stayed

enforcement of the judgment. *Id.* at 767. In response, the Receiver filed an involuntary proceeding against the debtor-equity holder in Israel. *Id*. The court found that this was clearly an act against the debtor. *Id.* at 769.

20. With similar reasoning to *In re Simon*, the *Nakash* court found that Congress intended that the automatic stay apply applies extraterritorially to "actions against the debtor and his property outside the U.S." *Id*. at 768. The court never considered whether it could stay actions against a non-debtor and non-estate property outside the United States. Indeed, the *Nakash* court never implied that the automatic stay could apply to the receiver's actions against the non-debtor foreign bank or its assets, even though the debtor had an equity interest in such bank.[6]

21. Furthermore, the courts in both *In re Simon* and *In re Nakash* expressly distinguished between the courts' ability to exercise jurisdiction over a creditor of the debtor as opposed to enjoining actions by foreign courts. The court in *In re Simon* expressly found that it did not have jurisdiction to enjoin foreign court action, but rather had jurisdiction only to enforce a discharge injunction against a creditor's assets that were located in the United States where the court had personal jurisdiction over the creditor due to the creditor having filed a proof of claim in the bankruptcy case. *See In re Simon*, 153 F. 3d at 995-97 (holding that a discharge injunction could be enforced against a creditor's "property located in the United States" but that the discharge "does not restrain the courts in Hong Kong; it [merely] enjoins the creditor" that willingly submitted to the bankruptcy court's jurisdiction by filing a proof of claim). Here,

---

[6] The third case cited by the Debtors is also inapplicable to the facts here. In *In re McLean Indus.*, the court found that the automatic stay applied to property of the debtor even though such property was located abroad. 74 B.R. 589, 601 (Bankr. S.D.N.Y. 1987). The court did not consider whether the stay would apply to non-debtor property located abroad.

however, the Debtors have not shown that the Court has personal jurisdiction over any of EEGL's creditors.

22. In finding that a violation of the stay had occurred, the *Nakash* court, like in *In re Simon*, distinguished between actions to enforce the stay against a creditor that had willingly submitted to the court's jurisdiction and actions to enforce the stay against a foreign court:

> The Receiver, a party in interest in this case who has appeared before the court and has sought various relief from the court as a judgment creditor, unilaterally pursued *ex parte* acts against the Debtor and the estate without advising or obtaining approval from this court. As such, the Receiver has violated the automatic stay. Comity does not require me to respect or defer to the acts of a judgment creditor. This finding does not implicate the determinations made by the Israeli courts.

*Nakash*, 190 B.R. at 770 (emphasis added).

23. Thus, the *Nakash* court limited the application of the automatic stay narrowly to apply solely to enjoin a creditor that was taking action against the debtor and the debtor's property, without seeking to enjoin the foreign court itself. Neither *In re Simon* nor *In re Nakash* extended the stay to enjoin actions by a party over whom the court lacked personal jurisdiction, and indeed, "a bankruptcy court can enforce the automatic stay extraterritorially only against entities over which it has *in personam* jurisdiction." *Secs. Invest. Protection Corp. v. Madoff Invest. Secs. LLC*, 474 B.R. 76, 82 (S.D.N.Y. 2012).

24. Here, however, the Debtors seek to enjoin actions by parties who have not filed proofs of claims and over which the Court has no personal jurisdiction, including FAR Gambia and The Gambian government, to enjoin actions against non-estate property located outside of the United States and over which the Court does not have *in rem* jurisdiction. Notably, the Debtors have not shown, or even alleged, that the Court has personal jurisdiction over any of non-debtor EEGL's creditors.

25. The U.S. Constitution requires that a foreign entity must have purposefully established minimum contacts with the United States in order for a court to exercise personal jurisdiction over such entity. *See Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 108-09 (1987) (plurality op.). And even if such minimum contacts are established, a plaintiff's choice of forum might be so inconvenient that it would be a denial of fair play and substantial justice to require the defendant to defend the suit in the United States. *See id.* at 113.

26. FAR Gambia, for example, is a foreign company organized under the laws of Mauritius that owns and operates assets in The Gambia, and it has no offices, assets, or employees in the United States. It does not have any material contacts with the United States. And, were the Court to exercise personal jurisdiction over FAR Gambia, its directors and officers would need to travel from Australia to properly protect their bargained-for interests in non-debtor assets located in The Gambia, which is so inconvenient that it would be a denial of fair play and substantial justice to do so.

