**THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| *In re*: | Case No. 18-32106 |
| ERIN ENERGY CORPORATION, *et al.*, | Chapter 11 |
| Debtors. | **Re: Dkt. No. 28** |

<u>**SUPPLEMENTAL BRIEF OF PUBLIC INVESTMENT CORPORATION SOC LTD.**</u>

TO THE HONORABLE MARVIN ISGUR,
UNITED STATES BANKRUPTCY JUDGE:

Public Investment Corporation Soc. Ltd. (**PIC**) hereby submits this supplemental brief in connection its objection (the **Objection**) to the *Debtor's Emergency Motion for Interim And Final Orders (i) Authorizing Use of Cash Collateral Pursuant to Section 363(c) of the Bankruptcy Code; (ii) Granting Adequate Protection for the Use Thereof; and (iii) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001 as to Use of Cash Collateral*, Dkt. No. 28 (the **Motion**).[1]

1.      The Court has requested that parties provide supplemental briefing on two issues: (i) the nature of PIC's interest in the MCB Facility; and (ii) whether the presence of a guarantee would provide PIC with adequate protection under sections 361 and 363 of the Bankruptcy Code.

**I.      PIC's Interest in the MCB Facility**

2.      As discussed in the Motion, the $10,000,000 that the Debtors seek to use secures certain loans advanced by MCB to ERN and EPNL under the MCB Facility. In

---

[1]      Capitalized terms used but not defined herein shall have the meanings given to them in the Objection and the Motion.

**Error! Unknown document property name.**

accordance with the FSA, PIC procured, for the benefit of MCB, a $100,000,000 Payment Guarantee from The Standard Bank of South Africa Limited (**SBSA**) attached hereto as Exhibit A (the **Payment Guarantee**).

3.      The Payment Guarantee, though characterized at the hearing as a letter of credit, is an English law-governed demand guarantee subject to the Uniform Rules for Demand Guarantees, ICC Publication No. 758. Under the Payment Guarantee, at the request of PIC, SBSA undertook to guarantee and pay to MCB, on demand, amounts up to $100,000,000. PIC, for its part, undertook to reimburse SBSA for amounts paid by SBSA to MCB under the Payment Guarantee.

4.      On May 8, 2018, PIC and MCB entered into a transfer certificate attached hereto as Exhibit A (the **Transfer Certificate**) and a Deed of Undertaking attached hereto as Exhibit A (the **Deed of Undertaking**). Under these documents, PIC agreed to pay MCB a total of $68,602,273.37 in return for the novation of all claims and collateral rights of MCB against ERN and EPNL under the MCB Facility, with effect from May 9, 2018. MCB agreed to withdraw a demand it had made on SBSA on April 30, 2018, and to transfer its rights as beneficiary under the Payment Guarantee to PIC, subject to the consent of SBSA, which under the Payment Guarantee may not be unreasonably withheld.

## II.      Subrogation and Adequate Protection under section 363 of the Bankruptcy Code

5.      The Payment Guarantee does not provide PIC with adequate protection of its interest because, as all parties recognize, PIC is required to reimburse SBSA for any draws under the Payment Guarantee and therefore does not actually have the benefit of any protection at all. The proposed treatment of the Payment Guarantee as both adequate protection and a device which transmogrifies a claim secured by cash into an unsecured claim against insolvent

debtors flies in the face of longstanding principles on the treatment of secured creditors under the Bankruptcy Code.

6.      Section 361 of the Bankruptcy Code governs what constitutes adequate protection, and the underlying policy of the section is that "adequate protection of an interest of an entity in property is intended to protect a creditor's allowed secured claim." H.R.REP. NO. 95–595, 95th Cong., 1st Sess. 340 (1978). In addition to cash payments or replacement liens, neither of which are offered by the Debtors, the section expressly empowers a court to provide a secured creditor with adequate protection by "granting such other relief . . . as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property." 11 U.S.C. § 361(3).

7.      The "indubitable equivalence" standard is an inherently flexible doctrine that dates back to decision of Judge Learned Hand under the Bankruptcy Act:

> It is plain that 'adequate protection' must be completely compensatory; and that payment ten years hence is not generally the equivalent of payment now. Interest is indeed the common measure of the difference, but a creditor who fears the safety of his principal will scarcely be content with that; he wishes to get his money or at least the property. We see no reason to suppose that the statute was intended to deprive him of that in the interest of junior holders, unless by a substitute of the most indubitable equivalence.

*In re Murel Holding Corp.*, 75 F.2d 941, 942 (2d Cir. 1935). The subsequent Bankruptcy Code codification of the concept was expressly intended to incorporate his reasoning that a secured creditor should be fully compensated for the use of its collateral. S. REP. NO. 95-989, 95th Cong., 2d Sess. 127-128 (1978) ("The indubitable equivalent language is intended to follow the strict approach taken by Judge Learned Hand in *In Re Murel Holding Corp*, 75 F.2d 941 (2nd Cir. 1935)."). The guiding principle of section 361 is therefore value protection and ensuring that the

secured creditor remains just as protected from loss as it would be in a circumstance where its collateral is not being used.

8.      For this reason, guarantees are inherently suspect as a form of adequate protection because they substitute the certainty of collateral with the uncertainty of a claim against another party. *In re Kenny Kar Leasing, Inc.*, 5 B.R. 304, 309 (Bankr. C.D. Cal. 1980) ("To compel a secured creditor to accept such risks on the basis of rights to pursue a guarantor, is to shift the hazards and the cost of the rehabilitation effort from the debtor to the secured creditor. Such a proposition is not within the contours of the concept of adequate protection embodied in the Code."); *In re C.F. Simonin's Sons, Inc.*, 28 B.R. 707, 712 (Bankr. E.D.N.C. 1983) ("Even if there was indisputable evidence of the creditworthiness of the guarantors, the chance to pursue a guarantor with its uncertainties and costs is not adequate protection. . . . It is certainly not adequate protection in this case in view of the Debtor's remote chance of successful reorganization.").

9.      Even those courts which permit third-party guarantees to serve as adequate protection will only do so in circumstances where the guarantee will, as a practical matter, protect the interests of the secured creditor. *In re Swedeland Dev. Group, Inc.*, 16 F.3d 552, 564 (3d Cir. 1994) ("Obviously we are not suggesting that in all cases a third-party guaranty would be sufficient. The sufficiency of the guaranty would depend, inter alia, on the financial strength of the guarantor"); *In re Lombardo's Ravioli Kitchen, Inc.*, 08-20774 (ASD), 2009 WL 585814, at *4 (Bankr. D. Conn. Feb. 20, 2009) ("[T]he decisions of numerous other courts have long held that the suitability of a third party guaranty as a form of adequate protection depends upon the financial strength of the guaranty."). Further, courts may reject the adequacy of "an unsecured guaranty or a guaranty secured by collateral of negligible worth." *In re Thomas Parker*

*Enterprises, Inc.*, 8 B.R. 207 (Bankr.D.Conn.1981) (collateral of "doubtful value"); *Kenny Kar*,

5 B.R. 304 (unsecured guaranty).

10.     The Debtors' proposal is even more egregious than anything at issue in

those cases, as the Payment Guarantee presents the apparently novel situation in which the

financial weakness of the guarantee is not the balance sheet of the guarantor, but the undisputed

fact that every dollar paid on the guarantee will come out of PIC's pocket. It is one thing if a

guarantee may not be reliable enough to fully protect the secured creditor, and quite another if it

is understood by all parties, from the moment it is suggested as adequate protection, to be a pass-

through that will render the creditor entirely unsecured. In these circumstances, the Payment

Guarantee simply does not result in PIC receiving the indubitable equivalent of the cash in the

MCB bank account over which it has security, and it is mere sophistry to characterize this

arrangement as "protection."

11.     As a court of equity, the Court is empowered to "look to the circumstances

of the case and consider the economic substance of the transaction" rather than at its form or how

it has been denominated. *Cf. In re PCH Assocs.*, 804 F.2d 193, 199 (2d Cir. 1986) (holding that a

may look beyond the form of a transaction to determine its characterization."). The notion that

PIC's interest in the $10,000,000 is protected by a Payment Guarantee that it is required to

reimburse defies economic reality, and thus PIC respectfully requests that the Court deny the

relief sought in the Motion.

12.     To the extent that the Court determines, for the limited purpose of this

emergency hearing, that PIC is not entitled to adequate protection on account of the use of the

restricted cash, the Debtors' motion should nevertheless be denied because the evidence does not

demonstrate that the Debtors use of cash collateral reflects reasonable business judgment. Use of

cash collateral to fund these cases is a poor exercise of business judgment because, without limitation:

> a. The only receipt identified in the Debtors' 13-week budget is the restricted cash from MCB. The Debtors' proposed 13-week budget anticipates *no* revenue from operations in the next 13-weeks.
>
> b. The Debtors' proposed 13-week budget shows over $6 million in cash burn over 13-weeks, with no corresponding revenue generated.
>
> c. The record reflects that the Debtors have no prospect of revenue from any business operations unless there is a favorable litigation outcome in Nigeria, and the timing and likelihood of such outcome is unknown and highly speculative.
>
> d. The record reflects that without a favorable outcome in the Nigerian litigation there will not be a business to be reorganized, and the likely value destruction from an unsuccessful chapter 11 case will be borne by all creditors.

