**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **ERIN ENERGY CORPORATION,** *et al.,*[1] | § | **Case No. 18-32106** |
| | § | |
| **Debtors.** | § | **Chapter 11** |
| | § | |
| | § | **(Jointly Administered)** |

**BRIEF IN SUPPORT OF DEBTOR'S EMERGENCY MOTION FOR INTERIM
AND FINAL ORDERS (I) AUTHORIZING USE OF CASH COLLATERAL
PURSUANT TO SECTION 363(C) OF THE BANKRUPTCY CODE;
(II) GRANTING ADEQUATE PROTECTION FOR THE USE THEREOF;
AND (III) SCHEDULING A FINAL HEARING PURSUANT TO
BANKRUPTCY RULE 4001 AS TO USE OF CASH COLLATERAL**
[Relates to ECF # 28]

TO THE HONORABLE MARVIN ISGUR, U.S. BANKRUPTCY JUDGE:

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), by

and through their undersigned proposed attorneys, hereby file this brief ("Brief") in support of

Debtors' Emergency Motion for Interim and Final Orders (i) Authorizing Use of Cash Collateral

Pursuant to Section 363(c) of the Bankruptcy Code, (ii) Granting Adequate Protection for the

Use Thereof, and (iii) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001 as to Use of

Cash Collateral [ECF # 28] (the "Motion")[2] and in support hereof, respectfully states as follows:

---

[1] The last four digits of Erin Energy Corporation's ("ERN") federal tax identification number are 9798. The other Debtors in these cases are: Erin Energy Limited ("EEL"); Erin Energy Kenya Limited ("EEKL"); and Erin Petroleum Nigeria Limited ("EPNL"). The Debtors' service address is: 1330 Post Oak Blvd., Suite 2250, Houston, TX 77056.

[2] Unless indicated otherwise, capitalized terms herein shall have the meanings set forth in the Motion.

# I.
## Preliminary Statement

MCB currently holds approximately $10 million[3] of the Debtors' cash in a restricted account.  Although the use of such funds by the Debtors is restricted, the funds are counted in the Debtors' outstanding balance under the MCB Facility and the Debtors are paying interest on these funds.  Through the Motion, the Debtors seek an order requiring MCB to turnover the cash held in the Debt Service Reserve Account and permit the Debtors to use MCB's Cash Collateral on an emergency basis.  The Debtors contend, and the record reflects, that MCB will not be harmed by the use of Cash Collateral because MCB is significantly oversecured.

PIC, who is an equity interest holder of ERN and purportedly holds (at best) a contingent unsecured claim against ERN and EPNL, argues that if it purchases the MCB Facility it should be entitled to a greater package of rights as adequate protection than would be owed viewing the claims individually.  PIC is incorrect.

# II.
## Factual Background

In or around February 2016, ERN determined a need for debt financing to carry out drilling and related activities.[4]  To aid ERN's efforts to raise debt financing, PIC (who at the time held approximately 30% of ERN's outstanding interests) agreed to obtain and pledge bank issued "payment guarantee" (e.g. a letter of credit).[5]  As such, ERN and PIC entered into that Financing Support Agreement[6], executed by PIC on December 12, 2016, whereby PIC agreed to obtain, for

---

[3] As evidenced by Debtors' Exhibit 20, the Debt Service Reserve Account held $10,024,825.66 as of April 30, 2018.
[4] *See* Debtors' Exhibit 18, p. 1.
[5] *Id.*
[6] Debtors' Exhibit 18.

ERN's benefit, a US$100,000,000.00 payment guaranty from Standard Bank of South Africa Ltd ("SBSA") substantially similar in form to that attached to the Financing Support Agreement.

With PIC's support, on or about February 6, 2017, ERN and EPNL, as borrowers, and MCB, as lender, entered into the MCB Facility.[7]   As provided under the Financing Support Agreement, the MCB Facility is secured by a US$100,000,000.00 Payment Guarantee (the "Payment Guarantee") issued by SBSA.[8]   The MCB Facility is also secured by a subordinated lien in certain of the Debtors' Nigerian assets, including accounts with Zenith, (the "Second Liens") and by the cash held in the Debt Service Reserve Account (the "MCB Cash Collateral").

As of the Petition Date, the outstanding balance on the MCB Facility was $66,736,452.05.

## III.
## ARGUMENT

### MCB is Adequately Protected

On the Petition Date, MCB held a secured claim of approximately US$66,736,452.05 (the "MCB Claim").  The MCB Claim was secured by the Payment Guarantee, the Second Liens, and the MCB Cash Collateral.  Excluding the Second Liens, as of the Petition Date, MCB held collateral valued at more than US$110,000,000.00 –$43 million more than the MCB Claim.  Thus, even if the Debtors' were permitted to use all of the Cash Collateral, MCB's total collateral package would significantly exceed the amount of the MCB Claim.  The remaining $30 plus million equity cushion more than adequately protects MCB in this case.  *See, e.g., In re DBI Hous., Inc.*, 2013 Bankr. LEXIS 2146, *10 (Bankr. C.D. Cal. May 22, 2013) (equity cushion

---

[7] Debtors' Exhibit 14.
[8] Debtors' Exhibit 19.

