IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | Case No. 18-32106 |
| Erin Energy Corporation, *et al.,*[1] | Chapter 11 |
| Debtors. | (Jointly Administered) |

**EMERGENCY MOTION OF NIGERIAN AGIP EXPLORATION LIMITED PURSUANT TO SECTION 105(A) OF THE BANKRUPTCY CODE SEEKING THE ENTRY OF AN ORDER (I) DETERMINING THAT THE AUTOMATIC STAY DOES NOT APPLY TO AN ACTION COMMENCED BY THE DEBTORS OR (II) GRANTING ALTERNATE RELIEF**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**

---

[1] The last four digits of Erin Energy Corporation's federal tax identification number are 9798. The other Debtors in these cases are: Erin Energy Limited; Erin Energy Kenya Limited; and Erin Petroleum Nigeria Limited. The Debtors' service address is: 1330 Post Oak Blvd., Suite 2250, Houston, TX 77056.

3038159_1

**THE MOVANT REQUESTS CONSIDERATION OF THE MOTION AS SOON AS THE COURT'S CALENDAR WILL ALLOW AND IN ANY EVENT NO LATER THAN MAY 23, 2018.**

TO THE HONORABLE MARVIN ISGUR, U.S. BANKRUPTCY JUDGE:

Nigerian Agip Exploration Limited (**"NAE"**) hereby moves this Court (the "**Motion**") for the entry of an order substantially in the form attached hereto as Exhibit A (the "**Proposed Order**") pursuant to section 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**") determining that the automatic stay does not apply to prohibit NAE from responding to, and otherwise participating in proceedings relating to, the Vacatur Motion (defined below) brought prepetition by Debtor Erin Petroleum Nigeria Limited ("**EPNL**"); or, in the alternative, should the Court find that emergency relief is not justified under the circumstances, (ii) ordering that EPNL shall adjourn its Vacatur Motion until the Court may determine this Motion on regular notice; and (iii) granting such other and further relief as the Court deems just and proper. In support of this Motion, NAE respectfully represents as follows:

## PRELIMINARY STATEMENT

1.      Well prior to the Debtors' (defined below) bankruptcy cases, NAE received Arbitration Awards (defined below) against three non-debtor entities, Allied Energy Plc ("**Allied**"), CAMAC International Limited ("**CIL**") and CAMAC International (Nigeria) Limited ("**CINL**"), who the Debtors assert are not currently affiliates of the Debtors. The Arbitration Awards, which exceed $200 million, were awarded as a result of Allied failing to meet certain monetary obligations (and CIL's guarantee thereof) relating to its purchase from NAE of interests in oil mining leases including the Oyo field in offshore Nigeria.  In 2017, NAE obtained an order from the Federal High Court, Holden at Lagos Nigeria recognizing and enforcing the final Arbitration Award, and thereafter, on January 23, 2018, a Writ of Attachment against assets of Allied and CINL (the "**Writ**"). Pursuant to the Writ, on January

31, 2018, the sheriff of the Nigerian Federal High Court attached the crude oil produced from the OMLs (defined below) owned by Allied and CINL and stored at the FPSO Armada Perdana (the "**FPSO**").

2.     On March 2, 2018, EPNL filed a Motion on Notice with the Nigerian Federal High Court seeking an order to set aside and vacate the Writ against the assets of Allied and CINL and the execution carried out by the sheriff (the "**Vacatur Motion**"), alleging, that it owned the crude oil attached and the economic interest and participating interest in the oil mining leases.  A hearing on the Vacatur Motion is scheduled to occur on May 21, 2018, but NAE believes that it is likely that the hearing will be adjourned by the Nigerian Federal High Court because, inter alia, the pleadings are not fully ripe.[2]

3.     NAE requests emergency consideration of this Motion. Immediate relief is necessary, as more fully described below, to permit NAE to protect its rights under existing Nigerian orders recognizing and enforcing its Arbitration Awards and the attachment of assets of non-debtors Allied and CINL. If NAE is not permitted to respond to, and otherwise participate in proceedings relating to, the Vacatur Motion, NAE's rights may be impermissibly prejudiced and its Writ may be vacated.

