IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **ERIN ENERGY CORPORATION,** *et al.,*[1] | § | Case No. 18-32106 |
| | § | |
| Debtors. | § | Chapter 11 |
| | § | |
| | § | (Jointly Administered) |

### DEBTORS' OBJECTION TO EMERGENCY MOTION OF NIGERIAN AGIP EXPLORATION LIMITED PURSUANT TO SECTION 105(A) OF THE BANKRUPTCY CODE SEEKING THE ENTRY OF AN ORDER (I) DETERMINING THAT THE AUTOMATIC STAY DOES NOT APPLY TO AN ACTION COMMENCED BY THE DEBTORS OR (II) GRANTING ALTERNATE RELIEF

[Relates to ECF # 95]

TO THE HONORABLE MARVIN ISGUR, U.S. BANKRUPTCY JUDGE:

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), by and through their undersigned proposed attorneys, hereby file this objection ("Objection") to the emergency motion (the "Motion") of Nigerian Agip Exploration Limited ("NAE") seeking entry of an order (i) determining that the automatic stay does not apply to an action commenced by the Debtors or (ii) granting alternate relief, and in support hereof, respectfully states as follows:

## I.
## JURISDICTION AND VENUE

1. This Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief requested in

---

[1] The last four digits of Erin Energy Corporation's ("ERN") federal tax identification number are 9798. The other Debtors in these cases are: Erin Energy Limited ("EEL"); Erin Energy Kenya Limited ("EEKL"); and Erin Petroleum Nigeria Limited ("EPNL"). The Debtors' service address is: 1330 Post Oak Blvd., Suite 2250, Houston, TX 77056.

this Motion are Bankruptcy Code §§ 105, 361, 362, and 363 and Bankruptcy Rules 2002, 4001, and 9014.

## II.
## BACKGROUND

2. On April 25, 2018 (the "Petition Date"), the Debtors filed voluntary petitions for relief (the "Bankruptcy Cases") under chapter 11, title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Court"). The Debtors continue to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. On April 7, 2010, Pacific Asia Petroleum, Inc. ("PAP"), a Delaware corporation, consummated the acquisition of all of the interests held by CAMAC Energy Holdings Limited ("CEHL") and certain of its affiliates (collectively, "CAMAC") in a Production Sharing Contract with respect to an oilfield asset known as the Oyo Field located offshore Nigeria (the "Contract Rights"). The Oyo Field was under development through 2009, and oil production commenced in December 2009. As consideration for the Contract Rights, PAP paid CEHL $32 million in cash consideration and issued to CEHL 89,467,120 shares of PAP's Common Stock, par value $0.001, representing approximately 62.74% of the Company's issued and outstanding Common Stock at closing. In April 2010, PAP was renamed CAMAC Energy Inc. Further, in April 2015, CAMAC Energy Inc. changed its name to "Erin Energy Corporation."

4. On August 28, 2002, Allied Energy Plc ("Allied") and CAMAC International (Nigeria) Limited ("CINL"), each related parties, were granted Oil Mining Leases 120 and 121 (the "OMLs") located offshore Nigeria by the Federal Republic of Nigeria. Pursuant to a Deed of Assignment dated July 22, 2005, Allied and CINL assigned to NAE, a subsidiary of the

international oil and gas company Eni SpA, a forty-percent (40%) participating interest in the OMLs, with the remaining sixty-percent (60%) participating interest in the OMLs being retained by Allied and CINL.

5. In April 2010, ERN, through EPNL, acquired certain economic interests in the Oyo Field through the purchase of that portion of Allied's and CINL's rights in the Production Sharing Contract (the "Nigeria PSC") relating to the Oyo Field in exchange for cash and the issuance to CEHL of shares of ERN's Common Stock. In the 2010 transaction, CEHL became the majority shareholder of ERN. As part of the transaction, ERN gave CEHL registration rights with respect to these shares.

6. In February 2011, ERN acquired all of Allied's and CINL's rights in the Nigeria PSC outside the Oyo Field for cash and ERN's agreement to make additional payments, contingent upon completion of specified milestones in any future exploration and development of the OMLs outside of the Oyo Field.

7. In June 2012, Allied acquired all of NAE's participating interest in the OMLs and all of NAE's interest in the Nigeria PSC for $250.0 million in cash subject to certain adjustments (the "NAE Transaction"). As a result of this transaction, Allied became the operator of the OMLs and the holder of the interests in the Nigeria PSC apart from the interests previously acquired by ERN in 2010 and 2011.

