**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **ERIN ENERGY CORPORATION, *et al.*,**[1] | § | **Case No. 18-32106** |
| | § | |
| **Debtors.** | § | **Chapter 11** |
| | § | |
| | § | **(Jointly Administered)** |

**<u>BRIEF REGARDING APPLICATION OF FOREIGN LAW</u>**
**[Relates to ECF # 28]**

TO THE HONORABLE MARVIN ISGUR, U.S. BANKRUPTCY JUDGE:

The above-captioned debtors and debtors in possession (collectively, the "Debtors")
hereby file this Brief Regarding Application of Foreign Law ("Brief") in support of their
Emergency Motion for Interim and Final Orders (i) Authorizing Use of Cash Collateral Pursuant
to Section 363(c) of the Bankruptcy Code, (ii) Granting Adequate Protection for the Use
Thereof, and (iii) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001 as to Use of
Cash Collateral (the "Motion")[2] and in support hereof, respectfully state as follows:

**I.**
**<u>Preliminary Statement</u>**

Following an initial hearing on the Motion on May 9, 2018 (the "Interim Hearing"), the
Court correctly found that, as a result of a soon to be completed purchase of the MCB Facility,
PIC held two claims: an unsecured indemnification claim against ERN arising under the

---

[1] The last four digits of Erin Energy Corporation's ("ERN") federal tax identification number are 9798. The
other Debtors in these cases are: Erin Energy Limited ("EEL"); Erin Energy Kenya Limited ("EEKL"); and Erin
Petroleum Nigeria Limited ("EPNL").  The Debtors' service address is: 1330 Post Oak Blvd., Suite 2250, Houston,
TX 77056.

[2] Capitalized terms not defined herein shall have the meanings set forth in the Motion and/or in the Brief in
Support of Debtors' Emergency Motion for Interim and Final Orders (i) Authorizing Use of Cash Collateral
Pursuant to Section 363(c) of the Bankruptcy Code, (ii) Granting Adequate Protection for the Use Thereof, and (iii)
Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001 as to Use of Cash Collateral [ECF # 54].

Financing Support Agreement; and MCB's secured claim.  As to the unsecured indemnification claim, the Court found that PIC did not hold any interest in the MCB Cash Collateral.  As to the MCB secured claim, the Court found that, as a result of the Standard Bank of South Africa ("SBSA") Payment Guarantee, there was no credit risk to MCB/PIC, and MCB/PIC was therefore adequately protected against the Debtors' use of the MCB Cash Collateral.  The Court ordered that MCB release $620,000.00 of the Debtors' cash from the Debt Service Reserve Account and set a further hearing on cash collateral for Wednesday, May 23, 2018 (the "Second Interim Hearing").

Prior to the Second Interim Hearing, PIC, through its supplemental Objection of Public Invest Corporation Soc Ltd. To Entry of Final Order Authorizing Use of Cash Collateral Pursuant to Section 363(c) of the Bankruptcy Code [ECF #84] (the "Objection"), provided notice of its intent to rely upon English law and argued that, because it would be entitled to be subrogated to MCB's security if the Payment Guarantee were drawn by MCB, then the Payment Guarantee could not provide adequate protection now that PIC held the MCB claim.  The Debtors' response to the Objection was filed on Tuesday, May 22, 2018 [ECF # 107].

At the Second Interim Hearing the Court posed the following question:

In deciding a matter controlled by foreign law, what standard should the Court apply to determine a matter that is apparently of first impression?

The Debtors and PIC were instructed to file cross briefs addressing the Court's query.  The Court further permitted that such briefs could address whether the matter was indeed a matter of first impression.  The Debtors file this Brief to address each point in turn.

**II.**

**Argument and Authority**

The application of foreign law is governed by Rule 44.1 of the Federal Rules of Civil Procedure.  Rule 44.1 provides broad, flexible procedures for determining relevant issues of foreign law.  Applying Rule 44.1 and the foreign law materials provided by PIC in support of the Objection, this Court has sufficient information to determine that English law does not provide for the relief sought by PIC.  As such, this Court should maintain its ruling from the Initial Hearing that PIC's newly acquired secured claim is fully secured by the SBSA Payment Guarantee and that such security provides adequate protection for the Debtors' use of Cash Collateral from the Debt Service Reserve Account.

***Rule 44.1 of the Federal Rules of Civil Procedure***

Application of foreign law in these proceedings is governed by Rule 44.1 of the Federal Rules of Civil Procedure made applicable by Rule 9017 of the Federal Rules of Bankruptcy Procedure.  Rule 44.1 provides:

> A party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing. In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law.

