IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § | |
| ERIN ENERGY CORPORATION, *et al.*,[1] | § § § | Case No. 18-32106 |
| Debtors. | § § | Chapter 11 |
| | § § | (Jointly Administered) |

### DECLARATION OF WUYI OGUNYINKA

I, Wuyi Ogunyinka, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am an attorney licensed to practice law in Nigeria and the United States, and have been licensed to practice law in Nigeria since 1989, and admitted to the New York Bar in 2000. I am the managing partner of the firm Terra Marine Attorneys, Nigerian counsel to Erin Petroleum Nigeria Limited ("EPNL").

2. My practice relates to matters involving corporate and commercial disputes, including disputes arising from insolvency, restructuring and complex commercial reorganizations. I regularly advise clients in all nature of insolvency proceedings, including corporate reorganization proceedings under Nigerian law.

3. This statement is respectfully submitted concerning the Order entered May 24, 2018, by the Federal High Court of Lagos (the "FHC") in the proceeding *In the Matter of an Application for the Registration of a Foreign Judgment by Erin Petroleum Nigeria Ltd.*, Suit No. FHC/L/NRJ/3/2018 (the "Domestication Order"). The Domestication Order registers the May 1,

---

[1] The last four digits of Erin Energy Corporation's ("ERN") federal tax identification number are 9798. The other Debtors in these cases are: Erin Energy Limited ("EEL"); Erin Energy Kenya Limited ("EEKL"); and Erin Petroleum Nigeria Limited ("EPNL"). The Debtors' service address is: 1330 Post Oak Blvd., Suite 2250, Houston, TX 77056.

2018, Order of the United States Bankruptcy Court for the Southern District of Texas entered in the above Chapter 11 bankruptcy proceedings (the "Stay Order").

4. This declaration is comprised of matters that are statements of legal opinion and/or statements of fact. Where the matters stated in this declaration are statements of legal opinion regarding Nigerian law, such statements represent my views as a practicing lawyer. Where the matters stated in this declaration are statements of legal opinion regarding US law, such statements are derived from information supplied to me by United States counsel to Erin. Where the matters stated in this declaration are statements of fact that are within my personal knowledge, they are true. Where the matters stated in this declaration are statements of fact that are not within my personal knowledge, they are derived from information supplied to me by or on behalf of Erin and are true to the best of my knowledge, information, and belief. If called upon to testify, I could and would testify competently to the matters set forth in this declaration.

5. This declaration is made after reviewing, and in response to, the Declaration of Mr. Victor C. Igwe (the "Igwe Declaration"), filed with the Court on even date herewith. Contrary to the Declaration of Victor C. Igwe, domesticating and enforcing foreign orders and judgments in Nigerian Courts is certainly not a novel concept.

6. The applicable legislation for the Enforcement of a Foreign Judgment in Nigeria are:

   a. The Reciprocal Enforcement of Foreign Judgments Ordinance, Cap 175, Laws of the Federation of Nigeria and Lagos, 1958 (1958 Ordinance") enacted in 1922 as L.N. 8, 1922 and;

   b. Foreign Judgments (Reciprocal Enforcement) Act, Cap 152, Laws of the Federation of Nigeria, 1990 ("the 1990 Act') enacted in 1961 as L.N. 56.

7. The 1958 Ordinance applies to Commonwealth countries, while the 1990 Act is applicable to other judgments in respect of which the Minister of Justice has made an order to

that effect pursuant to section 3 (1) of the 1990 Act and in the absence of which Ministerial Order, the provisions of Section 10 (a.) of the 1990 Act would be applicable.

8.      It is noteworthy that the Minister is yet to make any such order extending the provisions of Part 1 of the 1990 Act to other countries outside of the Commonwealth. As such, the provisions of Section 10 (a) of the Act remains in force and applicable as follows:

9.      Section 10(a) reads as follows:

"Notwithstanding any other provision of this Act— a judgment given before the commencement of an order under section 3 of this Act applying Part I of this Act to the foreign country where the judgment was given may be registered within twelve months from the date of the judgment or such longer period as may be allowed by a superior court in Nigeria;"

Instructively, the 1990 Act defines "judgment" and "judgment creditor" as follows:

"judgment" means a judgment or order given or made by a court in any civil proceedings . . .

