IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **ERIN ENERGY CORPORATION, *et al.*,**[1] | § | **Case No. 18-32106** |
| | § | |
| **Debtors.** | § | **Chapter 11** |
| | § | |
| | § | |

**DEBTORS' EMERGENCY MOTION FOR THE ENTRY OF AN ORDER PURSUANT
TO SECTIONS 105(a) AND 362 OF THE BANKRUPTCY CODE HOLDING ZENITH
BANK PLC IN CONTEMPT FOR VIOLATING THE AUTOMATIC STAY**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU.  IF
YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE
MOVING PARTY TO RESOLVE THE DISPUTE.  IF YOU AND THE MOVING
PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO
THE MOVING PARTY.  YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN
21 DAYS OF THE DATE THIS WAS SERVED ON YOU.  YOUR RESPONSE MUST
STATE WHY THE MOTION SHOULD NOT BE GRANTED.  IF YOU DO NOT FILE A
TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER
NOTICE TO YOU.  IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN
AGREEMENT, YOU MUST ATTEND THE HEARING.  UNLESS THE PARTIES
AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE
HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**EMERGENCY RELIEF HAS BEEN REQUESTED, IF THE COURT CONSIDERS THE
MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21
DAYS TO ANSWER, IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU
BELEIVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU
SHOULD FILE AN IMMEDIATE RESPONSE.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

---

[1] The last four digits of Erin Energy Corporation's ("ERN") federal tax identification number are 9798. The other Debtors in these cases are: Erin Energy Limited ("EEL"); Erin Energy Kenya Limited ("EEKL"); and Erin Petroleum Nigeria Limited ("EPNL").  The Debtors' service address is: 1330 Post Oak Blvd., Suite 2250, Houston, TX 77056.

**TO THE HONORABLE MARVIN ISGUR:**

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), by and through their undersigned proposed attorneys, hereby file this emergency motion (the "Motion") for entry of an order pursuant to sections 105(a) and 362 of the bankruptcy code holding Zenith Bank PLC in contempt for violating the automatic stay.  In support thereof, the Debtors state as follows:

## I.      JURISDICTION AND VENUE

1.      This Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of these chapter 11 cases in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested in this Motion are §§ 105(a) and 362 of the Bankruptcy Code.

## II.      BACKGROUND

1.      On April 25, 2018 (the "Petition Date"), the Debtors, filed voluntary petitions for relief (the "Bankruptcy Cases") under chapter 11, title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Court").  The Debtors continue to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      Recognizing the immediate threat of creditors engaging in collection efforts post-Petition Date, Debtors sought and obtained an order from the court enforcing and restating the automatic stay provisions on May 1, 2018 [Doc. No. 18] (the "Stay Order").  Debtors then sought and obtained a domestication of the Stay Order in the Federal High Court of Nigeria (reference/exhibit), on May 25, 2018.

### Zenith Bank PLC

3.      According to their website, Zenith Bank PLC (hereafter, "Zenith Bank" or "Zenith"), is officially Nigeria's largest bank by Customer Deposit, reporting total customer deposits of N3.396 trillion as of the end of March, 2018.  Despite Zenith's size, all international transactions must be routed through a network of correspondent banks, including Citibank N.A., New York, and JP Morgan Chase Bank New York.  Said differently, Zenith Bank is able to engage in financial transactions with U.S. citizens and businesses through their two New York correspondent banks.  More specifically, through Zenith's correspondent banking relationship with Citibank N.A., New York, Zenith transferred funds to ERN, pursuant to the below loan facility.

4.      Debtors EPNL and ERN originally contracted with Zenith Bank in July of 2014 for a $100,000,000.00 term loan facility for the expansion and development of the Oil Block OML 120 and 121, in the Oyo field, offshore Nigeria.  As a part of the security for that loan facility, among other undertakings, ERN issued a corporate guaranty on behalf of EPNL and pledged and assigned ERN's equity interest in EPNL.  A true and correct copy of the corporate guaranty is attached hereto as Exhibit A.