27. Similarly, the Debtors have not shown how this Court could exercise jurisdiction to enjoin The Gambian government, especially in relation to the government taking actions against non-debtor property located in The Gambia. The Debtors have also failed to address the "Act of State Doctrine," which "in order to maintain international respect for sovereignty, 'prohibits the examination of acts of an independent government by the courts of another sovereign nation.'" *Nakash*, 190 B.R. at 769 (citing *Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 417–18, 84 S. Ct. 923, 934–35, 11 L. Ed. 2d 804 (1964)). "The prohibition exists because examination or condemnation of one government's acts by another could 'imperil the amicable relations between governments and vex the peace of nations'" *Id.* (citing *Oetjen v. Central Leather Co.,* 246 U.S. 297, 304, 38 S. Ct. 309, 311, 62 L. Ed. 726 (1918)).

28. Furthermore, other cases (and the purposes of the automatic stay) directly contradict the application of the stay as sought by the Debtors. As noted in *Nakash*:

> The stay exists to protect the estate from a 'chaotic and uncontrolled scramble for the Debtor's assets in a variety of uncoordinated proceedings in different courts.' This serves to protect and preserve the estate for the benefit of all creditors. The stay also serves to protect and preserve the jurisdiction of the bankruptcy court so that the court can administer the debtor's estate in an orderly fashion.

*Nakash*, 190 B.R. at 768. Further:

> The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly [reorganization or] liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtor's assets prevents that.

*Matter of S.I. Acquisition, Inc.,* 817 F.2d 1142, 1146 (5th Cir. 1987).

29. Here, the relief requested by the Debtors would accomplish none of these goals. Because "a bankruptcy court can enforce the automatic stay extraterritorially only against entities over which it has *in personam* jurisdiction," *Madoff*, 474 B.R. at 82, if the Court only has jurisdiction over certain of EEGL's creditors, it could lead to a situation where some creditors of EEGL with minimum contacts in the United States are stayed, while others without such contacts are not, leading to the exact 'chaotic and uncontrolled scramble for assets in a variety of uncoordinated proceedings in different courts' that the automatic stay is intended to prevent. EEGL's assets would not, therefore, be preserved for 'all' of EEGL's creditors, but only those creditors that fall outside the personal jurisdiction of this Court. Notably, since The Gambian Government is free to advance its rights against property within its borders, this could leave FAR Gambia exposed to the risk that, if the Court somehow purported to stay its actions against EEGL, FAR Gambia could be left unable to protect its interests in The Gambian Properties.

**B.    The Non-Debtor Stay Motion Is Procedurally Improper and Denies FAR Gambia and Others Due Process.**

30.    Furthermore, any attempt to extend the automatic stay to a non-debtor through section 105(a) of the Bankruptcy Code requires the Debtors to seek the issuance of an injunction. *See In re Zale Corp.*, 62 F.3d 746, 761 (5th Cir. 1995) (holding that courts may apply the automatic stay to a non-debtor through section 105(a) by issuing injunctive relief); *Slabicki v. Gleason (In re Slabicki)*, 466 B.R. 572, 580 (1st Cir. BAP 2012) ("Although typically called an extension of the automatic stay to non-debtor parties, these are in fact injunctions issued by a bankruptcy court under § 105(a), after determining that the situation requires it to protect the interests of a bankruptcy estate."); *In re Cincom iOutsource, Inc.*, 398 B.R. 223, 227 (Bankr. S.D. Ohio 2008) (stating that while extensions of the automatic stay are referred to as such, these are "in fact injunctions issued by the bankruptcy court after hearing and the establishment of unusual need" and finding that "a request for injunctive relief must be brought by adversary proceeding"); *In re Yukos Oil Co.*, 320 B.R. 130, 135 (Bankr. S.D. Tex. 2004) ("When determining whether to [extend the stay to non-debtors by issuing] a temporary restraining order or preliminary injunction pursuant to 11 U.S.C. § 105(a), the bankruptcy court must consider the traditional inquiries which have a bearing on preliminary injunctions issued pursuant to Rule 65, Fed.R.Civ.P.").