13.     PIC bears all of the downside of the Debtors' continued use of cash, forcing it to underwrite the economics of the Debtor's case regardless of whether or not the Court finds it to be a secured or an unsecured creditor. The Debtors' proposed budget and the evidence adduced at the hearing fail to demonstrate good business judgment and the Court should not permit the Debtors to utilize the MCB cash to fund a case under these circumstances. Accordingly, PIC requests that the Motion be denied.

Dated: May 9, 2018
Houston, Texas

**VINSON & ELKINS LLP**

/s/ *Bradley R. Foxman*
Rebecca L. Petereit
(Texas Bar No. 24062776)
Bradley R. Foxman
(Texas Bar No. 24065243
Trammell Crow Center
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201
rpetereit@velaw.com
bfoxman@velaw.com

- and -

**ALLEN & OVERY LLP**
Laura Hall
1221 Avenue of the Americas
New York, NY 10020
(212) 610-6300 (telephone)
(212) 610-6399 (facsimile)
laura.hall@allenovery.com

*Attorneys for Public Investment
Corporation Soc. Ltd.*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on May 9, 2018, a true and complete copy of the foregoing objection was served upon filing via the Court's EM/ECF electronic system on all parties subscribing thereto.

/s/ *Bradley R. Foxman*
Bradley R. Foxman

## EXHIBIT A

## PAYMENT GUARANTEE



Transaction Reference Number: 612160166G120608

Mauritius Commercial Bank Limited
Acting in its capacity as security agent and trustee
11ᵗʰ Floor
MCB Head Office
9-15, Sir William Newton Street
Port Louis
Mauritius

PAYMENT GUARANTEE

This bank guarantee is made on 3ʳᵈ day of February 2017

| | |
|---|---|
| Applicant: | Public Investment Corporation SOC Limited (Registration Number: 2005/009094/30), acting in its capacity as the authorised representative of the Government Employees Pension Fund |
| Beneficiary: | Mauritius Commercial Bank Limited, acting in its capacity as security agent and trustee under the Contract |
| Contract (Underlying Agreement): | The USD 100,000,000.00 (one hundred million United States Dollars) facility agreement, entered into between, *inter alia*, Erin as guarantor, Erin Petroleum Nigeria Limited as borrower and the Beneficiary |
| Erin: | Erin Energy Corporation |
| Financing Support Agreement: | The financing support agreement entered into between the Applicant and Erin, setting out the terms and conditions under which the Applicant shall provide financial support to Erin |
| Guarantee: | The irrevocable on demand, independent guarantee issued by the Bank to the Beneficiary in accordance with the terms and conditions contained herein |
| Guaranteed Amount: | USD100,000,000.00 (one hundred million United States Dollars) |

Standard Bank Centre 1st Floor 35 Fricks Street Johannesburg 2001 P O Box 61650 Marshalltown 2107 South Africa
Tel Switchboard +27 (0)11 636 9111 Fax +27 (0)11 636 5207 of office@standardbank.co.za www.standardbank.co.za

The Standard Bank of South Africa Limited (Reg No 1962/000738/06) Authorised financial services provider and registered credit provider (NCRCP15)

Directors: T S Gcabashe (Chairman) SK Tshabalala* (Chief Executive) A Lindares* BJ Kruger* D Eliance (Lindares) Jay Lan* CAM Kennedy B J Kruger* JH Maree (MA Utunotsa
MD Marumula, Chief Object* AC Parker MCA Servaika COI,* MW Pecs PD Subran* M S Utunotsa
At Vice Wheetstkiney** EM Woods

Company Secretary: Z Stephen   21 11 2016

*Executive Director British Malaysian Nigerian Australian Chinese

Corporate and Investment Banking

Standard Bank Moving Forward™

| | |
|---|---|
| **Reduction In Guarantee Amount:** | The Guaranteed Amount or balance thereof, shall be capable of being reduced only in the following circumstances: (a) pro rata, as amounts are paid out under the Guarantee and/or (b) pro rata upon Erin making regular scheduled debt service payments in full in accordance with the Contract. Following the occurrence of either of the preceding, the Beneficiary shall notify the Bank in writing and the available Guaranteed Amount shall be reduced accordingly |
| **Expiry Date:** | 3 (three) years from the date of issuance hereof or if earlier, the date on which the Beneficiary confirms in writing to the Bank and the Applicant, that all amounts due to the Beneficiary under the Contract have been paid in full. For the avoidance of doubt, this date shall not exceed 3 (three) years from the date of issuance of this Guarantee |
| **Bank:** | The Standard Bank of South Africa Limited, (Registration Number 1962/000738/06), a public company duly incorporated with limited liability according to the laws of the Republic of South Africa |
| **Bank's SWIFT Address:** | SBZAZAJJ |
| **Business Days:** | A day (other than a Saturday, Sunday or public holiday) on which banks are open for general business in Johannesburg, South Africa |

1. Erin requires debt financing in a principal amount of USD100,000,000.00 (one hundred million United States Dollars), in order to carry out drilling and related operational activities to increase the production levels of its 100% owned subsidiary, Erin Petroleum Nigeria Limited. The Applicant is an existing shareholder in Erin and accordingly undertakes to support Erin's efforts to raise debt financing from the Beneficiary and has agreed to secure a bank guarantee in favour of the Beneficiary.

2. By or before the date of this Guarantee, Erin and the Beneficiary shall have entered into the Contract, in terms of which, the Beneficiary undertakes to advance a facility amount of USD100,000,000.00 (one hundred million United States Dollars only) to Erin Petroleum Nigeria Limited, subject to the conditions therein. In accordance with the terms and conditions of the Contract, the Beneficiary requires Erin to provide security in the form of a bank guarantee.

3. Considering that Erin requires the Applicant's support in order to secure debt financing under the Contract, Erin and the Applicant have entered into the Financing Support Agreement in respect of which the Applicant undertakes to provide financial support to Erin by applying for a bank guarantee, which will be for the benefit of the Beneficiary, in respect of any amounts owing to the Beneficiary, in accordance with the terms of the Contract.

4. At the request of the Applicant, the Bank hereby irrevocably undertakes and guarantees to pay the Beneficiary, on demand, in accordance with clause 5 and 6 below, such amounts as and when demanded by the Beneficiary, which in aggregate do not exceed the Guaranteed Amount, within 5 (five) Business Days following receipt by the Bank of a Complying Demand.

**Standard Bank Moving Forward™**

5. A Complying Demand must:

  5.1. be delivered by the Beneficiary to the Bank by a swift message to the Bank's SWIFT Address, quoting the Bank's Transaction Reference Number: 612150155G120508 and marked for the attention of the Guarantees Operations Manager;

  5.2. contain a statement, stating that a payment default has occurred under the Contract and that it demands the Guaranteed Amount, or any part thereof, to be paid by the Bank; and

  5.3 state the amount(s) that the Beneficiary demands the Bank to pay.

6. Payment of the Guaranteed Amount, or any part thereof, will only be made following delivery of a Complying Demand by the Beneficiary to the Bank, at the Bank's SWIFT Address.

7. The Bank will pay on demand under this Guarantee following receipt of a Complying Demand from the Beneficiary pursuant to clauses 5 and 6 above and without verifying:

  7.1. the validity or authenticity of the Complying Demand; or

  7.2. the alleged non-payment under the Contract; or

  7.3. the correctness of the amount(s) demanded by the Beneficiary.

8. For the avoidance of doubt, multiple demands and payments are permitted, provided that the aggregate of amounts paid by the Bank to the Beneficiary, shall not exceed the Guaranteed Amount.

9. The Bank's obligation herein is restricted to the payment of money and will not be interpreted as extending the Bank's liability to anything other than the payment of the Guaranteed Amount.

10. This Guarantee is issued in support of the Contract, for the benefit of the Beneficiary and its successors and permitted assignees. This Guarantee may be transferred by the Beneficiary, subject to receipt of the Bank's prior written consent, not to be unreasonably withheld, having regard to the Bank's prevailing Compliance and Risk Policies.

11. Save for any amendments to the Bank's SWIFT Address or any assignment in accordance with clause 10 above, no variation of this Guarantee will be of any force or effect without the prior written consent of the Applicant, the Bank and the Beneficiary.

12. Notwithstanding anything to the contrary contained herein, this Guarantee will expire, whether surrendered to the Bank for cancellation or not, at 14h00 (South African time), on the Expiry Date or on payment of the Guaranteed Amount in full, whichever occurs first, at which time the Bank's liability will cease and no claims will be considered thereafter.

13. This Guarantee must be surrendered to the Bank at the earlier of:

  13.1. payment in full of the Guaranteed Amount; or

**Standard Bank Moving Forward™**

3

13.2 Expiry Date, unless there is a Complying Demand which remains unpaid under the Guarantee.

14. This Guarantee shall be subject to the Uniform Rules for Demand Guarantees, ICC Publication No. 758 and shall be governed by English law. Any dispute or claim arising out of or in connection with this Guarantee or its subject matter, existence, negotiation, interpretation, validity, termination or enforceability (including any non-contractual dispute or claim) shall be referred to arbitration and finally settled under the Rules of Arbitration of the London Court of International Arbitration. The seat of the arbitration shall be London, England. The language of the arbitration shall be English. The arbitration agreement shall be governed by English law.