3

of 16% is sufficient); *see also In re Kost*, 102 B.R. 829, 832 (D. Wyo. 1989) ("Case law is divided on whether a cushion of 12% to 20% constitutes adequate protection.") (gathering cases and citing *In re Schaller*, 27 B.R. 959 (W.D. Wisc. 1983) (17% to 18% is insufficient); *In re Hawaiian Pacific Industries*, 17 B.R. 670 (Bankr. D. Ha. 1982) (15% is adequate); *In re Rogers Development Corp.*, 2 B.R. 679 (Bankr. E.D. Va. 1980) (17% is adequate); *In re Pitts*, 2 B.R. 476 (Bankr. C.D. Ca. 1979) (15% is adequate).

Further, because the collateral backing MCB's loan is in the form of an irrevocable letter of credit and cash, there is virtually no collection or valuation risk for MCB.  Indeed, the independence principle – applicable to letters of credit – preserves the allocation of risk to the issuing bank by requiring the issuing bank to honor a draw request notwithstanding a dispute between the customer and the beneficiary as to an alleged breach of the underlying contract. *In re Originala Petroleum Corp.*, 39 B.R. 1003, 1008 (Bankr. N.D. Tex. 1984) ("The key to the uniqueness of a letter of credit and to its commercial vitality is that the promise by the issuer is independent of any underlying contracts.") (quoting *Pringle-Associated Mortgage Corp. v. Southern National Bank*, supra at 874 (5th Cir.1978)).  Thus, applying the independence principle to the question at bar, the risk of which PIC now complains (i.e. that the Debtors will not be able to satisfy its indemnity obligations under the Financing Support Agreement) is irrelevant in determining MCB's rights vis-à-vis the Debtor or the SBSA Payment Guarantee.

**PIC's pre-petition interests are not entitled to adequate protection for the Debtors' use of the MCB Cash Collateral.**

As of the Petition Date, PIC holds a significant equity interest in the Debtors and, *potentially*, a contingent unsecured claim arising from the Financing Support Agreement. Obviously, as an equity interest holder PIC is not entitled to adequate protection for the use of

Cash Collateral.  Neither is PIC entitled to adequate protection on account of its contingent unsecured claim.

**PIC's purchase of the MCB Claim does not entitle PIC to additional adequate protection.**

As an assignee of the MCB Claim, PIC has the same rights as the original holder, MCB, no more and no less.  *See, e.g., U.S. v. Cherry St. Partners, L.P. (In re Alliance Health of Forth Worth, Inc.)*, 240 B.R. 699, 704 (N.D. Tex. 1999) ("'Since when does an assignee of a claim wind up with more than the assignor would be entitled to had he not assigned the claim? […] And, the answer is, of course, that a valid and unqualified assignment operates to transfer to the assignee no greater right or interest than was possessed by the assignor.'") (quoting *Defense Servs., Inc. v. United States (In re Defense Servs., Inc.)*, 104 B.R. 481, 484 (Bankr. S.D. Fla. 1989)).  Thus, the fact that PIC may[9] have purchased the MCB Claim should have no impact upon the matter before the Court.  If MCB would have been adequately protected by its remaining equity cushion (vis-à-vis) the Payment Guarantee, then so too is PIC as an assignee.

WHEREFORE, the Debtor requests that this Court enter an order, in substantially the form filed herewith, granting the relief requested in this Motion, and such other and further relief as may be just and proper under the circumstances.

---

[9] 11 U.S.C. §363(p) places the burden upon PIC to prove that it holds an interest in the Cash Collateral.  So far, PIC has provided no such evidence and, therefore, is not entitled to object to the Debtors' use thereof.

Respectfully submitted this 9th day of May, 2018.

**OKIN ADAMS LLP**

By:     /s/ *David L. Curry, Jr.*
      Matthew S. Okin
      Texas Bar No. 00784695
      mokin@okinadams.com
      David L. Curry, Jr.
      Texas Bar No. 24065107
      dcurry@okinadams.com
      John Thomas Oldham
      Texas Bar No. 24075429
      joldham@okinadams.com
      Ryan A. O'Connor
      Texas Bar No. 24098190
      roconnor@okinadams.com
      1113 Vine St., Suite 201
      Houston, Texas 77002
      Tel: 713.228.4100
      Fax: 888.865.2118

**PROPOSED ATTORNEYS FOR THE DEBTORS**