4.     By this Motion, NAE seeks a determination that filing a response to, and otherwise participating in proceedings relating to, the Vacatur Motion does not violate the automatic stay because the Vacatur Motion was commenced by, and not against, the Debtor EPNL, and the stay is therefore inapplicable.  The Debtors have stated that they will not assert a stay violation against NAE for responding to the Vacatur Motion. However, in an abundance of caution, NAE seeks an order from the Court that such a response filed by NAE, and

---

[2] For example, upon information and belief, EPNL just today served additional pleadings on NAE in the Vacatur Motion action.

participation in proceedings relating to the Vacatur Motion, will not be in violation of the automatic stay in order to protect NAE from potential attack by other parties in interest.  In the alternative, should the Court find that emergency relief is not justified under the circumstances, NAE further requests that the Court enter an order requiring EPNL to adjourn the hearing on its Vacatur Motion so that this Court may determine this Motion on regular notice.

**JURISDICTION AND VENUE**

5.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(G).

6.      The statutory basis for the relief requested in this Motion is section 105(a) of the Bankruptcy Code.

**BACKGROUND**

7.      Upon information and belief, in 2002, the Federal Republic of Nigeria granted Allied certain Oil Mining Leases 120 and 121 (together, the "**OMLs**") located in deep offshore Nigeria. Allied assigned 2.5% of its interest in the OMLs to CINL in 2002.  Pursuant to a Deed of Assignment dated July 22, 2005, Allied assigned to NAE a forty-percent (40%) participating interest in the OMLs, with sixty-percent (60%) of the participating interest being retained by Allied and CINL.

8.      Upon information and belief, in April 2010, Pacific Asia Petroleum, Inc. ("**PAP**"), purported to acquire, through its subsidiary, partial interests in a Production Sharing Contract with respect to an oilfield asset known as the Oyo Field located in Oil Mining Lease 120 deep offshore Nigeria.  Through a series of name changes completed by 2015, PAP is now Erin Energy Corporation ("**ERN**"), one of the Debtors in the above-styled and jointly

4

administered bankruptcy cases (the "**Bankruptcy Case**") and the parent company of the affiliated Debtors, including EPNL.

9.      By a certain Sale and Purchase Agreement dated December 29, 2011 (the "**SPA**"), Allied purchased NAE's forty-percent (40%) participating interest in the OMLs, and all of NAE's rights under the Nigeria PSC for $250 million in cash (including in deferred installments) subject to certain adjustments.  The SPA transaction closed on June 30, 2012, and Allied became the operator of the OMLs and the holder of the interest of all of NAE's rights in the Nigeria PSC. On June 28, 2012, CIL executed dedicated primary guarantees in favor of NAE (the "**CIL Guarantee**") to secure Allied's payments under the SPA.

10.      Soon after the SPA went into effect, Allied failed to pay any of the total adjustments and certain other liabilities arising under the SPA, as well as deferred payment installments. As a result, on September 18, 2013, NAE commenced an arbitration proceeding in the London Court of International Arbitration ("**LCIA**") against Allied and CIL due to Allied's failure to meet its monetary obligations under the SPA and CIL's obligations under the CIL Guarantee. The case was LCIA Arbitration No. 132498 (the "**Arbitration**"). On March 13, 2014, Allied and CIL applied to the arbitral tribunal to join CINL as a party to the Arbitration, and by the First Partial Award dated October 21, 2014, the arbitral tribunal granted Allied and CIL's application by joining CINL as a party to the Arbitration.

11.      Upon information and belief, on February 6, 2014, the Federal High Court, Holden at Warri Nigeria, in suit number FHC/WR/CS/18/2014, issued interim injunctive relief which restrained Allied and others from selling, transferring, assigning, alienating or moving outside of Nigeria its rights and assets arising out of, pertaining to and relating to the OMLs including the Oyo oil field off the Nigerian coast, and/or any other assets within the

5

jurisdiction of the Nigerian Court of Law or removing or disposing of the said assets whatsoever emanating from, arising from or pertaining to the OMLs and the Production Sharing Contract (the "**Nigeria PSC**") related thereto (the "**Nigerian Injunction**"). Notice of the Nigerian Injunction was served on Allied, CIL and persons and entities associated with Allied and CIL, including Kase Lawal, Kamoru Lawal, and ERN, among others, on February 10, 2014, and the Nigerian Injunction was also published in the Vanguard Newspaper on February 12, 2014.  After the Nigerian Injunction was granted on February 6, 2014, and served on Allied and others, Allied filed an application dated February 13, 2014 seeking to set aside/discharge the Nigerian Injunction.  Allied's application has not been granted.