8. In November 2013, ERN entered into a Transfer Agreement (the "Transfer Agreement") pursuant to which ERN agreed to acquire from Allied, a wholly owned subsidiary of CEHL (the 57.2% majority stockholder of ERN), all remaining economic interests in the Nigeria PSC and related assets, contracts, and rights pertaining to OMLs 120 and 121, including the currently producing Oyo Field (the "Allied Assets"). In consideration for the Allied Assets,

ERN agreed to issue 497,454,857 shares of ERN's Common Stock, deliver to Allied a $50.0 million convertible subordinated promissory note, and pay $170.0 million in cash (the "Allied Transaction").

9. Upon information and belief, on or about February 6, 2014, NAE sought and obtained from the Federal High Court, Holden at Warri Nigeria, an ex parte preliminary injunction against Allied and others (the "Nigerian Injunction"). NAE allegedly served the Nigerian Injunction on February 6, 2014. On February 13, 2014, Allied filed an application (the "Discharge Application") pursuant to Rule 11 of Order 26 of the Federal High Court (Civil Procedure) Rules 2009 (the "2009 FHC Rules") to discharge the injunction. Upon information and belief, the Discharge Application was never taken by the Federal High Court. As such, pursuant to Rule 12 of Order 26 of the 2009 FCH Rules, the Nigerian Injunction lapsed fourteen days following the filing of the Discharge Application.[2]

10. The Allied Transaction closed February 21, 2014. The transfer of the Allied Parties' contractual rights to the Nigeria PSC was accomplished by novation of all of Allied's and CINL's right, title, and interest in and to the Nigeria PSC through a novation agreement that was effective upon the closing of the Allied Transaction. Upon completion of the Allied Transaction, ERN, though EPNL, owned one hundred percent (100%) economic interest in the Nigeria PSC covering the OMLs (though Allied retained bare title to the OMLs). Subsequent to

---

[2] NAE states in its Motion that "Allied's application has not been granted" – implying that the Nigerian Injunction remains in effect. *Motion*, p. 6. While technically true that the Discharge Application has not been granted, this statement is patently misleading. Rule 12 of Order 26 of the 2009 FHC Rules provides:
  (1) No order made on motion ex parte shall last for more than fourteen days after the party or person affected by the order has applied for the order to be varied or discharged or last for another fourteen days after application to vary or discharge it has been argued.
  (2) If a motion to vary or discharge an ex parte order is not taken within fourteen days of its being filed, the ex parte order shall lapse.
Thus, the Nigerian Injunction expired by operation of law fourteen days following the filing of the Discharge Application.

4

the Allied Transaction, ERN and EPNL made substantial investments in the development of the Allied Assets.

11.     Following the closing of the Allied Transaction, ERN and EPNL have expended significant resources to develop and operate the Oyo Field.  For example, during the period from May to September 2015, the Debtors produced approximately 1.5 million barrels of crude oil.  In August 2017, EPNL commenced drilling the Oyo-9 well, and in October 2017, completed the drilling phase.  Both the engineering and manufacturing of subsea equipment have continued at the Debtors' expense to various stages of completion.

**The NAE/Allied Litigation**

12.     NAE has alleged that Allied failed to pay certain amounts owed in connection with the NAE Transaction.  As such, in or around September 2013, NAE commenced an arbitration proceeding against Allied and its affiliate CAMAC International Limited ("CIL") in the London Court of International Arbitration ("LCIA").  CINL was apparently later added as a respondent party. Following a 10 day arbitration hearing, NAE obtained an award against Allied and either CIL or CINL.[3]

13.     Notably, although NAE was fully aware of the Allied Transaction, neither ERN nor EPNL (at the time EPNL was known as CAMAC Petroleum Ltd. ("CPL")) was joined to the Arbitration.  Indeed, during the arbitration proceedings, NAE's counsel and expert witness made multiple references to Allied and CINL having transferred their rights in the Oyo field to CPL.[4] NAE contended (and the LCIA seemingly accepted) that, as a result of transactions that included

---

[3] The documents currently in Debtors' possession do not clearly indicate whether the award was against CIL or CINL.

[4] *See, e.g.,* LCIA Transcript Day 1, pp. 36-37, 44-45, 47; LCIA Transcript Day 10, p. 140.  True and correct copies of LCIA Transcript Day and LCIA Transcript Day 10 and attached hereto as Exhibits A and B.

the Allied Transaction, CPL (now EPNL) was the proper owner of certain claims purportedly being asserted by Allied and/or CINL against NAE. These contentions included, among others:

- "NAE's case is that that wording **had the effect of passing to CPL all of the claims** shown on the previous slide as having, on the respondents' case, accrued to Allied and/or CINL." LCIA Transcript Day 1, pp. 36-37 (emphasis added).