Fed. R. Civ. P. 44.1.

Initially, the burden to establish both the applicability and the substantive content of the foreign law is borne by the party seeking to have such law applied.  *See McGee v. Arkel Int'l, LLC*, 671 F.3d 539, 546 (5th Cir. 2012) ("[P]roof of a foreign country's law is a plaintiff's burden"); *see also Mohnot v. Bhansali*, 2002 U.S. Dist. 7395, Civ. Action No. 99-2332 (E.D. La. Apr. 17, 2002) ("The plaintiffs in this case bear the burden of proof and have failed to

3

conclusively establish either the applicability or the substantive content of foreign law.").  The most common method of establishing foreign law is through the use of expert testimony accompanied by extracts from foreign legal material.  *Trans Chem. Ltd. v. China Nat'l Mach. Import & Export Corp.,* 978 F. Supp. 266, 275 (S.D. Tex. 1997) (citing *Republic of Turkey*, 146 F.R.D. at 27 (citing cases); 9 C. WRIGHT & A. MILLER, FED. PRAC. & PROC. § 2444, at p. 646.).  While expert testimony is the most common way to determine foreign law, however, it is not "'an invariable necessity in establishing foreign law, and indeed, federal judges may reject even the uncontradicted conclusions of an expert witness and reach their own decisions on the basis of independent examination of foreign legal authorities.'" *Id.* (quoting *Curtis v. Beatrice Foods Co.*, 481 F. Supp. 1275, 1285 (S.D.N.Y.), aff'd mem., 633 F.2d 203 (2d Cir. 1980) (citing Pollack, "Proof of Foreign Law," 26 Am. J. of Comparative L. 470, 474 (1978) (listing authorities)).  Rule 44.1 grants considerable discretion to the Court regarding the type and content of the material relied upon in reaching its conclusions.  The Advisory Committee Notes to Rule 44.1 state that the Rule

> provides that in determining [foreign] law the court is not limited by material presented by the parties; it may engage in its own research and consider any relevant material thus found. The court may have at its disposal better foreign law materials than counsel have presented, or may wish to reexamine and amplify material that has been presented by counsel in partisan fashion or in insufficient detail.  On the other hand, the court is free to insist on a complete presentation by counsel.

Rule 44.1, Advisory Committee Notes.  *See also* WRIGHT & MILLER, at p. 646; *Trans Chem. Ltd.,* 978 F. Supp. At 275-76 ("In making its determination of foreign law the court may rely on foreign case law decisions, treatises, and learned articles, even if they are not generally admissible under the Federal Rules of Evidence.").

4

Moreover, while the Court has broad authority to conduct its own research and determine foreign law applicable to the issues raised, Rule 44.1 imposes no duty upon this Court to do so. *Mohnot v. Bhansali*, 2002 U.S. Dist. 7395 at *10, Civ. Action No. 99-2332 (E.D. La. Apr. 17, 2002).  Where parties fail to provide sufficient evidence of foreign law, the Court is entitled to look to its own forum to fill in the gaps.  *Id.*; s*ee also Karim v. Finch Shipping Co.*, 265 F. 3d 258, 272 (5th Cir. 2001) ("When the parties have failed to conclusively establish foreign law, a court is entitled to look to its own forum's law in order to fill any gaps.") (citing *Banco de Credito Indus., S.A. v. Tesoreria Gen.*, 990 F.2d 827, 832 (5th Cir. 1993) and 9 WRIGHT & MILLER § 2447 (1995) (stating that when foreign law cannot be ascertained, the district court might reconsider its initial decision to apply foreign law and decide instead to apply domestic law (citing, *inter alia*, *Symonette Shipyards, Ltd. v. Clark*, 365 F.2d 464, 468 n.5 (5th Cir. 1966))).

In this instance, PIC, as the party seeking to have foreign law applied, has provided material in the form of the Marshall Declaration and the accompanying exhibits.  The Court, however, is not limited to this material in reaching its conclusions.  To the extent the Court determines that such material (or its own research) is insufficient or that English law does not adequately address the subject, the Court may rely upon the laws of Texas or the United States to fill in any gaps.  As the Fifth Circuit has noted, Rule 44.1 "provides flexible procedures for presenting and utilizing material on issues of foreign law by which a sound result can be achieved with fairness to the parties." *McGee*, 671 F.3d at 546 (5th Cir. 2012) (quoting Fed. R. Civ. P. 44.1 cmt.).