"judgment creditor" means the person in whose favour the judgment was given, and includes any person in whom the rights under the judgment have become vested by succession or assignment or otherwise;

10.     These definitions clearly cover the Order made by the Bankruptcy Court and EPNL contrary to the Igwe Declaration that only foreign monetary judgments may be registered in Nigeria.

11.     The statutory position above on the applicability of Section 10 (a.) of the 1990 Act has received judicial imprimatur by the Nigerian Supreme Court in the case of *Macualay v. R. Z. B Austria*, (2009) N.W.LR. (Pt.1149) page 298.

12.     In response to the Igwe Declaration that "neither Chapter 11 bankruptcy case not its effect would be recognized or enforceable in Nigeria", it is respectfully submitted that the

3

recognition was exactly what has just occurred by the 24 May 2018 Order of the Federal High Court.

13.  Importantly, the effect of the Domestication Order of the Federal High Court is that being a registered judgment it shall, for the purposes of execution, be of the same force and effect and proceedings may be taken on it as a registered judgment.

14.  In response to Paragraph Nos. 7, 8, 9, and 10 of the Igwe Declaration, the Domestication Order of the Federal High Court is not open to any Counsel to sit as an Appellate Court over that pronouncement.

15.  Further, contrary to the speculation that the Federal High Court "appears" not to have considered the eligibility of the order for registration, the Learned Trial Judge, the Honorable Justice Hadiza Rabiu Shagari actually gave a considered ruling which included a review of the statutory and decisional laws before making the Order that the Judgment of the United States Bankruptcy Court "is hereby registered".

16.  The implication of the Order made by the Federal High Court is that until a proper application is made by any of the parties affected (not just by any person) to set same aside and until same is granted by the Court, the Domestication Order and the Foreign Judgment, being the Stay Order of the Bankruptcy Court remains fully in force and binding on all the Respondents including all the Creditors in Nigeria and enforceable against all the said Respondents.

17.  The Nigerian Supreme Court articulated this position in the case of Oba Amos Babatunde & Ors. v. Mr. Simon Olatunji & Anor (2000) 2 NWLR (Pt. 646) 557 at 572, in the following terms:

> Matters pertaining to judicial orders or judgments, for that matter, are not generally treated with arrogance or levity.  It is rather … treading on a perilous path for one to arrogate to oneself the right to choose and pick between court orders in terms of whether they are valid or null and void. In fact, since there is a

strong presumption in favour of the validity of a court's order, it behoves everyone to keep faith with the order of the court. It makes no difference that ex facie it appears that the court that made the order is without jurisdiction because at the end of the day, an order of the court subsists and must be obeyed until set aside by a court of competent jurisdiction. To, therefore, disobey an order of the court on the fancied belief that the said order is null for any reason whatsoever - even if it subsequently turns out that the order in fact is proved to be null-is a risky and unadvisable decision because, until the said order is finally determined to be null and void by the court, the order subsists in the string attaching to it unmitigated. Therefore, sheer commonsense as well as prudence demands that every order of the court should be accorded due respect and no attempt made to flout the order on the flimsy reason that it is null and void.

See also *Fawehinmi v. A-G. Lagos State* (No.1) (1989) 3 NWLR (Pt112) 707 at 724; *Akibu v. Oduntan* (1991) 2 NWLR (Pt. 171) 1 at 13."

18. Needless to say, any person in interest may apply to set aside or challenge any Order made by any Court, save the Supreme Court. The Court will upon such application, have to consider its merit and decide one way. However, at present there is no application to set aside the Order made by the Federal High Court and as such, it remains in force and fully binding. It therefore borders on professional recklessness and not advisable for Mr. Igwe to proffer any opinion on the validity of a subsisting Court Order.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 29, 2018, in Lagos, Nigeria.

Wuyi Ogunyinka
Terra Marine Attorneys
95 Awolowo Road
S.W. Ikoyi,
Lagos
Nigeria
wuyi@terramarinelaw.com
www.terramarinelaw.com