5.      Thereafter, on or about August 3, 2016, EPNL and Zenith executed a modification of the term loan facility, modifying, among other terms, the principal amount to be drawn on to $92,367,295.33.  As with the original term loan facility, among other undertakings, ERN again issued a corporate guaranty on behalf of EPNL and pledged and assigned the share interest in EPNL as security.  Over the following months, EPNL and ERN continued to experience financial difficulty, ultimately leading to the Bankruptcy filing.  Prior to filing, however, EPNL, ERN, and Zenith Bank exchanged a multitude of correspondence relating to a

number of issues.  For example, on February 23, 2017, Zenith Bank sent a written demand to EPNL stating, "Our attention has been drawn to the Press Release and the Security and Exchange Commission (SEC) filing by Erin Energy Corporation (U.S.), your parent company of February 22, 2017, where the announcement of the resignation of Mr. Segun Omidele as Chief Executive Officer and a member or the Board. . . in accordance with the terms of the facility agreement . . . the resignation . . . is a substantial change in management and Board structure and will require full disclosure to the bank."  A true and correct copy of the February 23, 2017 correspondence is attached hereto as Exhibit B.

6.     Because Zenith Bank engages in international commerce solely through its correspondent banking relationships, all funds transferred to ERN from Zenith were transmitted through Citibank, N.A., New York.  A true and correct copy of the last funds transfer, dated January 9, 2018, in the amount of $3,200,000.00 from Zenith Bank to ERN is attached hereto as Exhibit C.  Additionally, a true and correct copy of ERN's bank statement showing that the transfer initiated by Zenith was routed through Citibank is attached hereto as Exhibit D.

### *Zenith's Actions Post Petition Date*

7.     On or about May 8, 2018, by letter filing [Doc. No. 38], Zenith Bank acknowledged the Debtors' Bankruptcy Cases as well as this Court's jurisdiction over same, in urging the Court to immediately consider the information and facts set forth in the Affidavit of Mr. Bosah Okonyia, legal officer of Zenith Bank [Doc. No. 38-1].  Thereafter, in complete disregard for this Court's Stay Order, on May 22, 2018, Zenith Bank purported to appoint an out of court receiver to exercise control over the assets of EPNL.  A true and correct copy of this notice of appointment of receiver is attached hereto as Exhibit E.  As shown therein, the notice

was given to EPNL on May 31st, 2018, six days after the Stay Order was domesticated in the Federal High Court in Nigeria.

8.      Upon receiving notice of Zenith's actions, EPNL's Nigerian Counsel prepared correspondence to Zenith advising them of the Domestication Order.  A true and correct copy of this correspondence is attached hereto as Exhibit F.  Now, as of June 6, 2018, Zenith has filed its Application to Set Aside the Domestication Order, a copy of which was filed with the Court [Doc. No. 175].

### III.    RELIEF REQUESTED

9.      Pursuant to sections 105(a) and 362 of the Bankruptcy Code, the Debtors request the entry of an order finding that Zenith's actions violate the automatic stay and holding Zenith in contempt.

### IV.    BASIS FOR RELIEF

10.     In this instance, it is beyond argument that Zenith has taken actions in violation of the automatic stay.  Zenith has, through the purported appointment of a receiver, (i) commenced an action or proceeding against EPNL, (ii) acted to obtain possession of property of EPNL; (iii) acted to exercise control over property of ERN; and (iv) acted to collect or recover on a claim against ERN and EPNL that arose before the commencement of the Bankruptcy Cases.  As ERN and EPNL are debtors under 11 U.S.C. § 101(13) and the property of ERN and EPNL constitute property of a debtor's estate under 11 U.S.C. § 541, these actions indisputably constitute violations of the automatic stay.  11 U.S.C. § 362(a)(1), (3), and (5).

11.     Moreover, the mere fact that such actions were taken in Nigeria rather than the United States does not excuse Zenith from liability.  It is well settled that Congress explicitly intended that the automatic stay provisions of the Bankruptcy Code be granted extraterritorial effect. Transcript of Oral Argument May 1, 2018, *In re Erin Energy Corporation, et al.*, No.18-

32106 (Bankr. S.D. Tex. May 9, 2018) (**May 9 Tr., 7:17-18**); *see also Milbank v. Philips Lighting Elecs. N. Am. (In re Elcoteq, Inc.)*, 521 B.R. 189, 198-99 (Bankr. N.D. Tex. 2014) ("[B]y including property of the debtor 'wherever located' in the bankruptcy estate, Congress explicitly indicated its intent for property outside of the territory of the United States to be considered property of the estate and thus protected by the automatic stay."); *Hong Kong & Shanghai Banking Corp. v. Simon (In re Simon)*, 153 F.3d 991, 996 (9th Cir. 1998) ("Given this clear expression of intent by Congress in the express language of the Bankruptcy Code, we conclude that Congress intended extraterritorial application of the Bankruptcy Code as it applies to property of the estate."); *Nakash v. Zur (In re Nakash)*, 190 B.R. 763, 768 (Bankr. S.D.N.Y. 1996) ("Based upon the applicable Code sections [and] other indicia of congressional intent, . . . the automatic stay applies extraterritorially."); *In re McLean Indus.*, 74 B.R. 589, 601 (Bankr. S.D.N.Y. 1987) ("[t]he automatic stay applies extraterritorially").