31.    Pursuant to Bankruptcy Rule 7001(7), "a proceeding to obtain an injunction or other equitable relief" requires an adversary proceeding. Bankruptcy Rule 7001(7). Applying Rule 7001, the Fifth Circuit has held that proceedings that fit within Rule 7001 categories, including proceedings to extend the stay to non-debtors through an injunction under section 105(a) of the Bankruptcy Code, must be resolved through an adversary proceeding. *See, e.g., In re Zale Corp.*, 62 F.3d 746 (reversing bankruptcy and district court because the extension of the

automatic stay to non-debtors through an injunction pursuant to section 105(a) could not be granted without conducting a full adversary proceeding under Rule 7001 absent a waiver); *Lyons v. Lyons (In re Lyons)*, 995 F.2d 923, 924 (9th Cir. 1993) (holding that, when a Rule 7001 category was at issue, the movant "may obtain the authority he seeks only through an adversary proceeding"); *In re Swallen's, Inc.*, 205 B.R. 879, 880 (Bankr. S.D. Ohio 1997) (denying motion for section 105(a) injunctive relief for failure to seek such relief by adversary proceeding); *In re Int'l Home Prods. Inc.*, 491 B.R. 607, 624-25 (Bankr. D.P.R. 2013) (denying extension of automatic stay under section 105(a) to nondebtor where relief was not brought pursuant to an adversary proceeding); *In re Layfield & Barrett, APC*, No. 19548, 2018 WL 1935801 (Bankr. C.D. Cal. Apr. 23, 2018) (holding that the automatic stay could not be extended to a non-debtor because the request was made by motion rather than through an adversary proceeding).[7]

32. Indeed, as the Fifth Circuit expressly held: "[u]nder Rule 7001, an injunction requires an adversary proceeding." *Zale Corp.*, 62 F. 3d at 762 (citing *Haber Oil Co. Inc. v. Swinehart (In re Haber Oil Co.),* 12 F.3d 426, 437 (5th Cir. 1994) ("A proceeding 'to recover money or property' is an adversary proceeding, as are proceedings ... 'to obtain an injunction or other equitable relief.'")).

---

[7] *See also In re Texas Pig Stands, Inc.*, BKR 05-52336-LMC, 2008 WL 4872058, at *3 (W.D. Tex. Aug. 27, 2008) ("A bankruptcy court's failure to proceed by adversary proceeding when one is required is reversible error."); *In re Mansaray-Ruffin*, 530 F.3d 230, 237 (3d Cir. 2008) (holding that a party's due process rights were violated where a party deemed a property interest invalid through a plan because a confirmation hearing does not provide the same due process protections as an adversary proceeding); *In re Village Mobile Homes, Inc.*, 947 F.2d 1282, 1283 (5th Cir. 1991) (reversing bankruptcy and district court in granting conversion damages, because it was an action "to recover money or property" that could only be determined in an adversary proceeding absent a waiver by the non-movant under Bankruptcy Rule 7001); *Haber Oil Co. v. Swinehart (In re Haber Oil)*, 12 F.3d 426, 443 (5th Cir. 1994) (reversing bankruptcy court's determination of equitable ownership at confirmation hearing as procedurally improper because no adversary proceeding was filed); *In re Reilly*, 71 B.R. 132 (Bankr. D. Mont. 1987) (question of debtors' legal interest in 150-acre tract by reason of conveyance of one-half interest to creditor cannot be settled by confirmation of plan). Here, FAR Gambia expressly does <u>not</u> waive its right to an adversary proceeding, nor is it being provided with equivalent due process protections.

33. Here, the Debtors, by motion, seek broad injunctive relief pursuant to section 105(a) of the Bankruptcy Code against "all persons" for a whole host of actions.[8] Pursuant to binding Fifth Circuit law, such relief can only be granted in the context of an adversary proceeding, and it is reversible error to grant such relief by mere motion and contested matter.