15. The Applicant shall have sole responsibility to deliver the original of this Guarantee to the Beneficiary following issuance by the Bank.

This Guarantee is executed and is delivered and takes effect at the date written at the beginning of it.

Signed as a deed in Johannesburg on the 3rd day of February 2017

By: The Standard Bank of South Africa Limited, (Registration Number: 1962/000738/06)

_____
Ryan Taylor
Junior Manager Guarantees
Trade Services, CIB Operations

_____
Kershni Govender
Manager, Legal
Trade Services, CIB Operations

As witnesses:

1. _____

2. _____

## **EXHIBIT B**

**TRANSFER CERTIFICATE**

## TRANSFER CERTIFICATE

To:     The Mauritius Commercial Bank Limited as Agent

        The Mauritius Commercial Bank Limited as Security Agent

From:   The Mauritius Commercial Bank Limited as Lender and Issuing Bank (the **"Existing Lender"**) and Public Investment Corporation SOC Ltd (the **"New Lender"**)

Dated:  ___8___ May 2018

**ERIN Petroleum Nigeria Limited – USD100,000,000 Pre-Export Finance Facility Agreement dated 6 February 2017 (the "Facility Agreement")**

1.      We refer to the Facility Agreement. This agreement (the "**Agreement**") shall take effect as a Transfer Certificate for the purpose of the Facility Agreement. Terms defined in the Facility Agreement have the same meaning in this Agreement unless given a different meaning in this Agreement.

2.      We refer to Clause 29.5 (*Procedure for transfer*) of the Facility Agreement:

2.1     The Existing Lender and the New Lender agree to the Existing Lender transferring to the New Lender by novation and in accordance with Clause 29.5 (*Procedure for transfer*) all of the Existing Lender's rights and obligations (subject to the terms of this Agreement) under the Facility Agreement and the other Finance Documents which relate to that portion of the Existing Lender's Commitment and participations in Utilisations under the Facility Agreement as specified in the Schedule.

2.2     The proposed Transfer Date is 9 May 2018.

2.3     The Facility Office and address, fax number and attention details for notices to the New Lender for the purposes of Clause 38.2 (*Addresses*) are set out in the Schedule.

3.      The New Lender expressly acknowledges the limitations on the Existing Lender's obligations set out in Clause 29.4.3 (*Limitation of responsibility of Existing Lenders*).

4.      The New Lender confirms that it is not a Non-Acceptable L/C Lender.

5.      This Agreement may be executed in any number of counterparts and this has the same effect as if the signatures on the counterparts were on a single copy of this Agreement.

6.      If any provision or provisions of the Agreement (or any document referred to herein) is or at any time becomes illegal, invalid or unenforceable in any respect, the legality, validity and enforceability of the remaining provisions of this Agreement (or such document) shall not in any way be affected or impaired.

7.      This Agreement and any non-contractual obligations arising out of or in connection with it are governed by English law and any dispute or claim in respect of the same shall be within the exclusive jurisdiction of the courts of England.

8.      This Agreement has been entered into on the date stated at the beginning of this Agreement.

**Note:   The execution of this Transfer Certificate may not transfer a proportionate share of the Existing Lender's interest in the Transaction Security in all jurisdictions.  It is the responsibility of the New Lender to ascertain whether any other documents or other formalities are required to perfect a transfer of such a share in the Existing Lender's Transaction Security in any jurisdiction and, if so, to arrange for execution of those documents and completion of those formalities.**

EXECUTION COPY

## THE SCHEDULE

### Commitment/rights and obligations to be transferred

| Lender | Commitments transferred (USD) | Commitments received (USD) | Outstanding principal transferred (USD) | Outstanding principal received (USD) | Outstanding Interest transferred (USD) | Outstanding Interest received (USD) | Outstanding Default Interest transferred (USD) | Outstanding Default Interest received (USD) | Outstanding fees, costs and expenses (including legal fees) transferred (USD) | Outstanding fees, costs and expenses (including legal fees) received (USD) | Account Details | Notice Details |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Public Investment Corporation SOC Ltd** | | 100,000,000 | 65,595,344.82 | | 1,777,706.30 | | 859,896.21 | | 369,326.04 | | **Payments to:** Government Employees Pension Fund<br><br>**Name of Bank:** Standard Bank of S.A. Ltd<br><br>**Account Name:** GEPF –EQUITIES<br><br>**Account Number:** 011245131<br><br>**Type of Account:** Business current account<br><br>**Account held at:** Arcadia<br><br>**Swift Code:** SBZA ZA JJ<br><br>**Branch Code:** 010845<br><br>**Registration number:** 2005/009094/30 | **Facility Office:** Public Investment Corporation SOC Ltd<br><br>**Notice details:** 2nd Floor, Menlyn Maine Central Square Cnr. Aramist Avenue & Corobay Avenue Waterkloof Glen Extension 2 0181<br><br>**Email:** Daniel.Matjila@pic.co.za; and Fidelis.Madavo@pic.co.za<br><br>**Fax:** +27 12 346 3276<br><br>**Attention:** Dr Daniel Matjila, Chief Executive Officer and Mr Fidelis Madavo, Executive Head Listed Investments |
| **The Mauritius Commercial Bank Limited** | 100,000,000 | | | 65,595,344.82 | | 1,777,706.30 | | 859,896.21 | | 369,326.04 | **Beneficiary name:** The Mauritius Commercial Bank Ltd<br><br>**Account Number with Correspondent Bank:** 10932733<br><br>**Swift Code of Beneficiary:** MCBLMUMU<br><br>**Address of Beneficiary:** 9-15, Sir William Newton Street, Port Louis, Mauritius<br><br>**Correspondent Bank:** | **Facility Office:** The Mauritius Commercial Bank Limited<br><br>**Notice details:** 4th Floor, MCB Centre 9-15, Sir William Newton Street Port Louis Mauritius<br><br>**Fax number:** +230 208 7976<br><br>**Email:** |

EXECUTION COPY

| | | | | | | | | | | Citibank New York | guillaume.leenhardt@mcb.mu; zaahir.sulliman@mcb.mu; and youri.harel@mcb.mu |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | **Swift Code of Correspondent Bank :** CITIUS33 **Reference :** ERIN-PIC | **Attention**: Zaahir Sulliman, Guillaume Leenhardt and Youri Harel |

**All of the Existing Lender's interest in the Transaction Security in all jurisdictions. It is the responsibility of the New Lender to ascertain whether any other documents or other formalities are required to perfect a transfer of such a share in the Existing Lender's Transaction Security in any jurisdiction and, if so, to arrange for execution of those documents and completion of those formalities.**

This Agreement is accepted as a Transfer Certificate for the purposes of the Facility Agreement by the Agent and, subject to the relevant funds (the "**Transfer Amount**") being credited to the Agent's Account, the Transfer Date is confirmed as 9 May 2018.

Signature of this Agreement by the Agent constitutes confirmation by the Agent of receipt of notice of the transfer referred to in this Agreement, which notice the Agent receives on behalf of each Finance Party..

EXECUTION COPY

**Existing Lender**                                    **New Lender**

**The Mauritius Commercial Bank Limited**   **Public Investment Corporation SOC Ltd**

By:                                                    By:

This Agreement is accepted as a Transfer Certificate for the purposes of the Facility Agreement by the Agent and the Transfer Date is confirmed as 9 May 2018.

**Agent**

**The Mauritius Commercial Bank Limited**

By:

**Security Agent**

**The Mauritius Commercial Bank Limited**

By:

EXECUTION COPY

| **Existing Lender** | **New Lender** |
|---|---|
| **The Mauritius Commercial Bank Limited** | **Public Investment Corporation SOC Ltd** |

By:

zaahir
SULLIMAN

By:

This Agreement is accepted as a Transfer Certificate for the purposes of the Facility Agreement by the Agent and the Transfer Date is confirmed as 9 May 2018.

**Agent**
**The Mauritius Commercial Bank Limited**

By:

Lindley
PERRINE

**Security Agent**
**The Mauritius Commercial Bank Limited**

By:

Lindley PERRINE

## **EXHIBIT C**

**DEED OF UNDERTAKING**

EXECUTION COPY

**DEED OF UNDERTAKING**

To: Public Investment Corporation SOC Ltd (acting in its capacity as agent and authorised representative of its client, the Government Employees Pension Fund) ("**PIC**")

From: The Mauritius Commercial Bank as Lender, Agent, Security Agent and Issuing Bank under the Facility Agreement and as Second Creditor under the Override Deed (**"MCB"**)

Dated: ___8___ May 2018

**ERIN Petroleum Nigeria Limited – USD100,000,000 Pre-Export Finance Facility Agreement dated 6 February 2017 (the "Facility Agreement")** and subject to a transfer certificate between PIC and MCB dated on or about the date hereof relating to the transfer of certain rights and obligations of MCB to PIC under the Facility Agreement in the form attached in Schedule 1 hereto (the "**Transfer Certificate**").

**WHERAS:**

MCB and PIC enter into this Deed in connection with the Transfer Certificate to document the conditions under which PIC is purchasing the Transferred Rights and the Transferred Obligations and the mechanics related to the payment of the Settlement Amount.