12.     Upon information and belief, after the Nigerian Injunction was issued, Allied purported to transfer to EPNL 40% of the interests in the Nigeria PSC, but Allied expressly retained rights, interests and title in the OMLs.

13.     The LCIA issued two substantive awards in favor of NAE. The first award was entered on September 23, 2015 and required CIL to pay NAE nearly $152 million in respect of NAE's claims under certain adjustments and the first two deferred payments under the CIL Guarantee (the "**2015 Arbitration Award**"). The second substantive award was entered on February 14, 2017 against Allied and CIL (the "**2017 Arbitration Award**", and together with the 2015 Arbitration Award, the "**Arbitration Awards**"), which required (i) Allied to pay approximately $205 million, plus interest, and an additional amount for reimbursement of NAE's legal fees, expenses and other costs and (ii) CIL to pay an additional $50 million, plus interest, in respect to NAE's claims on deferred payments under the CIL Guarantee for the third deferred payment. As of March 29, 2018, the total amount payable to NAE, including interest, exceeds $275 million.

6

14.     In April 20, 2017, NAE sought enforcement of the Arbitration Awards against Allied and CINL pursuant to the Nigerian Arbitration and Conciliation Act by filing an Ex-Parte Originating Summons in the Nigerian Federal High Court.  *See Declaration of Sakiru Adefemi (Femi) Ayoade in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "**Ayoade Declaration**") ¶ 40.

15.     On May 11, 2017, the Nigerian Federal High Court issued an order granting NAE recognition and enforcement of the Arbitration Awards (the "**Nigerian Enforcement Order**"). On May 30, 2017, the Deputy Chief Registrar of the Nigerian Federal High Court issued a Certificate of Judgment with respect to the Arbitration Awards. *See Ayoade Declaration* ¶ 41.

16.     Upon information and belief, on June 23, 2017, Allied and CINL filed a Motion on Notice with the Nigerian Federal High Court seeking, among other things, an order vacating the Nigerian Enforcement Order, vacating and setting aside the Certificate of Judgment, and staying the execution and enforcement of proceedings pursuant to the Nigerian Enforcement Order.  Allied and CINL's motion was struck out by the Nigerian Federal High Court on January 16, 2018, and the application did not succeed.

17.     On January 23, 2018, the Nigerian Federal High Court issued a Writ of Attachment and Sale of Goods against Allied and CINL.  *Ayoade Declaration* ¶ 42.

18.     Pursuant to the Writ, on January 31, 2018, the sheriff of the Nigerian Federal High Court boarded the FPSO and attached crude oil stored therein which was owned by Allied and CINL and produced from the OMLs.

19.     Upon information and belief, on February 12, 2018, Allied and CINL filed an Application for Mandatory Injunction (the "**Injunction Application**") with the High Court of

Lagos State, in the Lagos Judicial Division (the "**Lagos Court**") to vacate the Writ.  On February 20, 2018, NAE filed a Preliminary Objection seeking an order to strike the Injunction Application. On March 8, 2018, the Lagos Court refused Allied and CINL's Application for Mandatory Injunction.

20.     On March 2, 2018, Debtor EPNL filed a Motion on Notice in the Nigerian Federal High Court seeking an order to set aside or vacate the Writ and the execution carried out by the sheriff of the Nigerian Federal High Court on January 31, 2018, alleging ownership of the attached crude oil in the FPSO and the economic and participating interest in the OMLs. EPNL also claimed that (i) the Writ did not authorize NAE to attach EPNL's crude oil and that (ii) attachment of EPNL's crude oil interfered with its constitutionally protected rights. On March 13, 2018, NAE filed preliminary pleadings in opposition to EPNL's Vacatur Motion.  The Vacatur Motion presently is set for hearing on May 21, 2018.

21.     On April 25, 2018 (the "**Petition Date**"), ERN and EPNL, and their affiliated debtors (collectively, the "**Debtors**") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in this Court.  The Debtors' cases have been consolidated for procedural purposes only.