- "On 7 April 2010, **in NAE's world view**, the picture therefore changes considerably. **The only parties who could conceivably have claims under the PSC at that stage in respect of any matters occurred prior to the novation date are NAE**, but I've already said that leads to considerable doubt as to that, **and CPL, CPL having acquired all Allied and CINL's rights, including expressly all claims. Allied and CINL, you will see on the slide, have none**." LCIA Transcript Day 1, p. 37 (emphasis added).

- "The inclusion of reference to **alleged losses of CPL** in the respondents' expert evidence clearly **acknowledges the fact that CPL, rather than Allied, or CINL is the proper counter-claimant**." LCIA Transcript Day 1, pp. 44-45 (emphasis added).

- "**CPL's claim, which is valued at around 100 million currently on the respondents' best case**, subject to change, was not brought before the expiry of the applicable statutory limitations period." LCIA Transcript Day 1, p. 47 (emphasis added).

- "There are only two points, therefore, of interest or to pull out from this. Firstly, as you'll see halfway down there is a line **'CPL's loss attributed to Allied and CINL's beneficial interest'**, as I understand it, these are matters still in dispute as to whether **a loss incurred by CPL** forms part of the counterclaim. The second point to pull out is near the top under 'Allied's loss', part of the way in which this is quantified is that the NAE beneficial interest, **having been purchased by Allied in early 2012, was then sold on to CPL in February 2014**." LCIA Transcript Day 10, p. 140 (emphasis added).

14.     Following issuance of the award, NAE sought and obtained a Writ of Attachment and Sale of Goods (the "Writ") against Allied and CINL.  Pursuant to the Writ, on January 31, 2018, the Nigerian Federal High Court boarded the FPSO Perdana and attached crude oil stored therein.  In direct contravention of the positons taken by NAE during the LCIA arbitration, NAE

now seemingly argues that Allied and CINL, not the Debtors, own the crude produced from the OMLs.

15. On or about March 2, 2018, EPNL moved to set aside or vacate the Writ. EPNL has also filed a notice of claim related to the crude wrongfully seized by NAE. Unfortunately, although initially set for hearing on May 21, 2018, at NAE's request, the Federal High Court has continued the hearing on EPNL's motion to vacate until July 6, 2018.

16. On May 18, 2018, NAE submitted itself this Court's jurisdiction by filing the Motion. As is openly admitted in the Motion, NAE is aware of the Bankruptcy Cases and imposition of the automatic stay. Nevertheless, by refusing to dissolve the Writ, NAE is willfully maintaining an action against property of the Debtors' estate.

### III.
### RESPONSE

17. Given the fact that NAE sought and obtained an adjournment of the Writ, no emergency exists. However, now that NAE has submitted itself to this Court's jurisdiction, this Court should compel NAE to comply with the automatic stay and cease exerting control over or maintaining an action against the Debtors' property. NAE is fully aware that EPNL, not Allied or CINL, beneficially owns the oil produced from the OMLs and stored upon the FPSO Perdana. Indeed, NAE has previously relied upon the effectiveness of transactions such as the Allied Transaction in order to defend itself against claims brought by Allied and CINL. As such, NAE's continuation of the Writ and refusal to release the crude to the Debtors constitutes a willful violation of the automatic stay.

WHEREFORE, the Debtors request that this Court enter an order denying the relief requested in the Motion, and such other and further relief as may be just and proper under the circumstances.

Respectfully submitted this 22 day of May, 2018.

        **OKIN ADAMS LLP**

By:    /s/ *David L. Curry, Jr.*
      Matthew S. Okin
      Texas Bar No. 00784695
      mokin@okinadams.com
      David L. Curry, Jr.
      Texas Bar No. 24065107
      dcurry@okinadams.com
      John Thomas Oldham
      Texas Bar No. 24075429
      joldham@okinadams.com
      Ryan A. O'Connor
      Texas Bar No. 24098190
      roconnor@okinadams.com
      1113 Vine St., Suite 201
      Houston, Texas 77002
      Tel: 713.228.4100
      Fax: 888.865.2118

**PROPOSED ATTORNEYS FOR THE DEBTORS**

## CERTIFICATE OF SERVICE

I hereby certify that on May 22, 2018 the foregoing Objection was served upon filing via the Court's EM/ECF electronic system on all parties subscribing thereto.

      */s/ David L. Curry, Jr.*
      David L. Curry, Jr.