### *PIC's Argument Fails under existing English Law*

PIC argues that payment pursuant to the SBSA Payment Guarantee would entitle PIC to subrogation rights under English common law.  To support this argument, PIC submits the declaration of Jennifer Marshall, a Partner of PIC's counsel in this case, Allen & Overy LLP. The Debtors have not challenged PIC's assertion that English law applies.  Pursuant to Rule 44.1, this Court may rely upon Ms. Marshall's declaration, but is not required to accept issues presented in partisan fashion.  Ultimately, the Marshall Declaration and the materials attached thereto establish that, in its current state, English law does not recognize a right of subrogation as sought by PIC.

Marshall acknowledges that the qualities of a demand guarantee (i.e. that the issuer's obligations are primary and autonomous in nature) would traditionally preclude the availability of subrogation under English common law.  Marshall Declaration ¶¶ 18, 19.  Marshall, nevertheless, advocates for the recognition of subrogation rights when a party is forced to make payment pursuant to a demand guaranty, such as the Payment Guarantee.  Lacking statutory or jurisprudential support, Marshall relies heavily upon a Law Quarterly Review article published in 2000 as persuasive authority.  Marshall Declaration ¶ 19.  Notably, Marshall implicitly acknowledges that, in the near 20 years following the publication of the Ward and McCormack article, no English court of law has recognized the subrogation rights argued for therein. Marshall Declaration ¶ 18.  Ultimately, Marshall's affidavit merely highlights the inescapable conclusion that the alleged rights of subrogation asserted by PIC are not available under English law.  Marshall Declaration ¶¶ 14, 18.

*Ibrahim v Barclays Bank plc*, which is referenced in the Marshall Declaration and included in Exhibit G thereto ("Marshall Authorities")[3], succinctly explains the current status of English law on this matter.  [2012] 1 BCLC 33 (Marshall0143-0176).  In that case, Justice Vos provided the following opinion:

[137] Suffice it to say that, as the text-books and the article makes clear:

'[t]he orthodox view seems to be that, since the bankers' undertaking involves a primary obligation, subrogation, which relates to the law regarding secondary obligations, has no place.'

The article continues by saying that—

'[t]his view is justified by two assumptions: first, that the doctrine of subrogation is necessarily confined to secondary obligations, such as those of the surety; and second, that the doctrine of the autonomy of the primary obligation necessarily excludes the derivation of any rights from the underlying commercial relationships.'

The learned authors advance persuasive arguments as to why subrogation should be available, but a detailed treatment of the question must, I fear, await another case in which it is central to the necessary decision.

[138] I conclude my treatment of this issue by saying that I do not think that the *Banque Financière* case offers any authority for the proposition that subrogation can be allowed where payment is made by way of documentary credit.  Whilst the House of Lords acknowledged that equity would look to the substance rather than the form, it gave no warrant for the argument that an action for unjust enrichment would lie at the behest of a party in the position of Mr. Ibrahim at the end of a lengthy chain of obligors.  That question still remains to be argued, but on the existing law, it seems to me that Mr. Ibrahim's claim would have failed on this ground too.

*Ibrahim v Barclays Bank plc*, [2012] 1 BCLC 33 (Marshall0174-0175).

---

[3] The Marshall Authorities are attached as Exhibit A.  To aid in this Court's review of these materials, Debtors' counsel has added Bates numbering using the prefix "Marshall0000."  Additional authority relied upon by the Debtors is included as Exhibit B hereto.

Ms. Marshall acknowledges that no court has since ruled otherwise and that the state of English common law remains as described by Justice Vos.  This point is significant.  PIC is not asking this Court to opine on an issue of first impression.  Instead, PIC asks this Court to expand the right of subrogation under English law to a circumstance where English courts and commentators alike agree such is not currently available.  *Id.*  This Court should decline to do so.

### *Subrogation Would be not be Equitable Under These Facts*

Further, even were this Court to determine that the autonomous nature of the Payment Guarantee was insufficient to bar the remedy of subrogation, PIC's claim should still fail.  Under English common law, PIC as the party seeking relief bears the burden of proving that such remedy is available and appropriate.

Subrogation (in the form sought by PIC)[4] has been recognized as a remedy sounding in restitution.  The right has been described as follows:

[Subrogation] finds one of its chief uses in the situation where one person advances money on the understanding that he is to have certain security for the money he has advanced, and, for one reason or another, he does not receive the promised security. In such a case he is nevertheless to be subrogated to the rights of any other person who at the relevant time had any security over the same property and whose debts have been discharged, in whole or in part, by the money so provided by him, but of course only to the extent to which his money has, in fact, discharged their claims.