12.    This Court has acknowledged that it may invoke its civil contempt powers under § 105(a) to remedy violations of the automatic stay.  *West v. Peterson (In re Noram Res., Inc.)*, Nos. 08-38222, 11-03598, 2015 Bankr. LEXIS 3440, at *12-14 (Bankr. S.D. Tex. Oct. 9, 2015); *see also Faulkner v. Kornman,* No. 10-301, 2012 Bankr. LEXIS 3476, at *10-11 (Bankr. S.D. Tex. July 27, 2012) (finding that bankruptcy courts have both inherent and statutory authority to enter civil contempt sanctions) (citing *Placid Refining Co. v. Terrebone Fuel & Lube, Inc. (In re Terrebonne Fuel & Lube, Inc.)*, 108 F.3d 609, 613 (5th Cir. 1997)).

13.    Thus, the only substantive issue remaining is whether this Court may sanction Zenith, a foreign party, for violating the automatic stay.  *Milbank*, 521 B.R. at 199   ("A bankruptcy court's powers over foreign property are carried out either through *in personam* jurisdiction over others with interests in such property or through the cooperation of foreign

courts.") (citing *Sinatra v. Gucci (In re Gucci)*, 309 B.R. 679, 683-84 (Bankr. S.D.N.Y. 2004));

*see also In re McLean Indus.* 68 B.R. 690, 694 (Bankr. S.D. N.Y. 1986) ("[T]he question

concerns whether the defendant is subject to *in personam* jurisdiction so that remedies sought for

the [stay] violation may be imposed.").  Because Zenith is subject to *in personam* jurisdiction

before this Court, a contempt finding is appropriate.  When a party violates the stay and is

subject to the personal jurisdiction of the bankruptcy court in the United States, that party can be

liable for such act, even when the act involved property located elsewhere. *Milbank*, 521 B.R. at

199.

### Zenith is Subject to this Court's Jurisdiction

14.     The plaintiff has the burden to make a prima facie showing that personal

jurisdiction is proper. *Zapata v. HSBC Holdings PLC*, Civ. Action No. 1:16-CV-030; 2017 U.S.

Dist. LEXIS 215352 at *6 (S.D. Tex. October 18, 2017) (citing *Luv N' Care, Ltd. v. Insta—Mix,

Inc.*, 438 F.3d 465, 469 (5th Cir. 2006)).  To establish that personal jurisdiction is proper, the

plaintiff must show that the nonresident defendants "purposefully availed [themselves] of the

benefits and protections of the forum state by establishing 'minimum contacts' with the forum

state." *Id.* (citing *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (quoting *Int'l Shoe Co.

v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)).  To establish specific or

transactional personal jurisdiction, a plaintiff must show that the alleged cause of action arises

from the defendant's contacts with the forum.  *Official Comm. Of Unsecured Creditors of

Arcapita, Bank B.S.C. v. Bahr. Islamic Bank*, 549 B.R. 56, 63 (S.D.N.Y. 2016) ("Where the

plaintiffs ask the court to assert specific jurisdiction over the defendants, the inquiry focuses on

the 'affiliation between the forum and the underlying controversy . . . .'") (citing *Goodyear

Dunlop Tires Operations S.A. v. Brown*, 564U.S. 915, 131 S. Ct. 2846, 2851, 180 L. Ed. 2d 796

7

(2011)); *McLean*, 66 B.R. at 698 ("A state has power to exercise judicial jurisdiction over a foreign corporation which does business in the state with respect to causes of action arising from the business done in the state.) (quoting *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 104 S. Ct. 1868 (1984)).

15.     Applying these principles to Zenith it is clear that the first element – that Zenith has purposefully availed itself of the laws of the United States – is met.  Zenith actively represents to the public that: (1) all international transactions are routed through their networks of correspondent banks; and, (2) of the eleven (11) international correspondent banking partners, two (Citibank N.A., New York and JP Morgan Chase Bank New York) are located within the United States.[2]  It appears then that Zenith regularly conducts business in the United States *vis a vis* its correspondent banking partners.  In *Arcapita,* the District Court for the Southern District of New York, applying New York state law[3], found that the repeated use of New York correspondent banks was sufficient to show that a defendant purposefully availed themselves of the laws of New York and established sufficient contact with the United States.  549 B.R. at 63.