34. Further, merely calling a hearing an adversary proceeding, "does not make it one." *Zale Corp.*, 62 F. 3d at 764. Rather, an actual adversary proceeding is required because "Rule 7001 proceedings incorporate much of the Federal Rules of Civil Procedure … In contrast, contested matters require fewer procedural protections." *Id.* at 762.[9]

35. Beyond the procedural defects above, the Debtors have also failed to comply with Bankruptcy Rule 7065, which incorporates FRCP 65. As the Debtors admit, extending the automatic stay to a wholly-owned non-bankrupt subsidiary is "extraordinary relief" requiring "unusual circumstances." Non-Debtor Stay Motion at ¶ 17 (citing *Zale Corp.*, 62 F. 3d at 761). These circumstances include "1) when the nondebtor and the debtor enjoy such an identity of interests that the suit against the nondebtor is essentially a suit against the debtor, and 2) when the third-party action will have an adverse impact on the debtor's ability to accomplish

---

[8] Non-Debtor Stay Motion at ¶ 12 (emphasis added).

[9] For example, an adversary proceeding "'must be commenced by a properly filed and served complaint' and a Rule 7001 matter initiated by motion rather than by complaint 'fail[s] on procedural grounds.'" *Id.* at 763 (quoting *In re Perkins,* 902 F.2d 1254, 1258 (7th Cir. 1990)); *see also* Bankruptcy Rule 7003 (incorporating Rule 3 of the Federal Rules of Civil Procedure). Here, the Debtors have attempted to initiate a Rule 7001 matter by motion rather than complaint. Bankruptcy Rule 7008 also requires the Debtors to state whether they do or do not "consent to entry of final orders or judgment by the bankruptcy court." Bankruptcy Rule 7008. The Debtors failed to include such a statement in the Non-Debtor Stay Motion, which can leave FAR Gambia unprotected in the future. *Cf Haber Oil*, 12 F. 3d at 440 (noting that the failure to plead whether a proceeding was core or non-core led to an avoidable dispute about this issue later in the case, and finding that the "adversary proceeding rules are designed precisely to assist the bankruptcy court in resolving this type of controversy early in the proceedings"). Further, Bankruptcy Rule 7004 incorporates the requirement to properly serve a summons and complaint pursuant to FRCP 4. Without valid service of process, the court does not obtain personal jurisdiction over the defendant. *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). Notably, Bankruptcy Rule 7004(d) permits the summons and complaint to be served "anywhere in the United States," but does not amend the manner of service outside the United States on foreign entities such as FAR Gambia and foreign governments such as The Gambian government. Rather, FRCP 4 has special requirements for service of foreign entities and foreign governments. *See* FRCP 4(f), 4(h), 4(j)(1). The Debtors have not complied with these requirements, which denies FAR Gambia its due process rights.

reorganization." *Id.* However, while the Debtors have paid lip service to the "unusual circumstances" factors, that does not excuse the Debtors from also addressing the traditional factors governing preliminary injunctions issued pursuant to FRCP 65. Indeed, in *Zale Corp.*, the Fifth Circuit expressly found that the debtor had shown unusual circumstances, *id.* at 762, but nevertheless reversed because the bankruptcy court did not properly analyze and make the requisite findings regarding the "traditional factors" governing preliminary injunctions. *Zale Corp.*, 62 F. 3d at 765 (holding that there was no compliance with Rule 7001 due to the failure to address the FRCP 65 prerequisites); *see also In re Am. Dev. Intern. Corp.*, 188 B.R. 925, 935 (N.D. Tex. 1995) (holding that it was "error" for the bankruptcy court to grant an injunction without addressing "the four injunction factors followed in this circuit"); *In re Yukos Oil Co.*, 320 B.R. 130, 135 (Bankr. S.D. Tex. 2004) ("When determining whether to [extend the stay to non-debtors by issuing] a temporary restraining order or preliminary injunction pursuant to 11 U.S.C. § 105(a), the bankruptcy court must consider the traditional inquiries which have a bearing on preliminary injunctions issued pursuant to Rule 65, Fed.R.Civ.P."); *In re CDP Corp., Inc.*, 462 B.R. 615, 629 (Bankr. S.D. Miss. 2011) ("[T]he Fifth Circuit has held that a bankruptcy court may temporarily stay actions against a nondebtor under 11 U.S.C. § 105(a) under 'unusual circumstances.' Under current Fifth Circuit law, '[s]tays under Section 105(a) are <u>also</u> subject to the usual rules for the issuance of an injunction under Federal Rule of Civil Procedure 65.' 'Accordingly, <u>both</u> 'unusual circumstances' <u>and</u> the pre-requisites to issuance of an injunction must be present for the Court to stay" Equipment from further participation in the Louisiana action.'") (emphasis added) (citations omitted); *In re Commonwealth Oil Refining Co.*, 805 F.2d 1175 (5th Cir. 1986) (applying both unusual circumstances test and traditional injunction

factors); *Reuther v. Smith*, CIV A 06-6612, 2007 WL 1962956, at *4 (E.D. La. June 29, 2007) (same); *In re Excel Innovations, Inc.*, 502 F.3d 1086 (9th Cir. 2007) (same).