**IT IS AGREED** as follows:

1. **Definitions and Construction**

1.1 **Definitions**

We refer to the Facility Agreement. Terms defined in the Facility Agreement and the Transfer Certificate shall have the same meaning in this letter unless otherwise defined in this Deed (the **"Deed"**). In addition, in this Deed:

**"Ancillary Rights and Claims"** means to the extent that the same are capable of being or permitted to be assigned, by the Transferor in contract and under applicable law, all claims, suits, causes of action, and any other right of the Transferor, whether known or unknown, against any Obligor, or any of their respective Affiliates, agents, representatives, contractors, advisors, or any other person that in any way is based upon, arises out of or is related to assets referred to in paragraph (a) of the definition of Transferred Rights, including all claims (in contract or in tort), suits, causes of action, and any other right of the Transferor, against any auditor, legal, tax, financial or other professional advisor, or other person arising under or in connection with the Credit Documentation.

**"Complying Demand"** has the meaning given to that term in Clause 3.2.4.

**"Credit"** means a Loan or a Letter of Credit.

**"Credit Documentation"** means the Facility Agreement (including all schedules and appendices to the Facility Agreement), any amendments, supplements, accessions, waivers or variations to the Facility Agreement and all guarantees (excluding, for the avoidance of doubt, the SBSA Guarantee), security, intercreditor and restructuring documentation, relating to the Facility Agreement.

**"Novation"** means the novation to be effected pursuant to the Transfer Certificate.

**"Relevant Person"** means each of MCB or any Affiliate, officer, employee or agent of MCB.

**"Retained Obligations"** means, subject to Clause 4.4, all obligations of the Transferor under the Credit Documentation that relate to facts, events or circumstances arising or occurring before the Transfer Date.

"**Settlement Amount**" means the amount payable by PIC for the Transferred Rights and the Transferred Obligations, being the sum of USD68,602,273.37comprising:

(a)     USD65,595,344.82, in respect of principal outstanding under the Facility Agreement;

(b)     USD1,777,706.30, in respect of accrued and unpaid interest under clause 12.1 (*Calculation of interest*) of the Facility Agreement;

(c)     USD859,896.21, in respect of accrued and unpaid default interest under clause 12.3 (*Default interest*) of the Facility Agreement; and

(d)     USD369,326.04, in respect of fees and expenses due by the Obligors to the Transferor, including legal fees.

"**Transferor**" means MCB in its capacity as Lender and Issuing Bank under the Facility Agreement.

"**Transferred Obligations**" means all of the Transferor's obligations (but excluding the Retained Obligations) under or in respect of the Credit Documentation transferred under the Transfer Certificate including, without limitation, any commitment under the Credit Documentation to make or issue a Credit and any obligations under any outstanding Credit.

"**Transferred Rights**" means:

(a)     all of the rights and benefits of the Transferor under or in respect of the Credit Documentation transferred under the Transfer Certificate including, without limitation, the rights and interests of the Transferor in and in respect of:

(i)     the benefit of any guarantee or other assurance against loss given by any guarantor;

(ii)    the benefit of any other security; and

(iii)   any amounts owing to the Transferor under the Facility Agreement; and

(b)     the Ancillary Rights and Claims,

but excluding the Transferor's rights as Agent or Security Agent (as applicable).

1.2     **Construction**

1.2.1     In this Deed, unless the contrary intention appears, a reference to:

(A)     a Clause or Schedule is a reference to a clause of, or schedule to, this Deed;

(B)     "**the Schedule**" is a reference to the schedule to the Transfer Certificate; and

(C)     a "**Party**" or any other person includes its successors in title, permitted assigns and permitted transferees.

1.2.2     Headings are for ease of reference only.

1.2.3     References to any document shall be references to the same as amended, varied, supplemented, replaced or restated in any manner from time to time.

1.2.4     A provision of law is a reference to that provision as amended or re-enacted.

1.3     **Facility Agreement and Transfer Certificate prevail**

In the event of any conflict between the terms of the Facility Agreement and the Transfer Certificate and this Deed, the terms of the Facility Agreement and the Transfer Certificate shall prevail.

1.4     **Third Party Rights**

Subject to Clause 4.1 in relation to each Relevant Person, a person who is not a Party has no rights under the Contracts (Rights of Third Parties) Act 1999 to enforce or to enjoy the benefit of any term of this Deed.

2.      **Settlement and completion**

2.1     **Payment**

2.1.1     PIC agrees to pay to the Transferor the Settlement Amount on the Transfer Date to the following bank account:

Beneficiary name:       The Mauritius Commercial Bank Ltd
Account Number with Correspondent Bank: 10932733
Swift Code of Beneficiary: MCBLMUMU
Address of Beneficiary:     9-15, Sir William Newton Street, Port Louis, Mauritius
Correspondent Bank:    Citibank New York
Swift Code of Correspondent Bank : CITIUS33
Reference :     ERIN-PIC

2.1.2     Payments under this Deed shall be made in the currency in which the amount is denominated for value on the due date at such times and in such funds as are customary at the time for settlement of transactions in that currency.

2.2     **Completion**

Subject to compliance with all of the other conditions set out in this Deed, completion of the Novation shall take effect on the Transfer Date subject to:

2.2.1     receipt by the Transferor of the Settlement Amount on or prior to that date;

2.2.2     receipt of evidence, satisfactory to MCB, of sufficient corporate authorisations for PIC to sign this Deed and the Transfer Certificate;

2.2.3     receipt of a South African law legal opinion, in form and substance satisfactory to MCB, in relation to the capacity and due authorisation of PIC to execute this Deed and the Transfer Certificate (and all related ancillary documents or notices) and to enter into the transactions contemplated by such documentation;

2.2.4     receipt of evidence of the South African Reserve Bank's acknowledgment of receipt of PIC's exchange control notification in form and substance satisfactory to MCB; and

2.2.5     execution by MCB, in its capacity as Agent of the Transfer Certificate in accordance with clause 29.5.1 and clause 29.5.2 of the Facility Agreement.

2.3     **No right to repurchase or reacquire**

MCB shall have no obligation (at any time) to enter into any arrangements to repurchase or reacquire all or any part of the Commitment.

2.4     **No obligation to reimburse or indemnify**

MCB shall have no obligation to reimburse or indemnify PIC for any cost, loss or liability incurred by PIC (or any person to whom it assigns or transfers any of its rights or obligations):

2.4.1    pursuant to or in connection with this Deed; or

2.4.2    as a result of any failure by any Obligor to perform any of its obligations under the Finance Documents.

3.    **Representations and Warranties**

3.1    **Mutual representations and warranties**

Each Party represents and warrants to the other Party on the date of this Deed that:

3.1.1    it is duly incorporated and validly existing under the laws of its jurisdiction of incorporation;

3.1.2    it has the power to enter into and perform and has taken all necessary action to authorise the entry into and performance of this Deed and the transactions contemplated by this Deed;

3.1.3    this Deed constitutes its legally binding, valid and enforceable obligation;

3.1.4    all authorisations required by it in connection with the entry into, performance, validity and enforceability, and the transactions contemplated by, this Deed have been obtained or effected (as appropriate) and are in full force and effect; and

3.1.5    no person acting pursuant to the instructions of one Party is entitled to any broker's fee or other commission in connection with this Deed for which the other Party may be responsible.

3.2    **Transferor's representations and warranties**

Subject to the disclosures set out in Clause 3.5 (*Disclosure*), the Transferor represents and warrants to PIC on the date of the Transfer Certificate and the Transfer Date that:

3.2.1    the Transferor is, and has been since its creation, the sole legal and beneficial owner of, and has good title to, the Transferred Rights and the Transferred Obligations free from any Security or subordination agreement or arrangement (other than any Security or subordination agreement or arrangement created under the Credit Documentation or related to the Credit Documentation including, for the avoidance of doubt, the Override Deed and any shared Security related thereto), any purchase or option agreement or any agreement to create or effect any of the above;

3.2.2    the Transferor conveys the Transferred Rights with full title guarantee;

3.2.3    the Transferor has not made any prior sale, transfer or sub-participation of its interest in the Transferred Rights or Transferred Obligations which is subsisting;

3.2.4    so far as it is aware, no action has been taken by the Lenders party to the Facility Agreement to accelerate or take enforcement action under clause 28.25 (*Acceleration*) of the Facility Agreement other than the Transferor demanding a payment under the SBSA Guarantee by delivering a complying demand in accordance with the terms of the SBSA Guarantee on 30 April 2018 (the **"Complying Demand"**);

3.2.5    other than the Credit Documentation (including the Override Deed), there are no other documents to which the Transferor is a party which would materially and adversely affect the Transferred Rights or the Transferred Obligations; and

3.2.6    the Transferor has not set off any amounts against the Transferred Rights; no rights of set off of, or against, the Transferor exist which will permit any set off of, or against, the Transferor or counterclaim against the Transferred Rights.

3.3    **PIC's representations and warranties**

PIC represents and warrants to the Transferor on the Transfer Date that on the Transfer Date PIC is an institution eligible to be a transferee of the Transferred Rights and the Transferred Obligations in accordance with any restrictions on assignment in the Credit Documentation.

3.4    **Times when representations are made**

All express representations made by the Parties pursuant to this Deed on any date are made by reference to the facts and circumstances then existing on that date.

3.5    **Disclosure**

3.5.1    The Transferor has received notice from Zenith Bank Plc of its attempt to terminate the Override Deed and the Transferor has contested the attempted termination by Zenith Bank Plc.