22.     In order to protect its rights, NAE needs to respond to, and participate in proceedings relating to, the Vacatur Motion.  Because the Vacatur Motion was a proceeding instituted by the Debtor, Bankruptcy Code section 362(a) does not prohibit NAE from responding to, and otherwise participating in proceedings relating to, the Vacatur Motion. However, out of an abundance of caution and transparency, NAE seeks emergency relief for a determination from this Court that the automatic stay does not apply to its response to, or participation in proceedings relating to, the Vacatur Motion or, in the alternative, should the

Court find that emergency relief is not justified under the circumstances, NAE further requests that the Court enter an order requiring EPNL to adjourn the hearing on its Vacatur Motion until after such time as this Court may determine this Motion on regular notice.

## BASIS FOR RELIEF

23.     Section 362(a) of the Bankruptcy Code provides in relevant part that "the commencement or continuation . . . of a judicial, administrative or other action or proceeding *against the debtor* that was or could have been commenced before the commencement of the case under this title" is automatically stayed by the filing of a bankruptcy petition.  Bankruptcy Code § 362(a) (emphasis added).   By contrast, actions taken in response to proceedings prosecuted by debtors do not implicate the automatic stay.  *See In re U.S. Abatement Corp.,* 39 F.3d 563, 568 (5th Cir.1994) (citations omitted) (stating that "counterclaims asserted by a debtor are not actions 'against the debtor' which are subject to the automatic stay; … if a debtor's offensive claims are not subject to the automatic stay, *a fortiori* a creditor's … [response to] such non-stayed claims is not subject to the automatic stay"); *Hayes v. Bank of Am.*, No. CIV.A. H-12-377, 2013 WL 5352704, at *3 (S.D. Tex. Sept. 23, 2013) (citing *In re Versoy,* 306 F. App'x 65, 68–69 (5th Cir.2009) (unpublished) (stating that section 362 has no effect on litigation initially brought by the debtor)).

24.     This Court may act pursuant to section 105(a) to the extent necessary to fashion appropriate relief in these circumstances.  As the Supreme Court has held, section 105(a) grants bankruptcy judges "broad authority . . . to take any action that is necessary or appropriate 'to prevent an abuse of process.'" *Marrama v. Citizens Bank of Mass.,* 549 U.S. 365, 375 (quoting section 105(a)).   The Fifth Circuit has also held that section 105(a) is to be "interpret[ed] liberally," so long as any action taken pursuant to section 105(a) is "consistent with the rest of the Bankruptcy Code." *Feld v. Zale Corp. (In re Zale Corp.),* 62 F.3d 746, 760 (5th Cir. 1995).

9

Section 105(a) thus permits bankruptcy courts to "fashion such orders as are necessary to further the substantive provisions of the Bankruptcy Code." *Perkins Coie v. Sadkin (In re Sadkin),* 36 F.3d 473, 478 (5th Cir. 1994) (quoting *Chiasson v. Bingler (In re Oxford Management Inc.),* 4 F.3d 1329, 1333 (5th Cir. 1993)).

## ARGUMENT

### A.  The Automatic Stay Does Not Apply to Claims Initiated by Debtors.

25.     The United States Court of Appeals for the Fifth Circuit has interpreted the language "against the debtor" in Bankruptcy Code section 362(a) to mean that, while actions *against* the debtor are stayed, actions brought *by* the debtor are not, and may proceed.  *See In re U.S. Abatement Corp.,* 39 F.3d 563, 568 (5th Cir.1994) (citations omitted) (stating that "counterclaims asserted by a debtor are not actions 'against the debtor' which are subject to the automatic stay; … if a debtor's offensive claims are not subject to the automatic stay, *a fortiori* a creditor's … [response to] such non-stayed claims is not subject to the automatic stay"); *In re Versoy,* 306 F. App'x 65, 68–69 (5th Cir.2009) (unpublished)  (stating that section 362 has no effect on litigation initially brought by the debtor); *Riley v. Wells Fargo Bank, N.A.*, No. CIV.A. H-13-0608, 2014 WL 129397, at *1 (S.D. Tex. Jan. 8, 2014) (stating that the automatic stay only stays proceedings brought "against the debtor"); *Hayes*, 2013 WL 5352704, at *3 (S.D. Tex. Sept. 23, 2013) (stating that the automatic stay does not apply to lawsuits initiated by the debtor); *see e.g.*, *Carley Capital Grp. v. Firemen's Fund Ins. Co.,* 889 F.2d 1126, 1127 (D.C.Cir.1989).