*Paul v. Speirway Ltd* [1976] ALL ER 587.  Thus, where parties have contracted to create unsecured rights, English courts will not apply subrogation to elevate said rights to that of a secured creditor.  *Id.*  ("It is always dangerous to try to lay down general principles unnecessarily, but it does seem to me to be safe to say that where on all the facts the court is satisfied that the true nature of the transaction between the payer of the money and the person at

---

[4] English courts recognize subrogation of both *in rem* and *in personam* rights.  *See e.g.*, *Boscawen and others v Bajwa and another; Abbey National plc v Boscawen and others* [1995] 4 All ER 769 (gathering authority).

whose instigation it is paid is simply the creation of an unsecured loan, this in itself will be sufficient to dispose of any question of subrogation.").

Indeed, looking to US law for further support, courts in the United States have expressed a similar view.  The Fifth Circuit has stated, "[s]ubrogation is not an absolute right which a party paying the debt of another may enforce at will."  *Compania Anonima Venezolana De Navegacion v. A.J. Perez Export Co*., 303 F.2d 692, 697 (5th Cir. 1962).  To be entitled to equitable subrogation, a party must show that there has been "unjust enrichment."  *In re Mayan Networks Corporations*, 306 B.R. 295, 309 (9th Cir. BAP 2004) ("Without unjust enrichment, subrogation is a loose remedy that can upset after the fact risk that mature commercial parties have allocated before the fact. To give parties a subrogation remedy without first finding unjust enrichment is to invest courts with the power to undo at their whim commercial relationships that private contracting parties have arranged.").  This element of unjust enrichment "renders letter of credit applicants 'poor candidates' for the remedy of equitable subrogation."  *Rogers v. CIT Grp./Equipment Fin., Inc. (In re B.C. Rogers Poultry, Inc.)*, 455 B.R. 524, 568 (Bankr. S.D. Miss. 2011).

Here, the risk allocation is clearly defined in the Financing Support Agreement[5] between the Debtors and PIC.  Pursuant to that Financing Support Agreement, ERN agreed to indemnify PIC from all losses sustained by PIC in connection with the issuance of the Payment Guarantee and that such losses shall be payable by ERN in cash or, at the option of PIC, in newly issued stock.  (Financing Support Agreement, § 3.2.2).  PIC could have, but did not, require any

---

[5] Attached hereto as Exhibit C.

collateral from ERN to secure this obligation.  This Court should not use equity to rewrite the Financing Support Agreement and give PIC rights it never sought or expected to receive.

In sum, PIC cannot show, as it must, that in entering into the Financing Support Agreement, PIC expected to receive security from ERN and that such expectation has failed. Indeed, the Financing Support Agreement establishes the exact opposite – that PIC knew that ERN's indemnity obligations were unsecured obligations.  Under these circumstances, even if the autonomous nature of the Demand Guarantee were not a complete bar to subrogation under existing English law, the remedy would still not be available to PIC because PIC's intent that the Debtors' obligations *vis-à-vis* PIC would be unsecured is dispositive.

### III.
### Conclusion

As set forth herein, Rule 44.1 governs this Court's determination of an issue of foreign law.  Pursuant to Rule 44.1, PIC has noticed its intent to rely upon English law and provided, via the Marshall Declaration and the Marshall Authorities, materials setting forth the current state of English common law regarding the remedy of subrogation.  These materials clearly establish that the remedy of subrogation is not available under existing English common law to a party paying under an autonomous obligation – such as the Payment Guarantee issued by the SBSA.  In the face of this established law, PIC argues that this Court, on the strength of academic commentary, should reach a contrary conclusion and expand the English common law right of subrogation for its benefit.  Under these circumstances, this Court should refuse to do so.

WHEREFORE, the Debtor requests that this Court enter an order granting the relief requested in the Motion, and such other and further relief as may be just and proper under the circumstances.

Respectfully submitted this 25th day of May, 2018.

**OKIN ADAMS LLP**

By: ____/s/ *Matthew S. Okin*_____
       Matthew S. Okin
       Texas Bar No. 00784695
       mokin@okinadams.com
       David L. Curry, Jr.
       Texas Bar No. 24065107
       dcurry@okinadams.com
       John Thomas Oldham
       Texas Bar No. 24075429
       joldham@okinadams.com
       Ryan A. O'Connor
       Texas Bar No. 24098190
       roconnor@okinadams.com
       1113 Vine St., Suite 201
       Houston, Texas 77002
       Tel: 713.228.4100
       Fax: 888.865.2118

**PROPOSED ATTORNEYS FOR THE DEBTORS**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on May 25, 2018 the foregoing Objection was served upon filing via the Court's EM/ECF electronic system on all parties subscribing thereto.

/s/ *Matthew S. Okin*_____
Matthew S. Okin

11