16.     The second prong – that the Debtors' claims arise from Zenith's business in the United States – is likewise met.  The "arising from" element of specific personal jurisdiction is interpreted broadly.  *See McLean*, 68 B.R. at 698 ("While the term 'arising from' the business transacted in the state might convey the implication that the business transacted must itself give rise to the claim, the courts have construed the phrase far more broadly, holding, in effect, that the claim need only relate to that business in a general way.").  Thus, the *McLean* court found that claims arose from defendant's business in the United States "even though the acts complained of, the procuring of [a warrant and arrest of a vessel], took place abroad."  *Id.*  Put

---

[2] *See* attached Exhibit G.
[3] While the relevant inquiry is minimum contacts with the United States, state law is relevant on the effect of the use of New York banks to establish specific jurisdiction.  *Arcapita,* 549 B.R. at 63.

more succinctly, "[s]ufficient contacts are found 'where the defendant purposefully availed itself of the privilege of doing business in the forum and *could foresee being haled into court there*.'" *Burger King*, 471 U.S. at 69.

17.      Here, the overwhelming evidence supports a conclusion that not only could Zenith have foreseen that its business with ERN and EPLN could result in being haled into a United States bankruptcy court, it likely should have foreseen that possibility.  In entering into the credit facility with EPNL and ERN (the basis of the parties relationship), among other things, Zenith: (1) On two different occasions required a corporate guarantee from ERN, a U.S. Corporation domiciled in Texas (See Exhibits A and H); (2) contracted with ERN via a pre-export override deed (Attached hereto as Exhibit I); (3) required that ERN disclose the nature and basis of what they deemed was a change in management or control (See Exhibit B); (4) required ERN pledge its shares in EPNL; (5) listed ERN's other revenue sources as possible repayment sources in its restructuring offer; (6) maintained at least one of the Debtors bank accounts in USD; and, as noted above, (7) transferred money to and received money from the Debtors *via* Citibank, N.A., Zenith's correspondent banking partner in New York.  All of the facts demonstrate that Zenith knowingly conducted business, in the United States, with a United States based debtor and its subsidiary, who Zenith knew also held assets in the United States.  As such, Zenith knew or should have known that ERN and EPNL were entitled to seek protection under the Bankruptcy Code.

18.      In sum, this Court has specific personal jurisdiction over Zenith, Zenith has and continues to violate the automatic stay, and this Court should find Zenith in contempt and impose appropriate coercive and remedial sanctions upon Zenith pursuant to its inherent and statutory authority.

## V.    BASIS FOR EMERGENCY RELIEF

19.    The Debtors respectfully request immediate emergency consideration of this Motion.  Zenith's actions pose a significant threat to the fair and equitable administration of this estate and swift action is necessary to minimize the potential harm.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form filed herewith, granting the relief requested in this Motion, and such other and further relief as may be just and proper under the circumstances.

DATED:  June 6, 2018.


Respectfully submitted,

**OKIN ADAMS LLP**

By:    /s/ *Matthew S. Okin*
        Matthew S. Okin
        Texas Bar No. 00784695
        mokin@okinadams.com
        David L. Curry, Jr.
        Texas Bar No. 24065107
        dcurry@okinadams.com
        John Thomas Oldham
        Texas Bar No. 24075429
        joldham@okinadams.com
        Ryan A. O'Connor
        Texas Bar No. 24098190
        roconnor@okinadams.com
        1113 Vine St., Suite 201
        Houston, Texas 77002
        Tel: 713.228.4100
        Fax: 888.865.2118

**PROPOSED ATTORNEYS FOR THE DEBTORS**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on June 6, 2018 the foregoing Motion was served upon filing via the Court's EM/ECF electronic system on all parties subscribing thereto and served via email as follows:

Charles Nwabulu
cnwabulu@kennapartners.com
Bridget Osazuwa
Counsel@kennapartners.com
KENNA PARTNERS
8, Ogunyemi Road
Palace Way, Oniru,
Victoria Island, Lagos
**COUNSEL FOR ZENITH BANK PLC**

*/s/ Matthew S. Okin* _____
Matthew S. Okin