36. Here, as in *Zale Corp.*, the Debtors have not plead or attempted to establish that the four factor test for issuance of an injunction (as summarized below) has been fulfilled. Therefore, the Non-Debtor Stay Motion should be denied.[10]

### C. The Non-Debtor Stay Motion Should Not Be Granted Because the Relief Requested Is Not Warranted.

37. Beyond the jurisdictional and procedural defects, the Court should deny the Non-Debtor Stay Motion on the merits.

38. First, the scope of the Non-Debtor Stay Motion is well beyond that which other courts have granted. Unlike the narrow relief granted in the unusual cases cited by the Debtors, in which courts have extended the automatic stay to enjoin specific parties from taking specific acts against non-debtors, the indiscriminate extension of the automatic stay to enjoin acts by "all persons" against a non-debtor entity and non-estate property is impermissible.

39. Further, there is nothing "unusual" or "extraordinary" about a debtor having an equity interest in a subsidiary that could be impacted if the automatic stay were not extended to protect the non-debtor entity and its assets. Accordingly, there has to be something more than a mere showing of potential indirect economic impact on a debtor via its ownership interest in a non-debtor in order to constitute unusual circumstances warranting an extension of the stay.

---

[10] The Debtors also failed to comply with other procedural requirements. For example, Bankruptcy Rule 7008 incorporates Rule 8 of the Federal Rules of Civil Procedure ("FRCP"), which requires that a complaint contain, among other things, "a short and plain statement of the grounds for the court's jurisdiction." FRCP 8(a)(1). Had the Debtors properly filed an adversary complaint, as is required, they may have addressed this issue and given FAR Gambia notice and an opportunity to respond. But by failing to do so, it would violate FAR Gambia's due process rights to grant the improperly pled Non-Debtor Stay Motion. *See Matter of Haber Oil Co., Inc.*, 12 F.3d 426, 438 (5th Cir. 1994) (holding that a confirmation hearing and other hearings did not provide the same procedural protections as an adversary proceeding because the debtor failed to comply with "key elements of adversary proceedings" such as "including an allegation of jurisdiction" in a complaint).

40. Moreover, the Debtors cannot meet the four part test for issuance of an injunction.[11]

> (i) *The Debtors Are Not Substantially Likely to Prevail on the Merits, and in Fact Are Substantially Likely to Lose*

41. The Debtors have not met their burden to show that they are substantially likely to prevail on the merits in their dispute with FAR Gambia. Indeed, the Debtors barely addressed the dispute at all, nor offered any legal authority to support their view that FAR Gambia is not entitled to enforce the contractually bargained for JOA provisions. EEGL is a sophisticated party, and it should not be allowed to thwart FAR Gambia's benefit of the bargain without showing that they are substantially likely to prevail on the merits, which it cannot do. Here, EEGL defaulted under the JOAs and, upon FAR Gambia's exercise of its contractual rights, holds only bare legal title to the Gambian Properties.

> (ii) *The Debtors Have Not Shown that there Is a Substantial Threat that they Will Suffer Irreparable Injury if an Injunction Is Not Granted*

42. The Debtors have failed to show that they will suffer an irreparable injury because they have not shown that they have more than bare legal title to The Gambian Properties. In fact, FAR Gambia has already invoked its rights under the JOA, so any extension of the automatic stay would be an exercise in futility.