3.5.2    We refer to the Chapter 11 bankruptcy proceedings which were initiated in the United States Bankruptcy Courts for the Southern District of Texas, Houston Division, on behalf of Erin Energy Corporation and several of its subsidiaries, including Erin Petroleum Nigeria Limited (the **"Erin Debtors"**), with MCB listed as a creditor.  We further note that various motions were lodged on behalf of the Erin Debtors, the most relevant of which is a motion in relation to the USD10,000,000 cash on deposit with MCB which is currently required to be maintained in a Debt Service Reserve Account in accordance with the terms of the Facility Agreement (the **"DSRA Motion"**).  Pursuant to the DSRA Motion, the Erin Debtors are seeking authority to use the cash on deposit in the Debt Service Reserve Account as working capital in the operation of its business for the purposes specified in the budget annexed to the DSRA Motion and the Erin Debtors have asked the court for an order directing that these funds be released by MCB.

4.    **Undertakings by PIC**

4.1    PIC hereby undertakes that neither it nor any of its Affiliates shall (and PIC undertakes to ensure that any person to whom it assigns or transfers any of its rights or obligations will not) take any actions or proceedings against any Relevant Person in respect of any claim it has or might have (whether known or unknown) against any Relevant Person for any cost, loss or liability incurred by PIC, any of its Affiliates or any person to whom it assigns or transfers any of its rights or obligations in connection with, whether directly or indirectly, the Finance Documents.

4.2    PIC hereby undertakes that neither it nor any Affiliate shall (and PIC undertakes to ensure that any person to whom it assigns or transfers any of its rights or obligations will not) direct or in any way assist any Obligor with any claim it might have (whether known or unknown) against any Relevant Person in relation to the Finance Documents.

4.3    Any risk which PIC is exposed to in respect of any moratorium, rescheduling, refinancing, suspension of payments or similar arrangement or circumstances affecting the Transferred Rights and the Transferred Obligations shall be entirely for the account of, and the responsibility of, PIC.

4.4    PIC shall indemnify, and hold MCB harmless against any cost, loss or liability (excluding loss of profits or special, punitive, indirect or consequential losses, damages or liabilities) incurred by any Relevant Person (otherwise than by reason of that Relevant Person's gross negligence or wilful misconduct) arising out of any act or omission of PIC or any

Obligor, whether arising before or after the date of this Deed:

4.4.1    pursuant to or in connection with this Deed;

4.4.2    under or in connection with MCB's obligations and the Transferred Obligations which are novated to PIC under the Transfer Certificate; or

4.4.3    in respect of any proceedings involving MCB (including any proceedings to which PIC is or may become a party) in relation to allegations that MCB conspired with PIC in order to withhold funding under the Facility Agreement or any alleged delay in funding under the Facility Agreement in relation to the invoice approval process.

4.5    PIC hereby irrevocably undertakes:

4.5.1    to take on the role of Issuing Bank on the Transfer Date;

4.5.2    to accede to the Override Deed as Creditor (as defined therein) on the Transfer Date by signing an accession deed in accordance with the form attached in Schedule 2 (*Form of Accession Deed*) hereto;

4.5.3    that it will appoint (and PIC undertakes to ensure that any person to whom it assigns or transfers any of its rights or obligations will appoint) within 30 days of MCB in its capacity as Agent and Security Agent notifying PIC and the Company of its resignation as Agent and Security Agent in the accordance with the form of resignation letters attached in Schedules 3 (*Resignation Notice of the Agent*) and 4 (*Resignation Notice of the Security Agent*) hereto, PIC or any of its Affiliates or any third party in accordance with the terms of the Facility Agreement, as the successor Agent and successor Security Agent (for the avoidance of doubt this appointment shall take effect at the expiry of the 30 day period) by signing the form of appointment letter attached in Schedule 5 (*Agent Appointment*) and Schedule 6 (*Security Agent Appointment*) of hereto; and

4.5.4    should it (or any person to whom it assigns or transfers any of its rights or obligations) fail to appoint PIC or any of its Affiliates or any third party in accordance with the terms of the Facility Agreement as successor Agent and successor Security Agent pursuant to Clause 4.5.3 above, it shall bear all costs and expenses incurred by MCB, in its capacity as Agent and Security Agent, linked directly or indirectly to the appointment of a successor Agent and successor Security Agent, including any reasonably incurred legal costs and any cost, loss or liability (excluding loss of profits or special, punitive, indirect or consequential losses, damages or liabilities) suffered by MCB as a result of any breach of undertaking under Clause 4.5.3 above.

5.    **MCB undertakings**

5.1    MCB undertakes that subject to Clause 2.2 (*Completion*):

5.1.1    on the date of this Deed, it shall request that Standard Bank of South Africa Limited postpone making the payment demanded pursuant to the Complying Demand until 15:00 South Africa time on Thursday 10 May 2018 according to terms to be agreed with Standard Bank of South Africa Limited (the **"Postponement Date"**);

5.1.2    notwithstanding Clause 5.1.1, following completion in accordance with Clause 2.2 (*Completion*) it shall withdraw its Complying Demand on the Transfer Date; **provided that** the Transfer Date occurs prior to the Postponement Date; and

5.1.3    from the Transfer Date, it shall transfer its rights as beneficiary under the SBSA Guarantee to PIC subject to: (i) PIC procuring the consent of Standard Bank of South Africa Limited in accordance with the terms of the SBSA Guarantee; and (ii) the Parties entering into any required documentation to effect such transfer.

**6.    No transfer fee**

MCB in its capacity as Agent agrees that no transfer fee shall be payable by PIC pursuant to clause 29.3 (*Assignment or transfer fee*) of the Facility Agreement.

**7.    Recoveries by Transferor**

If any amount to which PIC is entitled pursuant to the Novation of the Transferred Rights under this Deed is received or recovered by the Transferor, the Transferor shall forthwith pay that amount to PIC for same day value to such bank account as PIC may specify and, pending such payment, the Transferor shall hold that amount on trust for PIC.

**8.    Expenses**

PIC must pay the amount of all costs and expenses incurred by it in connection with the preparation, negotiation and entry into of this Deed.

**9.    Counterparts**

This Deed may be executed in any number of counterparts and this has the same effect as if the signatures on the counterparts were on a single copy of this Deed.

**10.    Changes to the Parties**

Neither Party may assign, transfer, encumber or dispose of any of its rights and/or obligations under this Deed without the prior consent of the other Party.

**11.    Remedies and waivers**

No failure to exercise, nor any delay in exercising, on the part of any Party, any right or remedy under this Deed shall operate as a waiver of any such right or remedy or constitute an election to affirm this Deed. No election to affirm this Deed on the part of any Party shall be effective unless it is in writing. No single or partial exercise of any right or remedy shall prevent any further or other exercise or the exercise of any other right or remedy. The rights and remedies provided in this Deed are cumulative and not exclusive of any rights or remedies provided by law.

**12.    Severability**

If any provision or provisions of this Deed (or any document referred to herein) is or at any time becomes illegal, invalid or unenforceable in any respect, the legality, validity and enforceability of the remaining provisions of this Deed (or such document) shall not in any way be affected or impaired.

**13.    Notice**

**13.1    Giving of notices**

Any communications in connection with this Deed must be given in writing and, unless otherwise stated, may be made given in person, by post, telex, fax, by e-mail or other electronic communication.

**13.2    Addresses for notices**

13.2.1    The contact details of each Party for all communications in connection with this Deed are:

(A)    in relation to the MCB:

4th Floor, MCB Centre
9-15, Sir William Newton Street

Port Louis
Mauritius Attention:

| | |
|---|---|
| Attention: | Zaahir Sulliman, Guillaume Leenhardt and Youri Harel |
| Fax: | +230 208 7976 |
| Email: | guillaume.leenhardt@mcb.mu; zaahir.sulliman@mcb.mu; and youri.harel@mcb.mu |

(B)    in relation to PIC:

2nd Floor, Menlyn Maine Central Square
Cnr. Aramist Avenue & Corobay Avenue
Waterkloof Glen
Extension 2
0181
South Africa

| | |
|---|---|
| Attention: | Dr Daniel Matjila, Chief Executive Officer and Mr Fidelis Madavo, Executive Head Listed Investments |
| Fax: | +27 12 346 3276 |
| Email: | Daniel.Matjila@pic.co.za; and Fidelis.Madavo@pic.co.za |

13.2.2    Either Party may change its contact details by giving not less than five Business Days' notice to the other Party.

13.2.3    Where a Party nominates a particular department or officer to receive a communication, a communication will not be effective if it fails to specify that department or officer.

## 14.    Governing law and jurisdiction

14.1    This Deed and any non-contractual obligations arising out of or in connection with it are governed by English law and any dispute or claim in respect of the same shall be within the exclusive jurisdiction of the courts of England.

14.2    Without prejudice to any other mode of service allowed under any relevant law:

14.2.1    PIC irrevocably appoints Law Debenture Corporate Service Limited of 5th Floor 100 Wood Street London EC2V 7EX as its agent for service of process in relation to any proceedings before the English courts in connection with this Deed and the Transfer Certificate and any documents related to this Deed and the Transfer Certificate; and

14.2.2    MCB irrevocably appoints Law Debenture Corporate Service Limited of 5th Floor 100 Wood Street London EC2V 7EX as its agent for service of process in relation to any proceedings before the English courts in connection with this Deed and the Transfer Certificate and any documents related to this Deed and the Transfer Certificate,

and, in each case, PIC and MCB agree that failure by its appointed agent for service of process to notify it of the process will not invalidate the proceedings concerned.