26.     Here, the Debtor EPNL brought the action with its Vacatur Motion against NAE in the Nigerian Federal High Court seeking to vacate the Writ validly issued against two non-debtor entities that are not affiliates of the Debtors.  The Court should determine that the automatic stay does not apply to proceedings brought by EPNL and therefore does not prohibit

NAE from responding to the Vacatur Motion.  The automatic stay cannot be used offensively by debtors to bring affirmative claims against parties and then prevent them from responding.  *See e.g.*, *In re U.S. Abatement Corp.,* 39 F.3d at 568; *In re Versoy,* 306 F. App'x at 68–69; *Carley Capital Grp.*, 889 F.2d at 1127.  Further, prohibiting NAE from responding to, and otherwise participating in proceedings relating to, a claim brought by EPNL would cause extreme and impermissible prejudice to the interests of NAE.  As a matter of fundamental fairness, NAE should be permitted to respond to, and otherwise participate in proceedings relating to, the Vacatur Motion without violating the automatic stay.  Although counsel to the Debtors stated that the Debtors will not assert a stay violation against NAE for responding to the Vacatur Motion, NAE is seeking, in an abundance of caution, an order of the Court to protect NAE from potential attacks by other parties in interest.  Accordingly, the relief requested in the Motion should be granted.

**B.  In the Alternative, Should the Court find that Emergency Relief is Not Appropriate, the Court Should Order the Debtor to Adjourn its Vacatur Motion Until Such Time as this Court May Determine this Motion on Regular Notice.**

27.     NAE requests emergency consideration of this Motion.  As described herein, immediate relief is necessary to prevent harm to NAE.  If, however, the Court determines that the Motion should not be determined on an emergency basis, NAE requests that the Court order the Debtors to adjourn the hearing on the Vacatur Motion so that this Court can fully address NAE's Motion on regular notice.  If NAE is not permitted to respond or the hearing is not adjourned, its rights may be impermissibly prejudiced and its Writ may be vacated without NAE having the opportunity to be heard.  Accordingly, principles of equity and fundamental fairness would require that the Debtor adjourn the hearing on its Vacatur Motion.

3038159_1

**EMERGENCY RELIEF REQUESTED**

28.      By this Motion, NAE seeks entry of the Proposed Order on an emergency basis: (i) determining that the automatic stay does not apply to NAE's response to, or participation in proceedings relating to, the Debtor EPNL's Vacatur Motion; or, in the alternative, should the Court find that emergency relief is not justified under the circumstances, (ii) ordering that EPNL shall adjourn its Vacatur Motion until the Court may determine this Motion on regular notice; and (iii) granting such other and further relief as the Court deems just and proper.

29.      As explained in the Motion, NAE is at risk of the Nigerian Federal High Court granting the Vacatur Motion and vacating the Writ, which was properly obtained, if NAE's requested relief is not granted.  Such a result would cause the rights of NAE to be impermissibly prejudiced.

30.      A hearing on other matters is currently scheduled in the Bankruptcy Case for the morning of May 23, 2018.  Accordingly, NAE requests emergency consideration of the Motion as soon as the Court's calendar will allow or alternatively at the hearing scheduled on May 23, 2018.

**CONCLUSION**

31.      For the reasons set forth above**,** NAE respectfully requests the entry of an order, substantially in the form of the Proposed Order, on an emergency basis: (i) determining that the automatic stay does not apply to NAE's response to, or otherwise participation in proceedings relating to, the Debtor EPNL's Vacatur Motion; or, in the alternative, should the Court find that emergency relief is not justified under the circumstances, (ii) ordering that EPNL shall adjourn its Vacatur Motion until the Court may determine this Motion on regular notice and (iii) granting all such other and further relief, both at law and in equity, to which NAE may justly be entitled.