43. Moreover, the Debtors have made no effort to show that they would have no ability to seek legal redress if the Court were to fail to grant the extraordinary relief requested in the Non-Debtor Stay Motion. EEGL no longer has any beneficial interest in the Licenses or properties. And, even if EEGL had a beneficial interest in the Licenses or properties, the Court

---

[11] The four prerequisites to the issuance of a preliminary injunction are: (1) a substantial likelihood that the movant will prevail on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury to the movant outweighs the threatened harm an injunction may cause the party opposing the injunction; and (4) that the granting of the injunction will not disserve the public interest. *See In re Zale Corp.*, 62 F. 3d at 765.

lacks jurisdiction over The Gambian government. Therefore, the relief requested by the Debtors could not prevent The Gambian government from seizing EEGL's interests in the Licenses or properties, if any. Thus, the Debtors have not shown that the relief they requested would make a difference in preventing irreparable harm to their interests.[12]

44. Finally, in order to prove irreparable harm warranting an injunction, parties must typically show that there is no adequate remedy at law. *See, e.g.*, *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013) ("To satisfy this prong of the preliminary injunction test, DHS must show that it is 'likely to suffer irreparable harm,' that is, harm for which there is no adequate remedy at law."). "For purposes of injunctive relief, an adequate remedy at law exists when the situation sought to be enjoined is capable of being remedied by legally measurable damages." *Merritt Hawkins & Associates, L.L.C. v. Gresham*, 861 F.3d 143, 158 (5th Cir. 2017) (*quoting Dresser-Rand Co. v. Virtual Automation Inc.*, 361 F.3d 831, 848 (5th Cir. 2004)). Here, the Debtors have made absolutely no showing that FAR Gambia is not legally entitled to take the actions it has taken, or that EEGL is without legal redress in the absence of an extension of the automatic stay.

> (iii) *The Threatened Injury to the Movant Does Not Outweigh the Threatened Harm an Injunction May Cause the Party Opposing the Injunction*

45. While the relief requested by the Debtors is unlikely to prevent harm to the Debtors, it is very possible that it could prevent FAR Gambia from protecting *its* interests in the Licenses and property, leaving other creditors and The Gambian government free to pursue their rights against EEGL and its Licenses and properties.

---

[12] For the same reason, the Debtors have not shown that the absence of a stay will "have an adverse impact on the debtor's ability to accomplish reorganization." Non-Debtor Stay Motion at ¶ 18 (citing *Zale Corp.*, 62 F.3d at 761). Because the stay would likely not prevent The Gambian government from seizing EEGL's bare legal title, the Debtors' economic interest in EEGL will not be adversely impacted by the denial of its motion.

46. Notably, the Debtors seek the extraordinary relief of obtaining the benefit of the stay for a non-debtor entity, relief that is typically allowed only through bankruptcy, but have not proposed to provide FAR Gambia or others with any of the protections that they would normally receive if the non-debtor entity filed bankruptcy. In sum, FAR Gambia is at risk of substantial harm if the relief sought is granted, while the relief requested by the Debtors is unlikely to provide the benefit (protection of the EEGL's interests in the Licenses and property) that the Debtors hope to receive.

>   (iv)   *The Debtors Have Failed to Plead or Show that the Granting of the Injunction Will Not Disserve the Public Interest*

47. Issues of comity and the Act of State Doctrine weigh against granting the relief requested by the Debtors. Without providing any authority whatsoever, the Debtors are asking this Court to exercise the extraordinary relief of enjoining the acts of, among other things, a foreign sovereign government against a foreign, non-debtor's assets, which are located in that sovereign government's territory. Such an action, among other things, is an affront to The Gambian government's sovereignty. Further, it is against the public interest to take actions that are unlikely to help the Debtors, but which could substantially hurt parties, such as FAR Gambia. Accordingly, even if the Debtors had properly sought injunctive relief (which they did not do), the Debtors could not meet their burden of proof to show that the requisite tests are met for the issuance of an injunction.

## IV.
## CONCLUSION

WHEREFORE, FAR Gambia respectfully requests that this Court enter an order denying the Non-Debtor Stay Motion, and granting FAR Gambia such other and further relief as the Court deems proper, both at law and in equity.

Dated: May 9, 2018

        THOMPSON & KNIGHT LLP

        By:   */s/ David M. Bennett*

        David M. Bennett
        Texas State Bar No. 02139600
        Steven J. Levitt
        Texas State Bar No. 24092690
        One Arts Plaza
        1722 Routh Street, Suite 1500
        Dallas, TX 75201
        Telephone: 214.969.1700
        Facsimile: 214.969.1751
        E-mail: David.Bennett@tklaw.com
        steven.levitt@tklaw.com

        **ATTORNEYS FOR FAR GAMBIA LTD**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on all parties entitled to notice via the Court's electronic notification system on this 9th day of May, 2018.

        */s/ David M. Bennett*
        David M. Bennett