This Deed has been entered into on the date stated at the beginning of this Deed.

**IN WITNESS** whereof this Deed has been executed and delivered as a deed on the date first above written.

## SCHEDULE 1

## FORM OF TRANSFER CERTIFICATE

## TRANSFER CERTIFICATE

To:     The Mauritius Commercial Bank Limited as Agent

The Mauritius Commercial Bank Limited as Security Agent

From:   The Mauritius Commercial Bank Limited as Lender and Issuing Bank (the **"Existing Lender"**) and Public Investment Corporation SOC Ltd (the **"New Lender"**)


Dated: _____ May 2018

**ERIN Petroleum Nigeria Limited – USD100,000,000 Pre-Export Finance Facility Agreement dated 6 February 2017 (the "Facility Agreement")**

1.      We refer to the Facility Agreement. This agreement (the "**Agreement**") shall take effect as a Transfer Certificate for the purpose of the Facility Agreement. Terms defined in the Facility Agreement have the same meaning in this Agreement unless given a different meaning in this Agreement.

2.      We refer to Clause 29.5 (*Procedure for transfer*) of the Facility Agreement:

2.1     The Existing Lender and the New Lender agree to the Existing Lender transferring to the New Lender by novation and in accordance with Clause 29.5 (*Procedure for transfer*) all of the Existing Lender's rights and obligations (subject to the terms of this Agreement) under the Facility Agreement and the other Finance Documents which relate to that portion of the Existing Lender's Commitment and participations in Utilisations under the Facility Agreement as specified in the Schedule.

2.2     The proposed Transfer Date is 9 May 2018.

2.3     The Facility Office and address, fax number and attention details for notices to the New Lender for the purposes of Clause 38.2 (*Addresses*) are set out in the Schedule.

3.      The New Lender expressly acknowledges the limitations on the Existing Lender's obligations set out in Clause 29.4.3 (*Limitation of responsibility of Existing Lenders*).

4.      The New Lender confirms that it is not a Non-Acceptable L/C Lender.

5.      This Agreement may be executed in any number of counterparts and this has the same effect as if the signatures on the counterparts were on a single copy of this Agreement.

6.      If any provision or provisions of the Agreement (or any document referred to herein) is or at any time becomes illegal, invalid or unenforceable in any respect, the legality, validity and enforceability of the remaining provisions of this Agreement (or such document) shall not in any way be affected or impaired.

7.      This Agreement and any non-contractual obligations arising out of or in connection with it are governed by English law and any dispute or claim in respect of the same shall be within the exclusive jurisdiction of the courts of England.

8.      This Agreement has been entered into on the date stated at the beginning of this Agreement.

**Note:   The execution of this Transfer Certificate may not transfer a proportionate share of the Existing Lender's interest in the Transaction Security in all jurisdictions.  It is the responsibility of the New Lender to ascertain whether any other documents or other formalities are required to perfect a transfer of such a share in the Existing Lender's Transaction Security in any jurisdiction and, if so, to arrange for execution of those documents and completion of those formalities.**

## THE SCHEDULE

### Commitment/rights and obligations to be transferred

| Lender | Commitments transferred (USD) | Commitments received (USD) | Outstanding principal transferred (USD) | Outstanding principal received (USD) | Outstanding Interest transferred (USD) | Outstanding Interest received (USD) | Outstanding Default Interest transferred (USD) | Outstanding Default Interest received (USD) | Outstanding fees, costs and expenses (including legal fees) transferred (USD) | Outstanding fees, costs and expenses (including legal fees) received (USD) | Account Details | Notice Details |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Public Investment Corporation SOC Ltd** | | 100,000,000 | 65,595,344.82 | | 1,777,706.30 | | 859,896.21 | | 369,326.04 | | **Payments to:** Government Employees Pension Fund<br><br>**Name of Bank:** Standard Bank of S.A. Ltd<br><br>**Account Name:** GEPF –EQUITIES<br><br>**Account Number:** 011245131<br><br>**Type of Account:** Business current account<br><br>**Account held at:** Arcadia<br><br>**Swift Code:** SBZA ZA JJ<br><br>**Branch Code:** 010845<br><br>**Registration number:** 2005/009094/30 | **Facility Office:** Public Investment Corporation SOC Ltd<br><br>**Notice details:** 2nd Floor, Menlyn Maine Central Square Cnr. Aramist Avenue & Corobay Avenue Waterkloof Glen Extension 2 0181<br><br>**Email:** Daniel.Matjila@pic.co.za; and Fidelis.Madavo@pic.co.za<br><br>**Fax:** +27 12 346 3276<br><br>**Attention:** Dr Daniel Matjila, Chief Executive Officer and Mr Fidelis Madavo, Executive Head Listed Investments |
| **The Mauritius Commercial Bank Limited** | 100,000,000 | | | 65,595,344.82 | | 1,777,706.30 | | 859,896.21 | | 369,326.04 | **Beneficiary name:** The Mauritius Commercial Bank Ltd<br><br>**Account Number with Correspondent Bank:** 10932733<br><br>**Swift Code of Beneficiary:** MCBLMUMU<br><br>**Address of Beneficiary:** 9-15, Sir William Newton Street, Port Louis, Mauritius<br><br>**Correspondent Bank:** | **Facility Office:** The Mauritius Commercial Bank Limited<br><br>**Notice details:** 4th Floor, MCB Centre 9-15, Sir William Newton Street Port Louis Mauritius<br><br>**Fax number:** +230 208 7976<br><br>**Email:** |

| | | | | | | | | | | Citibank New York | guillaume.leenhardt@mcb.mu; zaahir.sulliman@mcb.mu; and youri.harel@mcb.mu |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | **Swift Code of Correspondent Bank :** CITIUS33 **Reference :** ERIN-PIC | **Attention**: Zaahir Sulliman, Guillaume Leenhardt and Youri Harel |

**All of the Existing Lender's interest in the Transaction Security in all jurisdictions. It is the responsibility of the New Lender to ascertain whether any other documents or other formalities are required to perfect a transfer of such a share in the Existing Lender's Transaction Security in any jurisdiction and, if so, to arrange for execution of those documents and completion of those formalities.**

This Agreement is accepted as a Transfer Certificate for the purposes of the Facility Agreement by the Agent and, subject to the relevant funds (the "**Transfer Amount**") being credited to the Agent's Account, the Transfer Date is confirmed as 9 May 2018.

Signature of this Agreement by the Agent constitutes confirmation by the Agent of receipt of notice of the transfer referred to in this Agreement, which notice the Agent receives on behalf of each Finance Party..

EXECUTION COPY

**Existing Lender**                                    **New Lender**

**The Mauritius Commercial Bank Limited**        **Public Investment Corporation SOC Ltd**

By:                                                    By:

This Agreement is accepted as a Transfer Certificate for the purposes of the Facility Agreement by the Agent and the Transfer Date is confirmed as 9 May 2018.

**Agent**

**The Mauritius Commercial Bank Limited**

By:

**Security Agent**

**The Mauritius Commercial Bank Limited**

By:

**SCHEDULE 2**

**FORM OF ACCESSION DEED**

To:   The Mauritius Commercial Bank Limited as the Second Creditor (the **"Existing Second Creditor"**)

The Mauritius Commercial Bank Limited as the PXF Facility Agent

Zenith Bank PLC as Zenith Bank

From:   Public Investment Corporation SOC Ltd (acting in its capacity as agent and authorised representative of its client, the Government Employees Pension Fund)

Date:   9 May 2018

**ERIN Petroleum Nigeria Limited – Override Deed**
**dated 7 February 2017 (the "Override Deed")**

1.      We refer to the Override Deed.  This deed (the **"Deed"**) shall take effect as an Accession Deed for purposes of the Override Deed.  Terms defined in the Override Deed have the same meaning in this Deed unless given a different meaning in this Deed.

2.      We, Public Investment Corporation SOC Ltd (acting in its capacity as agent and authorised representative of its client, the Government Employees Pension Fund) of Menlyn Maine Central Square Corner Aramist Avenue & Corobay Avenue Waterkloof Glen Extension 2. Pretoria, South Africa, agree to be a Second Creditor under the Override Deed and to be bound by the terms of the Override Deed as a Creditor (the **"New Second Creditor"**) and agree to take on the role of PXF Facility Agent upon the effective resignation of The Mauritius Commercial Bank Limited in connection with a resignation letter dated 9 May 2018.

3.      The New Second Creditor hereby undertakes that they shall not take any actions or proceedings against the Existing Second Creditor, the PXF Facility Agent, the PXF Security Agent or any Affiliate, officer, employee or agent of the Existing Second Creditor, the PXF Facility Agent or the PXF Security Agent (each a **"Relevant Person"**) in respect of any claim it might have against a Relevant Person for any cost, loss or liability incurred by the New Second Creditor in connection with, whether directly or indirectly, the Override Deed that relate or partly relate to events occurring before or after the date of this Deed.