3038159_1

Dated: May 18, 2018

Respectfully submitted,

**HOGAN LOVELLS US LLP**

By:  */s/ Ronald J. Silverman*

Ronald J. Silverman, Esq.
(*pro hac vice pending*)
New York Bar No. 3946944
M. Shane Johnson, Esq.
(*pro hac vice pending*)
Texas Bar No. 24083263
875 Third Avenue
New York, NY 10022
Telephone: (212) 918-3000
Facsimile: (212) 918-3100
ronald.silverman@hoganlovells.com
shane.johnson@hoganlovells.com

-and-

Randall A. Rios
State Bar No. 16935865
Timothy A. Million
State Bar No. 24051055
1201 Louisiana St., 28th Floor
Houston, TX 77002
Telephone: (713) 759-0818
Facsimile: (713) 759-6834
rrios@hwa.com
tmillion@hwa.com

**COUNSEL FOR NIGERIAN AGIP
EXPLORATION LIMITED**

## <u>CERTIFICATION FOR ACCURACY PURSUANT TO LBR 9013-1(i)</u>

  I hereby certify that the facts and assertions made in the *Emergency Motion of Nigerian Agip Exploration Limited Pursuant to Section 105(a) of the Bankruptcy Code Seeking the Entry of an Order (i) Determining that the Automatic Stay Does Not Apply to an Action Commenced by the Debtors or (ii) Granting Alternative Relief* are true and accurate to the best of my knowledge.


            */s/ Ronald J. Silverman*
            Ronald J. Silverman



## <u>CERTIFICATE OF SERVICE</u>

  I hereby certify that a true and correct copy of the *Emergency Motion of Nigerian Agip Exploration Limited Pursuant to Section 105(a) of the Bankruptcy Code Seeking the Entry of an Order (i) Determining that the Automatic Stay Does Not Apply to an Action Commenced by the Debtors or (ii) Granting Alternative Relief* was served to all parties listed as receiving electronic notice *via* the courts' ECF noticing system on May 18, 2018.

            */s/ Randall A. Rios*
            Randall A. Rios

3038159_1

**<u>EXHIBIT A</u>**

**Proposed Order**

3038159_1

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | Case No. 18-32106 |
| Erin Energy Corporation, *et al.*,[1] | (Chapter 11) |
| Debtors. | (Jointly Administered) |

**ORDER GRANTING EMERGENCY MOTION OF NIGERIAN AGIP EXPLORATION
LIMITED PURSUANT TO SECTION 105(A) OF THE BANKRUPTCY CODE SEEKING
THE ENTRY OF AN ORDER (I) DETERMINING THAT THE AUTOMATIC
STAY DOES NOT APPLY TO AN ACTION COMMENCED BY THE
<u>DEBTORS OR (II) GRANTING ALTERNATE RELIEF</u>**

(Relates to Docket No. _____)

The Court has considered the *Emergency Motion of Nigerian Agip Exploration Limited
Pursuant to Section 105(a) of the Bankruptcy Code Seeking the Entry of an Order (i)
Determining that the Automatic Stay Does Not Apply to an Action Commenced by the Debtors or
(ii) Granting Alternative Relief* (the "**Motion**")[2]; this Court finds that: (i) it has jurisdiction over
this matter pursuant to 28 U.S.C. §§ 157 and 1334; (ii) venue in this district is proper pursuant to
28 U.S.C. §§ 1408 & 1409; (iii) the emergency relief requested in the Motion is warranted in
light of the factual circumstances of these cases and the matters described in the Motion; (iv)
NAE's notice of the Motion and opportunity for a hearing on the Motion were appropriate under
the circumstances and no other notice need be provided; and (v) having reviewed the Motion and
heard the statements concerning the relief requested therein at a hearing before this Court (the

---

[1] The last four digits of Erin Energy Corporation's federal tax identification number are 9798. The other
Debtors in these cases are: Erin Energy Kenya Limited; Erin Energy Kenya Limited; and Erin Petroleum
Nigeria Limited. The Debtors' service address is: 1330 Post Oak Blvd., Suite 2250, Houston, TX 77056.

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

16

"**Hearing**"), the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein.  Upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

It is hereby ORDERED THAT:

1.      The Motion is granted as set forth below.

2.      The automatic stay does not apply to prohibit NAE from responding to, or otherwise participating in proceedings relating to, the Vacatur Motion brought by EPNL.

3.      This Order shall be binding, regardless of the dismissal, withdrawal, consolidation, conversion or refilling of these cases.

4.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.


Dated: _____          _____
                                                              MARVIN ISGUR,
                                                              UNITED STATES BANKRUPTCY JUDGE