4.      Our contact details and facility office are as follows:

**Public Investment Corporation SOC Ltd**

2nd Floor, Menlyn Maine Central Square
Cnr. Aramist Avenue & Corobay Avenue
Waterkloof Glen
Extension 2
0181
Pretoria, South Africa

Email:        Daniel.Matjila@pic.co.za and Fidelis.Madavo@pic.co.za

Fax:          +27 12 346 3276

Attention:   Dr Daniel Matjila, Chief Executive Officer and Mr Fidelis Madavo, Executive Head Listed Investments

5.    This Deed is intended to be executed as a deed.

6.    This Deed and any non-contractual obligations arising out of or in connection with it are governed by English law.

| | |
|---|---|
| **EXECUTED** as a **DEED** | ) |
| by **PUBLIC INVESTMENT** | ) |
| **CORPORATION SOC LTD** | ) |
| acting by | ) |
| and | ) |
| acting under the authority of | ) |
| that company in the presence of: | ) |

Witness's Signature:    _____

Name:    _____

Address:    _____

EXECUTION COPY

**SCHEDULE 3**

**RESIGNATION NOTICE OF THE AGENT**

To:     Public Investment Corporation SOC Ltd (acting in its capacity as agent and authorised representative of its client, the Government Employees Pension Fund) (the "**Lender**")

Erin Petroleum Nigeria Limited (the "**Company**")

From:   The Mauritius Commercial Bank Limited (the **"Retiring Agent")**

Dated:  9 May 2018

**ERIN Petroleum Nigeria Limited – USD 100,000,000 Pre-Export Finance Facility Agreement dated 6 February 2017 (the "Facility Agreement"**)

1.      We refer to the Facility Agreement. Terms defined in the Facility Agreement have the same meaning in this notice unless given a different meaning in this notice.

2.      This is a notice pursuant to Clause 32.12 (*Resignation of Agent*) of the Facility Agreement.

3.      Pursuant to Clause 32.12.2 of the Facility Agreement, the Mauritius Commercial Bank Limited hereby gives 30 days' notice to the Lender and the Company informing them that it will be resigning as Agent.

The Retiring Agent
**The Mauritius Commercial Bank Limited**

By:………………..

Address:        4th Floor, MCB Centre
                9-15, Sir William Newton Street
                Port Louis
                Mauritius

Fax:            +230 208 7976

Attention:

EXECUTION COPY

## SCHEDULE 4

### RESIGNATION NOTICE OF THE SECURITY AGENT

To:     Public Investment Corporation SOC Ltd (acting in its capacity as agent and authorised representative of its client, the Government Employees Pension Fund) (the "**Lender**")

Erin Petroleum Nigeria Limited (the "**Company**")

From:   The Mauritius Commercial Bank Limited (the "**Retiring Security Agent")**

Dated:  9 May 2018

**ERIN Petroleum Nigeria Limited – USD 100,000,000 Pre-Export Finance Facility Agreement dated 6 February 2017 (the "Facility Agreement"**)

1.      We refer to the Facility Agreement. Terms defined in the Facility Agreement have the same meaning in this notice unless given a different meaning in this notice.

2.      This is a notice pursuant to Clause 33.14 (*Resignation of Security Agent*) of the Facility Agreement.

3.      Pursuant to Clause 33.14.2 of the Facility Agreement, the Mauritius Commercial Bank Limited hereby gives 30 days' notice to the Lender and the Company informing them that it will be resigning as Security Agent.


The Retiring Security Agent
**The Mauritius Commercial Bank Limited**



By:………………..

Address:        4th Floor, MCB Centre
                9-15, Sir William Newton Street
                Port Louis
                Mauritius

Fax:            +230 208 7976

Attention:

EXECUTION COPY

**SCHEDULE 5**

**AGENT APPOINTMENT**

**Part A – AGENT APPOINTMENT NOTICE**

To:     Erin Petroleum Nigeria Limited (the "**Company**")

        The Mauritius Commercial Bank Limited (the "**Retiring Agent**")

Cc:    Public Investment Corporation SOC Ltd as the Successor Agent (as defined below)

From:  Public Investment Corporation SOC Ltd (acting in its capacity as agent and authorised representative of its client, the Government Employees Pension Fund) (the "**Majority Lender**")

Dated: [*insert date*]

**ERIN Petroleum Nigeria Limited – USD 100,000,000 Pre-Export Finance Facility Agreement dated 6 February 2017 (the "Facility Agreement")**

1.     We refer to the Facility Agreement and the resignation notice from the Retiring Agent dated 9 May 2018 (the **"Agent Resignation Notice"**). Terms defined in the Facility Agreement have the same meaning in this letter unless given a different meaning in this letter.

2.     Pursuant to Clause 32.12.2 of the Facility Agreement and following receipt of the Agent Resignation Notice, we, in our capacity as the Majority Lender, and after consultation with the Company, hereby notify you that Public Investment Corporation SOC Ltd has been appointed as the successor Agent (the **"Successor Agent"**) to replace the Retiring Agent pursuant to the terms of the attached accession deed (the **"Agent Accession Deed"**).

3.     In accordance with the Agent Accession Deed and the terms and conditions of the Facility Agreement, the appointment of the Successor Agent shall take effect at the expiry of the 30 days' notice given by the Retiring Agent to the Company and Public Investment Corporation SOC Ltd in its capacity as Lender as set out in the Agent Resignation Notice.

4.     For the avoidance of doubt, the Retiring Agent shall retain the benefit of any indemnity pursuant to Clause 18.3 (*Indemnity to the Agent*) following the appointment of the Successor Agent.

The Majority Lender
**Public Investment Corporation SOC Ltd**

By:…………………………..

Address:     2nd Floor, Menlyn Maine Central Square

             Cnr. Aramist Avenue & Corobay Avenue
             Waterkloof Glen
             Extension 2
             0181
             Pretoria, South Africa

Email:       Daniel.Matjila@pic.co.za and Fidelis.Madavo@pic.co.za

Fax:         +27 12 346 3276

Attention:   Dr Daniel Matjila, Chief Executive Officer and Mr Fidelis Madavo, Executive Head Listed Investments

EXECUTION COPY

## Part B – AGENT ACCESSION DEED

To:     Erin Petroleum Nigeria Limited (the "**Company**")

       The Mauritius Commercial Bank Limited (the "**Retiring Agent**")

       Public Investment Corporation SOC Ltd (acting in its capacity as agent and authorised representative of its client, the Government Employees Pension Fund) as Lender (the "**Majority Lender**")

From:   Public Investment Corporation SOC Ltd as the Successor Agent (as defined below)

Date:   [*insert date*]

### ERIN Petroleum Nigeria Limited – USD 100,000,000 Pre-Export Finance Facility Agreement dated 6 February 2017 (the "Facility Agreement")

1.      We refer to the Facility Agreement. Terms defined in the Facility Agreement have the same meaning in this accession deed (the **"Deed"**) unless given a different meaning in this Deed.

2.      We, Public Investment Corporation SOC Ltd of 2nd Floor, Menlyn Maine Central Square, Corner Aramist Avenue & Corobay Avenue, Waterkloof Glen Extension 2, 0181, Pretoria, South Africa, agree to our appointment as successor Agent under the Facility Agreement and the other Finance Documents and agree to be bound by the terms of the Facility Agreement and the other Finance Documents as Agent (the **"Successor Agent"**) effective as of [*insert date*], being 30 days' from the date of the resignation notice served by the Retiring Agent to the Company and the Majority Lender.

3.      As Successor Agent we hereby undertake that we shall not take any actions or proceedings against the Retiring Agent or any Affiliate, officer, employee or agent of the Retiring Agent (each a "**Relevant Person**") in respect of any claim we might have against a Relevant Person for any cost, loss or liability incurred by us as Successor Agent in connection with, whether directly or indirectly, the Facility Agreement or the other Finance Documents that relate or partly relate to events occurring before or after the date of this Deed.

4.      Our contact details and facility office are as follows:

**Public Investment Corporation SOC Ltd**

       Address:      2nd Floor, Menlyn Maine Central Square
                         Cnr. Aramist Avenue & Corobay Avenue
                         Waterkloof Glen
                         Extension 2
                         0181
                         Pretoria, South Africa

       Email:         Daniel.Matjila@pic.co.za and Fidelis.Madavo@pic.co.za

       Fax:            +27 12 346 3276

       Attention:   Dr Daniel Matjila, Chief Executive Officer and Mr Fidelis Madavo, Executive Head Listed Investments

5.      This Deed is intended to be executed as a deed.

6.      This Deed and any non-contractual obligations arising out of or in connection with it are governed by English law.

| | |
|---|---|
| **EXECUTED** as a **DEED** | ) |
| by **PUBLIC INVESTMENT** | ) |
| **CORPORATION SOC LTD** | ) |
| acting by | ) |
| and | ) |
| acting under the authority of | ) |
| that company in the presence of: | ) |

Witness's Signature:    _____

Name:    _____

Address:    _____

EXECUTION COPY

## SCHEDULE 6

## SECURITY AGENT APPOINTMENT

## Part A – SECURITY AGENT APPOINTMENT NOTICE

To:     Erin Petroleum Nigeria Limited (the "**Company**")

        The Mauritius Commercial Bank Limited (the "**Retiring Security Agent**")

Cc:     Public Investment Corporation SOC Ltd as the Successor Security Agent (as defined below)

From:   Public Investment Corporation SOC Ltd (acting in its capacity as agent and authorised representative of its client, the Government Employees Pension Fund) (the "**Majority Lender**")

Dated:  [*insert date*]

**ERIN Petroleum Nigeria Limited – USD 100,000,000 Pre-Export Finance Facility Agreement dated 6 February 2017 (the "Facility Agreement"**)

1.   We refer to the Facility Agreement and the resignation notice from the Retiring Agent dated 9 May 2018 (the "**Security Agent Resignation Notice**"). Terms defined in the Facility Agreement have the same meaning in this letter unless given a different meaning in this letter.

2.   Pursuant to Clause 33.14.2 of the Facility Agreement and following receipt of the Security Agent Resignation Notice, we, in our capacity as the Majority Lender, and after consultation with the Company, hereby notify you that Public Investment Corporation SOC Ltd has been appointed as the successor Security Agent (the "**Successor Security Agent**") to replace the Retiring Security Agent pursuant to the terms of the attached accession deed (the "**Security Agent Accession Deed**").

3.   In accordance with the Security Agent Accession Deed and the terms and conditions of the Facility Agreement, the appointment of the Successor Security Agent shall take effect at the expiry of the 30 days' notice given by the Retiring Agent to the Company and Public Investment Corporation SOC Ltd in its capacity as Lender as set out in the Security Agent Resignation Notice.

4.   For the avoidance of doubt, the Retiring Security Agent shall retain the benefit of any indemnity pursuant to Clause 18.4 (*Indemnity to the Security Agent*) following the appointment of the Successor Security Agent.

The Majority Lender
**Public Investment Corporation SOC Ltd (acting in its capacity as agent and authorised representative of its client, the Government Employees Pension Fund)**

By:…………………………..

Address:    2nd Floor, Menlyn Maine Central Square
            Cnr. Aramist Avenue & Corobay Avenue
            Waterkloof Glen,
            Extension 2, 0181,
            Pretoria, South Africa

Email:      Daniel.Matjila@pic.co.za and Fidelis.Madavo@pic.co.za

Fax:        +27 12 346 3276

Attention:  Dr Daniel Matjila, Chief Executive Officer and Mr Fidelis Madavo, Executive Head Listed Investments

## Part B – SECURITY AGENT ACCESSION DEED

To:     Erin Petroleum Nigeria Limited (the "**Company**")

         The Mauritius Commercial Bank Limited (the "**Retiring Agent**")

         Public Investment Corporation SOC Ltd (acting in its capacity as agent and authorised representative of its client, the Government Employees Pension Fund) as Lender (the "**Majority Lender**")

From:   Public Investment Corporation SOC Ltd as the Successor Agent (as defined below)

Date:   [*insert date*]

### ERIN Petroleum Nigeria Limited – USD 100,000,000 Pre-Export Finance Facility Agreement dated 6 February 2017 (the "Facility Agreement")

1.    We refer to the Facility Agreement. Terms defined in the Facility Agreement have the same meaning in this accession deed (the "**Deed**") unless given a different meaning in this Deed.

2.    We, Public Investment Corporation SOC Ltd of 2nd Floor, Menlyn Maine Central Square, Corner Aramist Avenue & Corobay Avenue, Waterkloof Glen Extension 2, 0181, Pretoria, South Africa, agree to our appointment as successor Security Agent under the Facility Agreement and the other Finance Documents and agree to be bound by the terms of the Facility Agreement and the other Finance Documents as Security Agent (the "**Successor Agent**") effective as of [*insert date*], being 30 days' from the date of the resignation notice served by the Retiring Security Agent to the Company and the Majority Lender.

3.    As Successor Security Agent we hereby undertake that we shall not take any actions or proceedings against the Retiring Security Agent or any Affiliate, officer, employee or agent of the Retiring Security Agent (each a "**Relevant Person**") in respect of any claim we might have against a Relevant Person for any cost, loss or liability incurred by us as Successor Security Agent in connection with, whether directly or indirectly, the Facility Agreement or the other Finance Documents that relate or partly relate to events occurring before or after the date of this Deed.

4.    Our contact details and facility office are as follows:

      **Public Investment Corporation SOC Ltd**

      Address:    2nd Floor, Menlyn Maine Central Square
                  Cnr. Aramist Avenue & Corobay Avenue
                  Waterkloof Glen
                  Extension 2
                  0181
                  Pretoria, South Africa

      Email:      Daniel.Matjila@pic.co.za and Fidelis.Madavo@pic.co.za

      Fax:        +27 12 346 3276

      Attention:  Dr Daniel Matjila, Chief Executive Officer and Mr Fidelis Madavo, Executive Head Listed Investments

5.    This Deed is intended to be executed as a deed.

6.    This Deed and any non-contractual obligations arising out of or in connection with it are governed by English law.

EXECUTION COPY

| | |
|---|---|
| **EXECUTED** as a **DEED** | ) |
| by **PUBLIC INVESTMENT** | ) |
| **CORPORATION SOC LTD** | ) |
| acting by | ) |
| and | ) |
| acting under the authority of | ) |
| that company in the presence of: | ) |

Witness's Signature: _____

Name: _____

Address: _____

EXECUTION COPY

**SIGNATURES**

Executed as a Deed by

**PUBLIC INVESTMENT CORPORATION SOC
LTD (ACTING IN ITS CAPACITY AS AGENT AND
AUTHORISED REPRESENTATIVE OF ITS
CLIENT, THE GOVERNMENT EMPLOYEES
PENSION FUND)**,

a company incorporated in South Africa,

acting by _____,

who, in accordance with the laws of that

territory, is acting under the authority of the
company

…………………………………

**(Signature of authorised person)**

…………………………………

**(Signature of authorised person)**

**Lender**

Executed as a Deed by

**THE MAURITIUS COMMERCIAL BANK LIMITED**,

a company incorporated in Mauritius,

acting by _____,

who, in accordance with the laws of that

territory, is acting under the authority of the
company

…………………………………

**(Signature of authorised person)**

…………………………………

**(Signature of authorised person)**

**Agent**

Executed as a Deed by

**THE MAURITIUS COMMERCIAL BANK LIMITED**,

a company incorporated in Mauritius,

acting by _____,

who, in accordance with the laws of that

territory, is acting under the authority of the
company

…………………………………

**(Signature of authorised person)**

…………………………………

**(Signature of authorised person)**

EXECUTION COPY

## SIGNATURES

Executed as a Deed by

**PUBLIC INVESTMENT CORPORATION SOC LTD (ACTING IN ITS CAPACITY AS AGENT AND AUTHORISED REPRESENTATIVE OF ITS CLIENT, THE GOVERNMENT EMPLOYEES PENSION FUND),**

a company incorporated in South Africa,

acting by _____,

who, in accordance with the laws of that territory, is acting under the authority of the company

………………………………

**(Signature of authorised person)**

………………………………

**(Signature of authorised person)**

**Lender**

Executed as a Deed by

**THE MAURITIUS COMMERCIAL BANK LIMITED,**

a company incorporated in Mauritius,

acting by _____,

who, in accordance with the laws of that territory, is acting under the authority of the company

zaahir SULLIMAN

**(Signature of authorised person)**

Rajeshwar PERTAB
Senior Credit Manager Corporate
The Mauritius Commercial Bank Ltd.
Head Office, Port Louis

**(Signature of authorised person)**

**Agent**

Executed as a Deed by

**THE MAURITIUS COMMERCIAL BANK LIMITED,**

a company incorporated in Mauritius,

acting by _____,

who, in accordance with the laws of that territory, is acting under the authority of the company

pfr Lindley PERRINE

**(Signature of authorised person)**

Rajeshwar PERTAB
Senior Credit Manager Corporate
The Mauritius Commercial Bank Ltd.
Head Office, Port Louis

**(Signature of authorised person)**

EXECUTION COPY

**Security Agent**

Executed as a Deed by

**THE MAURITIUS COMMERCIAL BANK LIMITED**,

a company incorporated in Mauritius,

acting by _____,

who, in accordance with the laws of that

territory, is acting under the authority of the

company

pp. *Lindley* PERRINE
....................................................
**(Signature of authorised person)**

Rajeshwar PERTAB
Senior Credit Manager Corporate
The Mauritius Commercial Bank Ltd.
Head Office, Port Louis

....................................................
**(Signature of authorised person)**

**Issuing Bank**

Executed as a Deed by

**THE MAURITIUS COMMERCIAL BANK LIMITED**,

a company incorporated in Mauritius,

acting by _____,

who, in accordance with the laws of that

territory, is acting under the authority of the

company

*Zaahir* SULLIMAN
....................................................
**(Signature of authorised person)**

Rajeshwar PERTAB
Senior Credit Manager Corporate
The Mauritius Commercial Bank Ltd.
Head Office, Port Louis

....................................................
**(Signature of authorised person)**

**Second Creditor**

Executed as a Deed by

**THE MAURITIUS COMMERCIAL BANK LIMITED**,

a company incorporated in Mauritius,

acting by _____,

who, in accordance with the laws of that

territory, is acting under the authority of the

company

pp. *Lindley* PERRINE
....................................................
**(Signature of authorised person)**

Rajeshwar PERTAB
Senior Credit Manager Corporate
The Mauritius Commercial Bank Ltd.
Head Office, Port Louis

....................................................
**(Signature of authorised person)**