IN THE FEDERAL HIGH COURT OF NIGERIA
HOLDEN AT LAGOS

SUIT NO: FHC/L/NRJ/3/2018

IN THE MATTER OF APPLICATION FOR THE REGISTRATION OF A
FOREIGN JUDGMENT BY ERIN PETROLEUM NIGERIA LTD

BETWEEN

ERIN PETROLEUM NIGERIA LIMITED      PLAINTIFF/RESPONDENT

AND

'ALL SECURED AND UNSECURED CREDITORS
LISTED IN THE SERVICE LIST ATTACHED      DEFENDANTS/
HERETO LOCATED IN THE FEDERAL REPUBLIC    RESPONDENTS
OF NIGERIA'

AND

ZENITH BANK PLC      INTERESTED      PARTY/
     APPLICANT

## MOTION ON NOTICE

BROUGHT PURSUANT TO SECTIONS 6 AND 7 OF THE FOREIGN
JUDGMENT (RECIPROCAL ENFORCEMENT) ACT; ORDER 26 RULE 1 & 2,
ORDER 51 RULES 2 (1) & (2) OF THE FEDERAL HIGH COURT (CIVIL
PROCEDURE) RULES 2009 AND UNDER THE INHERENT JURISDICTION
OF THE HONOURABLE COURT

TAKE NOTICE that this Honourable Court shall be moved on   the   day   of
2018 at the hour of 9:00 O'clock in the forenoon or so soon thereafter as
Counsel may be heard on behalf of the Interested Party/Applicant praying the
Court for the following orders.

KENNA
Barristers | Solicitors

1.  **AN ORDER** of this Honourable Court setting aside the Order made by this Honourable Court on May 25, 2018 registering the Judgment/order of the United States Bankruptcy Court of the Southern District of Texas, Houston Division made on May 1, 2018 in the case of <u>Erin Energy Corporation, *et al* Debtors, with case No. 18-32186.</u>

2.  **AND** for such further Order or other Orders as this Honourable Court may deem fit to make in the circumstances.

**TAKE FURTHER NOTICE** that the grounds upon which this application is brought are as follows:

1.  That the Plaintiff/Respondent, obtained the Order of this Honourable Court made on May 25, 2018 (registering the Judgment/Order of the United States Bankruptcy Court for the Southern District of Texas, Houston Division, in the case of Erin Energy Corporation *et al* (Debtors), Case No. 18-32186 made on the May 1, 2018) by suppressing and concealing material facts from the Court.

2.  That the Interested Party/Applicant is not a party to the Voluntary Petition for Chapter 11 Bankruptcy filed under the United States Bankruptcy code from which the Judgment/order of the United States Bankruptcy Court for the Southern District of Texas dated May 1, 2018 arose.

3.  That the Plaintiff/Respondent, Erin Petroleum Nigeria Limited, being a Company incorporated at the Corporate Affairs Commission (CAC), under the Companies and Allied Matters Act, Cap C20, Laws of the Federation of Nigeria, 2004 (CAMA) is a Nigerian Company, governed and subject to Nigerian Laws and matters relating to arrangement and compromise involving a company incorporated under the Laws of Nigeria have been sufficiently provided for from sections 537 – 540 of CAMA.

4.  That the appropriate Court clothed with jurisdiction to hear any matter relating to arrangement and compromise with creditors of a Company incorporated under the Laws of Nigeria is the '<u>Federal High Court of Nigeria</u>' to the exclusion of any other Court; and the Judgment/Order of

KENNA
Barristers | Solicitors

the United States Bankruptcy Court for the Southern District of Texas dated May 1, 2018, on the application of Erin Energy Corporation of the United States of America(registered by an order of this Honourable Court made on May 25, 2018) is an attempt to usurp the powers of the Federal High Court of Nigeria as conferred upon it by section 251 of the 1999 Constitution of the Federal Republic of Nigeria (as amended) and section 567 of CAMA.

5. That in view of the grounds contained in paragraphs 3 and 4 above, the United States Bankruptcy Court for the Southern District of Texas lacked the requisite jurisdiction to the make the Judgment/Order made in relation to Erin Petroleum Nigeria Limited dated May 1, 2018 (now registered by an order of this Honourable Court made on May 25, 2018).

6. That the enforcement of the Judgment/Order the United States Bankruptcy Court for the Southern District of Texas dated May 1, 2018 in relation to Erin Petroleum Nigeria Limited (now registered by an order of this Honourable Court made on May 25, 2018) would be contrary to public policy in Nigeria as it directly curtails the use and exploitation of oil reserves contained in assets belonging to the Federal Government of Nigeria in OMLs 120 and 121.

7. That the Judgment/Order made by the United States Bankruptcy Court for the Southern District of Texas dated May 1, 2018, upon the Application of the Erin Energy Corporation blurs the trite and fundamental principle of Separate Legal Personalities as established in the locus classicus case of Salomon v Salomon [1877] AC 22, and further unequivocally enshrined in Section 37 of the Companies and Allied Matters Act, Cap C20, LFN, 2004; as Erin Energy Corporation and Erin Petroleum Nigeria Limited are distinct legal entities and an Order binding one cannot be binding on the other.

8. That the interest of the Interested Party/Applicant being a secured creditor of Erin Petroleum Nigeria Limited was not considered or heard before the Judgment/Order dated May 1, 2018 was made by the United States Bankruptcy Court for the Southern District of Texas, usurping the power of the Federal High Court of Nigeria

**KENNA**
Barristers | Solicitors

9. That by all apparent facts and indices, the United States Bankruptcy Court for the Southern District of Texas, Houston Division in granting an order purported to bind the Interested Party/Applicant (a Nigerian licensed bank and a company which, legally speaking is subject to Nigerian laws) in the case of Erin Energy Corporation et. al Debtors with Case No. 18-32186, assumed universal jurisdiction.

10. That the Order of the United States Bankruptcy Court for the Southern District of Texas, Houston Division, seeks to restrain a completed act as prior to the Order of this Honourable Court made on May 25, 2018 (registering the Judgment/Order ("Judgment") of the United States Bankruptcy Court for the Southern District of Texas, , in the case of Erin Energy Corporation et. al (Debtors), Case No. 18-32186 delivered on the May 1, 2018), the Interested Party/Applicant had on May 18, 2018 enforced the security provided under the Deed of Legal Charge between the Plaintiff/Respondent and the Interested Party/Applicant dated May 14, 2015 by appointing a Receiver/Manager over the Plaintiff/Respondent.

11. That the Plaintiff/Respondent's misrepresentation and concealment of material facts has led to denial of fair hearing to the Interested Party/Applicant, as the application upon which the Order of this Honourable Court made on May 25, 2018 was granted, was brought Ex Parte, never affording the Interested Party/Applicant and indeed all secured and unsecured creditors of the Plaintiff/Respondent, the opportunity to be heard.

12. That Interested Party/Applicant as a secured creditor of the Plaintiff/Respondent, Erin Petroleum Nigeria Limited, was not a party to the Petition before the Bankruptcy Court for the Southern District of Texas, Houston Division, in the case of Erin Energy Corporation *et al* (Debtors), Case No. 18-32186.

13. That the Interested Party/Applicant as a secured creditor of Erin Petroleum Nigeria Limited (the Plaintiff/Respondent) and Nigerian licenced Bank was not afforded the right to Fair Hearing as enshrined in Section 36 of the 1999 Constitution of the Federal Republic of Nigeria (as Amended) in the consideration of the Order of the United States Bankruptcy Court for the District of Texas, by this Honourable Court.

KENNA
Barristers | Solicitors

14. That by virtue of a plethora of judicial and statutory authorities as well as its inherent own jurisdiction, this Honourable Court is conferred with the power to set aside its registered foreign Judgment and it is in the interest of justice that the Honourable Court sets aside the Order made in respect of this matter on May 25, 2018 in light of the aforementioned grounds.

15. **AND ALSO TAKE FURTHER NOTICE** that the Interested Party/Applicant shall at the hearing of this application rely on all processes/papers filed by the Plaintiff/Respondent in the suit.

### DATED THIS 4TH DAY OF JUNE, 2018

*SIGNED BY:* Nimma Jo-Madugu



**Prof. Fabian Ajogwu, SAN**
**Charles Nwabulu, ACArb**
**Okechukwu Ekweanya, Esq**
**Kelvin Erhonsele, ACIArb**
**Abisola Yusuf (Miss)**
**Nimma Jo-Madugu (Miss)** ✓
**Oluyemi Adebo, Esq**
**Chioma Ike-Nwabuoku (Miss)**
**Chinonye Nnaji (Miss)**
(Applicants' Counsel)
KENNA PARTNERS
8, Ogunyemi Road
Palace Way, Oniru,
Victoria Island, Lagos.
cnwabulu@kennapartners.com
Phone: 08158390704

FOR SERVICE ON:

1. The Plaintiff/Respondent
   C/o its Counsel
   Wuyi Ogunyike
   Plot 1649, Olosa Street
   Victoria Island
   Lagos

### IN THE FEDERAL HIGH COURT OF NIGERIA
### HOLDEN AT LAGOS

**SUIT NO: FHC/L/NRJ/3/2018**

IN THE MATTER OF APPLICATION FOR THE REGISTRATION OF A FOREIGN JUDGMENT BY ERIN PETROLEUM NIGERIA LTD

**BETWEEN**

ERIN PETROLEUM NIGERIA LIMITED $\quad$ PLAINTIFF/RESPONDENT

**AND**

'ALL SECURED AND UNSECURED CREDITORS
LISTED IN THE SERVICE LIST ATTACHED $\quad$ DEFENDANTS/
HERETO LOCATED IN THE FEDERAL REPUBLIC $\quad$ RESPONDENTS
OF NIGERIA'

**AND**

ZENITH BANK PLC $\qquad$ INTERESTED $\qquad$ PARTY/
APPLICANT

AFFIDAVIT IN SUPPORT OF THE APPLICANT'S NOTICE OF MOTION DATED JUNE 4, 2018

I, **Bosah Okonyia**, Male, Christian, Nigerian Citizen of Zenith Heights, Plot 84/87 Ajose Adeogun Street, Victoria Island, Lagos State do hereby make oath and state as follows:

## INTRODUCTION

1. That I am a Legal Practitioner in the legal department of the Interested Party/Applicant, by virtue of which position I am conversant with the facts of this case.

KENNA
Barristers | Solicitors

2. That I have the consent and authority of my employer (the Interested Party/Applicant) to depose to this Affidavit.

3. That except as otherwise stated, I depose to facts within my personal knowledge, as well as from information obtained by me from reading the documents pertaining to the events leading up to this matter and from information derived in the course of carrying out my duties in the employment of the Interested Party/Applicant.

## FACTS SURROUNDING THE INTEREST OF THE INTERESTED PARTY/APPLICANT

4. The Plaintiff/Respondent, Erin Petroleum Nigeria Limited (Previously known as 'Camac Petroleum Limited') is a private limited company incorporated under the Laws of the Federal Republic of Nigeria having its registered office at Plot 1649, Olosa Street, Victoria Island, Lagos.

5. That the Defendants/Respondents as captured in the parties' clause above are persons alleged to be creditors of the Plaintiff/Respondent (Erin Petroleum Nigeria Limited).

6. That the Interested Party/Applicant is a public company incorporated and licensed under the Laws of the Federal Republic of Nigeria having its registered office at Plot 84, Ajose Adeogun Street, Victoria Island, Lagos State.

7. That Erin Energy Corporation (Cited as a Debtor in the Judgment/order of the United States Bankruptcy Court for the Southern District of Texas dated

KENNA
Barristers | Solicitors

May 1, 2018 in the case of <u>Erin Energy Corporation, *et al* Debtors, with case No. 18-32186</u>) is a Company registered in the United States.

8. That by virtue of an Acreage Allocation (Discretionary Award) of OPL 210 issued by the Ministry of Petroleum Resources (Petroleum Resources Department), Allied Energy PLC, a public company incorporated under the Laws of the Federal Republic of Nigeria and an affiliate of the Plaintiff/Respondent, Erin Petroleum Nigeria Limited (with its registered office situate at Plot 1649, Olosa Street, Victoria Island, Lagos) is the legal holder of Oil Mining Lease (OML) 120 and 121.

9. That by virtue of a transfer agreement between the Plaintiff/Respondent and Allied Energy Plc, the Plaintiff/Respondent, Erin Petroleum Nigeria Limited acquired all the economic interest of Allied Energy PLC in the oil block covered by OML 120 and 121 (although the approval of the Minister of Petroleum was yet to be obtained with respect to the transfer).

10. That the Plaintiff/Respondent, Erin Petroleum Nigeria Limited sometime in 2014 approached the Interested Party/Applicant for a Term Loan Facility of USD100, 000,000.00 (One Hundred Million United States Dollars) to part-finance the expansion and development of the oil blocks covered by OMLs120 and 121.

11. That by virtue of a Term Loan Facility Agreement, the Interested Party/Applicant granted a loan facility of USD100, 000,000.00 (One Hundred Million United States Dollars) to the Plaintiff/Respondent, Erin Petroleum Nigeria Limited. A copy of the Term Loan Facility Agreement is hereto annexed and marked as **Exhibit 1.**

KENNA
Barristers | Solicitors

12. That as security for the repayment of the loan facility granted by the Interested Party/Applicant to the Plaintiff/Respondent, Erin Petroleum Nigeria Limited, the Plaintiff/Respondent undertook to obtain in favour of the Interested Party/Applicant, a legal charge over Allied Energy PLC and Plaintiff/Respondent's entire interest in the oil Blocks covered by OMLs 120 and 121

13. That further to paragraph 12 above, a Deed of Legal Charge over interest in OML 120 and 121 dated May 14, 2015 was executed between Interested Party/Applicant and Plaintiff/Respondent, Erin Petroleum Nigeria Limited, as well as Allied Energy Plc, by which Allied Energy Plc charged its entire interest in OML 120 and 121 in favour of Interested Party/Applicant.

14. That similarly, an All Asset Debenture dated November 25, 2014 was executed between Interested Party/Applicant and Plaintiff/Respondent, by which Plaintiff/Respondent, Erin Petroleum Nigeria Limited charged ALL its assets whether fixed, or floating, present and future in favour of the Interested Party/Applicant.

15. That amongst the agreements executed as security for the repayment of the Term Loan Facility Agreement granted by Interested Party/Applicant to Plaintiff/Respondent, Erin Petroleum Nigeria Limited include:

   1.1 All Assets Debenture dated November 25, 2014;
   1.2 Deed of Legal Charge dated May 14, 2015; and
   1.3 Deed of Assignment of Rights.

16. That the agreements outlined in paragraph 15 above, are hereto annexed and marked as **Exhibits 2, 3 and 4** respectively.

KENNA
Barristers | Solicitors

17. That following the execution of the above referenced Deed of Legal Charge and Deed of All Assets Debenture, in evincing security of credits under Nigerian law, the Interested Party/Applicant registered the aforementioned security documents at the Corporate Affairs Commission which are evidenced by the Certificate of Registration of Deed of Legal Charge dated May 26, 2015 and the Certificate of Registration of Deed of All Assets Debenture dated December 12, 2014. Copies of the Certificates of Registration are hereto annexed and marked as **Exhibits 5 and 6** respectively.

18. That by Clause 17 (Representation and Warranties) of the Term Loan Facility Agreement between Interested Party/Applicant and Plaintiff/Respondent, particularly, paragraph 17.8 thereof (proceedings pending or threatened), Plaintiff/Respondent, Erin Petroleum Nigeria Limited represented and warranted to Interested Party/Applicant that, no litigation, arbitration or administrative proceeding of or before any court, arbitral body or agency has (to the best of its knowledge and belief) been stated or threatened against it (or against its directors) or any other Obligor (or against any director of an Obligor) which:

    a) May restrain its entry into, the exercise of its rights under, or the performance, enforcement of or compliance with any of its obligations under this Agreement; or

    b) If adversely determined, would reasonably be expected to have a material adverse effect.

19. That at the time of entering into the Term Loan Facility Agreement and the Disbursement of the loan sum by the Interested Party/Applicant to

KENNA
Barristers | Solicitors

Plaintiff/Respondent (Erin Petroleum Nigeria Limited), the Interested Party/Applicant was not aware or informed of the existence of any litigation, arbitration or administrative proceeding involving the Plaintiff/Respondent (Erin Petroleum Nigeria Limited) or Allied Energy Plc., or any other parties thereof.

20. That by a *Thisday* Newspaper extract dated February 20, 2018; the Interested Party/Applicant became aware of an Arbitral Award given at the London Court of International Arbitration (LCIA) on February 14, 2017. A copy of the newspaper extract is hereto *annex*ed and marked as **Exhibit 7**.

21. That by the above referenced newspaper publication, Interested Party/Applicant became aware that the Nigerian Agip Exploration Limited (NAEL), a company incorporated under the Laws of the Federal Republic of Nigeria (with its office situate at 1, Elsie Femi Pearse Street, Victoria Island, Lagos) had obtained a Final Arbitral Award against Plaintiff/Respondent (Erin Petroleum Nigeria Limited) and Allied Energy Plc from the London Court of International Arbitration (LCIA) in an Arbitration with Arbitration number: LCIA 132498.

22. That the Arbitral Award which was given by the London Court of International Arbitration purportedly arose from a dispute on a Sale and Purchase Agreement (SPA) which was concluded in June 2012 between NAEL as Seller and Allied Energy Plc. as Purchaser.

23. That by virtue of the above referenced SPA, the NAEL had transferred to Allied Energy Plc., the entirety of its interest and rights in both Oil Mining Leases 120 and 121.

KENNA
Barristers | Solicitors

24.  That the said Arbitral Award was given in respect of the oil Assets (OML 120 and 121), the interest of which is charged in favour of Interested Party/Applicant as security for the repayment of the Term Loan Facility granted by Interested Party/Applicant to the Plaintiff/Respondent, (Erin Petroleum Nigeria Limited).

25.  That by virtue of an Order of the Federal High Court of Nigeria made on May 11, 2017, leave of Court was granted to NAEL that the LCIA Final Award dated February 14, 2017 be recognised and enforced. A copy of the Order of the Federal High Court dated May 11, 2017 is hereto annexed and marked as **Exhibit 8**.

26.  That the said order of the Federal High Court enforcing and recognising the Arbitral Award is for the cumulative sum of $101,638,966.67 (One Hundred and One Million, Six Hundred and Thirty Eight Thousand, Nine Hundred and Sixty Six United States Dollars, Sixty Seven Cents) and interest thereon compounded on a monthly basis against Plaintiff/Respondent.

27.  That NAEL in an attempt to realise the fruits of the Award granted by the LCIA and recognised by an Order of the Federal High Court dated May 11, 2017 executed a 'Notice of Seizure/Attachment of Goods' by locking the export valve on the FPSO operated by Allied Energy Plc (the interest of which has been charged in favour of Interested Party/Applicant for the repayment of the credit facility granted by Interested Party/Applicant to Plaintiff/Respondent, (Erin Petroleum Nigeria Limited).

28.  That Clause 19 (III) (IV) and (v) of the Term Loan Facility agreement stipulates what amounts to an event of default as it relates distresses or encumbrances on the charged assets under the loan.

**KENNA**
Barristers | Solicitors

29. That there has also been a continued default by the Plaintiff/Respondent on the repayment of the credit facility granted to it by the Interested Party/Applicant.

30. That amongst other flagrant incidences of default, there has been non-payment of the Principal of $4,903,272.79 and Interest of $2,065,019 which were due on March 30, 2018.

## COMMENCEMENT OF BANKRUPTCY PROCEEDINGS IN THE UNITED STATES

31. That whilst the Interested Party/Applicant initiated dialogue with the Plaintiff/Respondent (Erin Petroleum Nigeria Limited) in good faith and with a view to arriving at a feasible plan towards realising the enormous credit still outstanding under the Term Loan Facility Agreement between the parties, as evidenced by a letter of the Interested Party/Applicant dated February 14, 2018, a copy of which is hereunto annexed and marked **Exhibit 9**, Erin Energy Corporation had on April the 25, 2018 filed a Voluntary Petition for Chapter 11 Bankruptcy under the United States Bankruptcy code, with its affiliate companies including the Plaintiff/Respondent purporting to file similar applications before the United States Bankruptcy Court for the Southern District of Texas, Houston Division. Copies of the Voluntary petition for Chapter 11 Bankruptcy filed under the United States Bankruptcy Code by Erin Energy Corporation and the Plaintiff/Respondent are herein annexed and marked **Exhibit 10 and 11** respectively.

32. That the Voluntary Petitions for Chapter 11 Bankruptcy exhibited in Paragraph 31 were stated to be for purposes of effecting reorganization of the Companies that voluntarily filed same. The Interested Party/Applicant,

KENNA
Barristers | Solicitors

a Nigerian Bank and secured creditor of Erin Petroleum Nigeria Limited was not a party the Bankruptcy case of <u>Erin Energy Corporation, *et al* Debtors, with case No. 18-32186</u>.

## APPLICABLE LAW AND COURT WITH JURISDICTION

33. That on June 1, 2018 at about 10:00 am, I was informed by Okechukwu Ekweanya, of Counsel to the Interested Party/Applicant at the offices of Counsel to the Interested Party Applicant in Oniru, Victoria Island, and I verily believe him as follows:

   33.1   That the Plaintiff/Respondent (Erin Petroleum Nigeria Limited) and the Interested Party/Applicant (a Nigerian Licenced Company and Bank) are both Companies incorporated under, and subject to Nigerian Law.

   33.2   That the Plaintiff/Respondent (Erin Petroleum Nigeria Limited), a Nigerian Company registered at the Corporate Affairs Commission (CAC has a separate legal and corporate personality from Erin Energy Corporation (a company registered under the laws of the United States of America).

   33.3   That the contract between the Interested Party/Applicant and the Plaintiff/Respondent (Erin Petroleum Nigeria Limited) and all the relevant agreements between them including the Term Loan Facility Agreement, the All Assets Debenture and all relevant security documents are governed by Nigerian Law by the mutual agreement of the Parties.

33.4   That the Companies and Allied Matters Act contains numerous provisions regulating Arrangement and Compromise of a Company with its Creditors.

33.5   That reliefs identical to those sought by Erin Energy Corporation on behalf of the Interested Party/Applicant for reorganisation, bankruptcy or howsoever referred to, are provided for in the Companies and Allied Matters Act and other extant Nigerian Laws on the subject.

33.6   That the proper forum for creditor arrangement or business reorganisation involving a Company registered in Nigeria is the judicial division of the Federal High Court of Nigeria where the corporate office of the Company seeking reorganisation is situate.

33.7   That further to the above, the Interested Party/Applicant proactively filed an Affidavit of Fact before the United States Bankruptcy Court for the Southern District of Texas (deposed to by my good self at the High Court of Lagos State) on May 8, 2018 stating the aforementioned facts to forestall the Court from acting in excess of its jurisdiction. Receipt of the said Affidavit was acknowledged by the Court. A copy of the said Affidavit of Facts, dated May 8, 2018 and, an email confirmation of the entry of same into the Court docket, are herein annexed and marked **Exhibit 12**.

34.   That the United States Bankruptcy Court for the Southern District of Texas purported to assume worldwide jurisdiction including jurisdiction over the Plaintiff/Respondent (Erin Petroleum Nigeria Limited) in in the case of Erin Energy Corporation *et al* (Debtors), Case No. 18-32186.

35.   That the Plaintiff/Respondent (Erin Petroleum Nigeria Limited) in applying to this Honourable Court sought the registration of a Judgment/Order of

the United States Bankruptcy Court, for the Southern District of Texas, dated May 1, 2018, made in the case of <u>Erin Energy Corporation, et al Debtors, with case No. 18-32186,</u> which enforced and restates the automatic stay provisions of the United States Bankruptcy Code (which purports to grant an automatic stay applying to all entities, upon the filing of a Bankruptcy Petition before the United States Bankruptcy Court). A copy of the said Judgment/Order is herein annexed and marked **Exhibit 13**.

36. That the Affidavit of Facts filed by the Interested Party/Applicant was proactively filed before the United States Bankruptcy Court for the Southern District of Texas as a means of notifying the United States Bankruptcy Court of Zenith Bank's enormous interests, to forestall the court from wrongfully assuming jurisdiction and, from making and/or extending the 'automatic stay' (*which purportedly arose pursuant to the filing of the voluntary petition for Chapter 11 Bankruptcy by the Plaintiff/Respondent*) upon hearing the Application of the Plaintiff Respondent (Erin Petroleum Nigeria Limited) on May 9, 2018. A copy of the said Hearing Notice for the motion to extend the automatic stay is herein annexed and marked **Exhibit 14**.

## ADDITIONAL FACTS NECESSITATING THE GRANT OF THIS APPLICATION

37 That both the Interested Party/Applicant and the Plaintiff/Respondent (Erin Petroleum Nigeria Limited) are Companies Incorporated at the CAC in Nigeria, and are governed and administered by Nigerian Laws.

37. That Nigerian Laws sufficiently and adequately provide for the procedure to be adopted where a Nigerian Company is seeking reorganisation and/or

**KENNA**
Barristers | Solicitors

compromise with its creditors and Nigeria Law also provides for the proper forum where same may be sought.

38. That the Judgment/Order of the United States Bankruptcy Court for the Southern District of Texas made on May 1, 2018 in the case of <u>Erin Energy Corporation, *et al* Debtors, with case No. 18-32186,</u> if enforced will have a bearing on the use and exploitation of Oil reserves contained in assets belonging to the Federal Government of Nigeria, to wit; the oil blocks covered by OMLs 120 and 121.

39. That the Interested Party/Applicant was and is not a party to the matter pending before the United States Bankruptcy Court for the Southern District of Texas from which the Judgment/Order of May 1, 2018 in the case of <u>Erin Energy Corporation, *et al* Debtors, with case No. 18-32186,</u> (now registered as an order of this Honourable Court) arose by that Court usurping the powers of the Federal High Court of Nigeria.

40. That on May 18, 2018 (Six  days prior to the Order of this Honourable Court dated May 25, 2018), the Interested Party/Applicant exercised its right of enforcement of the security provided under the Deed of Legal Charge between the Plaintiff/Respondent and the Interested Party/Applicant dated May 14, 2015  by appointing a Receiver/Manager over the Plaintiff/Respondent (Erin Petroleum Nigeria Limited). A copy of the instrument appointing Bashorun J.K. Randle of J.K. Randle Professional Services dated May 18, 2018 is herein attached and marked **Exhibit 15**.

41. That the Order of this Honourable Court made on May 25, 2018 upon an Ex-Parte Application filed by the Plaintiff/Respondent (Erin Petroleum Nigeria Limited) on May 15, 2018 was obtained by the Plaintiff/Respondent

suppressing and concealing the aforementioned relevant facts from this Honourable Court.

42. That the Interested Party/ Applicant was not afforded its constitutional right to fair hearing before this Honourable Court, in the registration of the Judgment of the United States Bankruptcy Court in the case of Erin Energy Corporation *et al* (Debtors), Case No. 18-32186 by this Honourable Courts

43. That it is in the interest of justice for this Honourable Court to grant this application as the Plaintiff/Respondent (Erin Petroleum Nigeria Limited) would not be prejudiced by the grant of same.

44. That I make this Affidavit solemnly and in good faith, conscientiously believing the same to be true and correct in accordance with the Oaths Act.

---

**DEPONENT**

SWORN to at the Federal High
Court Registry, Lagos, Nigeria
This ____ day of June, 2018

**BEFORE ME**

**COMMISIONER FOR OATHS**

> .O. ADEYEHUN (ESQ.)
> COMMISSIONER FOR OATHS
> FEDERAL HIGH COURT
> LAGOS

KENNA
Barristers | Solicitors

DATED  THIS ..........DAY OF ......................................., 2014

CAMAC PETROLEUM LIMITED
AS BORROWER

AND

ZENITH BANK PLC
AS LENDER

$100,000,000 (ONE HUNDRED MILLION UNITEDSTATES
DOLLARS)

TERM LOAN FACILITY AGREEMENT
FOR THE EXPANSION AND DEVELOPMENT OF THE OIL
BLOCK OML 120 AND 121

THIS TERM LOAN FACILITY AGREEMENT is made the ........ day of ........ between:

CAMAC PETROLEUM LIMITED, a company incorporated under the laws of the Federal Republic of Nigeria having its office at Camac House, Plot 1649, Olosa Street, Victoria Island, Lagos (hereinafter referred to as "The Borrower" which expression shall where the context so admits include its successors-in-title and assigns) of the one part

AND

ZENITH BANK PLC, a banking company incorporated and licensed under the Laws of the Federal Republic of Nigeria having its registered office at Plot 84, Ajose Adeogun Street, Victoria Island, Lagos State (hereinafter referred to as "The Lender" which expression shall where the context so admits include its successors-in-title and assigns) of the other part.

The Borrower and the Lender shall be jointly referred to as "Parties" in this agreement.

**WHEREAS:**

i.   The Borrower has applied to the Lender for a **Term Loan Facility** in the principal sum of **$100,000,000.00 (One Hundred Million United States Dollars)** for the purposes of part financing the expansion and development of the Oil Block OML 120 and 121.

ii.   The legal holder of the Oil Block OML 120 and 121 is Allied Energy Plc. The Lender understands that by virtue of a Transfer Agreement, between Allied Energy Plc and the Borrower, the Borrower acquired all the economic interest of Allied Energy Plc in Oil Block OML 120 and 121. The approval of the Minister of Petroleum has not been obtained with respect to the transfer.

iii.   Pursuant to the request for the Term Loan Facility by the Borrower, the Lender has made an Offer of Credit Facility (dated July 21, 2014) to the Borrower, the terms of which have been duly accepted by the Borrower.

iv.   The Lender and the Borrower have agreed upon the grant of the term loan facility by the Lender to the Borrower on the terms and conditions herein contained.

**NOW THEREFORE IT IS AGREED** as follows:

1.   <u>INTERPRETATION</u>

   1.1   In this Loan agreement except the context otherwise admits, the following words, terms, phrases and expressions shall have the meanings ascribed hereto. Further the male gender shall include the female gender and vice-versa while the words and phrases in the singular shall include the plural and vice-versa.

   i.   **"All Assets Debenture"** means the Nigerian law governed agreement so granted by or to be granted by the Borrower in favour of the Lender and to include, without limitation, a charge over the current and future assets of the Borrower.

   **"Availability Period"** means the period during which the Lender undertakes to make the Term Loan Facility available to the Borrower for utilization subject to the satisfaction by the Borrower of all the conditions precedent to drawdown.

iii.     **"Available Facility"** means the undrawn and uncancelled portion of the Term Loan Facility.

iv.     **"Ancillary Documents"** means the Legal Charge over the OML 120 and 121, All Asset Debenture, Deed of Share Charge over the shares of the sponsors, Corporate Guarantees, Letter of Comfort from CAMAC Energy Holdings Limited and all other documents referenced in this Agreement required in order to give effect to the Terms of this Agreement.

v.      **"Board of Directors"** means the board of directors for the time being of the Borrower within the meaning of the Companies and Allied Matters Act CAP C20, Laws of the Federal Republic of Nigeria, 2004.

vi.     **"Business Day"** means a day on which banks in Nigeria are open for normal banking business excluding Saturdays and Sundays and any public holiday declared by the Federal Government of Nigeria.

vii.    **"Charged Assets"** means each of the assets and undertakings of the Borrower and more particularly charged to the Lender in the All Assets Debenture dated on or about the date of this Agreement between the Lender and the Borrower.

viii.   **CAPEX Reserve Account ("CRA"):** An account established with the Lender and which will be used to build up and maintain the CRA required balance. Such amount shall not be less than 10% of net revenue after expenses.

ix.     **"Compensation Account"** Means the account established with the Lender to be used to receive all insurance payments and/or any other compensation due to the Borrower.

x.      **"Closing date"** means the                    or any other date agreed for the execution of this Agreement and any other ancillary agreements.

xi.     **"Drawdown"** means when all the conditions to drawdown set forth in this Agreement are met.

xii.    **"Debt Service Reserve Account"** means the account established by the borrower with the Lender to be used to fund debt service obligations dues on the next repayment date. To be funded no later than 7 days prior to each repayment date.

xiii.   **"Events of Default"** means any one of the events stated in clause 19 hereof.

xiv.    **"Final Maturity Date"** means ..., 2019 or any other date as may be agreed in writing between the Lender and the Borrower.

xv.     **"Legal Charge"** means the legal charge created or to be created over Oil Block OML 120 and 121 (which license is held by Allied Energy Plc).

xvi.  **"LIBOR"** means the London Interbank Offered Rate which is the rate at which banks offer and place money at the London interbank money market. Specifically, this is the one-month LIBOR rate for a period equal to that interest period which appears on the screen display designated as page 3750 on the Moneyline Telerate Service (or such other screen display or service as may replace it for the purpose of displaying British Bankers' Association LIBOR Rates for Dollar deposits in the London interbank market) at or about 1100 hours GMT on the applicable rate fixing day.

xvii.  **Material Adverse Effect**; means any outcome or circumstance which materially and adversely affects the obligations of the Borrower under this facility agreement or materially and adversely affects any of the securities hereby created.

xviii.  **"Moratorium"** means a period of grace during which repayment of the principal amount of the Loan shall be suspended and shall be twelve (12) months commencing from the date of the first drawdown.

xix.  **"Month"** means a calendar month.

xx.  "Obligor" means any person having an obligation (directly or indirectly under this facility agreement or any other ancillary agreement related to this facility (including Allied Energy Plc, the off takers, Camac Energy Incorporated.... etc)

xxi.  **"Project"** means the further expansion and development of the Oil Block OML 120 and 121.

xxii.  **"Request"** means a request by the Borrower to utilize the Term Loan Facility, substantially in the form of Schedule 1.

xxiii.  "Sponsors" means the shareholders of the Borrowers.

xxiv.  **"The Term Loan Facility"** means the term loan facility described in clause 2 granted to the Borrower by the Lender.

xxv.  **"The Loan amount"** means the aggregate principal amounts drawn by the Borrower at any time under the Term Loan Facility and not repaid or prepaid.

xxvi.  **"USD"** and **"$"** means the lawful currency of the United States of America.

1.2  Words and phrases defined in the Companies and Allied Maters Act Cap C20 Laws of the Federal Republic of Nigeria 2004 shall subject to the foregoing have the same meanings respectively in this Term Loan Facility Agreement.

1.3.  The headings of the various clauses are inserted for convenience only and shall not affect the construction of the clauses of this Term Loan Facility Agreement.

1.4   References to any statute or statutory provisions are to the statute or provisions as may from time to time be amended, modified, extended or re-enacted.

## 2.   FACILITY

The Lender hereby grants to the Borrower upon the terms and subject to the conditions herein contained a term loan facility in the aggregate principal sum of **US$100,000,000.00 (One Hundred Million United States Dollars)** to be designated the Term Loan Facility and the Borrower hereby accepts the Facility from the Lender.

## 3.   DISBURSEMENT

3.1.   The Term Loan Facility shall be available for utilization for a period of 12 (twelve) months from the date of execution of this agreement.

3.2.   The disbursement shall be made in 4 (four) tranches of US$25,000,000 (Twenty Five Million US Dollars) each upon satisfaction by the Borrower of all the condition precedent. It being understood that at least 10% of the facility (equivalent of N1.6Billion Naira) shall be disbursed in Nigeria currency (Naira).

3.3.   The Term Loan Facility shall be available in US Dollars (for offshore portion) and Naira (for payment to local contractors and suppliers). The dollar portion will also be available for utilization as letters of credit: unconfirmed, confirmed, deferred and Usance.

## 4.   COMMITMENT

The Lender hereby undertakes and agrees that subject to the terms of this Loan Agreement and the Offer Letter for the facility it shall during the Availability Period make the Term Loan Facility available to the Borrower for utilization for the purpose stated in clause 5 as contemplated under this Agreement.

## 5.   PURPOSE

5.1.   The Borrower shall utilize the Loan strictly for the purposes of part financing the expansion and development of the Oil Block OML 120 and 121.

5.2.   The Facility shall be utilized (i) via direct payment to suppliers and contractors, offshore payment via letters of credit and transfers based on the terms of supply while direct disbursement shall be made to local suppliers from the Naira disbursement (ii) to fund financing costs, expenses and fees associated with the facility.

5.3.   The Lender is not bound to monitor or verify the application of any amount borrowed pursuant to this Agreement.

## 6.   TENOR

This Term Loan Facility shall be for a period of five (5) years inclusive of twelve (12) months moratorium on Principal only.

7.  **DRAWINGS**

7.1. The Borrower shall be entitled to make drawings under the Term Loan Facility at any time during the Availability Period, and for each such drawing (to be designated a "Drawing") the Borrower must complete a Request, such Request to be made in the form of schedule 1 hereto and delivered to the Lender during a Business Day. The Lender shall communicate acceptance of the Request to the Borrower within thirty (30) days of the request.

7.2. Drawings under the Facility shall be subject to satisfaction by the Borrower of all the conditions precedent to drawdown stipulated in the accepted Offer Letter dated July 21, 2014 in each case in form and substance satisfactory to the Lender unless waived by the Lender on such terms as the Lender deems fit in writing.

7.3. Notwithstanding any other provision of this Loan Agreement, including, without limitation, those in Clauses 3.3 and 5.2, the amount of any standby letter of credit issued hereunder shall not be considered to be a drawing under the Term Loan Facility but shall be considered to be a Contingent Liability which reduces availability but does not incur interest and/or charges until actual presentation for payment.

8.  **INTEREST AND OTHER FEES**

8.1. The dollar rate of interest chargeable in respect of the Loan shall be LIBOR + 7.5% per annum, subject to a floor of 9.5% per annum.

8.2. The Naira interest rate shall be 18.75% per annum. This rate is subject to upward or downward review by the Lender in line with money market realities. However, any future advice of upward review shall be for information only and will be deemed accepted accordingly unless the facility is paid down on the effective date of such upward review.

8.3. Default interest will be payable on all overdue amounts at floor rate plus applicable margin of 2.00% per annum.

8.4. The Borrower shall also pay the following other fees

   (i)   **Management Fee** at 1% flat, payable upfront upon acceptance of offer;

   (ii)  **Processing Fee** at 0.35% flat, payable upfront upon acceptance of offer.

   (iii) **Commitment Fee** at 0.50%, payable quarterly in arrears annually on the undrawn balance.

   (iv)  **Loan Service Fee (Periodic):** 0.5% payable upfront upon acceptance and on every anniversary on the outstanding balance until the facility is fully repaid.

8.5. Where any interest payment or principal repayment under this Clause is due on a day that is not a Business Day, such payment shall be made on the next Business Day in the same calendar month (if there is one) or the preceding Business Day (if there is none).

**SECURITY**

9.1.  As security for the repayment of the Loan, which security shall terminate and be released by the Lender at such time as no amount is or may be outstanding under this Loan Agreement, the Borrower shall:

(a) Obtain in favor of the Lender a Legal Charge over Allied Energy Plc and Camac Energy Incorporated's entire interest in Oil Block OML 120 and 121;

(b) Create in favor of the Lender a fixed and floating Legal Charge by way of an All Assets Debenture over its present and future assets including any currently unissued shares in the Borrower or any shares created as a result of an increase in the authorised share capital of the Borrower. This Agreement and the All Asset Debenture to be executed and read contemporaneously.

(c) Obtain in favor of the Lender, a corporate guarantee (covering the entire facility and interests) from Camac Energy Incorporated (the parent company of the Borrower) and a corporate guarantee (covering the entire facility and interests) from Allied Energy Plc.

(d) Obtain an undertaking from Allied Energy Plc and Camac Energy Incorporated committing to domicile the proceeds from the sale of crude oil from OMLs 120 and 121 and processing of all NXPs from such sales through its account with the Lender.

(e) Obtain a letter of comfort from Camac Energy Holdings Limited to ensuring that its subsidiary (Allied Energy Plc and Camac Energy Incorporated) domicile the crude oil proceeds with the Lender and ensure performance of obligations under this Term Loan Facility Agreement

(f) Obtain an assignment to the Lender of all the rights in the share capital of the Borrower and to ensure the shareholders of the borrower create a pledge in favor of the Lender over their shares in the Borrower (including current and future shares as well as additional shares in the event of increase in the authorized share capital of the Borrower).

(g) Assign to the Lender, the Borrower's rights under all commercial contracts including sale and purchase agreements, off-take agreements and crude handling agreements.

(h) Cause Allied Energy Plc and Camac Energy Incorporated to assign to the Lender all their rights under all commercial contracts relating to OMLs 120 and 121 including sale and purchase agreements, off-taker agreements and crude handling agreements.

(i) Create in favor of the Lender, an irrevocable Domiciliation agreement (between the Borrower, Allied Energy Plc, Camac Energy Incorporated and off-takers domiciling all proceeds from the off take agreement in the designated accounted opened with the Lender.

(j) Enter into an irrevocable undertaking (along with Allied Energy Plc and Camac Energy Incorporated) to open all NXP in respect of crude oil lifting from OMLs 120 and 121 being financed throughout the tenor of the facility with the Lender and to route all proceeds of crude oil sales from OMLs 120 and 121 to its account with the Lender.

(k) Create a charge in favor of the Lender over all of the Borrower's accounts, receivables, rights and interest and cause Allied Energy Plc and Camac Energy Incorporated to create a charge in favor of the Lender over all its accounts, receivables, rights and interest with respect to OML 120 and 121.

(l) Assign to the Lender, all rights under any hedging agreement entered into in relation to the Facility.

(m) Assign to the Lender, all insurance and reinsurance contracts including performance guarantees by EPC related to the project.

(n) Obtain from the off-takers of the crude oil from OMLs 120 and 121 a commitment/acknowledgment of domiciliation instruction by Allied Energy Plc and Camac Energy Incorporated to domicile all sales proceeds to the Borrower's account with the Lender.

(o) Pledge all its unissued shares (including news shares issued in the event increase in the share capital) to the Lender.

9.2.   Except with the written consent of the Lender, the Borrower hereby undertakes not to and shall not create or permit to subsist any other mortgage, charge, pledge or lien (each a "Security Interest") on any of its Charged Assets and/or securities hereby created except for any Security Interest:

a. To secure any excise or import taxes or duties owed to, or industrial grants made by any state, government, political sub-division or international organization, or any agency, authority, instrumentality or body or any regulatory authority; or

b. Arising by operation of law; or

c. Created or arising with the prior written approval of the Lender; or

d. Created or arising out of retention of title provisions or a conditional sale in respect of goods acquired by the Borrower in the ordinary course of business; or

e. Which is a lien or other Security Interest arising in the ordinary course of the Borrower's business consistent with the Borrower's past practice and not securing Borrowings; or

f. The principal purpose and effect of which is to allow the setting-off or netting off obligations with those of a financial institution in the ordinary course of the cash management arrangements of the Borrower; or

g. Constituted by netting, set-off or cash collateral arrangements in relation to swaps or other derivative agreements in the ordinary course of its business; or

h. Arising under arrangements in connection with the participation in or trading on or through any clearing system or investment, commodities or stock exchange where the Security Interest arises in the ordinary course of business under the rules or normal procedures or legislation governing such system or exchange; or

i.  Over securities, derivatives or commodities, in respect of the acquisition cost of such securities, derivatives or commodities owed to a dealer therein or an agent for the purchase thereof where such cost fails to be paid within 180 days of being incurred; or

j.  Arising out of or in connection with pre-judgment legal process or a judgment or a judicial award relating to security for costs; or

k.  Which is to renew, extend or replace a  Permitted Security Interest if the principal amount secured is not thereby exceeded and such permitted Security Interest is discharged or released within 3 (three) months of the creation of the replacement Security Interest; or

l.  Over cash or cash equivalents covering any indebtedness (or obligations in respect thereof. such as future interest) in respect of capital market issues in existence on the Closing Date which has been fully covered by cash or cash equivalents as a means of achieving the economic effect of full repayment of that indebtedness; or

10.  **CREATION OF ACCOUNTS**

10.1.  **Collection Accounts:** A collection account shall be opened with the Lender to receive all revenues generated from the obligor base asset (OML 120 and 121) including receivables from the off-take agreement. Withdrawals shall be made from the collection account to fund the following accounts: (i) Debt Service Reserve Account (DSRA) (ii) Operations Account (iii) Debt Service Account (iv) CAPEX (v) Compensation Account.

10.2.  **Operations Accounts:** The Borrower shall open an operations account with the Lender. On each waterfall date, the company shall deposit  in the operation account from the collection account such amounts as necessary to permit payment from that account of up to 100% of the operating expenditure for the next 3months.

10.3.  **Debt Service Account:** The Lender shall open a Debt Service Account with the Lender which will be used to fund debt service obligations due on the next repayment date. This is to be funded no later than 7 days prior to from the DSRA.

10.4.  **CAPEX Reserve Account (CRA):** This account shall be established with the Lender and will be used to build up and maintain the CRA required balance. The CRA balance shall not be less than 10% of net revenues after expenses.

10.5.  **Compensation Account:** A compensation account shall be established with the Lender for the purpose of receiving all insurance payments and/or any other compensation due to the Borrower.

10.6  **DSRA Required Balance:** Debt Service Reserve Account ("DSRA") shall be opened to warehouse the DSR required balance. In an event of default, any funds held in the Debt Service Reserve Account may be promptly applied as a mandatory prepayment under the facility. This shall be maintained to hold 12 months interest obligation during the moratorium and subsequently funds sufficient to pay one quarter interest and principal shall be constantly held in this account.

## MORATORIUM

The Lender hereby grants to the Borrower a moratorium on principal only of the Term Loan Facility for a period of twelve (12) months, interest will be paid during the moratorium period on a quarterly basis.

## 12. REPAYMENT

12.1   The Borrower shall make quarterly (per annum) repayment of principal and interest commencing after the moratorium period. However, interest shall be payable quarterly during the moratorium period.

12.2   The principal and interest on the facilities shall be paid by the Borrower to the Lender on the due date through the legally accepted mode of repayment as specified by the Central Bank of Nigeria, accompanied by a letter signed by the authorised representative of the Borrower, stating the purpose of the payment. Notwithstanding the purpose stated in the letter by the Borrower, the Lender shall apply any payment so received from the Borrower first in or towards the satisfaction or reduction of the payment of interest then due and unpaid before applying same to or towards the repayment of the principal sum then due and if the amount is not enough to repay the full amount then due, the Lender shall so notify the Borrower who shall within 30 (thirty) days of receiving such notification pay to the Lender the amount necessary to repay the installment in full.

12.3   Where any date for a repayment under this Clause is not a Business Day, such repayment shall be made on the next Business Day in the same calendar month (if there is one) or the preceding Business Day (if there is not).

12.4   On the Final Repayment Date, the Borrower shall pay and discharge all outstanding secured obligations in full.

## 13. PREPAYMENT AND CANCELLATION

13.1.   On giving not less than 14 (fourteen) business days prior written notice to the Lender, the Borrower may prepay the Loan in whole or in part.

13.2.   Parties agree that Prepayment is allowed only in multiples of US$5,000,000.00 (Five Million US Dollars). However, a 1% flat charge shall be applied on the prepaid amount.

13.3.   Amounts prepaid will not be re-borrowed and shall first be applied in or towards payment of any interest due and unpaid then towards repayment of any principal installments then due and unpaid.

## 14. CONDITIONS PRECEDENT TO DRAWDOWN

14.1.   The Borrower shall not be entitled to draw or utilize the Term Loan Facility or any part thereof unless the Lender shall have received the following:

14.1.1. Acceptance of the offer dated July 21 2014, evidenced by signing and returning a copy of the offer letter by the authorized signatories of the Borrower. Such authority to accept the offer by the Borrower to be obtained via a duly signed Board resolution of the Borrower. The Lender confirms that the referenced offer dated July 21, 2014 has been accepted and signed by the Borrower.

14.1.2. Submission of duly executed written Board Resolution of the Borrower authorizing and accepting usage of the term loan facility.

14.1.3. Submission of a Board Resolution of the Borrower authorizing and accepting the terms and conditions contemplated under this Agreement.

14.1.4. Submission of a duly executed written Board Resolution of Allied Energy Plc and Camac Energy Incorporated authorizing the following:

    i.  The use of their OML 120 and 121 as collateral for this facility. All the documents required for perfection and creation of legal charge shall be executed accordingly.

    ii.  That all proceeds of crude oil export from OML 120 and 121 shall be domiciled with the Lender and transferred to the account of the Borrower with the Lender towards liquidation of the maturing installments of the Term Loan Facility.

14.1.5. Submission of a Board Resolution of the Borrower, Allied Energy Plc and Camac Energy Incorporated undertaking that the Borrower and Allied Energy Plc shall not obtain any additional finance or create any security interest over Oil Block OMLs 120 and 121 as well as its current and future assets without the prior written consent of the Lender.

14.1.6. Receipt of a Letter from the Borrower stating its current indebtedness (if any) to other lenders with the facility limits obtained, current outstanding balance (if any) and the collateral pledged.

14.1.7. Receipt of duly executed Term Loan Agreement between the Borrower and the Lender.

14.1.8. Receipt of duly executed legal charge by Allied Energy Plc and Camac Energy Incorporated on its interest in OML 120 and 121.

14.1.9. Receipt of duly executed all asset debenture over the fixed and floating assets of the Borrower in favor of the Lender.

14.1.10. Receipt of duly executed pledge over all the shares of the Borrower (including issued and unissued shares and to extend to any new shares created in the event of shares capital increases).

14.1.11. Receipt of duly executed agreement between the Borrower, Allied Energy Plc, Camac Energy Incorporated and the off-takers domiciling all the proceeds from the sale of crude from the Oil Block OML 120 and 121 with the Borrower.

14.1.12. Receipt of duly executed agreement assigning the rights of the Borrower Camac Energy Incorporated and Allied Energy Plc under all commercial contracts related to OMLs 120 and 121 (including sale and purchase agreements, off-take agreements and crude handling agreements).

14.1.13. Receipt of an irrevocable undertaking by the Borrower, Camac Energy Incorporated and Allied Energy Plc to open all NXP in respect of crude oil lifting from OML 120 and 121 throughout the tenor of the facility with the Lender and to route all proceeds of crude oil sales from OML 120 and 121 to its account with the Lender.

14.1.14. Receipt of duly executed pledge in favor of the Lender over the Borrowers accounts, receivables, rights and interests.

14.1.15. Submission of an independent reserves and technical report on the assets provided by an independent technical consultant, acceptable to the Lender.

14.1.16. Receipt of duly executed first charge on the Borrower's account with the Lender, warehousing the proceeds of crude oil sales on OML 120 and 121.

14.1.17. Receipt of duly executed standard corporate guarantee of Camac Energy Incorporated and Allied Energy Plc, the parent company of the Borrower.

14.1.18. Receipt of duly executed undertaking by the Borrower that the US Dollars and Naira equivalent of the foreign exchange or the Borrowers account with the Lender should be debited for the Dollar and/or Naira equivalent of principal and interest in the event that payment from the crude exported is delayed on due date or repayment or at the time of expiration of the facility.

14.1.19. Receipt of written confirmation or certificate of compliance issued by the Department of Petroleum Resources in respect of OML 120 and 121.

14.1.20. Receipt of documents relating to the Borrower's acquisition of the remaining economic interest in OML 120 and 121 form Allied Energy Plc and Camac Energy Incorporated.

14.1.21. Receipt of all other necessary security documents.

14.1.22. Execution of any other necessary security document(s) as may be reasonably required by the Lender.

14.2. The Lender may allow the Borrower to utilize the facilities or any part thereof notwithstanding that all or any of the conditions precedent to the utilization of the facilities have not been fulfilled and such a concession shall not prejudice the right of the Lender to insist upon the fulfillment of all the conditions precedent to the utilization thereof before further utilization of the facilities nor prejudice the right of the Lender to recover from the Borrower any part utilized before the fulfillment of all or any part of the conditions precedent.

## 15.  OTHER CONDITIONS

15.1. The Borrower shall submit to the Lender a copy of its quarterly management accounts within sixty (60) days of the end of each quarter and audited accounts within one hundred and twenty (120) days of the end of each financial year.

15.2. This Term Loan Facility is made subject to availability of funds and to the rules and regulations governing banking business as enunciated by the Central Bank of Nigeria from time to time.

15.3. In line with Central Bank of Nigeria ("CBN") directive, The Lender shall disclose information relating to this facility to CBN Licensed Credit Bureaus.

15.4. Predetermination of borrowing base every six (6) months by an Engineering Consultant acceptable to the Lender.

15.5. The Borrower hereby undertakes to source foreign currency on or before maturity of the Term Loan Facility.

15.6. The Borrower, Camac Energy Incorporated and Allied Energy Plc shall inflow the repayment from proceeds generated from oil trading on/or before the expiration of the facility.

15.7. The Borrower shall be required to take out a comprehensive insurance policy with a reputable insurance company acceptable to the Lender against fire and any other form of peril on OML 120 and 121 with the Lender noted as the first loss payee.

15.8. The Borrower shall provide a list of contractors/subcontractors to be engaged in executing further expansion and development works on OML 120 & 121.

15.9. The Borrower shall use its best efforts to ensure that contractors/subcontractors associated with this project open/ maintain accounts with the Lender wherein funds shall subsequently be disbursed.

15.10. The Lender reserves the right to unilaterally review the terms and conditions of this facility from time to time in the light of changing market conditions and also to terminate this banking facility and accelerate the maturity of the Borrowers indebtedness based on any adverse information threatening the basis of this relationship or putting the banking facility at risk or loss and as a result of any breach of the terms and conditions of this facility. The Borrower shall be notified of any decision taken in this respect.

15.11. In the event of a contemplated sale of shares, issuance of additional share capital, amalgamation of business or any other change that would result in any change of ownership of the company, or a substantial share capital of the company being taken over by a new owner, the prior consent of the Lender must be obtained in writing, otherwise the facility shall become immediately due and payable.

15.12. The Borrower shall carry out periodic reserve redetermination audit to ascertain changes in borrowing base.

15.13. The Lender reserves the right to securitize, syndicate or sell its interest in this credit facility based on its global risk/liquidity management objectives during the period of the facility.

15.14. All legal fees, out-of-pocket expenses, taxes or commissions including cost of recovery of the facility in the event of default shall be for the account of the Borrower.

15.15. The Borrower shall not without the prior written consent of the Lender obtain any new facility from any other financial institution both local and foreign for further expansion of OML 120 and 121. The Lender in the event of need for additional borrowing shall have a right of first refusal.

## 16.  STAMP TAXES

The Borrower shall pay and, promptly on demand, indemnify the Lender against any cost, loss or liability the Lender incurs in relation to all stamp duty, registration and other similar Taxes payable in respect of this Agreement or any ancillary agreements.

## 17.  REPRESENTATIONS AND WARRANTIES

The Borrower hereby makes the following representations and warranties to and for the benefit of the Lender

### 17.1.  Status

It is a duly incorporated and validly existing company with limited liability under the laws of the Federal Republic of Nigeria.

**17.2.   Powers and Authority**

It has the powers to enter into, or, as the case may be, to comply with, and be bound by all obligations expressed on its part under this Loan Agreement including the powers to borrow under this Loan Agreement and that it has taken all necessary actions to authorize the borrowings under this Loan Agreement and to authorize the execution, delivery and performance of this Loan Agreement.

**17.3.   Non-Conflict**

The execution, delivery and performance of this Loan Agreement will not violate any provisions of any existing law or regulation or statute applicable to it or of any mortgage, contract or other undertaking to which it is a party or which is binding upon its assets.

**17.4.   Project Cost:**

The project cost is approximately USD258.5 Million (Two Hundred and Fifty Eight Million Five Hundred Thousand Dollars).

**17.5.   Borrowing Limits**

Borrowings under this Loan Agreement up to and including the maximum amount available under this Loan Agreement will not, when borrowed, cause any limit on borrowings (whether imposed by statute, regulations, agreement or otherwise), or on the powers of its board of directors, applicable to it to be exceeded.

**17.6.   Accounts**

The most recent audited profit and loss account and balance sheet of the Borrower which have been or are to be delivered to the Lender together with the notes thereto give a true and fair view of the results of the operations of the Borrower for the period to which they relate and, as the case may be, the financial position of the Borrower as at the date to which they relate and have been prepared in accordance with generally accepted accounting principles in Nigeria consistently applied.

**17.7.   Event of Default**

No Event of Default has occurred and is continuing.

**17.8.   Proceedings pending or threatened**

No litigation, arbitration or administrative proceeding of or before any court, arbitral body or agency has (to the best of its knowledge and belief) been started or threatened against it (or against its directors) or any other Obligor (or against any director of an Obligor) which:

(a) may restrain its entry into, the exercise of its rights under, or the performance, enforcement of or compliance with any of its obligations under this Agreement; or

(b) if adversely determined, would reasonably be expected to have a Material Adverse Effect.

**17.9.  Insolvency**

No corporate action, legal proceeding or other procedure or step or creditors' process, has been taken against the Borrower.

**17.10.Corruption**

Neither the Borrower nor any of its Affiliates, and their respective officers, directors or authorised employees, agents or representatives has:

(a)     paid, promised to pay or offered to pay, or authorised the payment of, any commission, bribe, pay-off or kickback related to the OML 120 and 121 that violates or may violate any applicable law or regulation or entered into any agreement pursuant to which any such commission, bribe, pay-off or kickback may or will at any time be paid; or

(b)     offered or given any object or other thing of value to influence the action of a public official, or threatened injury to person, property or reputation, in connection with the OML 120 and 121.

**17.11.Taxation**

(a)  It has duly and punctually paid and discharged all Taxes imposed upon it or its assets within the time period allowed without incurring interest or penalties (save to the extent that the Lender is satisfied that (i) payment is being contested in good faith, (ii) it has maintained adequate reserves for the payment of such Taxes and (iii) payment can be lawfully withheld).

(b)  It is not materially overdue in the filing of any Tax returns.

(c)  No claims are being or are reasonably likely to be asserted against it with respect to Taxes other than any initial statement of Taxes due, provided by a tax authority.

**17.12.Immunity**

(a)  The execution by the Borrower of this Agreement, and the exercise by it of its rights and performance of its obligations under same will constitute, private and commercial acts performed for private and commercial purposes.

(b)  The Borrower will not be entitled to claim immunity (in relation to itself or any of its assets or property) from set-off, suit, execution, attachment or other legal process in any proceedings in relation to this Agreement or any ancillary Agreements.

18.     **COVENANTS AND UNDERTAKINGS**

18.1.   **Duration**

The undertakings in this Clause 18 will remain in force from the date of this Loan Agreement and for so long as any amount is or may be outstanding under this Loan Agreement.

18.2.   **Financial Information**

The Borrower shall deliver to the Lender copies of its audited accounts for each financial year as soon as the same are publicly available (and in any event within 120 days of the end of each of its financial year).

18.3.   **Notification of Default**

The Borrower shall notify the Lender of any Event of Default (and the steps, if any, being taken to remedy it) promptly upon becoming aware of it.

18.4.   **Priority of Interest**

The Borrower shall procure that its obligations under this Loan Agreement do and will rank in priority with all its other present and future unsecured and unsubordinated obligations (subject to the preference of certain obligations in liquidation, bankruptcy or other analogous proceedings in respect of it by operation of applicable law).

18.5. **Change of Business/corporate structure**

The Borrower shall not change the nature of the business being carried on by it, and Shareholders as at the date of this Loan Agreement. Any change in the current board of directors shall not be effective unless the Lender is notified and the Lender's written consent obtained.

18.6. **Production and Lifting Schedule**

The Borrower hereby undertake that on the first working day of every month, it shall provide the Lender with the certified copy of both the Daily Production Schedule as well as the Product Lifting Schedule showing the quantity of products produced and lifted respectively from OML 120 and 121.

19. **EVENTS OF DEFAULT**

Upon the happening of any of the following events, the Lender may by notice in writing to the Borrower so long as such event is continuing declare such event to constitute an Event of Default and the amount of the Facility then outstanding and the interest accrued thereon and any other moneys payable hereunder to be immediately due and payable and its obligation to provide moneys under this Loan Agreement to be terminated:

    i.    If the Borrower does not pay any moneys payable hereunder when due and such moneys remains unpaid for 30 (thirty) days after becoming due;

    ii.    If any order is made or effective resolution is passed or a successful petition is presented for winding up of the Borrower or if the Borrower goes into liquidation or dissolution; or

    iii.    If the Borrower suspends any of its debts or ceases or threatens to cease to carry on its business or substantially the whole of its business; or

    iv.    If any encumbrancer takes possession or a receiver is appointed for any part of the assets of the Borrower and the interest of such encumbrancer or the appointment of the receiver is not terminated or rescinded within 21 (twenty one) days; or

    v.    If any distress, execution, sequestration or other process is levied or enforced upon or issued out against the properties or assets/shares of the Borrower and is not discharged within 21 (twenty one) days; or

    vi.    If the Borrower is unable to pay its debt within the meaning of section 409 of the Companies and Allied Matters Act 2004 or any statutory modifications or re-enactment thereof; or

    vii.    If the Borrower commits any breach of any material part of this Loan Agreement and in the case of any breach capable of remedy fails to remedy the breach within thirty (30) days of being required in writing by the Lender to do so; or

    viii.    If any representation or warranty made by the Borrower in this Loan Agreement or any notice, certificate or statement delivered or made hereunder proves to have been incorrect or materially inaccurate when made or delivered.

Notwithstanding any event provided above, the Lender may allow the Borrower a 'fifteen (15) days Cure Period' to remedy any event of default failing which the Lender may commence the process of realizing the security.

20. **CHANGE IN CIRCUMSTANCE**

20.1. If any change in the law or administrative regulations applicable to this Loan Agreement or any interpretation by the courts of law makes it unlawful or illegal for the Borrower to perform its obligations hereunder then the Borrower shall repay to the Lender any sums outstanding under the Facility together with all accrued but unpaid interest and commissions.

20.2. If any change in applicable law or administrative regulations or in the interpretation thereof by any authority charged with the administration thereof makes it unlawful for the Lender to perform its obligations hereunder then and in any such situation:

20.2.1. The Lender shall notify the Borrower accordingly;

20.2.2. The Lender shall be discharged from all obligations towards the Borrower hereunder and its commitment reduced to zero; and

20.2.3. The Borrower shall on demand repay to the Lender the Loan within 90 (ninety) days thereafter.

20.3. The Lender undertakes that during the tenor, duration, pendency or life of this Loan Agreement it shall continue to uphold, adhere to and comply with all laws and Governmental rules and regulations applicable to it, its operations, business and status and in particular the rules, regulations and directives of the Federal Ministry of Finance, Central Bank of Nigeria and other monetary and fiscal authorities and shall not commit, do, condone, allow, facilitate or accommodate anything, action, breach or omission that will put or place the Lender in a position that it is unable to meet or continue to meet its obligations hereunder or comply with the terms of this Loan Agreement.

21. **RECONSTRUCTION AND AMALGAMATION**

This Loan Agreement shall not be affected by any amalgamation that may be effected by the Lender, its successors-in-title or assigns with any other company or persons whether the new company thus formed shall or shall not differ in its name, objects, character and constitution, it being the intent that this Loan Agreement shall remain valid and effectual in all respects in favour of and with reference to any such new company when formed and may be proceeded on or enforced in the same manner to all intents and purposes as if such new company had been named in and referred to herein instead of the Lender.

22. **INDULGENCE**

The Lender may without prejudice to its rights herein enter into any agreement for giving time or other accommodation to the Borrower for the Facility or other monies hereby covenanted to be paid or any part thereof and may release or compound same with the Borrower or any person, company or corporation liable to pay the same.

23. **REMEDIES AND WAIVER**

No failure to exercise and no delay in exercising on the part of the Lender rights, powers or privileges hereunder shall operate as a waiver thereof nor shall any single or partial exercise of any right, power or privilege preclude the exercise of any other right, power or privilege.  The rights and remedies herein provided are cumulative and not exclusive of any rights or remedies provided by law.

24.   **DEFAULT INDEMNITY**

If the Borrower fails to pay hereunder any sum due (of principal or interest) or to become due hereunder, the Borrower shall pay interest at the rate aforesaid on the unpaid sum from the date when such payment fell due up to the date of payment, PROVIDED that interest shall at all times be calculated and payable as simple interest and on a reducing balance basis in conformity with monetary directives issued by the Central Bank of Nigeria.

25.   **ASSIGNMENT**

The Lender and the Borrower shall be entitled, with the prior consent of the other in writing to assign any of their rights and powers under this Loan Agreement, with all or any of the obligations herein stated and may assign and/or deliver to any such assignee, the security collateral hereto and in the event of such assignment, the assignee thereof of such right and powers and of such security, if any security be assigned and/or delivered shall have the same rights and remedies as if originally named herein in place of the Lender or the Borrower as the case may be, and thereafter the assignor will be fully discharged from all responsibilities with respect to any obligations so assigned and/or security delivered.

26.   **NOTICE**

Any notice or demand required hereunder shall be deemed to have been sufficiently given if in writing and delivered by hand or courier at the addressee's address as hereinbefore stated or at each party's last known address.

27.   **ACCOUNTS**

The Lender shall open in its books such accounts as may be required by the Lender to show satisfactory evidence of the transactions contemplated by this Loan Agreement.

28.   **LEGAL COSTS, CHARGES AND EXPENSES**

The Borrower shall be responsible for the stamp duty payable in respect of this Loan Agreement and the costs in connection with the preparation, negotiation and execution of this Loan Agreement.

29.   **DISPUTE RESOLUTION**

29.1.   **Initial Mediation of Dispute**

In the event of a dispute between the parties to this Loan Agreement, the following procedure shall be followed to resolve the dispute prior to either party pursuing other remedies:

i.   A meeting shall be held within 7 (seven) days at which all parties are present or represented by individuals with full decision making authority regarding the matters in dispute (Initial Meeting).

ii.   If within 14 (fourteen) days following the Initial Meeting, the parties have not resolved the dispute, the dispute shall be referred to Mediation directed by a mediator mutually agreeable to the parties. Each party shall bear its proportionate share of the costs of the mediator's fees.

The parties agree to negotiate in good faith in the Initial Meeting and in the Mediation.

iii.    If after a period of 30 (thirty) days following the commencement of Mediation the parties are unable to resolve the dispute either party may submit the dispute to binding arbitration in accordance with clause 29.2 hereof upon 10 (ten) days prior written notice to the other party.

### 29.2.   Binding Arbitration

i.    Either party may submit any dispute arising out of this Loan Agreement that is not resolved following the processes in clauses 29.1 (i), (ii) and (iii) above to final and binding Arbitration.

ii.    The referral of the dispute to Arbitration precludes any other course of action by the other party except upon the mutual agreement and consent of both parties.

iii.    The Arbitration contemplated hereby shall be by 3 (three) Arbitrators one of whom shall be appointed by the Lender and the Borrower respectively while the third Arbitrator shall be nominated by the two (2) Arbitrators aforesaid and the venue for the proceedings shall be Lagos.

Where there is disagreement on the appointment of the third Arbitrator, then the third Arbitrator shall be appointed by the Chief Judge of Lagos State.

iv.    Each party shall be responsible for the cost of the Arbitrator appointed by it, while the cost of the third Arbitrator and all other costs and expenses of the arbitration proceedings shall be borne equally by the Lender and the Borrower respectively.

v.    The Arbitration shall be conducted in accordance with the Arbitration and Conciliation Act Cap A18 Laws of the Federation of Nigeria 2004.

## 30.    FORCE MAJEURE

Any delay in or failure of performance of this Loan Agreement by either party hereto shall not constitute default by such party or give rise to any claim for damages against it if such delay or failure of performance is caused by force majeure including but not limited to acts of God, acts of war or revolution, civil commotion, strikes, lock out, any labour unrest, governmental action, fire, flood, earthquake, destructive lightning, epidemic or other circumstances which are beyond the reasonable control of the party affected and which they could not have reasonably foreseen and guarded against and which by exercise of reasonable care and diligence they are unable to prevent.

## 31.    ACKNOWLEDGMENT

Any admission or acknowledgment in writing by the Borrower or by any authorized person on behalf of the Borrower of the amount of indebtedness of the Borrower to the Lender or any statement of account furnished by the Lender as the case may be as a true copy extracted from the books of the Lender shall be accepted as prima facie evidence against the Borrower.

and the same instrument and the Loan Agreement shall become effective when each of the parties hereto shall have signed a copy thereof (whether the same or different copies) and shall have delivered the same to the Lender.

33. **SEVERABILITY OF PROVISIONS**

Any provisions in this Loan Agreement which is prohibited or unenforceable under Nigerian Law shall be ineffective to the extent only of such prohibition or unenforceability without invalidating the remaining provisions hereof.

34. **APPLICABLE LAW**

The Loan Agreement shall be governed by and construed in accordance with the Laws of the Federal Republic of Nigeria.

35. **AGREEMENT**

This Loan Agreement supersedes any prior agreements, promises, negotiations or representations either oral or written relating to the subject matter of this Loan Agreement and, except as provided for herein, may not be amended or modified.

36. **AMENDMENT**

This Loan Agreement may not be amended or modified save by a document signed and sealed by and on behalf of the parties hereto.

37. **COMMENCEMENT DATE**

Notwithstanding any other date herein provided, furnished or appearing herein the commencement date of this Loan Agreement is the execution Date as herein provided.

38. **ENTIRE AGREEMENT**

This Loan Agreement shall be read in conjunction with the offer letter for the facility by the Lender dated July 21, 2014. In case of any conflict with the terms of the offer letter for the facility by the Lender dated July 21, 2014, the terms of the offer letter shall prevail.

**SCHEDULE 1**
**FORM OF REQUEST**

TO:         Zenith Bank Plc

FROM:       Camac Petroleum Limited

DATE: ................................

Zenith Bank Plc
Term Loan Facility Agreement dated  ................., 201.....
   ("The Loan Agreement")

We wish to utilize the Term Loan Facility and request a Drawing to be advanced to us as follows:

a.    Amount of Drawdown:      ...............................

b.    Date:                  ...............................

c.    Payment instructions:      ...............................

By:-
**Camac Petroleum Limited**

...............................
Authorised "A" Signatory

...............................
Authorised "A" Signatory

**IN WITNESS WHEREOF** the Lender and the Borrower have executed these presents in the manner hereinafter appearing the day and year first above written.

THE COMMON SEAL of the within-named "**LENDER**"
**ZENITH BANK PLC**
Hereunto affixed in the presence of:

...............................
**DIRECTOR**

...............................
**SECRETARY**

THE COMMON SEAL of the within-named "**BORROWER**"
**CAMAC PETROLEUM LIMITED**
Hereunto affixed in the presence of:

...............................
**DIRECTOR**

...............................
**SECRETARY**
**BANWO & IGHODALO**
BARRISTERS & SOLICITORS
98, Awolowo Road S. W.
Ikoyi, Lagos.

# ORIGINAL

DATED THIS ........ 25th ........ DAY OF ................ NOV ................ 2014

### CAMAC PETROLEUM LIMITED
### AS BORROWER

**AND**

### ZENITH BANK PLC
### AS LENDER

---

### ALL ASSET DEBENTURE
### OVER FIXED AND FLOATING ASSETS, PRESENT AND
### FUTURE CHARGEABLE ASSETS OF CAMAC
### PETROLEUM LIMITED

---

THIS ALL ASSETS DEBENTURE (Debenture) is made this ___ day of NOV 2014 BETWEEN CAMAC PETROLEUM LIMITED a company incorporated in Nigeria and having its registered office at Plot 1649, Olosa Street, Victoria Island, Lagos State (hereinafter called the "Borrower" which expression shall where the context so admits include its successors-in-title and assigns) of the one part;

DULY STAMPED

AND

ZENITH BANK PLC a bank duly registered and licensed under the laws of the Federal republic of Nigeria and having its registered office at Plot 84, Ajose Adeogun Street, Victoria Island, Lagos State (hereinafter called "the Lender" which expression shall where the context so admits include its successors-in-title and assigns) of the other part.

**WHEREAS**

A.  The Borrower has applied to the Lender for a **Term Loan Facility** in the sum of **N1,600,000,000.00 (One Billion, Six Hundred Million Naira)** only hereinafter referred to as the Facility for the purposes of part financing further expansion and development of the Oil Blocks OML 120 and 121. The holder of the Oil Block OML is Allied Energy Plc.

B.  The Lender has agreed to grant the Facility to the Borrower on the terms and conditions set out in the Term Loan Facility Agreement dated

C.  The Borrower as beneficial owner of its fixed, floating, present and future Chargeable Assets intends to create an All Assets Debenture over the fixed, floating, present and future Chargeable Assets in favour of the Lender to secure the Borrower's obligations under the Term Loan Facility Agreement dated

D.  The execution and delivery of this All Asset Debenture Agreement (Debenture) in addition to execution and delivery of other security documents in favour of the Lender as security for the Secured Obligations is a condition precedent to the Lender making the Facility available to the Borrower.

E.  The Lender and the Borrower have agreed that the Facility and interest thereon and all sums which shall from time to time be outstanding and payable by the Borrower to the Lender shall be secured by way of a charge on all the Borrower's undertakings and assets, (including the assets listed in schedule 1 of the Debenture) which interest shall rank prior to any other obligation.

**NOW THIS DEED WITNESSETH as follows:**

**1.    DEFINITIONS AND INTERPRETATION**

**1.1.    DEFINITIONS**

i.    "**Business Day**" means a day on which banks in Nigeria are open for normal banking business excluding Saturdays and Sundays and any public holiday declared by the Federal Government of Nigeria.

ii.    "**Charged Assets**" means all assets and undertakings of the Borrower including the fixed and floating, present and future chargeable assets of the Borrower both movable and immovable, including tangible and intangible assets,



iii.    **"Collateral Rights"** means all rights, powers and remedies conferred on the Lender by or pursuant to this Debenture or by applicable laws;

iv.    **"Term Loan Facility"** means the facility (to be) granted by the Lender to the Borrower in accordance with the Term Loan Facility Agreement between Camac Petroleum Limited and Zenith Bank Plc dated

v.    **"Facility Agreement"** means the Term Loan Facility Agreement dated 2014 between Camac Petroleum Ltd as Borrower, Zenith Bank Plc as Lender (as amended, varied, novated or supplemented from time to time);

vi.    **"Facility"** has the same meaning ascribed to it in the Term Loan Facility Agreement and Facility will be so construed;

vii.    **"Month"** means a calendar month.

viii.    **"Parties"** means the parties to this Debenture and "Party" means one of them;

ix.    **"Receiver"** means a receiver or a receiver and manager appointed by the Bank pursuant to the provisions of this Debenture;

x.    **"Related Rights"** means, in relation to any asset (a) the proceeds of sale of that asset  or any part thereof; (b) all present and future rights under any licence, agreement for sale or agreement of lease in respect of that asset; (c) all present and future rights, powers, benefits, claims, contracts, warranties, remedies, security, guarantees, indemnities or covenants for title in respect of that asset; and (d) all present and future interest and other moneys and proceeds paid or payable under or in respect of that asset or its use;

xi.    **"Security"** means the security constituted by or pursuant to this Debenture;

xii.    **"Security Interest"** means any mortgage, charge, assignment, guarantee, hypothecation, security interest, title retention, lien including banker's lien, preferential right, trust arrangement, right of set-off, counterclaim, privilege or priority of any kind having the effect of security or any preference of one creditor over another arising by operation of law;

xiii.    **"Security Period"** means the period beginning on the date of this Debenture and ending on the date on which the Borrower has fully discharged its obligations under the Facility Agreement; and

xiv.    **"USD"** and **"$"** means the lawful currency of the United States of America.

### 1.2.   Interpretation

### a.   Construction:

Unless a contrary indication appears, any reference in this All Asset Debenture to:

i.    "assets" includes present and future properties, revenues and rights of every description;

ii.   a "disposal" includes any transfer, grant, lease, assignment, sale, participation or other transfer of economic ownership, compulsory acquisition, compulsory sale or other disposal or agreement for the disposal of, or the grant or creation of any interest derived from, any asset;

iii.  a "Finance Document", shall mean Term Loan Facility Agreement dated or any other agreement or instrument that is referenced to in the Term Loan Facility Agreement as amended, novated, supplemented, extended, replaced or restated;

iv.   the "Agent", the "Arranger", the "Account Bank", any "Counterparty", the "Lender", any "Lender", any "Finance Party" or any "Party" shall be construed so as to include its successors in title, permitted assigns and permitted transferees and, in the case of the Lender, any person for the time being appointed as Lender or Lender in accordance with this Debenture;

v.    "indebtedness" includes any obligation (whether incurred as principal or as surety) for the payment or repayment of money, whether present or future, actual or contingent;

vi.   "person" includes any person, firm, company, corporation, government, state or agency of a state or any association, trust or partnership (whether or not having separate legal personality) or two or more of the foregoing;

vii.  a "regulation" includes any regulation, rule, official directive, request or guideline (whether or not having the force of law) of any governmental, intergovernmental or supranational body, agency, department or of any regulatory, self-regulatory or other authority or organisation;

viii. a provision of law is a reference to that provision as amended or re-enacted;

ix.   Event of Default Is as stated in the Term Loan Agreement dated....

x.    A default (other than an Event of Default) is "continuing" if it has not been remedied or waived and an Event of Default is "continuing" if it has not been waived; and

xi.   a time of day is a reference to London time, Lagos time or New York Time (as specified).

b.    Section, Clause and Schedule headings are for ease of reference only and do not affect the interpretation of this Debenture.

c.    Unless a contrary indication appears, a term used in this Debenture or in any notice given under or in connection with this Debenture has the same meaning in the Debenture.

d.    A reference to a Clause or Schedule is a reference to that clause or schedule in this Debenture.

e.    References to this Debenture or any specified provision of this Debenture or any other document shall be construed as references to this All Assets Debenture, that provision or that other document as in force for the time being and as amended in accordance with the terms thereof or, as the case may be, with the agreement of the relevant Parties.

f.    Words importing the plural shall include the singular and vice versa.

4

g.  References to any statutory provision means that statutory provision as amended, supplemented, re-enacted or replaced from time to time (whether before or after the date of this Debenture) and are to include any orders, regulations, instruments or other subordinate legislation made under the relevant statutory provision.

h.  A reference in this Debenture to a mortgage of any real property includes all buildings and fixtures on that property and all Related Right.

i.  The fact that no details of any specific property or agreement are included in the relevant Schedules does not affect the validity or enforceability of any security created by or pursuant to this Debenture

j.  Words and phrases defined in the Companies and Allied Maters Act Cap C20 Laws of the Federal Republic of Nigeria LFN 2004 shall subject to the foregoing have the same meanings respectively in this Debenture.

k.  The headings of the various clauses are inserted for convenience only and shall not affect the construction of the clauses of this Debenture.

### 1.3.  Effectiveness of this Debenture

a.  Notwithstanding any other provision of this Debenture or the Term Loan Facility Agreement dated                  or any other Finance Document, this Debenture shall only be effective on and from the date it is signed by the Parties.

b.  **Entire Agreement**

In the interpretation of the provisions of this Debenture, this Debenture shall be read in conjunction with the provisions of the Term Loan Facility Agreement dated...., entered between the Borrower and Lender in respect of the loan Facility and executed.

c.  **Effect as a Deed**

This Debenture is intended to take effect as a deed notwithstanding that any Party may have executed it under hand only.

## 2.  REPRESENTATIONS AND WARRANTIES

### 2.1.  The Borrower represents and warrants to the Lender that:

a.  **Ownership of the Chargeable Assets:** It is absolutely, solely and beneficially entitled to all the Chargeable Assets as from the date it or any part of it falls to be charged under this Debenture and the rights of the Borrower in respect of the Chargeable Assets are free from any encumbrance or security interest of any kind other than the Security being created hereunder.

b.  **Power:** It has the power to execute, deliver and perform its obligations under this Debenture and all necessary corporate, shareholder and other action has been taken by it to authorise the execution, delivery and performance of this Debenture.

c.  **Consents Obtained:** Every material consent, permit, authorisation, licence or approval of, registration with or declaration to, governmental or public bodies or authorities or courts required by it to authorise, or required by it in connection with, the execution, delivery, validity, enforceability or admissibility in evidence of this Debenture or the performance by it of its obligations under this Debenture has been obtained or made and is in full force and effect and there has been no default in the observance of any material conditions or restrictions (if any) imposed on, or in connection with, any of the same and none of them is subject to any legal challenge or revocation or similar proceeding.

5

d.   **Binding Obligations:** This Debenture constitutes its valid and legally binding obligations, enforceable against the Borrower in accordance with its terms.

e.   **No Disposal:** Other than as permitted by the Facility Agreement the Borrower has not sold or agreed to sell or otherwise disposed of or agreed to dispose of the benefit of all or any of the Borrower's right, title and interest in and to the Charged Assets.

2.2.   The representations made by the Borrower on the date of this Debenture shall be deemed to be repeated by the Borrower by reference to the facts and circumstances then subsisting on the first day of each Interest Payment Date throughout the Security Period.

3.   Upon the Lender's declaring an Event of Default pursuant to clause 19 of the Term Loan Agreement, the Borrower will on written demand from the Lender pay and discharge all moneys and liabilities due and owing to the Lender by the Borrower under the Term Loan Agreement and any Ancillary Documents (as defined in the Term Loan Agreement)

4.   The Borrower as BENEFICIAL OWNER hereby charges in favour of the Lender for the consideration aforesaid all its assets with the payment and discharge of ALL moneys for the time being owing under this Security (including any expenses or charges arising out of or in connection with the acts authorised by this Debenture, ALL its undertaking goodwill and moveable properties for the time being both present and future wherever situate including its uncalled capital stock, raw materials, works in progress, finished works, materials stock equipment by whatever name and book debts hereinafter called ("the assets") and such charge shall be a first fixed charge or debenture on the assets and further charges to the Lender by way of Floating Debenture over all its future fixed and floating assets.

5.   The Borrower shall not create any further debenture or charges upon and so that no lien shall in any case or in any manner arise on or affect any part of the said assets without the prior written consent of the Lender. PROVIDED that any further debentures, mortgages or charges created by the Borrower with the consent of the Lender over the said assets (otherwise than in favour of the Lender) shall be expressed to be subject to this Debenture.

6.   Regarding any present or future uncalled capital and unissued shares of the Borrower, the Borrower hereby covenants and agrees with the Lender that:

(a)   The said uncalled capital and unissued shares of the Borrower shall not during the continuance of this security be issued or called up or received in advance of calls without the consent in writing of the Lender first sought and obtained.

(b)   The amount to be paid in respect of the said uncalled capital shall be paid to the Lender, which may at any time apply a competent part thereof in or towards satisfaction of the moneys intended to be secured.

(c)   At all times during the continuance of this Security the Borrower will permit the Lender or any persons authorized by the Lender to have access to and inspect free of all charges the share register and transfer books of the Borrower and all transfers of the Borrower's shares.

(d)   During the continuance of this Security the Borrower shall immediately after the presentation of any transfer of unpaid or partly paid shares in the capital of the Borrower give to the Lender notice in writing containing full particulars of such proposed transfer and shall not register any transfer of any such shares in the said capital until at least fourteen days after such notice as aforesaid shall have been given to the Lender and shall not register such transfer at all if within the said period of fourteen days the Lender shall object to the proposed transferee; and

6

(e) if the amount due and owing on this Debenture shall not be paid as and when it becomes payable the Borrower will at the request of the Lender call up or procure to be called up the uncalled capital hereby charged by such installment and payable at such time (not being contrary to the regulations of the Borrower) as the Lender shall in writing direct.

(f) The Borrower shall have no authority to sell or in any way transfer any of the present fixed and floating assets charged by this Debenture.

7.    All moneys and liabilities intended to be hereby secured or other balance thereof for the time being remaining unpaid shall immediately become payable notwithstanding anything to the contrary herein contained:

(a)    If the Lender shall demand payment in writing from the Borrower and leave notice of such demand at the Borrower's registered post and seven days have elapsed after such notice without payment;

(b)    If the Borrower fails to pay the rent payable in respect of any leasehold premises for the time being held by the Borrower or fails to perform and observe the covenants and conditions contained in or implied by the Grant(s) Assignment of lease(s) under which any immoveable property is held;

(c)    If an order be made or an effective resolution be passed for the winding-up of the Borrower;

(d)    If a distress or execution be levied or enforced upon or against any of the property of the Borrower and be not paid within seven days;

(e)    If the Borrower shall stop payment or shall cease or threaten to cease to carry on its business; and

(f)    If the Borrower shall commit any breach of the covenants and conditions herein contained, or in the Facility Agreement and any other undertaking by the Borrower or on its behalf to be performed and observed.

8.    At any time after the moneys and liabilities intended to be hereby secured shall have become payable under the provisions of this Debenture, the Lender may appoint by writing under the hands of its duly appointed Attorney or under the seal of the Lender any person whether an officer of the Lender or not to be a Receiver and/or Manager of the assets or any part thereof and may in like manner from time to time remove any Receiver and/or Manager so appointed and appoint another in his stead. The Receiver and/or Manager so appointed shall in addition to and without prejudice to the powers conferred upon him by law have power:

(a)    To take immediate possession of the property hereby secured or any part thereof and for that purpose to take or defend proceedings in the name of the Borrower or otherwise.

(b)    To sell (by public auction or private treaty) lease or let or concur in selling leasing or letting all or any of the property hereby secured and to carry any such sale leasing or letting into effect in the name and on behalf of the Borrower or otherwise.

(c)    To demand and recover all the income and of the property hereby secured by action distress or otherwise to the full extent of the estate or interest which the Borrower could dispose of and to give effectual receipts accordingly for the same to exercise any powers which may have been delegated to it by the Lender pursuant to these presents.

(d)  To make and effect all repairs and insurances and do all other acts which the Borrower might do in the ordinary conduct of its business as well for the improvement and for the protection of the property hereby secured.

(e)  To make any arrangements or compromises which the Receiver and/or Manager shall think expedient in the interest of the Lender.

(f)  To appoint managers, officers, agents, accountants, advisers, stewards, workmen and others for the aforesaid purposes or any of them upon such terms as to remuneration or otherwise as he may think proper.

(g)  To give valid receipts for all moneys and execute all conveyances, assignments, deeds, assurances and things which may be proper or desirable for realizing such property and to do all such other acts and things as may be considered to be conducive to any of the matters or the powers aforesaid and which the Receiver and/or Manager lawfully can do as agent for the Borrower.

(h)  To use the name of the Borrower for all or any of the purposes aforesaid and in any legal proceedings.

(i)  To execute and deliver any deed or deeds or instrument and to convey, assign or otherwise assure the property over which he is appointed.

(j)  Receive property or any part thereof or any interest therein in the name or on behalf of the Borrower and by deed in the name and on behalf of the Borrower to grant, assign or demise the legal estate in any such property to the purchaser or lessee thereof.

(k)  To do all such other acts and things as may be considered by the Lender to be incidental or conducive to any of the matters or powers aforesaid and which he or they lawfully may or can do as agent or agents of the Borrower.

9.  A Receiver and/or Manager so appointed shall be the agent of the Borrower and the Borrower shall alone be liable for his acts and defaults and remuneration and he shall have authority and be entitled to exercise the powers hereinafter set forth and to do all such acts and things which a Receiver and/or Manager lawfully may or can do which may be necessary for or considered to be incidental or conducive to the carrying on of the business of the Borrower including the raising of money with the consent of the Lender on security of the said assets or without security and generally to take possession of, collect and get in all or any part of the assets and for that purpose to take proceedings in the name of the Borrower or otherwise as may seem expedient to sell any or any part of the assets and to make any compromise.

10.  All moneys received by any such Receiver and/or Manager shall after providing for all costs and expenses incurred in carrying on the business of the Borrower or the sale or disposal of the whole or any part of the said assets be applied:

FIRSTLY if the Receiver and/or Manager so desires but not otherwise in payment of rents, rates, taxes and outgoings affecting any immovable property of the Borrower and of premium on fire and other insurances thereon and on the said assets and the cost of executing necessary and proper repairs and replacements.

SECONDLY in payment of all costs, charges and expenses of and incidental to the appointment of the Receiver and/or Manager and the exercise by him or all or any of the powers aforesaid including the reasonable remuneration of the Receiver and/or Manager.

8

THIRDLY in or towards payment of all unpaid interest and all charges due under this Debentures

FOURTHLY in or towards payment of all principal moneys due in respect of this Debenture.

FIFTHLY any surplus shall be paid to the Borrower.

11. In the event of default or breach of this Debenture, no purchaser or other person or Borrower dealing with the Lender or any Receiver and/or Manager appointed by it or with their attorneys or agents shall be concerned to enquire whether the powers exercised or purported to be exercised have become exercisable or whether any money remains due on the Security of this debenture or as to the necessity or expediency of the stipulations and conditions subject to which any sale shall have been made or otherwise as to the property or regularity of such sale calling in collection nor conversion or to the application of any money paid to the Lender or such Receiver and/or Manager and in absence of Mala fides on the part of such purchaser, mortgagor, mortgagee or other person or Borrower such dealing shall be deemed so far as regards the safety and protection of such purchaser person or Borrower to be within the powers hereby conferred and to be valid and effectual accordingly.

12. The Borrower hereby covenants with the Lender:

(a) To keep proper accounts relating to the said business and to allow the Lender or its authorized representatives to inspect the same at all reasonable times and from time to time to furnish such information with respect to the assets and all other assets and liabilities of the Borrower as the Lender may require.

(b) When necessary to repair, renew or replace all movable plant machinery engines tools implements utensils and other effects of a like nature now used or hereafter to be used for the purpose of or in connection with the business of the Borrower when and as the same shall be in disrepair worn out or destroyed.

(c) To permit the Lender and such person as the Lender shall from time to time in writing for the purpose appoint to enter into and upon the premises of the Borrower to view the state and condition of the said assets.

(d) To insure and keep in the name of the Borrower with an insurance office approved by the Lender such of the said assets (or towards the discharge of the principal and other moneys hereby secured as the Lender may require AND if default shall be made in keeping the said assets in good state of repair and in perfect working order and condition and so insured as aforesaid or in depositing any such policy or delivering any such receipt aforesaid the Lender may repair the said assets or such of them as shall in their opinion require reparation and may insure and keep insured the said assets or any part thereof as they may deem fit AND the Borrower will on demand repay to the Lender every sum of money expended by the Lender for the above purpose or any of them with interest at the rate of the Facility from the time of same respectively having been expended and until such repayment the same shall be a first charge upon the said assets and to have every policy of insurance relating to the said assets endorsed with a memorandum of the interests of the Lender as debenture holder and with a provision that all moneys payable under any such policy shall be paid to the Lender, to be applied to the benefit of the Lender in the manner hereinbefore appearing; and Not to assign mortgage sublet or part with the possession of the property belonging to the Borrower now or in the future without the prior consent in writing of the Lender first had and obtained.

13.  The Borrower hereby further covenants to indemnify the Lender in the full Facility/amount thereof against all costs, charges and expenses (including the costs of maintaining or enforcing or endeavouring to enforce this Security) incurred hereunder by the Lender  and all other moneys property paid by the Lender in respect of the said costs, charges and expenses or otherwise and the same together with interest thereon as aforesaid shall be added to the moneys hereby secured.  PROVIDED that the charge hereby created shall be in addition and without prejudice to any and every other remedy lien or security which the Lender may or but for said charge would have for the moneys hereby secured or any part thereof.

14.  The Lender shall not by reason of its entering into possession of any of the said assets be liable to account as mortgagee in possession or for anything except actual receipts or be liable for any loss upon realization or for any default or omission for which a mortgagee in possession might be liable.

15.  **EFFECTIVENESS OF SECURITY**

15.1.  **Continuing Security**

The Security created by or pursuant to this Debenture shall remain in full force and effect as a continuing security for the Secured Obligations unless and until discharged by the Lender in the manner provided for in Clause 16.1 of this Debenture (*Redemption of Security*).

15.2.  **Cumulative Rights**

The Security and Collateral Rights created by or pursuant to this Debenture shall be cumulative, in addition to and independent of every other security, which the Lender may at any time hold for the Secured Obligations including any other rights, powers and remedies provided by law.  No prior security held by the Lender over the whole or any part of the Charged Assets shall merge into the Security constituted by this Debenture.

15.3.  **No Prejudice**

The Security and the Collateral Rights created by or pursuant to this Debenture shall not be prejudiced by any unenforceability or invalidity of any other agreement or document or by any time or indulgence granted to the Borrower or any other person, or the Lender or by any variation of the terms of the trust upon which the Lender holds the security or by any other thing which might otherwise prejudice that security or any Collateral Right.

15.4.  **Remedies and Waivers**

No failure on the part of the Lender to exercise, or any delay on its part in exercising, any Collateral Right shall operate as a waiver of that Collateral Right, nor shall any single or partial exercise of any Collateral Right preclude any further or other exercise of that or any other Collateral Right.

15.5.  **No Liability**

None of the Lender or its nominee(s) or any Receiver shall be liable by reason of:

15.5.1  taking any action permitted by this Debenture; or

15.5.2  any neglect or default in connection with the  Charged Assets or;

15.5.3  taking possession of or realizing all or any part of the Charged Assets

the Borrower agrees that it shall not assert or seek to assert against the Lender, its nominee(s) or any Receiver any claim it may have against them in respect of any act or omission of the Lender, its nominee(s) or any Receiver under this Debenture

### 15.6.  Partial Invalidity

If, at any time, any provision of this Debenture is or becomes illegal, invalid or unenforceable in any respect under the law of any jurisdiction, neither the legality, validity or enforceability of the remaining provisions of this Debenture nor of such provision under the laws of any other jurisdiction shall in any way be affected or impaired thereby and, if any part of the security intended to be created by or pursuant to this Debenture is invalid, unenforceable or ineffective for any reason, that shall not affect or impair any other part of the Security.

### 15.7.  Immediate Recourse

The Borrower waives any right it may have of first requiring the Lender to proceed against or enforce any other rights or security or claim payment from any person before claiming from the Borrower under this Debenture or enforcing the Security.

### 15.8.  Waiver of defences

The obligations of, and the Security created by, the Borrower under this Debenture will not be affected by any act, omission, matter or thing which, but for this Clause would reduce, release or prejudice its Secured Obligations under, or the Security created by or pursuant to this Debenture and whether or not known to the Borrower including but not limited to the following:

15.8.1. any time, waiver or consent granted to, or composition with, any person;

15.8.2. the release of any other third parties or any other person under the terms of any composition or arrangement with any creditor;

15.8.3 any incapacity or lack of powers, authority or legal personality of or dissolution or change in the members or status of, any Obligor or any other person;

15.8.4. any amendment, novation, supplement, extension (whether of maturity or otherwise) or restatement (in each case however fundamental and of whatsoever nature, and whether or not more onerous) or replacement of a Finance Document or any other document or security or of the Secured Obligations;

15.8.5. any unenforceability, illegality or invalidity of any obligation of any person under any Finance Document or any other document or Security or of the Secured Obligations; or

15.8.6. any insolvency or similar proceedings.

### 16.    RELEASE OF SECURITY

### 16.1.  Redemption of Security

At the termination of the Security Period, the Lender shall, at the request and cost of the Borrower, release and cancel the Security and procure the reassignment to the Borrower of the property and assets assigned to the Lender pursuant to this Debenture.

16.2.  **Retention of Security**

The Lender may retain this Debenture, the Security and all documents of title, certificates and other documents relating to or evidencing ownership of all or any part of the Charged Assets until the Secured Obligations have been discharged in full and a deed of release filed with the Corporate Affairs Commission and other relevant government authority in respect of any Security constituted by virtue of this Debenture, which the Lender undertakes to file at the termination of the Security Period.

17.  **INDEMNITY**

The Borrower shall from time to time, on the demand of the Lender:

17.1.  reimburse the Lender, its nominee(s) and any Receiver on a full indemnity basis for all costs, expenses, losses and liabilities (including legal fees and the fees, costs and expenses of any advisers or consultants) incurred by the Lender in connection with the enforcement of, or the preservation of any rights under this Debenture;

17.2.  pay or reimburse the Lender, its nominee(s) and any Receiver for any Amounts or Claims paid or incurred by it in acting as Lender under or in connection with this Debenture or the Charged Assets including (i) any Agent/Delegate Liabilities; and (ii) Amounts or Claims incurred in the course of disputing or defending any Amounts or Claims made against the Lender or any Agent/Delegate Liabilities, save to the extent that such Amounts or Claims arise from or are caused by the Lender's, Agent/Delegate's fraud, gross negligence or wilful misconduct. "Amounts or Claims" are losses, liabilities, costs, claims, actions, demands or expenses and "Agent/Delegate Liabilities" are Amounts or Claims which the Lender is or would be obliged to pay or reimburse to any of its agents or delegates appointed pursuant to this Debenture; and

17.3.  indemnify the Lender, its agents, managers, officers, employees, delegates, advisers and any Receiver for any expense, claim, liability, loss, cost, damage or expense incurred or arising in connection with the exercise or purported exercise of any rights, powers and discretions under this Debenture in the absence of fraud, gross negligence, willful misconduct on their part.

18.  **ASSIGNMENT**

18.1.  The Lender may assign and transfer all or any of its rights and obligations under this Debenture in accordance with the Facility Agreement and for this purpose, the Lender shall subject to the Facility Agreement be entitled to disclose such information concerning the Borrower and this Debenture as the Lender considers appropriate to any actual or proposed successor or to any person to whom information may be required to be disclosed by any applicable law subject to the agreement of the third-party to be bound by the existing non-disclosure agreement between Borrower and Lender concerning non-public information.

18.2.  The Borrower shall not assign or delegate any of its rights or obligations under this Debenture without the prior written consent of the Lender.

19.  **NOTICES**

19.1.  **Communications in writing**

Any communication to be made under or in connection with the Debenture shall be made in writing and, unless otherwise stated, may be made by fax or letter.

### 19.2.  Addresses

19.2.1. The address and fax number (and the department or officer, if any, for whose attention the communication is to be made) for any communication or document to be made or delivered under or in connection herewith is:

19.2.1.1.  The contact details of the Borrower for this purpose are:

Address:       Camac House, Plot 1649, Olosa Street, Victoria Island, Lagos
Fax:              +2341
Email:
Attention:

19.2.1.2.  Tha contact details of the Lender for this purpose are:

Address:        Zenith Bank Plc, Plot 84 Ajose Adeogun Street, Victoria Island, Lagos
Fax number:  +2341
Email:
Attention:       Company Secretary, Mr. Micheal Osilama Otu
Phone No:     +23412781971

### 19.3.   Delivery

19.3.1. Any communication or document made or delivered by one person to another under or in connection with this Debenture shall only be effective:

19.3.1.1.  if by way of fax, , at the time of transmission, if received before 1700 hours in the place of delivery on a Business Day, and otherwise on the next Business Day; or
if by way of letter,5 (five) business days after being mailed by either registered or certified mail, return receipt requested with postage prepaid.

19.3.2. Any communication or document to be made or delivered to the Lender shall be effective only when actually received by the Lender and then only if it is expressly marked for the attention of the officer identified in Clause 19.2.1.2

### 19.4.   Notification of address and fax number

Each party shall promptly notify the other party of any change to its address and fax number pursuant to Clause 19.2 (*Addresses*).

### 19.5.   Electronic communication

19.5.1. Any communication to be made between the Borrower and the Lender under or in connection with this Debenture may be made by electronic mail or other electronic means, if the Borrower and the Lender:

19.5.1.1.  agree that, unless and until notified to the contrary, this ls to be an accepted form of communication;

19.5.1.2.  notify each other in writing of their electronic mail address and/or any other information required to enable the sending and receipt of information by that means;

19.5.1.3.  notify each other of any change to their address or any other such information supplied by them.

19.5.2. Any electronic communication made between the Borrower and the Lender shall be effective only when actually received in readable form and in the case of any electronic communication made by the Lender to the Borrower only if it is addressed in such a manner as the Agent or the Lender shall specify for this purpose.

13

**19.6. English language**

Any notice given under or in connection with this Debenture must be in English.

**20.   PAYMENT FREE OF DEDUCTION**

All payments to be made to the Lender, including its fees and costs, under this Debenture shall be made free and clear of and without deduction for any tax unless the Borrower is required to make such payment subject to the deduction or withholding of tax, in which case the sum payable by the Borrower, in respect of which such deduction or withholding is required to be made, shall be increased to the extent necessary to ensure that, after the making of such deduction or withholding, the person on account of whose liability to tax such deduction or withholding has been made receives and retains (free from any liability in respect of such deduction or withholding) a net sum equal to the sum which it would have received and retained had such deduction or withholding not been made.

**21.   DISCRETION AND DELEGATION**

**21.1   Discretion**

Any liberty or power which may be exercised or any determination which may be made under this Debenture by the Lender or any Receiver may, subject to the terms and conditions of the Facility Agreement and this Debenture, be exercised or made in its absolute and unfettered discretion without any obligation to give reasons.

**21.2   Delegation**

Each of the Lender and Receiver shall have full power to delegate, either generally or specifically, the powers, authorities and discretions conferred on it by this Debenture on such terms and conditions as it shall see fit which delegation shall not preclude either the subsequent exercise, any subsequent delegation or any revocation of such power, authority or discretion by the Lender or the Receiver itself.

**22.   GOVERNING LAW**

This Debenture and all obligations arising out of or in connection with it shall be governed by and construed in accordance with the laws of the Federal Republic of Nigeria.

**23.   FURTHER ASSURANCE**

23.1.   The Borrower shall promptly, at its own cost, do any act, make any filing or registration or sign, seal, execute and deliver such mortgages, charges, transfers, assignments, securities, notices, deeds, instruments or other documents as in each case the Lender shall from time to time stipulate, and in such form as the Lender may require to:

23.1.1. perfect and protect the Security intended to be conferred on the Lender by this Debenture or the first priority ranking thereof or which are required for the exercise of the Collateral Rights;

23.1.2. maintain the Security Interests intended to be hereby created or the first priority ranking thereof;

23.1.3. create, perfect or protect any security interest which it may, or may be required to, create in connection with this Debenture;

23.1.4. stamp (and up-stamp at the discretion of the Lender) this Debenture as and when demanded by the Lender; and

**23.1.5.** to facilitate the enforcement of the Security, the exercise of the Collateral Rights and the realization of the Charged Assets.

## 24. DISPUTE RESOLUTION

### 24.1. Initial Mediation of Dispute

In the event of a dispute between the Parties to this All Assets Debenture, the following procedure shall be followed to resolve the dispute prior to either party pursuing other remedies:

i.   A meeting shall be held within 7 (seven) days at which all parties are present or represented by individuals with full decision making authority regarding the matters in dispute (Initial Meeting).

ii.  If within 14 (fourteen) days following the Initial Meeting, the parties have not resolved the dispute, the dispute shall be referred to Mediation directed by a mediator mutually agreeable to the Parties.  Each Party shall bear its proportionate share of the costs of the mediator's fees.

The Parties agree to negotiate in good faith in the Initial Meeting and in the Mediation.

iii. If after a period of 30 (thirty) days following the commencement of Mediation the Parties are unable to resolve the dispute either Party may submit the dispute to binding arbitration in accordance with clause 24.2 hereof upon 10 (ten) days prior written notice to the other Party.

### 24.2. Binding Arbitration

i.   Either party may submit any dispute arising out of this All Assets Debenture that is not resolved following the processes in clauses 24.1 (i), (ii) and (iii) above to final and binding Arbitration.

ii.  The referral of the dispute to Arbitration precludes any other cause of action by the other Party except upon the mutual agreement and consent of both Parties.

iii. The Arbitration contemplated hereby shall be by 3 (three) Arbitrators one of whom shall be appointed by the Lender and the Borrower respectively while the third Arbitrator shall be nominated by the two (2) Arbitrators aforesaid and the venue for the proceedings shall be Lagos.

Where there is disagreement on the appointment of the third Arbitrator, then the third Arbitrator shall be appointed by the Chief Judge of Lagos State.

iv.  Each Party shall be responsible for the cost of the Arbitrator appointed by it, while the cost of the third Arbitrator and all other costs and expenses of the arbitration proceedings shall be borne equally by the Lender and the Borrower respectively.

**24.2.1.** The Arbitration shall be conducted in accordance with the Arbitration and Conciliation Act Cap A18 Laws of the Federation of Nigeria 2004.

## SCHEDULE

ALL THE FIXED AND FLOATING ASSETS OF THE COMPANY, INCLUDING ITS PRESENT AND FUTURE ACQUIRED ASSETS WHEREVER SITUATE INCLUDING ITS UNCALLED CAPITAL, STOCKS BUT PARTICULARLY THE ASSETS LOCATED AT CAMAC HOUSE, PLOT 1649, OLOSA STREET, VICTORIA ISLAND, LAGOS STATE.

IN WITNESS WHEREOF the parties hereto have caused their common seals to be affixed hereto the day and year first above written.

The Common Seal of the within-named
**CAMAC PETROLEUM LIMITED**
was affixed In presence of:


DIRECTOR                                    DIRECTOR / SECRETARY


The Common Seal of the within-named
**ZENITH BANK PLC** was affixed
In presence of:


DIRECTOR

THE WITHIN INSTRUMENT IS IN THE
OPINION OF THE COMMISSIONER OF
STAMP DUTIES CHARGEABLE WITH
DUTY OF N6,000,000
AND THE DUTY THEREON HAS BEEN
ASSESSED ACCORDINGLY

COMMISSIONER OF STAMP DUTIES IKEJA

SECRETARY

412
18/05/15

# ORIGINAL

Allied Energy Plc

(Fomerly Allied Energy Resources (Nigeria) Limited)

(as Chargor)

and

Zenith Bank Plc

(as Chargee)

and

Camac Petroleum Limited

(as Company)

**DEED OF LEGAL CHARGE OVER INTEREST IN OML 120 AND 121**

THIS DEED OF LEGAL CHARGE IS MADE THE...

BY

(1)     Cavac Petroleum Limited a company incorporated under the laws of the Federal Republic of Nigeria having its registered office at Plot 1649, Olosa Street, Victoria Island, Lagos  (the "Company" or the "Borrower"); and

(2)     Allied Energy Plc (formerly Allied Energy Resources (Nigeria Limited)) incorporated under the laws of the Federal Republic of Nigeria having its registered office at Plot 1649, Olosa Street, Victoria Island, Lagos  (the "Chargor"); and

(3)     Zenith Bank Plc, a banking Company incorporated and licensed under the Laws of the Federal Republic of Nigeria having its registered office at Plot, 84 Ajose Adeogun Street, Victoria Island, Lagos State (the "Chargee")

Chargor, Chargee and Company are hereinafter sometime individually referred to as 'Party' or collectively as 'Parties'

**WHEREAS:**

i.     The Chargor is the awradee of Oil Mining Lease No. 120 and 121 (also known as OML 120 and 121 or the "Charged Interest") by virtue of an Acreage Allocation (Discretionary Award) of OPL 210 issued by the Ministry of Petroleum Resources (Petroleum Resources Department) to the Chargor on the 3rd Day of June, 1992.

ii.     By virtue of the letter dated August 28, 2002 the Ministry of Petroleum Resources conveyed the approval of the President, Commander in Chief of the Federal Republic of Nigeria, Convert OPL 210 to two (2) OMLs i.e. 120 and 121.

iii.     The Company (a related company to the Chargor) has approached the Chargee for a facility in the sum of N3,940,000,000.00 (Three Billion, Nine Hundred and Forty Million Naira only) ("the facility") to finance the further expansion and development of the Oil Blocks in OML 120 and 121 and the Chargee has by its offer letter dated July 21, 2014 agreed to grant the facility to the Company, which offer was duly accepted by the Company, following which the Chargee and the Company entered into an agreement governing the facility dated on or around the date hereof (the "Facility Agreement").

iv.     part security for the repayment of the facility granted to the Company by the Chargee under paragraph (iii) above, the Chargor has agreed to charge in favour of the Chargee its enitre interest in OML 120 and 121 arising from the Acreage Allocation (Discretionary Award) of OPL 210 issued to it by the Ministry of Petroleum Resources.

CHECKED
Date...
Commissioner of Stamp Duties, Ikeja

## 1. Definitions

Words and expressions defined in the Term Loan Facility Agreement between Zenith Bank Plc (Lender) and Camac Petroleum Limited (Borrower) dated ................................. shall, unless the context otherwise requires, have the same meaning when used in this Deed of Legal Charge.

## 2. CHARGE

2.1.   The Chargor hereby irrevocably charges and agrees to charge in favour of the Chargee its entire interest in OML 120 and 121 for as long as any liabilities under the facility remain outstanding.

2.2.   The Chargor shall not create any charge over its interest in OML 120 and 121 or any part thereof so that no lien shall in any case or in any manner arise on or affect the Charged Interest without the prior written consent of the Chargee PROVIDED that any further charge created by the Chargor with the consent of the Chargee over the Charged Interest (otherwise than in favour of the Chargee) shall be expressed to be subject to this Charge.

2.3.   For the purposes of this Clause, the Chargor covenants and undertakes that an Account (in line with the Term Loan Facility Agrement) shall be maintained with the Chargee and that all other payments that shall be due and payable to it from the sale of crude proceeds from the Chargor's Interest in OML 120 and 121 shall be domiciled to the Chargee.

## 3. DOMICILATION

The Chargor hereby covenants to irrevocably domicile proceeds of sale of crude oil produced from OML 120 and OML 121 into its Account No. 5050005786 and/or the Borrower's Account No.5050009368 with the Chargee and has instructed accordingly.

## 4. NEGATIVE PLEDGE

4.1.   At all times during the continuance of this security the Chargor shall permit, upon request, the Chargee or any persons authorised by the Chargee, with three days prior notice to have access to and inspect free of all charges all documents, licenses, certificates and permits required by regulation to be maintained by the Chargor in respect of the Charged interest.

4.2.   The Chargor shall have no authority to sell or in any way transfer or create any other interest or security, in the whole or any part of its interest in OML 120 and 121 charged by this presents except with the consent of the Chargee.

5.    **CRYSTALLIZATION OF CHARGE**

The Charge constituted under this Deed of Legal Charge shall become enforceable:

5.1.    If any amounts due under the Facility Agreement remain unpaid within 5 days of the expiring of any applicable grace periods by the Company.

5.2.    If the Chargor shall fail to pay any levy, duty, impost, tax or any form of payment whatsoever due to any government authority (or any other entity) in respect of the Charged Interest or fails to perform and observe the covenants and conditions contained in or implied by OML 120 and 121;

5.3.    If an order be made or an effective resolution be passed for the winding-up of the Company;

5.4.    If a distress or execution be levied or enforced upon or against the Charged Interest and has not been paid within thirty (30) days;

5.5.    If the Company or the Chargor shall stop payment or shall cease or threaten to cease to carry on its business; and

5.6.    If the Company or the Chargor shall commit any breach of the covenants and conditions herein contained and on its behalf to be performed and observed except where the breach is rectified within a period of 14 (fourteen) days of formal notification of the breach on the defaulting party.

6.    **POWER OF RECEIVER**

6.1.    At any time after Charge constituted under this Deed of Legal Charge shall have become enforceable under the provisions of Clause 5 hereof the Chargee may appoint by writing under the hands of its duly appointed Attorney or under the seal of the Chargee any person whether an officer of the Chargee or not, to be a Receiver and/or Manager of the Chargor and may in like manner from time to time remove any Receiver and/or Manager so appointed and appoint another in his stead. The Receiver and/or Manager so appointed shall in addition to and without prejudice to the powers conferred upon him by law have power:

6.1.1.  To take immediate possession of the interest hereby charged (Charged Interest) and for that purpose to take or defend proceedings in the name of the Chargor or otherwise.

6.1.2.  To sell (by public auction or private treaty) lease or let or concur in selling or leasing the Charged Interest hereby charged and to carry any such sale or leasing into effect in the name and on behalf of the Chargor or otherwise.

6.1.3. To demand and recover all the income of the Charged Interest hereby charged by action, distress or otherwise to the full extent of the Charged Interest which the Chargor could dispose of and to give effectual receipts accordingly for the same to exercise any powers which may have been delegated to it by the Chargee pursuant to these presents.

6.1.4. To make any arrangements or compromises with respect to the Charged Interest which the Receiver and/or Manager shall think expedient in the interest of the Chargor.

6.1.5. To appoint managers, officers, agents, accountants, advisers, stewards, workmen and others for the aforesaid purposes or any of them upon such terms as to remuneration or otherwise as he may think proper.

6.1.6. To give valid receipts for all moneys and execute all conveyances, assignments, deeds, assurances and things which may be proper or desirable for realising the Charged Interest and to do all such other reasonable acts and things as may be considered to be conducive to any of the matters or the powers aforesaid and which the Receiver and/or Manager lawfully can do as agent for the Chargor.

6.1.7. To use the name of the Chargor for all or any of the purposes aforesaid and in any legal proceedings.

6.1.8. To execute and deliver any deed or deeds or instrument and to convey or assign the Charged Interest over which he is appointed Receiver or any interest therein in the name or on behalf of the Chargor and by deed in the name and on behalf of the Chargor to grant, assign or vest the legal title in the Charged Interest to the purchaser or lessee thereof.

6.1.9. To do all such other acts and things as may be considered by the Chargee to be incidental or conducive to any of the matters or powers aforesaid and which he or they lawfully may or can do as agent or agents of the Chargor.

6.2. A Receiver and/or Manager so appointed shall be the agent of the Chargor and the Chargor shall alone be liable for his acts and defaults and remuneration and he shall have authority and be entitled to exercise the powers hereinafter set forth and to do all such acts and things which a Receiver and/or Manager lawfully may or can do which may be necessary for or considered to be incidental or conducive to the carrying on of the business of the Chargor.

## 7.    APPLICATION OF MONEYS

7.1.    All moneys received by any such Receiver and/or Manager shall after providing for all costs and expenses incurred in carrying on the business of the company or the sale or disposal of the Charged Interest shall be applied:

FIRSTLY in payment of all cost, charges and expenses of and incidental to the appointment of the Receiver and/or Manager and the exercise by him of all or any of the powers aforesaid including the reasonable remuneration of the Receiver and/or Manager.

SECONDLY in or towards payment of all unpaid interest and all charges due under the facility.

THIRDLY in or towards payment of all principal moneys due in respect of this Deed of Legal Charge.

FOURTHLY any surplus shall be paid to the Chargor.

## 8.    COVENANTS

8.1.    The Chargor hereby covenants with the Chargee:

8.1.1.    It shall deliver to the Chargee the following (on the date hereof) in form and substance acceptable to the Chargee as security in accordance with the terms of this Charge:

a)  the original OML deed document for OML 120 and 121

8.1.2.    it shall not, except with the prior written consent of the Chargee:

i.     create or permit to exist over all or part of its interest therein any Security Interest (other than created or expressly permitted to be created under this Charge) whether ranking prior to, pari passu with or behind the security contained in this Charge;or

ii.    permit any person other than the Chargor or the Chargee or the Chargee's nominee or nominees to be registered as owners;

8.1.3.    it shall promptly forward to the Chargee all material documents relating to the Charged Interest which it may receive from time to time;

8.1.4.    until the Company has performed all of its obligations under the Facility Agreement and the loan have been paid in full, it shall not claim payment whether directly or by set-off, lien, counterclaim or otherwise of any amount which may be or has become due to the Chargor by the Company other than as contemplated and/or expressly permitted by the Facility Agreement or this Charge.

8.1.5. To keep proper documentation relating to the Charged Interest and to allow the Chargee or its authorised representatives to inspect the same at all reasonable times and from time to time to furnish such information in respect of the Charged Interest which are interests accruing from the OML 120 and 121.

8.1.6. Not to assign or charge the Charged Interest now or in the future without the prior consent in writing of the Chargor first had and obtained.

9. The Chargor hereby further covenants to indemnify the Chargee in the full amount thereof against all costs, charges and expenses (including the costs of maintaining or enforcing or endeavouring to enforce this security) properly incurred hereunder by the Chargee and all other moneys properly incurred by the Chargee in respect of the said costs, charges and expenses or otherwise and the same together with interest thereon as aforesaid shall be for the account of the Chargor.  PROVIDED that the Charge hereby created shall be in addition and without prejudice to any and every other remedy, lien or security which the Chargee but for the said charge would have for the liabilities hereby secured or any part thereof.

10. The Chargee shall not, by reason of its enforcing this security be liable to account as Chargee in possession in connection with the Charged Interest or be liable for any loss upon realisation or for any default or omission for which a Chargee in possession might be liable.

11. **APPLICABLE LAW**

This Agreement shall be construed and governed in all respects in accordance with the Laws of the Federal Republic of Nigeria.

12. **NOTICE TO THE MINISTER OF PETROLEUM.**

12.1. The Chargor shall do all such acts or things and sign, execute and produce all such documents as may now or in the future be required to obtain the consent of the Minister of Petroleum (and any other relevant authority) respectively to the Charge.

12.2. The Chargor shall furnish the Chargee with evidence of the application for consent, such as a letter duly acknowledged by the office the Ministry of Petroleum respectively.

13. **Representations and Warranties by the Chargor**

The Chargor represents and warrants to the Chargee and undertakes that:

13.1. the oil mining lease was granted to the Chargor by the President of the Federal Repbulic of Nigeria through the office of the Minister for Petroleum resources with respect to Oil fields OYO 7, 8, AND 9 for a period of twenty years commencing from February 27, 2001;

13.2.   no litigation against the Chargor or the Company is current or, pending or threatened.

13.3.   this Charge constitutes a legal, valid, binding and enforceable obligation and is a first priority security interest over the Charged interest effective in accordance with its terms;

13.4.   the execution, delivery, observance and performance by the Chargor of this Charge will not result in any violation of any law, statute, ordinance, rule or regulation applicable to it;

13.5.   as a registrable instrument the charge is expected to be registered at the Corporate Affairs Commission (CAC) within 90 days of creation of same pursuant to the provisions of Section 197 (2)(d) of the Companies and Allied Matters Act Cap C. 20 LFN 2004;

13.6.   it has obtained all the necessary authorisations and consents to enable it to enter into this Charge and the necessary authorisations and consents will remain in full force and effect at all times during the subsistence of the security constituted by this Charge;

13.6.1. the company irrevocably consents to the transfer of the Charged interest pursuant to the enforcement by the Chargee of any of its rights under this Charge;

## 14.   Power of Attorney

14.1. The Chargor hereby irrevocably and by way of security for the payment of the Secured Obligations and the performance of its obligations under this Charge appoints the Chargee as its true and lawful attorney (with full power to appoint substitute and to sub-delegate) on behalf of the Chargor and in the Chargor's own name or otherwise, at any time and from time to time, to sign, seal, deliver and complete all documents and do all acts and things which the Chargee may consider to be necessary or advisable to perfect or improve its security over the Charged interest. The Chargor hereby ratifies and confirms anything that any such attorney may lawfully execute or do in the interest of securing the facility under the Facility Agreement.

## 15.   Powers of the Chargee

### 15.1. Enforcement

The Chargee's rights of enforcement in relation to this Charge shall become immediately enforceable upon any reach by the Company of the terms of the Facility Agreement or default of any term of this Deed by the Chargor or reasonably suspesion of default) of any term of this agreement by the Chargor.  The Chargee may in its discretion enforce all or any part of this Charge in any manner it thinks fit. For the avoidance of doubt, the Chargee's rights of enforcement shall include (without limitation) the right:

15.1.1. to perfect or improve its title to and security over the Charged interest in such manner as the Chargee may in its absolute discretion determine;

15.1.2. without notice to, or further consent or concurrence by, the Chargor to assign the Charged interest or any part thereof by such method, at such place and upon such terms as the Chargee may in its absolute discretion determine, with power to postpone any such assignment and in any such case the Chargee may exercise any and all rights attaching to the Charged interest;

15.1.3. to assume ownership of the Oil mining lease (OML 120 and 121) over the oil fields OYO 7, 8 and 9 and receive the proceeds of the production of crude oil on the oil fields.;

15.1.4. to exercise any and all other rights, powers and discretions of the Chargor in respect of the Charged interest in such manner as the Chargee may in its absolute discretion determine;

15.1.5. to procure that the Chargee is registered at the Ministry of petroleum resources as the holder of the oil mining lease OML 120 and 121 for the duration of the lease;

15.1.6. otherwise to enforce any of the rights of the Chargee under or in connection with this Charge in such manner as the Chargee may in its absolute discretion determine; and

16.    **DISPUTE RESOLUTION**

16.1.    **Initial Mediation of Dispute**

In the event of a dispute between the parties to this Deed of Legal Charge, the following procedure shall be followed to resolve the dispute prior to either party pursuing other remedies:

i.    A meeting shall be held within 7 (seven) days at which all Parties are present or represented by individuals with full decision making authority regarding the matters in dispute (Initial Meeting).

ii.    If within 14 (fourteen) days following the Initial Meeting, the Parties have not resolved the dispute, the dispute shall be referred to Mediation directed by a mediator mutually agreeable to the Parties. Each Party shall bear its proportionate share of the costs of the mediator's fees.

The Parties agree to negotiate in good faith in the Initial Meeting and in the Mediation.

iii.    If after a period of 30 (thirty) days following the commencement of Mediation the Parties are unable to resolve the dispute either Party may submit the dispute to binding arbitration in accordance with clause 16.2 hereof upon 10 (ten) days prior written notice to the other Party.

16.2.    **Binding Arbitration**

i.    Either Party may submit any dispute arising out of this Deed of Legal Charge that is not resolved following the processes in clauses 16.1 (i), (ii) and (iii) above to final and binding Arbitration.

ii.    The referral of the dispute to Arbitration precludes any other cause of action by the other Party except upon the mutual agreement and consent of both Parties.

iii.    The Arbitration contemplated hereby shall be by 3 (three) Arbitrators one of whom shall be appointed by the Chargor and the Chargee respectively while the third Arbitrator shall be nominated by the two (2) Arbitrators aforesaid and the venue for the proceedings shall be Lagos.

iv.    Where there is disagreement on the appointment of the third Arbitrator, then the third Arbitrator shall be appointed by the Chief Judge of Lagos State.

v.    Each Party shall be responsible for the cost of the Arbitrator appointed by it, while the cost of the third Arbitrator and all other costs and expenses of the arbitration proceedings shall be borne equally by the Chargor, the Chargee and the Company respectively.

16.2.1.    The Arbitration shall be conducted in accordance with the Arbitration and Conciliation Act Cap A18 Laws of the Federation of Nigeria 2004.

## 17.    SEVERABILITY

17.1.    If due to a change in any applicable law or due to a decision or any other act by any competent authority, one or more terms or provisions of this Deed of Legal Charge can no longer be enforced or an amendment of one or more of the provisions of this Deed of Legal Charge is required, the Parties agree that they shall endeavour to find an alternative solution approaching as near as possible the contractual situation existing prior to such a change, decision or act.

17.2.    If one or more provisions of this Deed of Legal Charge are determined to be invalid or not enforceable, the remaining provisions shall not be affected thereby, and the Deed of Legal Charge shall be administered as though the invalid or not enforceable provisions were not a part of the Deed of Legal Charge.

## 18. WAIVERS

No Party shall be deemed to have waived any right under this Deed of Legal Charge unless that waiver is in writing, refers to this Deed of Legal Charge and is executed by that Party. Failure or forbearance to insist on the strict performance or observance by a Party of a provision of this Deed of Legal Charge shall not be construed as a waiver by that Party of any right under this Agreement. Waiver of a right by a Party under this Deed of Legal Charge shall not preclude that Party in the future from enforcing any other right whether similar or dissimilar to the right that was waived or relinquished.

## 19. NOTICES

### 19.1.    Communications in writing

Any communication to be made under or in connection with this Deed of Legal Charge shall be made in writing and, unless otherwise stated, may be made by fax or letter.

### 19.2.    Addresses

The address and fax number (and the department or officer, if any, for whose attention the communication is to be made) for any communication or document to be made or delivered under or in connection herewith is:

The contact details of the Chargor for this purpose are:

Address:       Camac House, Plot 1649, Olosa Street, Victoria Island, Lagos
Fax:           +2341
Email:
Attention:

The contact details of the Chargee for this purpose are:

Address:       Zenith Bank Plc, Plot 84/87, Ajose Adeogun Street, Victoria Island, Lagos
Fax number:    +2341
Email:
Attention:     Company Secretary, Mr. Michael Osilama Otu;

The contact details of the Company for this purpose are:

Address:       Camac House, Plot 1649, Olosa Street, Victoria Island, Lagos
Fax:           +2341
Email:
Attention:

19.3.    **Delivery**

19.3.1. Any communication or document made or delivered by one person to another under or in connection with this Deed of Legal Charge shall only be effective:

19.3.1.1.   if by way of fax, , at the time of transmission, if received before 1700 hours in the place of delivery on a Business Day, and otherwise on the next Business Day; or

19.3.1.2.   if by way of letter, 5 (five) business days after being mailed by either registered or certified mail, return receipt requested with postage prepaid.

and, if a particular department or officer is specified as part of its address details provided under Clause 19 (*Notices*), if addressed to that department or officer.

19.3.2. Any communication or document to be made or delivered to the Chargee shall be effective only when actually received by the Chargee and then only if it is expressly marked for the attention of the department or officer identified with the Chargee's signature below (or any substitute department or officer as the Chargee shall specify for this purpose).

19.4.   **Notification of address and fax number**

Each party shall promptly notify the other party of any change to its address and fax number pursuant to Clause 19.2 (*Addresses*).

19.5.   **Electronic communication**

19.5.1. Any communication to be made between the Chargor, the Chargee and the Company under or in connection with this Deed of Legal Charge may be made by electronic mail or other electronic means, if the Chargor, the Chargee, and the Company:

19.5.1.1.   agree that, unless and until notified to the contrary, this is to be an accepted form of communication;

19.5.1.2.   notify each other in writing of their electronic mail address and/or any other information required to enable the sending and receipt of information by that means;

19.5.1.3.   notify each other of any change to their address or any other such information supplied by them.

19.5.2. Any electronic communication made between the Chargor, the Chargee and the Company shall be effective only when actually received in readable form and in the case of any electronic communication made by the Chargor or the Company to the Chargee only if it is addressed in such a manner as the Chargee shall specify for this purpose.

## 20.    Miscellaneous

20.1. The charge hereby created shall not be affected by any failure by the Chargee to take any other security.

20.2. The Chargee may at all times, without discharging or in any way affecting the security hereby created, determine or vary the Chargor's obligations; grant the Chargor any time or indulgence; deal with, exchange, release, modify or abstain from perfecting or enforcing any Shares or rights which it may now or hereafter have from or against the Chargor.

## 21.    Law and Jurisdiction

21.1.    This Charge is governed by, and shall be construed in accordance with, the laws of the Federal republic of Nigeria

In **WITNESS WHEREOF** this Deed of Legal Charge has been entered into the day and year first above written

THE COMMON SEAL of the within-named Borrower/Company

**Camac Petroleum Limited**

was hereunto affixed in the presence of

_____          _____
DIRECTOR                                  DIRECTOR/SECRETARY


THE COMMON SEAL of the within-named Chargor

**Allied Energy Plc**

was hereunto affixed in the presence of

_____          _____
DIRECTOR                                  DIRECTOR/SECRETARY


THE COMMON SEAL of the within-named Chargee

**Zenith Bank Plc**

was hereunto affixed in the presence of

_____          _____
DIRECTOR                                  SECRETARY

THE WITHIN INSTRUMENT IS IN THE OPINION OF THE COMMISSIONER OF STAMP DUTIES CHARGEABLE WITH DUTY OF ₦141.775.000 AND THE DUTY THEREON HAS BEEN ASSESSED ACCORDINGLY
COMMISSIONER OF STAMP DUTIES

ORIGINAL

# DEED OF ASSIGNMENT OF RIGHTS

## BETWEEN

### CAMAC PETROLEUM LIMITED

(ASSIGNOR)

AND

### ALLIED ENERGY PLC

(ASSIGNOR)

AND

### CAMAC ENERGY INC.

(ASSIGNOR)

AND

### ZENITH BANK PLC

(ASSIGNEE)

DEED OF ASSIGNMENT OF RIGHTS ACCRUING FROM ALL COMMERCIAL CONTRACTS RELATING TO OML 120 AND 121 INCLUDING SALE AND PURCHASE AGREEMENTS, OFFTAKE AGREEMENTS AND CRUDE HANDLING AGREEMENTS ENTERED INTO BY CAMAC PETROLEUM LIMITED, ALLIED ENERGY PLC AND CAMAC ENERGY INC.

THIS DEED OF ASSIGNMENT OF RIGHTS MADE THIS ............ DAY OF ............201...

BETWEEN

**CAMAC PETROLEUM LIMITED** a limited liability company incorporated under the Laws of the Federal Republic of Nigeria, having its offices at Camac House, Plot 1649, Olosa street, Victoria Island, Lagos (hereinafter referred to as the "**First Assignor**" which expression shall where the context so admits include its successors in title and assigns) of the first Part.

AND

**ALLIED ENERGY PLC** a company incorporated under the Laws of the Federal Republic of Nigeria, having its offices at Plot 1649, Olosa street, Victoria Island, Lagos (hereinafter referred to as the "**Second Assignor**" which expression shall where the context so admits include its successors in title and assigns) of the Second Part.

AND

**CAMAC ENERGY INC.** a company incorporated under the Laws of Delaware, United States of America, having its registered address at 1330 Post Oak Boulevard, Houston, TX 77056, USA (hereinafter referred to as the "**Third Assignor**" which expression shall where the context so admits include its successors in title and assigns) of the Third Part.

IN FAVOUR OF:

**ZENITH BANK PLC** a banking company incorporated and licensed under the Laws of the Federal Republic of Nigeria whose registered office is at Zenith heights, Plot 84, Ajose Adeogun Sreet, Victoria Island, Lagos (hereinafter called the "**Assignee**" which expression shall where the context so admits include its successors in title and assigns)

Camac Petroleum Limited, Allied Energy Plc and Camac Energy Inc. (First, Second and Third Assignors) shall collectively be referred to as the Assignors.

WHEREAS:

i.    The Assignors have signed several commercial contracts including sale and purchase agreements, offtake agreements, crude handling agreements etc (collectively hereinafter called "**commercial contracts**") with respect to the OML 120 and 121.

ii.    Pursuant to the Term Loan Facility Agreement between Zenith Bank Plc and Camac Petroleum Limited dated (        ), the Assignee has agreed to provide a term loan facility to the First Assignor subject to the terms and conditions set out in the Term Loan Facility Agreement.

iii.    It is a condition precedent to the Term Loan Facility Agreement that the Assignors enter into this Deed of Assignment of all of their rights and interest in commercial contract including sale and purchase agreements, offtake agreements, crude handling agreements etc with respect to OML 120 and 121 provided that this security shall also secure any future facility that may be availed by the Assignee to the First Assignor or its Subsidiaries which facilities must be within the threshold of the value of this security.

1.  **DEFINITIONS**

Words and expressions defined in the Term Loan Facility Agreement shall unless the context otherwise requires, have the same meaning when used in this Deed.

2.  **ASSIGNMENT**

The Assignors (jointly and severally) hereby irrevocably assign absolutely to the Assignee all of its interests and rights to payment of any sum under the Commercial Contracts including sale and purchase agreements, offtake agreements, crude handling agreements etc solely as security and for the purposes of the repayment of the Term Loan Facility granted by the Assignee to the First Assignor by virtue of the Term Loan Facility Agreement dated (      ), 2014. Provided always that once the obligations under the Term Loan Facility have been fully repaid, the assignment granted hereunder will abate and the Assignee's right of payment of any sum under the Commercial Contract shall immediately revert to the Assignors herein.

For the purposes of this Clause, the Assignors covenant and undertake that an Account shall be maintained with the Assignee (in line with the Term Loan Facility Agreement between Zenith Bank Plc and Camac Petroleum Limited dated (                    )) and that all other payments that shall be due and payable to it under the Commercial Contracts shall be domiciled with the Assignee.

The assignors having assigned their rights in the commercial contracts to the assignee shall not assign those rights to a third party without obtaining the written consent of the assignee.

## 3. DOMICILATION

The Assignors hereby covenants to irrevocably domicile all proceeds of receivables from all commercial contracts with respect to OML 120 and 121 into its Account No.5050005786 and Account No. 5050009368 with the Assignee and has instructed the parties to the commercial contracts to do so.

## 4. LAW

This Agreement shall be construed and governed in all respects in accordance with the Laws of the Federal Republic of Nigeria.

## 5. NON RESTRICTION AND/OR LIMITATIONS

The Assignors (jointly and severally) hereby covenant that it does not have any restriction or limitation with respect to the assignment of its rights/interest in the commercial contracts and that where such restriction or limitation exist, it has obtained the requisite consent or waiver of the limitation provision from the other party.

The Assignors jointly and severally hereby indemnify the Assignee against any loss or injury or damage it may suffer as a consequence of breach by any of the Assignors of this provision or any other provision of this Deed.

## 6. REPRESENTATIONS & WARRANTIES

i. The Assignors represent and warrant that the Person executing this Agreement on its behalf has been duly authorised to bind it. The Assignors further represent and warrant that it has the corporate capacity to execute this Agreement and perform its obligations hereunder, and is duly registered or incorporated, validly existing and in good standing.

ii. The Assignors represent and warrant that the execution, delivery and performance of this Agreement will not conflict with or violate or constitute a breach or default under any agreement governing the organisation, management, business or affairs of the Party, including its by-laws, memorandum of association or articles of association, or any agreement or instrument to which it is a party, or, to its best knowledge any Applicable Law, administrative regulation or court order, judgment or decree applicable to it.

iii. The Assignors represent and warrant that it is not subject to an order by a court within the applicable jurisdiction or subject to an effective resolution for the reorganisation under any Bankruptcy law, dissolution, liquidation, or winding up or has become insolvent or bankrupt, made an assignment for the benefit of creditors or appointed a receiver for a substantial part of its assets.

iv. All covenants, warranties, representations, indemnities and other obligations of whatsoever kind given, made or undertaken by the Assignors shall continue in full force and effect notwithstanding any change in the composition of the Assignors.

## 7. ARBITRATION

The parties hereto agree that any dispute arising from this Deed shall be resolved in line with the Dispute Resolution and Arbitration provisions of the Term Loan Facility Agreement between Zenith Bank Plc and Camac Petroleum Limited dated (                    ).

## 8. SEVERABILITY

i.   If due to a change in any applicable law or due to a decision or any other act by any competent authority, one or more terms or provisions of this Agreement can no longer be enforced or an amendment of one or more of the provisions of this Agreement is required, the Parties agree that they shall endeavour to find an alternative solution approaching as near as possible the contractual situation existing prior to such a change, decision or act.

ii.  If one or more provisions of this Agreement are determined to be invalid or not enforceable, the remaining provisions shall not be affected thereby, and the Agreement shall be administered as though the invalid or not enforceable provisions were not a part of the Agreement.

## 9. WAIVERS

No Party shall be deemed to have waived any right under this Agreement unless that waiver is in writing, refers to this Agreement and is executed by that Party. Failure or forbearance to insist on the strict performance or observance by a Party of a provision of this Agreement shall not be construed as a waiver by that Party of any right under this Agreement. Waiver of a right by a Party under this Agreement shall not preclude that Party in the future from enforcing any other right whether similar or dissimilar to the right that was waived or relinquished.

## 10. NOTICES

All notices and other communications required under this agreement to be in writing shall be addressed to the authorized representatives of the parties at the addresses set out above, or to such other addresses which a party may from time to time notify the other party pursuant hereto.  Such notices and communications shall be deemed given upon:(a) actual receipt, (b) 5 (five) business days after being mailed by either registered or certified mail, return receipt requested with postage prepaid, (c) if by electronic mail, upon transmission (d) when sent by facsimile with receipt confirmed by telephone.

IN WITNESS WHEREOF the parties hereto have caused their respective Common Seals to be hereunto affixed the day and year first above written.

The Common Seal of the within named First Assignor
**CAMAC PETROLEUM LIMITED**
was hereunto affixed in the presence of:

DIRECTOR

DIRECTOR

The Common Seal of the within named Second Assignor
**ALLIED ENERGY PLC**
was hereunto affixed in the presence of:

DIRECTOR

DIRECTOR

The Common Seal of the within named Third Assignor
**CAMAC ENERGY INC.**
was hereunto affixed in the presence of:

AUTHORIZED OFFICER

THE WITHIN INSTRUMENT IS IN THE OPINION OF THE COMMISSIONER OF STAMP DUTIES CHARGEABLE WITH DUTY OF N1,000 AND THE DUTY THEREON HAS BEEN ASSESSED ACCORDINGLY.

COMMISSIONER OF STAMP DUTIES

SECRETARY

CAMAC Energy Inc.
CORPORATE
SEAL
1979
DELAWARE

The Common Seal of the within named Assignee
**ZENITH BANK PLC**
was hereunto affixed in the presence of:

DIRECTOR

SECRETARY

RC 180681



# CORPORATE AFFAIRS COMMISSION
## FEDERAL REPUBLIC OF NIGERIA

## Certificate of Registration of

### A DEED OF LEGAL CHARGE

## COMPANIES AND ALLIED MATTERS ACT 1990
*Pursuant to section 197, 198 (2), 203 (1)*

### ALLIED ENERGY PLC

*It is hereby certified that* A DEED OF LEGAL CHARGE
*Dated the Fourteenth day of May, 2015
and created by the above named company, incorporated in Nigeria
securing the sum of Three Billion, Nine Hundred and Forty
Million Naira (N3,940,000,000) in favour of Zenith Bank Plc,
Plot 84, Ajose Adeogun Street, Victoria Island, Lagos, has been
registered
Given under the seal of the Corporate Affairs Commission Abuja,
Nigeria*

*This Twenty-Sixth day of May, 2015*

Receipt No: CAC/GTB 0544923
For =N=78,800,000.00



**BELLO MAHMUD**



Registrar - General

816825

**RC 860957**



# CORPORATE AFFAIRS COMMISSION
## FEDERAL REPUBLIC OF NIGERIA

# Certificate of Registration of

## <u>A DEED OF ALL ASSETS DEBENTURE</u>

## COMPANIES AND ALLIED MATTERS ACT 1990
*Pursuant to section 197, 198 (2), 203 (1)*

### CAMAC PETROLEUM LIMITED

*It is hereby certified that A DEED OF ALL ASSETS DEBENTURE Dated the Twenty-Fifth day of November, 2014 and created by the above named company, incorporated in Nigeria securing the sum of One Billion, Six Hundred Million Naira (N1,600,000,000) in favour of Zenith Bank Plc, Plot 84, Ajose Adeogun Street, Victoria Island, Lagos, has been registered Given under the seal of the Corporate Affairs Commission Abuja, Nigeria*

*This Twelfth day of December, 2014*

Receipt No: CAC/GTB 548347
For =N=16,000,000 00



**BELLO MAHMUD**



784289

Registrar – General

**Stories by Ejiofor Alike**

Following the order of a Federal High Court sitting in Lagos, which enforced and recognised a final award rendered at the London Court of International Arbitration (LCIA) on February 14, 2017 in favour of Nigerian Agip Exploration Limited (NAE) in respect of the Oyo oilfield in Oil Mining lease (OML) 120, the Nigerian subsidiary of the Italian firm has moved to take over the field, THISDAY has learnt.

Justice Hadiza R. Shagari of the Federal High Court had ordered the NAOC to take over OYO oilfield after a protracted legal dispute between the subsidiary of the Italian oil firm and two Nigerian Companies - Allied Energy Plc and Camac International (Nig) Ltd.

According to the judgment of the Court in the suit numbered FHC/L/CS/625/2017, the order was sequel to the ruling of the London Court of International Arbitration (LCIA) which arose from a dispute on a Sale and Purchase Agreement (SPA) concluded in June 2012 between Nigerian Agip Exploration Limited (NAE) as seller and Allied Energy Plc as purchaser.

In the court order signed by the Registrar, Joseph Olujoye, the judge ordered that leave be granted to the claimant/applicant that London Court of International Arbitration Final Award be recognised and enforced by the court.

The judge ruled that its decision was based on Section 31 (1) and (2); Section 51 (1) and Section 57 (1) of the Arbitration and Conciliation Act CAP A18 Volume 1, Laws of the Federation of Nigeria.

Justice Shagari ruled that the court made the order "upon reading the affidavit in support of the ex-parte originating summons sworn to by Ogbene Abang, Nigerian, a senior legal officer and a staff of NAE .... and the exhibits attached thereto marked exhibits NAE 1A – NAE5 the written address in support of the ex-parte originating summons signed by Chief TJ Onomigbo Okpoko (SAN) ...After hearing Chief TJO Okpoko (SAN) with Charles Ajuyah (SAN) and Eguono Erhum counsel for the claimant applicant moved in terms of ex-parte originating summons and adopted the written address filed as the argument.

And the court having listened and considered the submission of the learned

counsel and delivered ruling on May 11, 2017."

Under the Sale and Purchase Agreement (SPA), Nigerian Agip Exploration Limited had transferred to Allied Energy Plc the entirety of its interests and rights in the two Oil Mining Leases 120 and 121 in the deep offshore region of Nigeria.

Payment of part of the price for the transferred interests and rights was deferred to be paid by Allied Energy Plc to Nigerian Agip Exploration Limited.

Nigerian Agip Exploration Limited filed the arbitration at the London Court of International Arbitration in accordance with the terms for submission to arbitration as provided for in the SPA.

The arbitration was finally concluded on February 14, 2017 when the Final Award was issued by the arbitrators.

The OML 120 contains the Oyo Field which is located approximately 75 kilometres from the coast in water depths ranging from 200 to 500 metres.

The Oyo Field commenced production in December 2009 and the wells are connected to the Armada Perdana FPSO, a Floating Production Storage Offloading (FPSO) unit.

## IN THE FEDERAL HIGH COURT
## HOLDEN AT LAGOS, NIGERIA

### SUIT NO: FHC/L/CS/625/2017

IN THE MATTER OF THE ARBITRATION AND CONCILIATION ACT, CAP, A18, LAWS OF THE FEDERATION OF NIGERIA (LFN), 2004 AND IN THE MATTER OF THE RECOGNITION AND ENFORCEMENT OF THE FINAL AWARD IN LCIA ARBITRATION NO: 132498.

BETWEEN:

NIGERIA AGIP EXPLORATION LTD          ...... CLAIMANT/ APPLICANT

AND

1.  ALLIED ENERGY PLC
2.  CAMAC INTERNATIONAL (NIGERIA) LTD ⎦ RESPONDENTS

### ORDER

UPON THIS EX-PARTE ORIGINATING SUMMONS dated the 18th day of April, 2017 and filed on the 20th day of April, 2017 brought on behalf of the Claimant/Applicant praying the Honourable Court for the following Order:

1.  For **LEAVE** that the London Court of International Arbitration Final Award made in London on 14th February, 2017 in LCIA ARBITRATION NO: 132498.

BETWEEN:

Nigeria Agip Exploration Ltd (as Claimant)

AND

And the Court having listened and considered the

submission of the Learned Counsel and delivered Ruling

on the 11th day of May, 2017

## IT IS HEREBY ORDERED

1. That **LEAVE** be granted to the Claimant/Applicant that the London Court of International Arbitration Final Award made in London on 14th February, 2017 in LCIA ARBITRATION NO: 132498.

   BETWEEN:

   Nigeria Agip Exploration Ltd

   AND

   Allied Energy PLC
   CAMAC International Ltd
   CAMAC International (Nig) Ltd

   be recognized and enforced by this Honourable Court pursuant to Section 31(1) and (2), Section 51(1) and (2) and Section 57 (1) of the Arbitration and Conciliation Act CAP A18, Volume 1, Laws of the Federation of Nigeria.

   **ISSUED AT LAGOS**, under the hand of

   the presiding judge and the seal of this

   Honourable Court this Thursday the 11th day of

   May, 2017.

   **JOSEPH OLUJOYE**
   **REGISTRAR**

Allied Energy PLC

CAMAC International Ltd    .. (as Respondents)
CAMAC International (Nig) Ltd

be recognized and enforced by this Honourable
Court pursuant to Section 31(1) and (2), Section
51(1) and (2) and Section 57 (1) of the Arbitration
and Conciliation Act CAP A18, Volume 1, Laws of
the Federation of Nigeria.

2.      And for such further order(s) as the Honourable
Court may deem fit to make in the circumstances.

UPON READING THE AFFIDAVIT IN SUPPORT

OF THE EX-PARTE ORIGINATING SUMMONS

sworn to by Ogbene Abang, Nigerian, a Senior Legal

Officer and a Staff of Nigerian Agip Exploration Ltd of

No. 1, Elsie Femi Pearse Street, Victoria Island, Lagos

State and the Exhibits attached thereto marked Exhibits

NAE1A - NAE5 the written address in support of the

Ex-parte Originating Summons signed by Chief T.J

Onomigbo Okpoko OON (SAN) all filed at the Court

Registry on the 20th day of April, 2017.

AND AFTER HEARING Chief T.J.O Okpoko (SAN)

with Charles Ajuyah (SAN) and Eguono Erhun Counsel

for the Claimant Applicant moved in terms of Ex-parte

**IN THE FEDERAL HIGH COURT OF NIGERIA**
**HOLDEN AT LAGOS.**

**CERTIFICATE OF JUDGEMENT**
**OF FINAL AWARD OF THE LONDON COURT OF INTERNATIONAL ARBITRATION**
**MADE ON 14TH FEBRUARY 2017 IN LCIA ARBITRATION NO. 132498.**

| FULL TITLE | FULL NAME OF THE COURT ISSUING | FORM OR NATURE OF CLAIM | NAME AND ADDRESS OF PARTY ORDERED TO PAY MONEY OR TO DO OR NOT TO DO ANY ACT. | NAME AND ADDRESS OF WHOM PAYMENTS IS MADE IN HIS FAVOUR | DATE OF AWARD | ABSTRACT OF AWARD |
|---|---|---|---|---|---|---|
| LCIA ARBITRATION NO. 132498 IN THE MATTER OF THE RECOGNITION AND ENFORCEMENT OF THE FINAL AWARD IN LCIA ARBITRATION NO. 132498 BETWEEN: NIGERIAN AGIP EXPLORATION LTD AND ALLIED ENERGY LC, AND CAMAC INTERNATIONAL (NIGERIA) LTD | BEFORE THE ARBITRATION TRIBUNAL AT LONDON COURT OF INTERNATIONAL ARBITRATION PRESIDED BY - THOMAS WEBSTER - PROF. JULIAN LEW QC, AND - LORD LEONARD HOFFMANN | CLAIMANT'S CLAIMS FOR DECLARATORY RELIEFS:- A. DISMISSING THE 1ST RESPONDENTS DEFENCE AND REQUESTS FOR RELIEFS AND DIRECTIONS. B. i &ii THE TRIBUNAL HAS JURISDICTION OVER THE ADJUSTMENTS CLAIM AND THE DEFERRED PAYMENT CLAIMS. C. (iii) PURSUANT TO CLAUSE 5.3 AND 14.1 OF THE SPA, THE 1ST RESPONDENT IS OBLIGED TO PAY TO THE CLAIMANT THE AMOUNT OF THE ADJUSTMENTS SET OUT IN THE FINAL ADJUSTMENT STATEMENT, TOGETHER WITH INTEREST THEREON AT THE DEFAULT RATE, PAYABLE ON THE TOTAL AMOUNT OF THE FIRST, SECOND AND THIRD PAYMENT DATES AND ACCRUING UNTIL THE DATE OF ACTUAL PAYMENT. D. (iv) FURTHER OR ALTERNATIVELY, PURSUANT TO CLAUSES 11.2 AND 14.1 OF THE SPA, THE 1ST RESPONDENT IS LIABLE FOR AND OBLIGED TO INDEMNIFY THE CLAIMANT IN RESPECT OF ANY ITEMS CLAIMED ON THE FINAL ADJUSTMENTS | ALLIED ENERGY PLC. PLOT 1649 OLOSA STREET, CAMAC HOUSE VICTORIA ISLAND, LAGOS. CAMAC INTERNATIONAL (NIG) LTD PLOT 1649 OLOSA STREET, CAMAC HOUSE VICTORIA ISLAND, LAGOS. | NIGERIAN AGIP EXPLORATION LIMITED, NO. 1, ELSIE FEMI PEARSE STREET VICTORIA ISLAND, LAGOS | 14TH FEBRUARY, 2017. | 1. CAMAC INTERNATIONAL LIMITED TO PAY CLAIMANT USD$50MILLION AS DEFERRED PAYMENT GUARANTEEBWITH RESPECT OF THIRD OIL DEFERRED PAYMENT. 2. CAMAC INTERNATIONAL LIMITED TO PAY THE CLAIMANT INTEREST ON THE CLAIMANT INTEREST ON THE THREE INSTALMENTS OF USD$550 MILLION FROM 7 JANUARY, 2014, 7 JANUARY, 2015 AND 6 JANUARY, 2016 AT THE AGREED RATE PLUS 2% COMPOUNDED ON A MONTHLY BASIS UNTIL SUM AMOUNT IS PAID. 3. CAMAC INTERNATIONAL LIMITED TO PAY INTEREST ON THE AMOUNT DUE UNDER THE ADJUSTMENTS GUARANTEE OF USD$1,255,839.25 PLUS ACCRUED INTEREST AS AT 28 |

1

15

PAYMENT DATES.

(ii) THE SUM OF US$2,782,522.27 (TWO MILLION, SEVEN HUNDRED AND EIGHTY TWO THOUSAND, FIVE HUNDRED AND TWENTY TWO US DOLLARS AND SEVENTY SEVEN CENTS) BEING THE AMOUNT PAID BY THE CLAIMANT TO THIRD PARTY CONTRACTORS IN RESPECT OF THE ADDITIONAL OYO 5 GSO LIABILITIES,

(iii) THE SUM OF US$150,000,000. (ONE HUNDRED AND FIFTY MILLION US DOLLARS) BEING THE AMOUNT OF THE FIRST, SECOND AND THIRD DEFERRED PAYMENTS.

(iv) INTEREST AT THE DEFAULT RATE ON ALL AMOUNTS DUE FROM THE RELEVANT PAYMENT DATES UP TO THE DATE OF THE TRIBUNAL'S AWARD, AND ACCRUING AT THE DEFAULT RATE ON A DAILY BASIS THEREAFTER UNTIL THE DATES AS THE TRIBUNAL SHALL DETERMINE TO BE APPROPRIATE,

(v) ALTERNATIVELY, DAMAGES CORRESPONDING TO THE AMOUNTS SET OUT ABOVE, PLUS INTEREST ON DAMAGES ACCRUING FROM THE DATE ON WHICH THE CORRESPONDING AMOUNTS FELL DUE.

C. d) AN AWARD ORDERING THE RESPONDENTS TO PAY ALL COST AND EXPENSES INCURRED IN CONNECTION WITH THIS ARBITRATION, TOGETHER WITH INTEREST THEREON, INCLUDING BUT NOT LIMITED TO:

(i) ALL LEGAL COSTS AND

THAT:

a. 17.1.2 THE TRIBUNAL HAS NO SUBJECT MATTER JURISDICTION OVER NAE'S FINAL ADJUSTMENTS STATEMENT CLAIM AGAINST ALLIED.

b. '17.1.2 THE TRIBUNAL DOES HAVE JURISDICTION TO DETERMINE WHETHER PARAGRAPH 15(2)(I) OF THE SECOND PARTIAL AWARD RESULTS IN AN OVERPAYMENT TO NAE.

c. 17.1.3 A DECLARATION THAT OR ORDER IN RESPECT OF ANY OVERPAYMENT IN RELATION TO PARAGRAPH 15(2)(I) OF THE SECOND PARTIAL AWARD.

d. 17.1.4 THE RESPONDENTS DO NOT OWE ANY SUM TO THE CLAIMANT.

e. 17.1.5 THE CLAIMANT IS LIABLE TO PAY DAMAGES TO ALLIED AND CINL IN RESPECT OF THE LOSSES SUFFERED BY ALLIED, CINL AND THEIR AFFILIATES RESULTING FROM NAE'S BREACHES OF THE PSC AND/OR ANY OTHER AGREEMENT.

f. 17.1.6 THE CLAIMANT/NAE IS LIABLE TO INDEMNIFY ALLIED PURSUANT TO CLAUSE 11 OF THE SPA AGAINST-

(a) THE DAMAGES AND LOSSES SUSTAINED BY ALLIED AND IT AFFILIATES AS A RESULT OF NAE'S BREACHES OF THE PSC IN THE AMOUNT OF US$506.1 MILLION ALTERNATIVELY SUCH AMOUNT AS THE TRIBUNAL FINDS TO BE DUE TO ALLIED AND/OR ITS AFFILIATES; AND

(b) THE PENALTY OF US1,464,839 IMPOSED ON ALLIED BY THE DPR IN RESPECT OF THE FLARING OF GAS BY NAE ON OYO FIELD.

RESPONDENTS' MONETARY RELIEF:

(c) INTEREST ON THE RESPONDENT'S LEGAL COSTS AT THE AGREED RATE OR THE RATE IN ARTICLE 10.1 OF THE PSC, ALTERNATIVELY AT A RATE DETERMINED TO BE APPROPRIATE BY THE TRIBUNAL.

(d) ALL OTHER PROFESSIONAL FEES, INCLUDING THE FEES AND DISBURSEMENTS OF THE RESPONDENTS' REPLY.

(e) ALL COST OF THE ARBITRATION, INCLUDING THOSE OF THE TRIBUNAL AND THE LCIA, AND

(f) ANY AND ALL OTHER ASSOCIATED COSTS.

I HEREBY CERTIFY THAT THIS CERTIFICATE CORRECTLY AND FULLY SETS FORTH THE PARTICULARS OF FINAL AWARD OF THE LONDON COURT OF INTERNATIONAL ARBITRATION, LCIA ARBITRATION NO. 132498 DELIVERED ON THE 14TH DAY OF FEBRUARY 2017 AND REGISTERED AS JUDGEMENT OF THE FEDERAL HIGH COURT, LAGOS ON 11TH MAY, 2017 IN SUIT NO. FHC/L/CS/625/2017.

DATED AT LAGOS THIS.........30TH.........DAY OF.............MAY 2017

E. C. ADAKA
DEPUTY CHIEF REGISTRAR
FOR: CHIEF REGISTRAR



ZENITH

ZENITH BANK PLC
(RC 150014)

HEAD OFFICE
Zenith Heights, Plot 84/87 Ajose Adeogun Street,
P. O. Box 75315, Victoria Island, Lagos.
Tel: (01) 2788000, 4646000 2928000
www.zenithbank.com | SWIFT: ZEIBNGLA.

February 14, 2018

The Managing Director
Erin Petroleum Nigeria Limited
Plot 1649 Olosa Street
Victoria Island
Lagos

<u>Attention: Mr. Femi Ayoade</u>

Dear Sir,

<u>IN THE MATTER OF THE RECOGNITION AND ENFORCEMENT OF THE FINAL AWARD IN LCIA
ARBITRATION NO. 132498 - IN RE SUIT NO. SUIT NO. FHC/L/CS/625/2017 BETWEEN NIGERIA
AGIP EXPLORATION LTD V. ALLIED ENERGY PLC & ANOR</u>

Our attention has been drawn to a Final Award by the London Court of International Arbitration
(LCIA), which was recognized and entered at the Federal High Court, Ikoyi, Lagos, in Suit No.
FHC/L/CS/625/2017, as a final Judgment in favour of Nigeria Agip Exploration Ltd (Claimant), for the
cumulative sum of USD$101,638,966.67 (One Hundred and One Million, Six Hundred and Thirty
Eight Thousand, Nine Hundred and Sixty Six United States Dollars, Sixty Seven Cents) and
interest thereon compounded on a monthly basis against Camac International (Nigeria) Ltd (Erin
Petroleum Nigeria Ltd); the cumulative sum of USD$175,123,614.85 (One Hundred and Seventy
Five Million, One Hundred and Twenty Three Thousand, Six Hundred and Fourteen United
States Dollars, Eighty Five Cents) and interest thereon compounded on a monthly basis against
Allied Energy Plc; and the sums of £7,119,290.99 (Seven Million, One Hundred and Nineteen
Thousand, Two Hundred and Ninety Pounds, Ninety Nine Pence); €550,796.01 (Five Hundred
and Fifty Thousand, Seven Hundred and Ninety Six Euro, One Cent) and USD$5,900 (Five
Thousand, Nine Hundred United States Dollars) against Camac International (Nig.) Ltd (Erin
Petroleum Nigeria Ltd) and Allied Energy Plc jointly and severally. A copy of the Judgment of the
Court is herein attached.

You will recall that the proceeds of the contracts which are now being attached by this judgment
constitutes a major source of repayment of the Credit Facilities granted by the Bank to your
goodselves, and this is capable of jeopardizing the repayment of the facility.


ZENITH

In view of this recent worrisome developments and considering the provisions of the Loan Agreement between your Company and the Bank, we write to invite you for an urgent meeting with the Management of the Bank on **February 22, 2018 by 10am** to enable us evaluate the impact of the Judgment on your repayment obligation to the Bank.

Kindly confirm your availability for the meeting by telephone on 01-2781971 or 01-2781980

Yours faithfully,
ZENITH BANK PLC

WOLE BABALOLA
HEAD, LOAN REVIEW DEPT

MICHAEL OSILAMA OTU
HEAD, LEGAL/COMPANY SECRETARY

Attd

2

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

# FORM 8-K

### CURRENT REPORT

Pursuant to Section 13 or 15(d) of the
Securities Exchange Act of 1934

Date of Report (Date of earliest event reported): April 25, 2018

# ERIN ENERGY CORPORATION
(Exact name of registrant as specified in its charter)

| Delaware | 001-34525 | 30-0349798 |
|---|---|---|
| (State or other jurisdiction of incorporation) | (Commission File Number) | (I.R.S. Employer Identification No.) |

1330 Post Oak Blvd., Suite 2250, Houston, Texas 77056
(Address of principal executive offices) (Zip Code)

(713) 797-2940
(Registrant's telephone number, including area code)

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions ( *see* General Instruction A.2 below):

__ Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

__ Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

__ Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

__ Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

**Item 1.03 Bankruptcy**

On April 25, 2018 Erin Energy Corporation and certain of its subsidiaries (together "Erin Energy" or the "Company"), filed voluntary petitions under Chapter 11 of the United States Code (the "Code") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Court") to pursue a plan of reorganization (the "Reorganization Plan"). Copies of those petitions are included in this filing.

Erin Energy and its subsidiaries will continue to operate under the jurisdiction of the Court and in accordance with the applicable provisions of the Code and the orders of the Court. To ensure ordinary operations, Erin Energy is seeking approval from the Court for a variety of motions, including authority to maintain bank accounts and other customary relief. The Company is in the process of looking for a source of debtor in possession financing to provide it with the necessary working capital to continue its operations and move towards a successful Reorganization Plan.

Subject to the approval of the Court, the Company plans to file a Reorganization Plan with the Court in the near term with a goal to work expeditiously with all parties involved to put together a plan that will result in Erin Energy's emergence from Chapter 11 as soon as practically possible.

**Item 9.01       Exhibits.**

| | |
|---|---|
| 99.1 | ERN Voluntary Petition for Non-Individuals Filing Bankruptcy |
| 99.2 | EEKL Voluntary Petition for Non-Individuals Filing Bankruptcy |
| 99.3 | EEL Voluntary Petition for Non-Individuals Filing Bankruptcy |
| 99.4 | EPNL Voluntary Petition for Non-Individuals Filing Bankruptcy |

## SIGNATURES

Pursuant to the requirements of the Exchange Act, the registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

ERIN ENERGY CORPORATION

By: /s/ Heidi Wong
    Heidi Wong
    Senior Vice President

Date: April 26, 2018

Case 18-32106   Document 1   Filed in TXSB on 04/25/18   Page 1 of 13

**Fill in this information to identify your case:**

United States Bankruptcy Court for the:

SOUTHERN DISTRICT OF TEXAS

Case number (if known): _____          Chapter    11

☐ Check if this an
   amended filing

Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy          4/16

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and case number (if known).
For more information, a separate document, Instructions for Bankruptcy Forms for Non-Individuals, is available.

| | | | |
|---|---|---|---|
| 1. | Debtor's name | **Erin Energy Corporation** | |
| 2. | All other names debtor used in the last 8 years<br><br>Include any assumed names, trade names and doing business as names | FDBA  Camac Energy Inc.<br>FDBA  Pacific Asia Petroleum, Inc. | |
| 3. | Debtor's federal Employer Identification Number (EIN) | 30-0349798 | |
| 4. | Debtor's address | Principal place of business<br><br>1330 Post Oak Boulevard, Suite 2250<br>Houston, TX 77056<br>Number, Street, City, State & ZIP Code<br><br>Harris<br>County | Mailing address, if different from principal place of business<br><br><br>P.O. Box, Number, Street, City, State & ZIP Code<br><br>Location of principal assets, if different from principal place of business<br><br>Number, Street, City, State & ZIP Code |
| 5. | Debtor's website (URL) | www.erinenergy.com | |
| 6. | Type of debtor | ■ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))<br><br>☐ Partnership (excluding LLP)<br><br>☐ Other. Specify: | |

Debtor     **Erin Energy Corporation**                                          Case number (if known)
           Name

7.   Describe debtor's business     A   Check one:

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

■ None of the above

B   Check all that apply:

☐ Tax-exempt entity (as described in 26 U.S.C. §501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. §80a-3)

☐ Investment advisor (as defined in 15 U.S.C. §80b-2(a)(11))

C.  NAICS (North American Industry Classification System) 4-digit code that best describes debtor.
    See http://www.uscourts.gov/four-digit-national-association-naics-codes.

    __2111__

8.   Under which chapter of the     Check one:
     Bankruptcy Code is the
     debtor filing?                 ☐ Chapter 7

                                    ☐ Chapter 9

                                    ■ Chapter 11   Check all that apply:

                                    ☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,566,050 (amount subject to adjustment on 4/01/19 and every 3 years after that).

                                    ☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D). If the debtor is a small business debtor, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if all of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

                                    ☐ A plan is being filed with this petition.

                                    ☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

                                    ■ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11 (Official Form 201A) with this form.

                                    ☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

                                    ☐ Chapter 12

9.   Were prior bankruptcy          ■ No.
     cases filed by or against
     the debtor within the last 8   ☐ Yes.
     years?

     If more than 2 cases, attach a
     separate list                  District _____   When _____   Case number _____

                                    District _____   When _____   Case number _____

10.  Are any bankruptcy cases       ☐ No
     pending or being filed by a
     business partner or an         ■ Yes.
     affiliate of the debtor?

     List all cases. If more than 1
     attach a separate list         Debtor   **See Attachment**                          Relationship _____

                                    District _____   When _____   Case number, if known _____

Debtor   **Erin Energy Corporation**                                    Case number (if known)
         Name

11. **Why is the case filed in       Check all that apply:
     this district?**
                                     ■ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately
                                       preceding the date of this petition or for a longer part of such 180 days than in any other district.

                                     ☐ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

12. **Does the debtor own or         ■ No
     have possession of any          ☐ Yes.  Answer below for each property that needs immediate attention. Attach additional sheets if needed.
     real property or personal
     property that needs                     **Why does the property need immediate attention?** (Check all that apply.)
     immediate attention?**
                                             ☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.
                                               What is the hazard?

                                             ☐ It needs to be physically secured or protected from the weather.

                                             ☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example,
                                               livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

                                             ☐ Other

                                             **Where is the property?**
                                                                                    Number, Street, City, State & ZIP Code

                                             **Is the property insured?**

                                             ☐ No
                                             ☐ Yes.   Insurance agency
                                                      Contact name
                                                      Phone

■ **Statistical and administrative information**

13. **Debtor's estimation of         Check one:
     available funds**
                                     ■ Funds will be available for distribution to unsecured creditors.

                                     ☐ After any administrative expenses are paid, no funds will be available to unsecured creditors.

14. **Estimated number of      ☐ 1-49                    ☐ 1,000-5,000              ☐ 25,001-50,000
     creditors**               ☐ 50-99                   ☐ 5001-10,000             ☐ 50,001-100,000
                               ☐ 100-199                 ☐ 10,001-25,000           ☐ More than 100,000
                               ■ 200-999

15. **Estimated Assets**       ☐ $0 - $50,000            ☐ $1,000,001 - $10 million          ☐ $500,000,001 - $1 billion
                               ☐ $50,001 - $100,000      ☐ $10,000,001 - $50 million         ☐ $1,000,000,001 - $10 billion
                               ☐ $100,001 - $500,000     ☐ $50,000,001 - $100 million        ☐ $10,000,000,001 - $50 billion
                               ☐ $500,001 - $1 million   ■ $100,000,001 - $500 million       ☐ More than $50 billion

16. **Estimated liabilities**  ☐ $0 - $50,000            ☐ $1,000,001 - $10 million          ■ $500,000,001 - $1 billion
                               ☐ $50,001 - $100,000      ☐ $10,000,001 - $50 million         ☐ $1,000,000,001 - $10 billion
                               ☐ $100,001 - $500,000     ☐ $50,000,001 - $100 million        ☐ $10,000,000,001 - $50 billion
                               ☐ $500,001 - $1 million   ☐ $100,000,001 - $500 million       ☐ More than $50 billion

Case 18-32106   Document 1   Filed in TXSB on 04/25/18   Page 4 of 13

Debtor    **Erin Energy Corporation**                                                    Case number (if known)
          Name

■  Request for Relief, Declaration, and Signatures

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature
of authorized
representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    **April 25, 2018**
               MM / DD / YYYY

X  /s/ Femi Ayoade                                    **Femi Ayoade**
   Signature of authorized representative of debtor    Printed name

Title    **Chief Executive Officer**

**18. Signature of attorney**

X  /s/ Matthew Okin                          Date   **April 25, 2018**
   Signature of attorney for debtor                 MM / DD / YYYY

**Matthew Okin**
Printed name

**Okin Adams LLP**
Firm name

**1113 Vine St., Suite 201
Houston, TX 77002**
Number, Street, City, State & ZIP Code

Contact phone   **(713) 228-4100**        Email address   **info@okinadams.com**

**00784695**
Bar number and State

## RESOLUTION OF THE BOARD OF DIRECTORS
## OF ERIN ENERGY CORPORATION

The undersigned, being the majority of the Board of Directors (the "Board") of Erin Energy Corporation, a Delaware corporation (the "Company"), do hereby consent to the adoption of the following resolutions, which resolutions shall be deemed to be adopted as of the date hereof and to have the same force and effect as if such resolutions were adopted by the Board at a duly convened meeting held for such purpose.

WHEREAS, the Board reviewed the materials presented by the management of the Company regarding the liabilities and liquidity situation of the Company, the strategic alternatives available to it, and the effect of the foregoing on the Company's business.

WHEREAS, the Board has had the opportunity to consult with the management of the Company and fully consider each of the strategic alternatives available to the Company.

WHEREAS, the Board deems it to be in the best interests of the Company to file a bankruptcy petition under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") for the purpose of restructuring the Company's business affairs (the "Chapter 11 Case").

NOW, THEREFORE, IT IS HEREBY RESOLVED THAT:

### *Filing of Bankruptcy Petition*

In the judgment of the Board, it is in the best interests of the Company, its creditors, employees and other interested parties that a petition be filed seeking relief under chapter 11 of the Bankruptcy Code;

Femi Ayoade or any other duly appointed officer of the Company (the "Authorized Officer") is hereby authorized and empowered on behalf of, and in the name of the Company to execute and verify or certify a petition under chapter 11 of the Bankruptcy Code and to cause the same to be filed in the United States Bankruptcy Court for the Southern District of Texas at such time as the Authorized Officer shall determine;

The Authorized Officer is hereby authorized and empowered on behalf of the Company to execute and file all petitions, schedules, lists, and other papers, and to take any and all actions that the Authorized Officer may deem necessary or proper in connection with the Chapter 11 Case;

The Authorized Officer is hereby authorized and empowered on behalf of, and in the name of the

Company to execute any and all plans of reorganization under chapter 11 of the Bankruptcy Code, including any and all modifications, supplements, and amendments thereto, in such form and containing such terms as the Board shall hereafter approve, and to cause the same to be filed in the United States Bankruptcy Court for the Southern District of Texas, at such time as the Authorized Officer shall determine;

### *Retention of Professionals*

The law firm of Okin & Adams LLP shall be employed as counsel to the Company under a general retainer; and is hereby approved to act as general bankruptcy counsel for the Company in the Chapter 11 Case; and

The law firm of The Loev Law Firm, PC shall be employed as counsel to the Company under a general retainer; and is hereby approved to act as securities law counsel for the Company in the Chapter 11 Case; and

The Authorized Officer be, and hereby is, authorized and empowered on behalf of, and in the name of the Company, to retain and employ other attorneys, investment bankers, accountants, and other professionals to assist the Company in its Chapter 11 Case on such terms as the Authorized Officer deems necessary or proper.

IN WITNESS WHEREOF, the undersigned has executed this written consent as of the 12th day of April, 2018.

By: _____
Frank C. Ingriselli

By: _____
Femi Ayoade

By: _____
Lee P. Brown

By: _____
John M. Rudley

By: _____
Dudu Hlatshwayo

By: _____
Mahmud Y. Ahmed

By: _____
Michael Stinson

3

Debtor   **Erin Energy Corporation**                                             Case number (if known)

**Fill in this information to identify your case:**

United States Bankruptcy Court for the:

SOUTHERN DISTRICT OF TEXAS

Case number (if known)                              Chapter      11

☐ Check if this an
amended filing

## FORM 201. VOLUNTARY PETITION

### Pending Bankruptcy Cases Attachment

| Debtor | Erin Energy Kenya Limited | | Relationship to you | Subsidiary |
|---|---|---|---|---|
| District | Southern District of Texas, Houston Division | When | Case number, if known | to be filed |
| Debtor | Erin Energy Ltd. | | Relationship to you | Subsidiary |
| District | Southern District of Texas, Houston Division | When | Case number, if known | to be filed |
| Debtor | Erin Petroleum Nigeria Limited | | Relationship to you | Subsidiary |
| District | Southern District of Texas, Houston Division | When | Case number, if known | to be filed |

Official Form 201A (12/15)

[If debtor is required to file periodic reports (e.g. forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11 of the Bankruptcy Code, this Exhibit "A" shall be completed and attached to the petition.]

# United States Bankruptcy Court
## Southern District of Texas

| In re   **Erin Energy Corporation** | | |
|---|---|---|
| | Debtor(s) | Case No. |
| | | Chapter   **11** |

## Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11

1. If any of the debtor's securities are registered under Section 12 of the Securities Exchange Act of 1934, the SEC file number is ___0001402281___.

2. The following financial data is the latest available information and refers to the debtor's condition on ___03/31/2018___.

| | | |
|---|---|---|
| a. Total assets | $ | 247,535,000.00 |
| b. Total debts (including debts listed in 2.c., below) | $ | 628,724,000.00 |
| c. Debt securities held by more than 500 holders: | | Approximate number of holders: |

| | | | | | | |
|---|---|---|---|---|---|---|
| secured ☐ | unsecured ☐ | subordinated ☐ | $ | 0.00 | | 0 |
| secured ☐ | unsecured ☐ | subordinated ☐ | $ | 0.00 | | 0 |
| secured ☐ | unsecured ☐ | subordinated ☐ | $ | 0.00 | | 0 |
| secured ☐ | unsecured ☐ | subordinated ☐ | $ | 0.00 | | 0 |
| secured ☐ | unsecured ☐ | subordinated ☐ | $ | 0.00 | | 0 |
| d. Number of shares of preferred stock | | | | 0 | | 0 |
| e. Number of shares common stock | | | | 215,093,647 | | 0 |

Comments, if any:
The figures used in this attachment were culled from an unaudited financial statement.

3. Brief description of Debtor's business:
Erin Energy is an independent oil and gas exploration and production company ("E&P") focused on energy resources in Africa.  As an E&P, Erin's strategy has been to acquire and develop high potential E&P assets in Sub-Saharan Africa.

4. List the name of any person who directly or indirectly owns, controls, or holds, with power to vote, 5% or more of the voting securities of debtor.
Dr. Kase Lawal
Public Investment Corporation Soc Ltd.

Software Copyright (c) 1996-2017 Best Case, LLC - www.bestcase.com     Best Case Bankruptcy

**Fill in this information to identify the case:**

Debtor name   **Erin Energy Corporation**

United States Bankruptcy Court for the:   SOUTHERN DISTRICT OF TEXAS

Case number (if known)

☐ Check if this is an
amended filing

Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors

12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

- ☐ Schedule A/B: Assets--Real and Personal Property (Official Form 206A/B)
- ☐ Schedule D: Creditors Who Have Claims Secured by Property (Official Form 206D)
- ☐ Schedule E/F: Creditors Who Have Unsecured Claims (Official Form 206E/F)
- ☐ Schedule G: Executory Contracts and Unexpired Leases (Official Form 206G)
- ☐ Schedule H: Codebtors (Official Form 206H)
- ☐ Summary of Assets and Liabilities for Non-Individuals (Official Form 206Sum)
- ☐ Amended Schedule
- ■ Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders (Official Form 204)
- ☐ Other document that requires a declaration

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   **April 25, 2018**       X /s/ **Femi Ayoade**
                                       Signature of individual signing on behalf of debtor

                                       **Femi Ayoade**
                                       Printed name

                                       **Chief Executive Officer**
                                       Position or relationship to debtor

**Fill in this information to identify the case:**

Debtor name   **Erin Energy Corporation**

United States Bankruptcy Court for the:   **SOUTHERN DISTRICT OF TEXAS**

Case number (if known): _____

☐ Check if this is an

amended filing

## Official Form 204

### Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders

12/15

A list of creditors holding the 20 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 20 largest unsecured claims.

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| Baker Botts LLP Attorneys at Law 910 Louisiana Street Suite 3000 Houston, TX 77002 | john.geddes@bakerbotts.com | | | $530,860.22 | $0.00 | $530,860.22 |
| Natural Resources Global Capital Partner 29 Farm Street London England UNITED KINGDOM W1J 5RL | tuikku.olaviitala@nrgcapitalpartners.com | | | $509,784.93 | $0.00 | $509,784.93 |
| Norton Rose Fulbright US, LLP 98 San Jacinto Boulevard Suite 1100 Austin, TX 78701-4255 | mark.oakes@nortonrosefulbright.com | | | $180,600.59 | $0.00 | $180,600.59 |
| NYSE 5660 New Northside Dr. NW 3rd Floor Atlanta, GA 30328 | | | | | | $125,647.10 |
| Jackson Walker LLP 2323 Ross Avenue Suite 600 Dallas, TX 75201 | | | | | | $115,618.48 |
| P2ES Holdings LLC 1670 Broadway, Suite 2800 Denver, CO 80202 | | | | | | $106,229.23 |
| Travel & More 7011 Harwin Drive Suite 185 Houston, TX 77036 | | | | | | $84,101.49 |

| Debtor | Erin Energy Corporation | | | | Case number (if known) | | |

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| Pannell Kerr Forster of Texas, PC 5847 San Felipe Suite 2600 Houston, TX 77057-3000 | bbaumler@pkftexas.com | | | $63,000.00 | $0.00 | $63,000.00 |
| Earl W. McNiel Consultant 1606 Cambridge Oaks Circle Houston, TX 77094 | | | | | | $62,500.00 |
| The Loev Law Firm, PC 6300 West Loop South, Suite 280 Bellaire, TX 77401 | | | | | | $62,230.90 |
| Workiva Inc 2900 University Blvd Ames, IA 50010 | | | | | | $56,681.81 |
| Broadridge ICS 300 Executive Drive Edgewood, NY 11717 | | | | | | $48,509.99 |
| John Michael Stinson 6509 Edloe Houston, TX 77055 | | | | | | $35,500.00 |
| Dudu Hlatshwayo 127 Greyvill Street Kyalami Estates Midrand SOUTH AFRICA | | | | | | $32,000.00 |
| Canaccord Genuity Limited 88 Wood Street London England UNITED KINGDOM EC2V 7QR | | | | | | $30,000.00 |
| Mindshift Technologies Inc 500 Commack Road Suite 140 Commack, NY 11725 | | | | | | $27,514.52 |
| Looper Goodwine, PC 1300 Post Oak Blvd. Suite 2400 Houston, TX 77489 | | | | | | $23,959.99 |

Debtor   **Erin Energy Corporation**
         Name

Case number (if known)

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| Johannesburg Stock Exchange Private Bag X991174 Sandton, 2146 SOUTH AFRICA | | | | | | $22,014.84 |
| Ipreo Data, Inc. 1359 Broadway 2nd Floor New York, NY 10018 | | | | | | $20,000.00 |
| Renmark Financial Communications Inc. 1050-3400 De Maisonneuve West West Montreal Quebec CANADA H3Z 3B8 | | | | | | $19,525.23 |

Case 18-32109   Document 1   Filed in TXSB on 04/25/18   Page 1 of 12

**Fill in this information to identify your case:**

United States Bankruptcy Court for the:

SOUTHERN DISTRICT OF TEXAS

Case number (if known): _____     Chapter    11

☐ Check if this an
   amended filing

Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy

4/16

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and case number (if known).
For more information, a separate document, Instructions for Bankruptcy Forms for Non-Individuals, is available.

| | | | |
|---|---|---|---|
| 1. | Debtor's name | Erin Petroleum Nigeria Limited | |
| 2. | All other names debtor used in the last 8 years<br>Include any assumed names, trade names and doing business as names | FDBA  CAMAC Petroleum Limited | |
| 3. | Debtor's federal Employer Identification Number (EIN) | | |
| 4. | Debtor's address | **Principal place of business**<br><br>Plot 1649, Olosa Street<br>Victoria Island, Lagos<br>Nigeria<br><br>Number, Street, City, State & ZIP Code<br><br><br>County | **Mailing address, if different from principal place of business**<br><br>1330 Post Oak Boulevard,<br>Suite 2250<br>Houston, TX 77050<br>P.O. Box, Number, Street, City, State & ZIP Code<br><br>**Location of principal assets, if different from principal place of business**<br>Offshore, Federal Republic of Nigeria<br>Number, Street, City, State & ZIP Code |
| 5. | Debtor's website (URL) | | |
| 6. | Type of debtor | ■ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))<br>☐ Partnership (excluding LLP)<br>☐ Other  Specify | |

| Debtor | **Erin Petroleum Nigeria Limited** | Case number (if known) |
|---|---|---|
| | Name | |

**7. Describe debtor's business**

A. Check one:

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

■ None of the above

B. Check all that apply:

☐ Tax-exempt entity (as described in 26 U.S.C. §501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. §80a-3)

☐ Investment advisor (as defined in 15 U.S.C. §80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor.
See http://www.uscourts.gov/four-digit-national-association-naics-codes.

2111

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

Check one:

☐ Chapter 7

☐ Chapter 9

■ Chapter 11. Check all that apply:

☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,566,050 (amount subject to adjustment on 4/01/19 and every 3 years after that).

☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D). If the debtor is a small business debtor, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if all of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ A plan is being filed with this petition.

☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11 (Official Form 201A) with this form.

☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

■ No.

☐ Yes.

If more than 2 cases, attach a separate list.

| District | When | Case number |
|---|---|---|
| District | When | Case number |

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

☐ No

■ Yes.

List all cases. If more than 1, attach a separate list.

| Debtor | **See Attachment** | | Relationship |
|---|---|---|---|
| District | | When | Case number, if known |

Case 18-32109   Document 1   Filed in TXSB on 04/25/18   Page 3 of 12

Debtor  **Erin Petroleum Nigeria Limited**                                      Case number (if known)
        Name

11. **Why is the case filed in this district?**

Check all that apply:

■ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

■ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

12. **Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

■ No

☐ Yes.  Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** (Check all that apply.)

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard?

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other

**Where is the property?**
                                              Number, Street, City, State & ZIP Code

**Is the property insured?**

☐ No

☐ Yes.   Insurance agency

         Contact name

         Phone

███  **Statistical and administrative information**

13. **Debtor's estimation of available funds**

Check one:

■ Funds will be available for distribution to unsecured creditors.

☐ After any administrative expenses are paid, no funds will be available to unsecured creditors.

14. **Estimated number of creditors**

| | | |
|---|---|---|
| ☐ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
| ☐ 50-99 | ☐ 5001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than100,000 |
| ■ 200-999 | | |

15. **Estimated Assets**

| | | |
|---|---|---|
| ☐ $0 - $50,000 | ☐ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| ☐ $50,001 - $100,000 | ☐ $10,000,001 - $50 million | ☐ $1,000,000,001 - $10 billion |
| ☐ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ☐ $500,001 - $1 million | ■ $100,000,001 - $500 million | ☐ More than $50 billion |

16. **Estimated liabilities**

| | | |
|---|---|---|
| ☐ $0 - $50,000 | ☐ $1,000,001 - $10 million | ■ $500,000,001 - $1 billion |
| ☐ $50,001 - $100,000 | ☐ $10,000,001 - $50 million | ☐ $1,000,000,001 - $10 billion |
| ☐ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ☐ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

Case 18-32109   Document 1   Filed in TXSB on 04/25/18   Page 4 of 12

Debtor   **Erin Petroleum Nigeria Limited**
         Name

Case number (if known)

█ **Request for Relief, Declaration, and Signatures**

**WARNING** -- Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

17. **Declaration and signature**
    **of authorized**
    **representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   **April 25, 2018**
              MM / DD / YYYY

X   /s/ Femi Ayoade

**Femi Ayoade**
Printed name

Signature of authorized representative of debtor

Title   **Authorized Agent**

18. **Signature of attorney**

X   /s/ Matthew Okin

Date   **April 25, 2018**
       MM / DD / YYYY

Signature of attorney for debtor

**Matthew Okin**
Printed name

**Okin Adams LLP**
Firm name

**1113 Vine St., Suite 201**
**Houston, TX 77002**
Number, Street, City, State & ZIP Code

Contact phone   **(713) 228-4100**

Email address   **info@okinadams.com**

**00784695**
Bar number and State

## UNANIMOUS CONSENT OF THE BOARD OF DIRECTORS
## OF ERIN ENERGY PETROLEUM NIGERIA LIMITED

The undersigned, being all of the Board of Directors (the "Board") of Erin Petroleum Nigeria Limited, a Republic of Nigeria Company (the "Company"), do hereby consent to the adoption of the following resolutions, which resolutions shall be deemed to be adopted as of the date hereof and to have the same force and effect as if such resolutions were adopted by the Board at a duly convened meeting held for such purpose.

WHEREAS, the Board reviewed the materials presented by the management of the Company regarding the liabilities and liquidity situation of the Company, the strategic alternatives available to it, and the effect of the foregoing on the Company's business.

WHEREAS, the Board has had the opportunity to consult with the management of the Company and fully consider each of the strategic alternatives available to the Company.

WHEREAS, the Board deems it to be in the best interests of the Company to file a bankruptcy petition under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") for the purpose of restructuring the Company's business affairs (the "Chapter 11 Case").

NOW, THEREFORE, IT IS HEREBY RESOLVED THAT:

### *Filing of Bankruptcy Petition*

In the judgment of the Board, it is in the best interests of the Company, its creditors, employees and other interested parties that a petition be filed seeking relief under chapter 11 of the Bankruptcy Code;

Femi Ayoade or any other duly appointed officer of the Company (the "Authorized Officer") is hereby authorized and empowered on behalf of, and in the name of the Company to execute and verify or certify a petition under chapter 11 of the Bankruptcy Code and to cause the same to be filed in the United States Bankruptcy Court for the Southern District of Texas at such time as the Authorized Officer shall determine;

The Authorized Officer is hereby authorized and empowered on behalf of the Company to execute and file all petitions, schedules, lists, and other papers, and to take any and all actions that the Authorized Officer may deem necessary or proper in connection with the Chapter 11 Case;

The Authorized Officer is hereby authorized and empowered on behalf of, and in the name of the

Company to execute any and all plans of reorganization under chapter 11 of the Bankruptcy Code, including any and all modifications, supplements, and amendments thereto, in such form and containing such terms as the Board shall hereafter approve, and to cause the same to be filed in the United States Bankruptcy Court for the Southern District of Texas, at such time as the Authorized Officer shall determine;

*Retention of Professionals*

The law firm of Okin & Adams LLP shall be employed as counsel to the Company under a general retainer; and is hereby approved to act as general bankruptcy counsel for the Company in the Chapter 11 Case; and

The Authorized Officer be, and hereby is, authorized and empowered on behalf of, and in the name of the Company, to retain and employ other attorneys, investment bankers, accountants, and other professionals to assist the Company in its Chapter 11 Case on such terms as the Authorized Officer deems necessary or proper.

IN WITNESS WHEREOF, the undersigned has executed this written consent as of the 12th day of April, 2018.

By: _____
Femi Ayoade

By: _____
Dippo Bello

2

Debtor   Erin Petroleum Nigeria Limited                                    Case number (if known)
Name

**Fill in this information to identify your case:**

United States Bankruptcy Court for the:

SOUTHERN DISTRICT OF TEXAS

Case number (if known)                          Chapter    **11**

☐ Check if this is an
     amended filing

## FORM 201. VOLUNTARY PETITION

### Pending Bankruptcy Cases Attachment

| | | | | |
|---|---|---|---|---|
| Debtor | Erin Energy Corporation | | Relationship to you | **Parent Company** |
| District | Southern District of Texas, Houston Division | When   4/25/18 | Case number, if known | **18-32106** |
| Debtor | Erin Energy Kenya Limited | | Relationship to you | **Related Subsidiary** |
| District | Southern District of Texas, Houston Division | When   4/25/18 | Case number, if known | **18-32108** |
| Debtor | Erin Energy Ltd | | Relationship to you | **Related Subsidiary** |
| District | Southern District of Texas, Houston Division | When   4/25/18 | Case number, if known | **18-32107** |

Case 18-32109   Document 1   Filed in TXSB on 04/25/18   Page 8 of 12

**Fill in this information to identify the case:**

Debtor name:   **Erin Petroleum Nigeria Limited**

United States Bankruptcy Court for the:   SOUTHERN DISTRICT OF TEXAS

Case number (if known):

☐ Check if this is an amended filing

Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors

12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date.  Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.

   Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct.

☐   Schedule A/B: Assets, Real and Personal Property (Official Form 206A/B)
☐   Schedule D: Creditors Who Have Claims Secured by Property (Official Form 206D)
☐   Schedule E/F: Creditors Who Have Unsecured Claims (Official Form 206E/F)
☐   Schedule G: Executory Contracts and Unexpired Leases (Official Form 206G)
☐   Schedule H: Codebtors (Official Form 206H)
☐   Summary of Assets and Liabilities for Non-Individuals (Official Form 206Sum)
☐   Amended Schedule
■   Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders (Official Form 204)
☐   Other document that requires a declaration

I declare under penalty of perjury that the foregoing is true and correct.

Executed on:   **April 25, 2018**      X /s/ Femi Ayoade
                                Signature of individual signing on behalf of debtor

                                **Femi Ayoade**
                                Printed name

                                **Authorized Agent**
                                Position or relationship to debtor

Official Form 202        Declaration Under Penalty of Perjury for Non-Individual Debtors

Best Case Bankruptcy

Fill in this information to identify the case:

Debtor name   **Erin Petroleum Nigeria Limited**

United States Bankruptcy Court for the:   **SOUTHERN DISTRICT OF TEXAS**

☐ Check if this is an

Case number (if known):

amended filing

## Official Form 204

### Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders

12/15

A list of creditors holding the 20 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 20 largest unsecured claims.

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| Bumi Armada Berhad / Armada Oyo Ltd. 1, Fusionopolis Walk, #11-02 Solaris South Tower 138628 SINGAPORE | | | | | | $110,772,564.59 |
| Transocean Indigo 4 Greenway Plaza Houston, TX 77046 | | | | | | $14,067,242.08 |
| GE Pressure Controls Systems Nigeria Ltd Mansard Place, Plot 927/928 Bishop Aboyade Close Street Victoria Island Lagos NIGERIA | | | | | | $9,702,798.63 |
| Petromarine Nigeria Limited 2-4 Morsley Road, Off Gerrard Road Ikoyi Lagos NIGERIA | | | | | | $4,779,636.88 |
| Schlumberger 10101 Woodloch Forest Drive The Woodlands, TX 77380 | | | | | | $4,746,482.54 |


Debtor  **Erin Petroleum Nigeria Limited**
    Name

Case number (if known)

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services. | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim | | |
|---|---|---|---|---|---|---|
| | | | | If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| Halliburton Operations Nigeria Ltd Plot 90 Ajose Adeogun Street Victoria Island Lagos NIGERIA | | | | | | $4,335,726.65 |
| Pacific Bora Limited Pacific International Drilling 1170 Katy Freeway Suite 175 Houston, TX 77079 | | | | | | $3,984,474.14 |
| Schiste Oil And Gas Limited 1 Justice Rose Ukeje Street Off Adeshola Akinnifesti Street Lekki Scheme 1 Lagos NIGERIA | | | | | | $2,657,443.44 |
| Court Helicopters Nigeria Limited Plot 1649 Oiosa Street Victoria Island Lagos NIGERIA | | | | | | $1,891,841.63 |
| T1 Marine Services Limited 3rd Floor, Aqua Towers Complex, Plot 12A AJ Marinho Drive Off Sinari Daranijo St. Victoria Island Lagos NIGERIA | | | | | | $1,470,054.53 |
| Titone Subsea Limited c o Uche T. K. Alaoma & Co. 13 Igbokwe Street, D:Line Port Harcourt NIGERIA | | | | | | $1,299,134.82 |

Debtor   **Erin Petroleum Nigeria Limited**
    Name

Case number (if known)

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services. | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim |  |  |
|---|---|---|---|---|---|---|
|  |  |  |  | If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. |  |  |
|  |  |  |  | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| Crossbow Oilfield Industries & Services 7 Shakiru Anjorin St, Off Admiralty Road Lekki Phase 1 Lagos NIGERIA |  |  |  |  |  | $1,220,337.06 |
| JDR Cable Systems Limited Littleport Innovation Park 177 Wisbech Littleport Cambs UNITED KINGDOM CB6 1RA |  |  |  |  |  | $1,167,278.40 |
| Multiplan Nigeria Limited 7 Rumuogba Estate Road Port Harcourt Lagos NIGERIA |  |  |  |  |  | $1,101,404.26 |
| Oceaneering Services Nigeria Limited Eleganza Estate, Km 20 Lekke Epe Express 2nd Tollgate After Chevron Junction Lekki Lagos NIGERIA |  |  |  |  |  | $864,779.76 |
| Frank's International W.A (BVI) Ltd Jebel Ali South Zone PO Box 12388 Dubai UAE |  |  |  |  |  | $527,155.20 |
| Intels Nigeria Limited Onne Oil & Gas Free Zone Onne NIGERIA |  |  |  |  |  | $490,174.66 |

Debtor   **Erin Petroleum Nigeria Limited**
         Name

Case number (if known)

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| AOS Orwell Limited 2nd Floor, Lateef Jakande House 3/5 Adeyemo Alakija St. Victoria Island Lagos NIGERIA | | | | | | $396,267.84 |
| Public Investment Corporation SOC Ltd. Menlyn Maine Central Square Waterkloof Glen Extension 2 0181 Pretoria SOUTH AFRICA | | | | | | $292,602.74 |

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

In re: ERIN ENERGY

CORPORATION, et al

Debtors.

Case No. 18-32106

## SWORN AFFIDAVIT OF FACTS OF MR BOSAH OKONYIA

I, **Mr Bosah Okonyia**, Adult, Male, Christian, Nigerian Citizen of Zenith Heights, Plot 84/87Ajose Adeogun Street, Victoria Island, Lagos, Nigeria do hereby make oath and state as follows:

## INTRODUCTION

1. That this Affidavit is being sworn to form records in the matter of re: Erin Energy Corporation with case No. 18-32106 at the United States Bankruptcy Court, Southern District of Texas, Houston Division.

2. That I am a Legal Officer in the legal department of Zenith Bank Plc. Creditor of Erin Petroleum Nigeria Limited, by virtue of which position I am conversant with the facts of this case.

3. That I have the consent and authority of my employer Zenith Bank Plc (hereinafter referred to as "Zenith Bank") to depose to this Affidavit.

4. That except as otherwise stated, I depose to facts within my personal knowledge, as well as from information obtained by me from reading the documents pertaining to the events leading up to this matter and from information derived in the course of carrying out my duties in the employment of Zenith Bank.

5. That I have perused the Petition, Motion papers amongst other processes filed in this matter and am well acquainted with the facts of this matter.

**FACTS SURROUNDING ZENITH TERM LOAN FACILITY**

6. That Zenith Bank Plc is a public company incorporated and licensed under the Laws of the Federal Republic of Nigeria having its registered office at Plot 84/87, Ajose Adeogun Street, Victoria Island, Lagos State.

7. That Erin Petroleum Nigeria Limited Previously known as ('*Camac International Nigeria Limited*') is a private limited company incorporated under the Laws of the Federal Republic of Nigeria having its registered office at Plot 1649, Olosa Street, Victoria Island, Lagos, Nigeria.

8. That Erin Energy Corporation with United States Federal Tax Identification Number 9798 Corporation and situate at 1130 Post Oak Blvd, Suite 2250, Houston Texas 77056, is a Company Registered in the United States and alleges to be the parent company for Erin Petroleum Nigeria Limited.

9. That Allied Energy PLC is a public company incorporated under the Laws of the Federal Republic of Nigeria with its registered office at Plot 1649, Olosa Street, Victoria Island, Lagos, Nigeria, and an affiliate of Erin Petroleum Nigeria Limited.

10. The Nigerian Agip Exploration Limited (NAEL) is a private limited company incorporated under the Laws of the Federal Republic of Nigeria to carry on business in Nigeria with its offices situate at 1, Elsie Femi Pearse Street, Victoria Island, Lagos, Nigeria.

11. That by virtue of an Acreage Allocation (Discretionary Award) of OPL 210 issued by the Ministry of Petroleum Resources (Petroleum Resources Department), Allied Energy Plc. is the legal holder of Oil Mining Leases (OML) 120 and 121.

12. That by virtue of a transfer agreement between Erin Petroleum Nigeria Limited and Allied Energy Plc., Erin Petroleum Nigeria Limited acquired all the economic interest of Allied Energy Plc. in the oil block covered by OML 120 and 121 (although the approval of the Minister of Petroleum was yet to be obtained with respect to the transfer).

13. That Erin Petroleum Nigeria Limited sometime in 2014, approached Zenith Bank Plc for a Term Loan Facility of USD100, 000,000.00 (One Hundred Million United States Dollars) to part-finance the expansion and development of the oil blocks covered by OML120 and 121.

14. That by virtue of a Term Loan Facility Agreement on about September 30, 2014, Zenith Bank granted a loan facility of USD100, 000,000.00 (One Hundred Million United States Dollars) to Erin Petroleum Nigeria Limited. A copy of the Term Loan Facility Agreement is hereto annexed and marked as **Exhibit 1**.

15. That as security for the repayment of the loan facility granted by Zenith Bank to Erin Petroleum Nigeria Limited, Erin Petroleum Limited undertook to obtain in favour of Zenith Bank, a legal charge over the

both Erin Petroleum Nigeria Limited and Allied Energy Plc.'s entire interest in Oil Block OML 120 and 121.

16. That further to paragraph 15 above, a Deed of Legal Charge over interest in OML 120 and 121 dated May 14, 2014 was executed between Zenith Bank and Erin Petroleum Nigeria Limited as well as Allied Energy Plc., by which Allied Energy Plc. charged its entire interest in OML 120 and 121 in favour of Zenith Bank.

17. That an undertaking from Allied Energy Plc committing to domicile the proceeds from sale of crude oil and processing of all NXPs through its account with Zenith.

18. That similarly, an All Asset Debenture dated November 25, 2014 was executed between Zenith Bank and Erin Petroleum Nigeria Limited, by which Erin Petroleum Nigeria Limited charged ALL its assets whether fixed, or floating, present and future in favour of Zenith Bank.

19. That some of the agreements executed as security for the repayment of the Term Loan Facility Agreement granted by Zenith Bank to Erin Petroleum Nigeria Limited are:

19.1  All Assets Debenture dated November 25, 2014;

19.2  Deed of Legal Charge dated May 14, 2015; and

19.3  Deed of Assignment of Rights.

20. The agreements outlined in the above paragraph  are hereto annexed and marked as **Exhibits 2, 3 and 4** respectively.

21. That following the execution of the above referenced Deed of Legal Charge and Deed of All Assets Debenture, in evincing security of credits

under Nigerian law, Zenith Bank registered the aforementioned security documents at the Corporate Affairs Commission which are evidenced by the Certificate of Registration of Deed of Legal Charge dated May 26, 2015 and the Certificate of Registration of Deed of All Assets Debenture dated December 12, 2014. Copies of the Certificates of Registration are hereto annexed and marked as **Exhibits 5 and 6 respectively**.

## ERIN PETROLEUM NIGERIA LIMITED'S DEFAULT IN LOAN REPAYMENT OBLIGATION

22. That by Clause 17 (Representation and Warranties) of the Term Loan Facility Agreement between Zenith Bank and Erin Petroleum Nigeria Limited, particularly, paragraph 17.8 thereof (proceedings pending or threatened), Erin Petroleum Nigeria Limited represented and warranted to Zenith Bank that, no litigation, arbitration or administrative proceeding of or before any court, arbitral body or agency has (to the best of its knowledge and belief) been stated or threatened against it (or against its directors) or any other Obligor (or against any director of an Obligor) which:

    a) May restrain its entry into, the exercise of its rights under, or the performance, enforcement of or compliance with any of its obligations under this Agreement; or

    b) If adversely determined, would reasonably be expected to have a material adverse effect.

23. That at the time of entering into the Term Loan Facility Agreement and the Disbursement of the loan sum by Zenith Bank to Erin Petroleum Nigeria Limited, Zenith Bank was not aware or informed of the existence

of any litigation, arbitration or administrative proceeding the Erin Petroleum Nigeria Limited or Allied Energy Plc., or any other parties thereof.

24.   That by a *Thisday* Newspaper in Nigeria extract dated February 20, 2018; Zenith Bank became aware of an Arbitral Award given at the London Court of International Arbitration (LCIA) on February 14, 2017. A copy of the newspaper extract is hereto *annex*ed and marked as **Exhibit 7**.

25.   That by the above referenced newspaper publication, Zenith Bank became aware that the NAEL had obtained a Final Arbitral Award against Erin Petroleum Nigeria Limited and Allied Energy Plc. from the LCIA in an Arbitration with Arbitration number: LCIA 132498.

26.   That the Arbitral Award which was given by the London Court of International Arbitration purportedly arose from a dispute on a Sale and Purchase Agreement (SPA) which was concluded in June 2012 between NAEL as Seller and Allied Energy Plc. as Purchaser.

27.   That by virtue of the above referenced SPA; the NAEL had transferred to Allied Energy Plc., the entirety of its interest and rights in both Oil Mining Leases 120 and 121.

28.   That the said Arbitral Award was given in respect of the Oil Assets (OML 120 and 121), the interest of which is charged in favour of Zenith Bank as security for the repayment of the Term Loan Facility granted by Zenith Bank to Erin Petroleum Nigeria Limited.

29. That by virtue of an Order of the Federal High Court of Nigeria made on May 11, 2017, leave of Court was granted to NAEL that the LCIA Final Award dated February 14, 2017 be recognised and enforced. A copy of the Order of the Federal High Court dated May 11, 2017 is hereto annexed and marked as **Exhibit 8**.

30. That the said order of the Federal High Court enforcing and recognising the Arbitral Award is for the cumulative sum of $101,638,966.67 (One Hundred and One Million, Six Hundred and Thirty Eight Thousand, Nine Hundred and Sixty Six United States Dollars, Sixty Seven Cents) and interest thereon compounded on a monthly basis against Erin Petroleum Nigeria Limited.

31. That NAEL in an attempt to realise the fruits of the Award granted by the LCIA and recognised by an Order of the Federal High Court dated May 11, 2017 executed a '*Notice of Seizure/Attachment of Goods*' by locking the export valve on the FPSO operated by Allied Energy Plc. (the interest of which has been charged in favour of Zenith Bank for the repayment of the loan granted by Zenith Bank to Erin Petroleum Nigeria Limited).

32. That Clause 19 (III) (IV) and (v) of the loan facility agreement stipulates what amounts to an event of default as it relates distresses or encumbrances on the charged assets under the loan.

33. That there have also been defaults by Erin Petroleum Nigeria Limited on the repayment of the loan facility.

34. That there has been non-payment of the Principal of $4,903,272.79 and Interest of $2,065,019 which were due on March 30, 2018.

35. That it was agreed by Erin Petroleum Nigeria Limited and Zenith Bank Plc., that Debt Service Recovery Account (DSRA) funding would initially be for one (1) quarter of interest, but will increase to two (2) quarters once oil price is at or above $55 per barrel.

36. That there has been non-funding of the additional quarter of DSRA upon achievement of Crude Oil price of over $55 dollars.

37. That contrary to an agreement between Erin Petroleum Nigeria Limited and Zenith Bank Plc., notwithstanding several notices issued by Zenith Bank Plc. to Erin Petroleum Nigeria Limited, there has been a continued failure to institute a hedge protection.

## APPLICABLE LAW AND COURT WITH JURISDICTION

38. That I know for a fact that the contract between Zenith Bank Plc and Erin Petroleum Nigeria Limited and all the relevant agreements between them including the Term Loan Facility Agreement, the All Assets Debenture and all relevant security documents are governed by Nigerian Law by the mutual agreement of the Parties.

39. That the Companies and Allied Matters Act Chapter C20, Laws of the Federation of Nigeria 2004 is the relevant Law governing Nigerian-registered companies and their activities.

40. That Erin Petroleum Nigerian Limited being a company registered in Nigeria, is subject to the authority of Nigerian courts, the Companies and Allied Matters Act and other extant laws of Nigeria.

41. That the aforesaid Companies and Allied Matters Act contains numerous and copious provisions regulating Arrangement and Compromise of a Company with its Creditors, which provisions are

similar in nature to the provisions sought to be relied up by Erin Energy Corporation on behalf of Erin Petroleum Nigeria Limited in the Voluntary Petition for Chapter 11 Bankruptcy in the United States of America.

42.  That I know for a fact that reliefs identical to those sought by Erin Energy Corporation purportedly on behalf of Erin Petroleum Nigeria Limited for reorganisation, bankruptcy or howsoever referred to, are provided for in the Companies and Allied Matters Act and other extant Nigerian Laws on the subject.

43.  That the 1999 Constitution of the Federal Republic of Nigeria (as amended) is the grundnorm, the supreme law of Nigeria and has binding force on all the authorities and persons throughout the Federal Republic of Nigeria.

44.  That the aforesaid 1999 Constitution of Nigeria vests the Nigerian courts with all judicial power and authority to adjudicate upon all matters between persons, or between government or authority and to any persons in Nigeria, and to all actions and proceedings relating thereto, for the determination of any question as to the civil rights and obligations of that person.

45.  That the Federal High Court (of Nigeria) is the particular court vested with the authority and exclusive jurisdiction under the 1999 Constitution of Nigeria to determine all matters arising from the operation of the Companies and Allied Matters Act or any other enactment replacing the Act or regulating the operation of companies incorporated under the Companies and Allied Matters Act.

46.   That I know for a fact that the proper forum for creditor arrangement or business reorganisation involving Erin Petroleum Nigeria Limited is the judicial division of the Federal High Court of Nigeria where the head office of Erin Petroleum Nigeria Limited is situate, being the Federal High Court of Nigeria, Lagos Judicial Division.

## CONCEALMENT OF FACTS BY ERIN PETROLEUM NIGERIA LIMITED

47.   That one Mr. Kase Lukman Lawal is the Chairman and Chief Executive of Erin Energy Corporation which is the parent company of Erin Petroleum Nigeria Limited and the corporate entity which filed the petition for Chapter 11 Bankruptcyat the United States Bankruptcy Court, Southern District of Texas, Houston Division..

48.   That Mr. Kase Lukman Lawal is also the Chairman and Chief Executive of other related corporations including CAMAC International Corporation and Allied Energy Corporation. Annexed hereto is the search report dated April 13, 2018 by the law firm of Okwubanego & Okwubanego as **Exhibit 9**.

49.   That a dispute arose sometime in 2012 between Camac Petroleum Limited (now Erin Nigeria Petroleum Limited) and Nigeria AGIP Energy Limited (NAEL), a subsidiary of Italian oil major ENI. Allied Energy purportedly bought 40 percent of the oil rights in Oil Mining Lease (OML) 120 and 121 from NAEL and transferred same to Camac Petroleum Limited, however Allied Energy only paid $100 million of a $270million purchase price, according to court records.

50.  That I know for a fact that the Courts in Nigeria and the London Court of International Arbitration ruled in favour of NAEL in the dispute, instructing Camac International to pay NAEL $200-million, a Cayman Islands court issued a winding up order for Lawal's Camac International who was its chairman, CEO and controlling shareholder.

51.  That Zenith Bank Plc has filed an application dated April 17, 2018 seeking leave of the Court of Appeal to appeal as an interested party against the Judgment of the Federal High Court of Nigeria (recognising and enforcing the Award of the London Court of International Arbitration granted in favour of NAEL) as well as an application for Stay of execution of the said Judgment. The above referenced application of Zenith Bank plc seeking leave to appeal as an interested party dated April 14, 2018 and the application for Stay of Execution dated May 8, 2018 are herein annexed and marked **Exhibits 10 and 11.**

52.  That in 2016, South Africa's Pension Investment Corporation (PIC) investment committee agreed to secure a $100-million bank guarantee so that Erin Energy Corporation could borrow for drilling and other expenses at the Oyo oil field covered by the aforementioned OMLs 120 and 121. This secondary loan was finalised in January 2017, and Erin pledged its assets as security thereunder.

53.  That I know for a fact that neither Erin Energy Corporation nor Erin Petroleum Nigeria Limited or any of its subsidiaries raised any of the above facts before this Honourable Court in its Voluntary Petition for Chapter 11 Bankruptcy

## CONCLUSION

54. That Erin Petroleum Nigeria Limited being a private limited company registered under Nigeria laws of the Federal Republic of Nigeria is a body corporate, separate and distinct from Erin Energy Corporation.

55. That Erin Petroleum Nigeria Limited and its subscribers together with the members of the Company constitute a body capable of exercising all the powers and functions of an incorporated company including the power to sue and be sued in its own name.

56. That the credit facility advanced by Zenith Bank Plc to part finance the expansion and development of the oil blocks covered by OML 120 and 121 was granted to Erin Petroleum Nigeria Limited and not its parent company and/or such other entity affiliated to it.

57. That Zenith Bank continues to possess a first lien over ALL the economic interest accruing from OML 120 and 121 as security for the repayment of the credit facility granted to Erin Petroleum Nigeria Limited.

58. That further to paragraph … above, Erin Petroleum Nigeria Limited charged in favour of Zenith Bank Plc, ALL its assets whether fixed or floating, present and future as security for the credit facility advanced to it by Zenith Bank Plc.

59. That in paragraph 3 of the 'Debtors' Emergency Motion for the Entry of an Order pursuant to Section 105 (a) and 362 of the Bankruptcy code extending the automatic stay', the Petitioners alluded to the fact that Erin Petroleum Nigeria Limited accounts for virtually all of Erin Energy Corporation's revenues.

60. That what the Petitioners seek to do by this voluntary petition filed under chapter 11 of the United States Code is to utilize the assets of Erin Petroleum Nigeria Limited held by Zenith Bank Plc as a security for the credit facility granted in 2014 to finance its operations and settle its outstanding obligations to other creditors despite Zenith Bank Plc being a first lienor to ALL the Assets of Erin Petroleum Nigeria Limited.

61. That Erin Petroleum Nigeria Limited being a Company incorporated under the Companies and Allied Matters Act, Cap C20, Laws of the Federation of Nigeria, 2004 is a Nigerian Company, governed and subject to Nigerian Laws.

62. That matters relating to arrangement and compromise involving a Company incorporated under the Laws of Nigerian (as in the instant case with 'Erin Petroleum Nigeria Limited') has been sufficiently provided from Section 537 – 540 of the Companies and Allied Matters Act, Cap. C20, Laws of the Federation of Nigeria, 2004.

63. That the appropriate Court clothed with jurisdiction to hear any matter relating to arrangement and compromise with creditors involving a Company incorporated under the Laws of Nigerian is the 'Federal High Court of Nigeria' to the exclusion of any other Court.

64. That the voluntary filing of the petition under Chapter 11 by Erin Petroleum Nigeria Limited is a deliberate attempt to usurp the powers of the Federal High Court of Nigeria as conferred upon it by Section 251 the 1999 Constitution of the Federal Republic of Nigeria (as amended) and Section 567 of the Companies and Allied Matters Act, Cap C20, Laws of the Federation of Nigeria, 2004.

65. That the above facts are relevant and ought to be brought to the attention of this Honourable Court.

66. That this action is designed to overreach Zenith Bank's secured interest in its lending to Erin petroleum Nigeria Limited.

67. That this Affidavit is to place on record, material particulars pertaining to the voluntary petition under chapter 11 of the United States Code filed by Erin Energy Corporation and its purported 'subsidiaries' including Erin Petroleum Nigeria Limited which may have been suppressed and/or unrevealed.

68. That it is in the interest of justice to refuse the grant of the applications filed by the Debtors as same is orchestrated to hoodwink this Honourable Court into making Order in vain, and further plunge Erin Petroleum Nigeria Limited into further debt with unsuspecting creditors.

69. That I make this Affidavit solemnly and in good faith, conscientiously believing the same to be true and correct in accordance with the Oaths Law of Lagos State.

DEPONENT

SWORN to at the Lagos State
High Court Registry, Lagos, Nigeria
This ____ day of May, 2018

BEFORE ME
ORIADE O. M.
PRINCIPAL ADMIN. OFFICER
HIGH COURT OF LAGOS

COMMISIONER FOR OATHS

**FOR SERVICE ON THE DEBTORS**

**1. Erin Energy Corporation –**
**lionel.mcbee@erinenergy.com**
**AND (2) Erin Energy Corporation's** Attorneys
and/ or Proposed Attorneys, David L. Curry Jr.
Texas Bar No. 00784695
**Bridget Moore – bmoore@okinadams.com**
Okin Adams LLP
1113 Vine St. Suite 201, Houston, Texas 77002
Tel: 713.228.4100, Fax:888.865.2118

2. Zenith Bank Plc (non-party to US suit)
C/o their Proposed Attorneys
Professor Fabian Ajogwu, SAN
Kenna Partners
Barristers & Solicitors
8, Ogunyemi Road
Palace Way, Oniru
Victoria Island, Lagos, Nigeria
Tel: +234 815 8390714; +234 706 5197981
Email: cnwabulu@kennapartners.com

# Chinonye Nnaji

| | |
|---|---|
| **From:** | Okechukwu Ekweanya <oekweanya@kennapartners.com> |
| **Sent:** | Monday, June 4, 2018 10:15 AM |
| **To:** | cnnaji@kennapartners.com |
| **Subject:** | FW: NOTICE & SERVICE OF AFFiDAVIT OF FACTS IN RE ERIN ENERGY CORPORATION'S CHAPTER 11 PETITION- CASE NUMBER: 18-32106. |

**From:** Linhthu_Do@txs.uscourts.gov [mailto:Linhthu_Do@txs.uscourts.gov]
**Sent:** 08 May 2018 23:03
**To:** Okechukwu Ekweanya
**Subject:** Re: NOTICE & SERVICE OF AFFIDAVIT OF FACTS IN RE ERIN ENERGY CORPORATION'S CHAPTER 11 PETITION- CASE NUMBER: 18-32106.

Good evening,

The attached documents have been received and filed at Docket No. 38 in Case No. 18-32106 Erin Energy Corporation and Erin Energy Ltd.

Please address future emails to Ms. LinhThu Do at linhthu_do@txs.uscourts.gov.
(Ms. Anita Dolezel and Mr. Mario Rios are no longer associated with this Court.)

Thank You

LinhThu Do, Case Manager
The Honorable Marvin P. Isgur
United States Bankruptcy Court for the Southern District of Texas
515 Rusk Street, 4th Floor
Houston, Texas  77002
(713) 250-5421

-----"Okechukwu Ekweanya" <oekweanya@kennapartners.com> wrote: -----
To: <LinhThu_Do@txs.uscourts.gov>, <Anita_Dolezel@txs.uscourts.gov>,
<Mario_Rios@txs.uscourts.gov>
From: "Okechukwu Ekweanya" <oekweanya@kennapartners.com>
Date: 05/08/2018 02:46PM
Cc: <bmoore@okinadams.com>, <lionel.mcbee@erinergy.com>, <dippo.bello@erinenergy.com>,
<michael.otu@zenithbank.com>, "Nnamdi Edekobi" <NNAMDI.EDEKOBI@zenithbank.com>,
<Uche.Anokwuru@zenithbank.com>, "'Fabian Ajogwu'" <fajogwu@kennapartners.com>, "'Charles
Nwabulu'" <Cnwabulu@kennapartners.com>, "Ebenezer Onyeagwu"
<EBENEZER.ONYEAGWU@zenithbank.com>, <BOSAH.OKONYIA@zenithbank.com>,
<kerhonsele@kennapartners.com>, <aoyusuf@kennapartners.com>, <oadebo@kennapartners.com>,
"Paliechi Nonye-Okoronkwo" <pnonye-okoronkwo@kennapartners.com>, <cnnaji@kennapartners.com>
Subject: NOTICE & SERVICE OF AFFIDAVIT OF FACTS IN RE ERIN ENERGY CORPORATION'S CHAPTER 11
PETITION- CASE NUMBER: 18-32106.

*LETTER ATTACHED AS PDF AND ALSO PASTED BELOW FOR EASE OF READING*



**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

ENTERED
05/01/2018

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **ERIN ENERGY CORPORATION**, *et al.*,[1] | § | **Case No. 18-32106** |
| | § | |
| **Debtors.** | § | **(Chapter 11)** |
| | § | |
| | § | **(Joint Administration Requested)** |

**ORDER PURSUANT TO SECTIONS 105(a) AND 362 OF THE
BANKRUPTCY CODE ENFORCING AND RESTATING
AUTOMATIC STAY PROVISIONS**

Upon consideration of the Debtors' Emergency Motion For the Entry of an Order
Pursuant to Sections 105(a) and 362 of the Bankruptcy Code Enforcing and Restating Automatic
Stay Provisions (the "Motion"),[2] filed by the above-captioned debtors and debtors in possession
(the "Debtors"), the Court finds that: (i) it has jurisdiction over the matters raised in the Motion
pursuant to 28 U.S.C. § 1334(b); (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b);
(iii) the relief requested in the Motion is in the best interests of the Debtors and their respective
estates, creditors, and other parties-in-interest; (iv) proper and adequate notice of the Motion and
hearing on the Motion has been given and that no other or further notice is necessary under the
circumstances; (v) the relief granted in this Order is necessary to avoid immediate and
irreparable harm to these estates; and (vi) good and sufficient cause exists for the granting of the
relief requested in the Motion after having given due deliberation upon the Motion and all of the
proceedings had before the Court in connection with the Motion. Therefore, it is hereby

---

[1] The last four digits of Erin Energy Corporation's ("ERN") federal tax identification number are 9798. The other
Debtors in these cases are: Erin Energy Limited ("EEL"); Erin Energy Kenya Limited ("EEKL"); and Erin
Petroleum Nigeria Limited ("EPNL"). The Debtors' service address is: 1330 Post Oak Blvd., Suite 2250, Houston,
TX 77056.
[2] Capitalized terms used but not otherwise defined in this Order have the meanings ascribed to such terms in the
Motion.

ORDERED that, subject to the exceptions to the automatic stay contained in section 362(b) of the Bankruptcy Code and the right of any party in interest to seek relief from the automatic stay in accordance with section 362(d) of the Bankruptcy Code, an automatic stay applies to all entities. The term "Entities" includes persons, estates, trusts, governmental units and the United States trustee. "The term governmental unit means United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency or instrumentality of the United States ..., a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government." 11 U.S.C. § 101(27).

Pursuant to Title 11 § 362 of the United States Code, all entities (including all departments, agencies and instrumentalities of any foreign government) have been stayed from:

(a)    commencing or continuing (including the issuance or employment of process) any judicial, administrative, or other action or proceeding against the Debtors that was or could have been commenced before the commencement of the Debtors' chapter 11 cases or recovering a claim against the Debtors that arose before the commencement of the Debtors' chapter 11 cases;

(b)    enforcing, against the Debtors or against property of their estates, a judgment or order obtained before the commencement of the Debtors' chapter 11 cases;

(c)    taking any action to obtain possession of property of the Debtors' estates or to exercise control over property of the estates;

(d)    taking any action to create, perfect or enforce any lien against property of the Debtors' estates;

(e)    taking any action to create, perfect or enforce against property of the Debtors any lien to the extent that such lien secures a claim that arose prior to the commencement of the Debtors' chapter 11 cases;

(f)    taking any action to collect, assess or recover a claim against the Debtors that arose prior to the commencement of the Debtors' chapter 11 cases; [and]

(g)    offsetting any debt owing to the Debtors that arose before the commencement of the Debtors' chapter 11 cases against any claim against the Debtors....

3

and it is further

ORDERED that, in accordance with Title 11 § 362(d) of the United States Code, this Court may grant relief from the stay described in this Order; and it is further

ORDERED that the Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: May 1, 2018

UNITED STATES BANKRUPTCY JUDGE

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **ERIN ENERGY CORPORATION**, *et al.*,[1] | § | **Case No. 18-32106** |
| | § | |
| Debtors. | § | **Chapter 11** |
| | § | |
| | § | **(Jointly Administered)** |

### NOTICE OF HEARING ON DEBTORS'
### EMERGENCY MOTION TO EXTEND THE AUTOMATIC STAY
### AND EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS
### AUTHORIZING USE OF CASH COLLATERAL

**PLEASE TAKE NOTICE** that a hearing will be held before the Honorable Marvin Isgur, United States Bankruptcy Judge, at the United States Bankruptcy Court, 515 Rusk, 4th Floor, Courtroom 404, Houston, Texas 77002 on **May 9, 2018 at 10:45 a.m. (CT)**, or at such other time as the court may determine, on the following motions and supporting documents requesting certain emergency relief (collectively, the "Motions"), which were filed by the Debtors in connection with the Chapter 11 Cases:

(i) Debtors' Emergency Motion for Entry of Order Pursuant to Sections 105(a) and 362 of the Bankruptcy Code Extending the Automatic Stay [Docket No. 27]; and

(ii) Debtors' Emergency Motion for Interim and Final Orders (I) Authorizing Use of Cash Collateral Pursuant to Section 363(c) of the Bankruptcy Code; (II) Granting Adequate Protection for the use thereof; and (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001 as to Use of Cash Collateral [Docket No. 28].

Copies of the above referenced Motions may be (i) inspected in the office of the Clerk of the Bankruptcy Court during normal business hours; and (ii) downloaded from the Bankruptcy

---

[1] The last four digits of Erin Energy Corporation's ("ERN") federal tax identification number are 9798. The other Debtors in these cases are: Erin Energy Limited ("EEL"); Erin Energy Kenya Limited ("EEKL"); and Erin Petroleum Nigeria Limited ("EPNL"). The Debtors' service address is: 1330 Post Oak Blvd., Suite 2250, Houston, TX 77056.

Court's website at http://www.txs.uscourts.gov/bankruptcy. Please note that prior registration with the PACER Service Center and payment of a fee may be required to access such documents. Requests for copies of the Motions and further information regarding hearing may also be made to proposed counsel for the Debtors using the contact information below.

Respectfully submitted this 4th day of May 2018.

Respectfully submitted,

**OKIN ADAMS LLP**

By:    /s/ *Matthew S. Okin*
Matthew S. Okin
Texas Bar No. 00784695
mokin@okinadams.com
David L. Curry, Jr.
Texas Bar No. 24065107
dcurry@okinadams.com
John Thomas Oldham
Texas Bar No. 24075429
joldham@okinadams.com
Ryan A. O'Connor
Texas Bar No. 24098190
roconnor@okinadams.com
1113 Vine St., Suite 201
Houston, Texas 77002
Tel: 713.228.4100
Fax: 888.865.2118

**PROPOSED ATTORNEYS FOR THE DEBTORS**

**CERTIFICATE OF SERVICE**

I hereby certify that on May 4, 2018 the foregoing Notice of Hearing was served upon filing via the Court's EM/ECF electronic system on all parties subscribing thereto, as well as by regular mail on the Debtors' Master Service List.

/s/ *Matthew S. Okin*
Matthew S. Okin

## DEED OF APPOINTMENT OF RECEIVER/MANAGER

WE, ZENITH BANK PLC whose registered office is at Plot 84/87, Ajose Adeogun Street, Victoria Island, Lagos State (hereinafter called "the Bank") being the registered holder of a Deed of legal Charge Over Interest in OML 120 and 121 dated May 14, 2015 registered at the Corporate Affairs Commission, Abuja (hereinafter called "the Deed of Legal Charge") made between ERIN PETROLEUM NIGERIA LIMITED PREVIOUSLY KNOWN AS CAMAC PETROLEUM LIMITED (hereinafter called "the Borrower"); ALLIED ENERGY PLC (hereinafter called "the Chargor") and ZENITH BANK PLC (hereinafter called "the Bank"); pursuant to the powers conferred on the Bank by the Deed of Legal Charge and of every power enabling the Bank so to do HEREBY APPOINT BASHORUN J.K. RANDLE of J.K Randle Professional Services, One King Ologunkutere Street, Park View, Ikoyi, Lagos State (hereinafter called "the Receiver/Manager") to be the Receiver/Manager of the Assets charged by the chargor in Paragraph 2 of the Deed of Legal Charge upon the terms and with all the powers conferred by the Deed of Legal Charge or by law.

Subject to your acceptance of our offer of appointment, you will be required to carry out inter-alia the following duties:

(a) To take immediate possession and management of the undertakings of the Chargor and the assets secured by the Deed of Legal Charge or any part thereof and for that purpose to take or defend proceedings in the name of the Company or otherwise.

(b) To take over, either solely or in conjunction with other persons, the interest of Allied Energy Plc and the economic interest of ERIN Petroleum Nigeria Limited in OML 120 and 121 now charged in favour of the Bank and to obtain all authorization, consent, approval, licence, permit or exemptions required to operate OML 120 and 121 and to operate howsoever, including power to sell, alienate, assign or otherwise, all or any such interest.

(c) To demand and recover all the income from the Assets thereby secured by action, distress or otherwise to the full extent of the estate or interest which the Company could dispose of and to give effective receipts accordingly for the same, to exercise any powers which may have been delegated to him by the Bank pursuant to these presents.

(d) To make any arrangements or compromise which the Receiver shall think expedient in the interest of the Bank.

(e) To give valid receipts for all moneys and execute all conveyances, assignments, deeds, assurances and things which may be proper or desirable for realizing such Assets and things as may be considered to be conducive to any of the matters or the powers aforesaid and which the Receiver/Manager lawfully can do as Agent for the Company.

(f) If need be, and with the prior written consent of the Bank, to sell (by public auction or private treaty) lease or let or concur in selling, leasing the Assets charged by the Deed of Debenture and to carry out any such sale, leasing or letting into effect in the name of and on behalf of the Company or otherwise.

(g) To use the name of the Company for all or any of the purposes aforesaid and in any legal proceedings.

(h) To execute and deliver any deed or deeds or instruments and to convey, assign or otherwise assure the Assets of which he is appointed Receiver/Manager or any interest therein in the name of or on behalf of the Company and by deed in the name of and on behalf of the Company to grant, assign or dispose the legal interest in such Assets to any Purchaser or lessee thereof.

(i) To do all such other acts and things as may be considered by the Bank to be incidental or conducive to any of the matters or powers aforesaid and which he lawfully may or can do as agent of the Company.

(j) This appointment is for an initial period of one year beginning from the date of execution hereof or until otherwise revoked in writing by the Bank whichever is later.

(k) The Receiver will be required to submit to the Bank monthly Progress Reports of the Receivership.

(l) This appointment shall take effect from the date on which the last party to execute this Deed duly executes it until terminated by the Bank.

We hereby agree to indemnify and hold you harmless in respect of all acts carried out by you in the execution of the above stated duties.

DATED THIS ..................... 18ᵀᴴ ........ DAY OF ..................... MAY ............... 2018

THE COMMON SEAL OF
ZENITH BANK PLC
Was hereunto affixed in the presence of:

DIRECTOR                                    SECRETARY

SIGNED AND SEALED
By the within named Receiver
BASHORUN J.K. RANDLE

In the presence of:

Name:  Hollist Oluwatosin

Occupation:  Personal Assistant

Address:  Plot A319, Co-op Villas, Badore, Ajah

Date:  31/05/2018

# IN THE FEDERAL HIGH COURT OF NIGERIA
## HOLDEN AT LAGOS

### SUIT NO: FHC/L/NRJ/3/2018

IN THE MATTER OF APPLICATION FOR THE REGISTRATION OF A FOREIGN JUDGMENT BY ERIN PETROLEUM NIGERIA LTD

BETWEEN

ERIN PETROLEUM NIGERIA LIMITED                    ⎫PLAINTIFF/RESPONDENT

AND

'ALL SECURED AND UNSECURED CREDITORS
LISTED IN THE SERVICE LIST ATTACHED              ⎫ DEFENDANTS/
HERETO LOCATED IN THE FEDERAL REPUBLIC             RESPONDENTS
OF NIGERIA'

AND

ZENITH BANK PLC                                  ⎫ INTERESTED    PARTY/
                                                   APPLICANT

## INTERESTED PARTY/APPLICANT'S WRITTEN ADDRESS IN SUPPORT OF THE MOTION ON NOTICE DATED JUNE 4, 2018

### 1.0.  INTRODUCTION

1.1. This address is filed in support of the Interested Party/Applicant's Motion on Notice dated May 31, 2018 brought pursuant to Sections 6 and 7 of the Foreign Judgment (reciprocal Enforcement) Act; Order 26 Rule 1 & 2, Order 51 rules 2 (1) & (2) of the Federal High Court (Civil Procedure) Rules (2009) and under the inherent jurisdiction of this Honorable Court.

1.2. By the said Motion on Notice, the Interested Party/Applicant is praying this Honourable Court for the following orders:

Page 1 of 19

KENNA

1.2.1. AN ORDER of this Honourable Court setting aside the Order made by this Honourable Court on May 25, 2018 registering the Judgment/order of the United States Bankruptcy Court of the Southern District of Texas, Houston Division, made on May 1, 2018 in case no. 18-32186.

1.2.2. AND for such Order or other Orders as this Honourable Court may deem fit to make in the circumstances.

1.3. In support of this application, the Interested Party/Applicant filed an Affidavit deposed to by one Bosah Okonyia, a Legal Officer in the Law Department of the Interested Party/Applicant. The said Affidavit is also accompanied by 15 Exhibits. We shall be relying on all the averments in the affidavit as well as the Exhibits annexed thereto.

## 2.0.   SUMMARY OF THE FACTS

2.1. Below is a summary of facts leading to this application:

2.1.1.   By virtue of a transfer agreement between the Plaintiff/Respondent (Erin Petroleum Nigeria Limited) and Allied Energy Plc, the Plaintiff/Respondent (Erin Petroleum Nigeria Limited) acquired all the economic interest in the oil block covered by OMLs 120 and 121, held by Allied Energy Plc by virtue of an Acreage Allocation (Discretionary Award) of OPL 210 issued by the Ministry of Petroleum Resources (although the approval of the Minister of Petroleum was yet to be obtained with respect to the transfer).

2.1.2.   Sometime in 2014, the Plaintiff/Respondent (Erin Petroleum Nigeria Limited) approached the Interested Party/Applicant for a Term Loan Facility of USD100, 000,000.00 (One Hundred Million United States Dollars) to part-finance the expansion and development of the oil blocks covered by OMLs 120 and 121.

2.1.3.   By virtue a Term Loan Facility Agreement between the Interested Party/Applicant and the Plaintiff Respondent (Erin Petroleum Nigeria Limited), the Interested Party/Applicant granted a credit facility of USD100, 000,000.00 (One Hundred Million United States Dollars) to the Plaintiff/Respondent (Erin Petroleum Nigeria Limited).

2.1.4.   As   security   for   the   repayment   of   the   credit   facility,   the Plaintiff/Respondent (Erin Petroleum Nigeria Limited) obtained in

favour of the Interested Party/Applicant, a legal charge over the entire interest of the Plaintiff/Respondent (Erin Petroleum Nigeria Limited) and Allied Energy Plc in the oil blocks covered by OMLs 120 and 121, amongst other securities.

2.1.5.   That subsequent to the grant of the credit facility, the Plaintiff/Respondent (Erin Petroleum Nigeria Limited) has repeatedly breached material terms of the Term Loan Facility Agreement between the parties including concealing its involvement in an Arbitration which resulted in a final Arbitral Award obtained by Nigerian Agip Exploration Limited (NAEL) against the Plaintiff/Respondent (Erin Petroleum Nigeria Limited) and Allied Energy Plc from the London Court of International Arbitration (LCIA) in Arbitration number: LCIA 132498.

2.1.6.   The Plaintiff/Respondent (Erin Petroleum Nigeria Limited) has also continued to default in its repayment obligation of the credit facility granted to it by the Interested Party/Applicant. Amongst other flagrant incidences of default, the Plaintiff/Respondent (Erin Petroleum Nigeria Limited) have defaulted in repaying a principal sum of $4,903,272.79 and interest of $2,065,019 which were due on March 30, 2018.

2.1.7.   Further to paragraph 2.1.5 above, the NAEL in an attempt to realise the fruits of the Award granted by the LCIA and recognised by an Order of the Federal High Court dated May 11, 2017 executed a 'Notice of Seizure/Attachment of Goods' by locking the export valve on the FPSO operated by Allied Energy Plc. (the interest of which has been charged in favour of the Interested Party/Applicant for the repayment of the credit facility granted to the Plaintiff/Respondent) (Erin Petroleum Nigeria Limited).

2.1.8.   That the Interested Party/Applicant in a bid to devise a feasible plan to realise the sum outstanding under the Term Loan Facility Agreement granted to the Plaintiff/Respondent (Erin Petroleum Nigeria Limited) initiated dialogue with the Plaintiff/Respondent (Erin Petroleum Nigeria Limited) in good faith vide a letter dated February 14, 2018, an entity referred to as Erin Energy Corporation (registered in the United States) which purports to be the 'parent company' of the Plaintiff/Respondent (Erin Petroleum Nigeria Limited), had on April the 25, 2018 filed a Voluntary Petition for Chapter 11 Bankruptcy under the United States Bankruptcy code, with its affiliate companies including the Plaintiff/Respondent (Erin Petroleum Nigeria Limited) purporting to file similar applications before the United States

**KENNA**
Barristers • Solicitors

Bankruptcy Court for the Southern District of Texas, Houston Division for the purpose of reorganisation.

2.1.9.  Upon being notified of the voluntary petition for Chapter 11 Bankruptcy filed by the Plaintiff/Respondent (Erin Petroleum Nigeria Limited) before the United States Bankruptcy Court and several applications including an application for automatic stay and cash collateral, the Interested Party Applicant filed an Affidavit of Facts before the United States Bankruptcy Court disclosing the nature of its interest in the Plaintiff/Applicant (Erin Petroleum Nigeria Limited) as well as informing the Bankruptcy Court of the appropriate Court seized with jurisdiction to entertain such matter involving a Company incorporated under Nigerian Law.

2.1.10. The Interested Party/Applicant thereafter proceeded to exercise its right of enforcement of the security provided under the Deed of Legal Charge between the Plaintiff/Respondent (Erin Petroleum Nigeria Limited) and the Interested Party Applicant dated May 14, 2015 by appointing a Receiver/Manager over the Plaintiff/Respondent (Erin Petroleum Nigeria Limited) vide an instrument dated May 18, 2018 (seven days prior to the Order of this Honourable Court dated May 25, 2018).

2.1.11. In view of the foregoing, the interested Party/Applicant has now brought this application to set aside the Order of this Honourable Court dated May 25, 2018 registering the Judgment/order of the United States Bankruptcy Court for the Southern District of Texas, Houston Division made on May 1, 2018.

## 3.0.  **ISSUES FOR DETERMINATION**

3.1. The Interested Party/Applicant submit the following issues for determination by this Honourable Court:

3.1.1. **Whether from the circumstances of the case, the United States Bankruptcy Court for the Southern District of Texas, Houston Division (being the Foreign Court) had the jurisdiction to make the judgement/order registered by an order of this Honourable Court on May 25, 2018.**

3.1.2. **Whether in view of the principle of separate corporate legal personalities of Erin Energy Corporation of the United States of**

America and Erin Petroleum Nigeria Limited, and the denial to the Interested Party/Applicant, of its right to fair hearing, this Honourable Court's order of May 25, 2018 ought not to be set aside.

3.1.3. Whether from the circumstances of the case, the Order made by this Honourable Court on May 25, 2018 ought not to be set aside pursuant to Sections 6 & 7 of the Foreign Judgment (Reciprocal Enforcement) Act, Sections 537 – 540 of the Companies and Allied Matters Act, and relevant provisions of the Rules of this Honourable Court.

## 4.0.  LEGAL ARGUMENT

**ISSUE ONE:**

Whether from the circumstances of the case, the United States Bankruptcy Court for the Southern District of Texas, Houston Division (being the Foreign Court) had the jurisdiction to make the judgement/order registered by an order of this Honourable Court on May 25, 2018.

4.1. My Lord, before attempting to answer the obvious question posed by this issue, we respectfully refer your Lordship to the case of **Yar'adua V Yandoma (2015) 4 N.W.L.R. (Pt. 1448) 123 Pp. 156, Paras. B-D** where the Supreme Court pronounced on the importance of jurisdiction and effect of defect in jurisdiction as follows –

> "Jurisdiction of Court is a radical and crucial question of the court's competence. Where a court lacks jurisdiction and proceeds to hear and determine a case, the proceedings, no matter how well conducted and decided, are a nullity *ab initio* and remain so…The nerve centre of adjudication, which is akin to the blood that gives life to a human being, is jurisdiction of the court, and is therefore of overriding importance."

4.2. Similarly, in the case of **Dairo V U.B.N. Plc 16 N.W.L.R (Pt. 1059) 99 (p. 130, paras. C-E)** the Court held as follows –

KENNA

> "Jurisdiction is the life wire of a Court as no court can entertain a matter where it lacks jurisdiction. Issue of jurisdiction can be raised anytime even on appeal at the Supreme Court. Because of its decisive nature, jurisdiction cannot be conferred on or taken away from any court just because the parties have agreed or consented to do so."

4.3. Jurisdiction is therefore the authority a Court or Tribunal has to decide matters presented in a formal way for its decision. It also means the authority which a Court has to decide matters contested before it or the authority to take cognizance of matters presented in a formal way for its decision. The limit of the authority may be prescribed in a statute under which the Court or tribunal was created. Where a Court or Tribunal does not have jurisdiction, it cannot adjudicate on a controversy between litigants before it.  See **Saraki V. FRN (2016) 3 N.W.L.R. (Pt. 1500) 531 Pp. 588 – 589 paras. F-A.**

4.4. Having established the importance of jurisdiction as a *sine qua non* to invoking the adjudicatory powers of a Court, it is necessary to identify the ingredients of jurisdiction so as to ascertain where it exist, or where it is lacking. Accordingly, we respectfully refer your Lordships to the case of **Yar'adua v Yandoma (Supra) Pp. 160-161, paras. H-B** where the Supreme Court, reiterating the principle laid down in **Madukolu v Nkemdilim (1962) 2 SCNLR 341** held as follows:

> "When an issue of jurisdiction is raised, the court would consider whether:
>
> a.   It is properly constituted as regards numbers and qualification of the members of the bench such that no member is for any reason disqualified;
>
> b.   The subject matter of the case is within its jurisdiction and there is no feature of the case which prevents the court from exercise of its jurisdiction; and
>
> c.   The case comes before the court initiated by due process of law and upon fulfilment of any condition precedent to the exercise of jurisdiction [*Underlining ours for emphasis*]

4.5. A consideration of the above judicial pronouncement would reveal that, amongst the factors which must exist for a Court to be cloth with jurisdiction to entertain a suit, is that; every feature of the subject matter of that case

KENNA

must be within the jurisdiction of the Court. My Lord, we respectfully submit that the foregoing principle of law shall continue to apply irrespective of a Court's pre-conceived notion as to the importance of entertaining and making pronouncement upon such matter. We refer your Lordship to the case of **Akinbinu V. Oseni (1992) 1 N.W.L.R. (Pt 215) 97 Pp.101 para. H**

> **"The fact that a matter appears to be fundamental to the administration of justice would not by itself entitle a judge to pronounce on it when the matter in the first place should not have been before him"**

4.6. My Lord, applying the principle of law encapsulated in the judicial pronouncements cited above, it would appear from the circumstances of this case that the United States Bankruptcy Court for the Southern District of Texas ('Foreign Court') lacked jurisdiction to make the judgment/order of May 1, 2018 (subsequently registered by an order of this Honourable Court on May 25, 2018) in view of the fact the proceedings before the United States Bankruptcy Court contained a feature – being the presence of the Plaintiff/Respondent (a company registered and governed by Nigerian Law), which ought to have prevented the Foreign Court from exercising its jurisdiction in that matter from which the initial order arose.

4.7. My Lord, the antecedents of the facts upon which the Interested Party/Applicant's Motion on Notice is predicated as outline in the summary of facts contained in this address would reveal that, amongst the debtors in favour of whom an automatic order for stay was made by the Foreign Court (pursuant to a voluntary petition for chapter 11 bankruptcy) includes the Respondent, a Company incorporated under the Companies and Allied Matters Act, Cap C20 LFN, 2004 (CAMA) with its offices situate at Plot 1649, Olosa Street, Victoria Island, Lagos.

4.8. We respectfully refer your Lordship to the resolutions accompanying the Voluntary Petitions for Chapter 11 bankruptcy filed under the United States Bankruptcy code by the Plaintiff/Respondent (Erin Petroleum Nigeria Limited) and its purported parent company, Erin Energy Corporation, captured as Exhibits 10 and 11 of the Interested Party/Applicant's Affidavit in Support of the Motion on Notice dated June 1, 2018. By the above referenced resolutions, the aforementioned entities authorised an officer to execute '*any and all plans of reorganization under chapter 11 of the Bankruptcy Code (which is predominantly the nature of relief sought under the chapter 11 bankruptcy code), including any and all modifications, supplements, and amendments thereto, in such form and containing such term terms as the Board shall thereafter approve, and to cause the same to be filed in the United States Bankruptcy Court for the Southern District of*

*Texas, at such time as the authorized officer shall determine*.' [Underlining ours for emphasis].

4.9. My Lord, from the circumstances of this case, one may stand to wonder the basis upon which the Plaintiff/Respondent (Erin Petroleum Nigeria Limited), being a company incorporated and governed by Nigerian Law filed a Voluntary Petition for reorganisation under Chapter 11 of the United States Bankruptcy Code before the Foreign Court when there are a sundry of statutory provisions specifically regulating the procedure to be adopted in the event where a Nigerian entity seeks arrangement and compromise with its creditors, which provisions are similar in nature to the provisions relied upon by the Plaintiff/Respondent (Erin Petroleum Nigeria Limited) and its self-proclaimed parent Company in the Voluntary Petition for Chapter 11 Bankruptcy in the United States of America.

4.10. From the foregoing, we can reasonably assert that –

    a.  The Plaintiff/Respondent (Erin Petroleum Nigeria Limited) who obtained a credit facility in the sum of $100,000,000.00 from the Interested Party/Applicant to part finance The expansion and development of the oil blocks covered by OMLs 120 and 121 is a Company registered and governed by Nigerian Law;

    b.  The Interested Party/Applicant who granted the credit facility under a Term Loan Facility Agreement to the Plaintiff/Respondent (Erin Petroleum Nigeria Limited) is equally a Company registered and governed by Nigerian Law;

    c.  The oil blocks covered by OMLs 120 and 121, the development and expansion for which the credit facility advanced to the Plaintiff/Respondent (Erin Petroleum Nigeria Limited) was required are assets situated in Nigeria and belonging to the Federal Government of Nigeria;

    d.  The economic interest which forms a part of the security for the credit facility granted by the Interested Party/Applicant to the Plaintiff/Respondent (Erin Petroleum Nigeria Limited) accrue from assets situated in Nigeria and belonging to the Federal Government of Nigeria;

e.   The All Assets Debenture and relevant security documents executed between the Interested Party/Applicant and the Plaintiff/Respondent (Erin Petroleum Nigeria Limited) are governed by Nigerian Law by the mutual agreement of the parties.

4.11.   My Lord, from the facts outlined in paragraph 4.10 (a) – (e) above, a lay man with no appreciation of the law would most probably come to a conclusion that the appropriate forum where the Plaintiff/Respondent (Erin Petroleum Nigeria Limited) indents to seek reorganization and compromise with its creditors should be under Nigerian Law, and before a Nigerian Court seized of Jurisdiction to hear such matter.

4.12.   Furthermore, as though to justify the inclination of the proverbial 'lay man' introduced in paragraph 4.11 above, sections 537 – 540 of the Companies and Allied Matters Act contains copious provisions regulating Arrangement and Compromise of a Company with its creditors. To put this matter beyond contemplation, Section  251 (1) (e) of the 1999 Constitution of the Federal Republic of Nigeria (as amended) 'CFRN' which is the grundnorm of laws in Nigeria confers the Federal High Court of Nigeria with the exclusive jurisdiction to determine all matters arising from the operation of the Companies and Allied Matters Act or any other enactment replacing or regulating the operation of companies incorporated under the Companies and Allied Matters Act (including the Plaintiff/Respondent). We have reproduced the provisions of Section 251 (1) (e) of the CFRN as follows –

**251 (1) Notwithstanding anything to the contrary contained in this constitution, and in addition to such other jurisdiction as may be conferred upon it by an act of the National Assembly, the Federal High Court shall have and exercise jurisdiction to the exclusion of any other Court in civil causes and matters –**

**(e) Arising from the operation of the Companies and Allied Matters Act or any other enactment, replacing that act or regulating the operations of Companies incorporated under the Companies and Allied Matters Act.**

4.13.   My Lord, it is in the light of the foregoing that we respectfully submit that that the proper forum for the Plaintiff/Respondent (Erin Petroleum Nigeria Limited) to seek an application for creditor arrangement or business reorganisation ought to have been before this Honourable Court and not the United States Bankruptcy Court for the Southern District of Texas as they had done in the instant case, which Court obviously had no

jurisdiction to entertain the matter or make the judgment/order dated May 1, 2018 (registered by an order of this Honourable Court made on May 25, 2018).

4.14. My Lord, this underscores the well-established principle of law that where a statute (*or rules of court*) provide for a particular procedure or method of doing a thing, then the performance of such thing must be done in the manner prescribed by law. This position has received judicial endorsement in a plethora of decided cases including; **C. C. B. Plc v. A. G. Anambra State [1992] 8 NWLR (Pt. 261) 528** and **Buhari v. Yusufu [2003] 14 NWLR (Pt. 841) 446**. In Nwankwo v. Yar'Adua **[2011] 13 NWLR (Pt. 1263) 81 at 133**, where the Supreme Court pronounced as follows –

> *"It is settled law that where a statute provides a particular procedure for doing a thing, there should be no other method of doing it."* [*Underlining ours for emphasis*]

4.15. In the circumstance, we respectfully submit that the Judgment/order of the Foreign Court dated May 1, 2018 having been made without jurisdiction must suffer the fate of a nullity. We respectfully refer your Lordship to the case of **Yakubu V. F.M.B.N Ltd (2015) 11 N.W.L.R. (Pt. 1470) 232** where the Court pronounced as thus –

> **"Where a Court is bereft of jurisdiction, any proceeding conducted without such power is an exercise in futility and therefore a nullity."**

4.16. In addition my Lord, it suffices to state that the Interested Party/Applicant not being a party to the Voluntary Petition for Bankruptcy filed by the Plaintiff/Respondent (Erin Petroleum Nigeria Limited) in the Foreign Court cannot be said to be bound by any order therefrom. We refer your Lordship to the pronouncement of the Court in **Kokoro-Owo V. Lagos State Govt. (2001) 11 N.W.L.R. (Pt. 723) 237 Pp. 246 paras. D-F** where the Court held thus –

> "**The Court cannot make an order against a person who is neither a party nor a privy to a proceeding before it. In order for a party to be affected by a decision of the Court, he must not be left out of the action because <u>no Court will make an Order against any person who has not been heard or given opportunity to be heard</u>**" [underlining ours for emphasis]

4.17. We therefore humbly urge your Lordship to resolve this issue in favour of the Applicant and set aside the Order of the this Honourable Court, registering the Order/Judgment of the United States Bankruptcy Court for the Southern District of Texas.

## ISSUE TWO:

**Whether in view of the principle of separate corporate legal personalities of Erin Energy Corporation of the United States of America and Erin Petroleum Nigeria Limited, and the denial to the Interested Party/Applicant, of its right to fair hearing, this Honourable Court's order of May 25, 2018 ought not to be set aside.**

4.18. My Lord, it is worthy to note that the principle of separate legal entities is trite in global as well as Nigerian Jurisprudence. Accordingly, our jurisprudence is replete with apposite authorities expounding the fundamental principle that a company is a legal person with a separate existence from the company's members (that is shareholders where the company has shares) or its directors. From this separate personality flow many consequences. The Locus Classicus case **Salomon v Salomon [1877] AC 22** laid down the foregoing principle. The Companies and Allied Matters Act, Cap C20, LFN 2004, gives further reverberation, credence and statutory backing to this principle in Section 37.

4.19. The Court of Appeal in the case of **EMCO & Partners Ltd & Ors v Dordeen (Nig) Ltd & Anor (2017) LPELR-43453 (CA)** held amongst other things that the irrefutable position of the law is that upon incorporation, a company becomes a body corporate that is it acquires a separate legal personality with autonomous identity, can sue and be sued in its own name, own and dispose of properties and enter into contracts. The same position was affirmed by the Supreme Court in the case of A. O. **Afolabi & Ors. V Western Steel Works Limited & Ors. (2012) LPELR-9340 (SC)**. Therein the court held that:

**A body corporate is a juristic person, it has a legal personality and can be an occupier of premises. It can sue and be sued in its corporate name. It also has the capacity to enter into any**

**agreement in its corporate name. In order to prove this corporate status of a Company, one must produce a Certificate of Incorporation in respect of the Company.**

4.20. My Lord, it is essential to bring to the fore in the instant matter that the submission of the Plaintiff/Respondent (Erin Petroleum Nigeria Limited) of its dealings with its creditors (particularly the Interested Party/Applicant, a secured creditor and licenced Nigerian Bank with whom the Plaintiff/Respondent is bound by Nigerian law) is an attempt to blur the basic principle of separate legal personality. We humbly submit that notwithstanding any ties of membership and/or affiliations between Erin Energy Corporation (a company registered in the United States of America and subject to American laws) and the Plaintiff/Respondent, a Nigerian Company (registered under the Companies and Allied Matters Act and subject to Nigerian Law), the Plaintiff/Respondent (Erin Petroleum Nigeria Limited) is a distinct legal personality and separate from Erin Energy Corporation.

4.21. Thus, if the Plaintiff/Respondent (Erin Petroleum Nigeria Limited) as a Nigerian entity is desirous of altering its business structure or its relations with creditors (particularly a licenced Nigerian Bank and secured creditor registered under Nigerian Law such as the Interested Party/Applicant) it must do so as a separate corporate entity and under the ambits of Nigerian Law, not as an extension of a foreign company of a foreign country and under such foreign country's law.

4.22. As a matter of fact, even in the case of a Holding Company and its Subsidiaries (which Erin Energy Corporation and the Plaintiff/Respondent are not), where there appears to be a perceived inextricable relations, Nigerian law requires that both (the holding company and the subsidiary) be treated as separate legal entities and are to be seen as distinct personalities; *a fortiori* mere affiliate companies.

This was judicially settled in the case of **M.O. Kanu Sons & Co Ltd. V First Bank of Nigeria Plc., (1998) 11 NWLR (Pt. 572) 116-132.**

4.23. My, Lord, we respectfully wish to avert the mind of your Lordship to the fact that the Interested Party/Applicant was not afforded fair hearing the hearing of the Bankruptcy petition filed by the Plaintiff/Respondent (a Nigerian Company) before the United States Bankruptcy Court for the Southern District of Texas. Indeed the Interested Party/Applicant was not a party Erin Energy Corporation, *et*

*al* Debtors, with case No. 18-32186 before the United States Bankruptcy Court for the Southern District of Texas. However, the Interested Party/Applicant filed an affidavit of facts before the United States Bankruptcy Court, disclosing its interests as a primary and secured creditor of the Plaintiff/Respondent (Erin Petroleum Nigeria Limited)   and deposing to facts, which show fact that the entertainment of such proceedings would amount to usurping the jurisdiction of the Federal High Court of Nigeria, which by law and by agreement of the parties (as contained in the Term Loan Facility Agreement between the Interested Party/Applicant and the Plaintiff/Respondent, annexed as **Exhibit 1** to the affidavit) was clothed with requisite jurisdiction to entertain any matter pertaining to the immediate interests of the Interested Party/Applicant and//or the 'reorganization' of the Plaintiff/Respondent (Erin Petroleum Nigeria Limited) (a company registered under the Companies and Allied Matters Act) as it affects the Interested Party /Applicant and its interests.

4.24.   Although the Interested Party/Applicant was not a party to case of Erin Energy Corporation, *et al* Debtors, with case No. 18-32186 before the United States Bankruptcy Court for the Southern District of Texas, the Interested Party/Applicant proactively filed an Affidavit of Facts before the Court for the purpose of informing the Court of its interest and avert usurpation of the Jurisdiction of the Federal High Court of Nigeria by the US Bankruptcy Court, and, more importantly, the overwhelming interests of the Interested Party/Applicant. However, the United States Bankruptcy Court went on to hear the matter and the orders made by that Court and this Honourable Court were made without the Interested Party/Applicant being accorded its right to fair hearing.

4.25.   Furthermore My Lord, in view of the enormity of the interests of the Interested/Party/Applicant and the suppression of same by the Plaintiff/Respondent (Erin Petroleum Nigeria Limited) before this Honourable Court, the Interested/Party/Applicant has been denied essential audience.

4.26.   According to the Supreme court in the case of **Atano v AG Bendel State (18988) 2 NWLR (PT. 75) 132,** the principle of fair hearing is fundamental to all court procedure and proceedings and like jurisdiction, the absence of it vitiates the proceedings, no matter how well conducted. Accordingly, it is indisputable that the principle of fair hearing as an embodiment of Section 36(1) of the 1999 Constitution of the Federal Republic of Nigeria is not negotiable and where there is

a denial of fair hearing, the outcome of the entire proceedings are vitiated and thereby nullified. See **Sunkanmi Adebesin v State (2014) 9 NWLR (PT. 1413) 609 at 645.**

4.27.  We therefore humbly urge your Lordship to resolve this issue in favour of the Applicant and set aside the Order of the this Honourable Court, registering the Order/Judgment of the United States Bankruptcy Court for the Southern District of Texas.

## ISSUE THREE:

**Whether from the circumstances of the case, the Order made by this Honourable Court on May 25, 2018 ought not to be set aside pursuant to Sections 6 and 7 of the Foreign Judgment (Reciprocal Enforcement) Act, Chapter F35. (Chapter 152 LFN, 1990) Sections 537 – 540 of the Companies and Allied Matters Act, and relevant provisions of the Rules of this Honourable Court.**

4.28.  My Lord, it is trite that our laws recognise foreign judgment given in foreign countries which accord reciprocal treatment to judgments given in Nigeria.  It was specifically for this purpose that the Foreign Judgment (Reciprocal Enforcement) Act (the Act) was enacted to facilitate the enforcement in foreign judgments given in foreign countries in Nigeria.

4.29.  The Act recognises the power of superior Courts of records to register upon the application of any person within six years after the date of a foreign judgment, such judgments, subject to proof of the prescribe matters and to other provisions of this act upon such conditions as contained in the act. However, section 6 the Act provides for instances where foreign judgments registered by superior Courts in Nigeria must or may be set aside. (we have reproduced the provisions of Section 6 (1) (a) (ii), (v) for your Lordship's ease of reference –

**6 Cases in which registered judgments must be set aside**

**(1) On an application in that behalf duly made by any party against whom a registered judgment may be enforced, the registration of the Judgment –**

a) **Shall be set aside if the registering Court is satisfied –**

ii.    **that the Courts of the Country of the Original Court had no jurisdiction in the circumstances of the case; or**

v.    **that the enforcement of the Judgment would be contrary to public policy in Nigeria.**

4.30. My Lord, from the above statutory provision, it is clear that the law contemplated instances where a foreign judgment/order registered by a Superior Court in Nigeria may suffer some defect necessitating same to be set aside. In the instant case, the Plaintiff/Respondent (Erin Petroleum Nigeria Limited) approached this Honourable Court vide an Originating Motion Ex-Parte sworn to by one Chinedu Ukanwoke filed on May 15, 2018 praying the Court for the following orders –

> "**An Order directing the registration in the Federal High Court, of the Judgment/order ("Judgment") of the United States Bankruptcy Court of the Southern District of Texas, Houston Division, in the case of Erin Energy Corporation et.al, (Debtors), case No. 18-32186 delivered on May 1, 2018...**"

amongst other orders.

4.31. The Plaintiff/Respondent (Erin Petroleum Nigeria Limited), enjoying the privilege and privacy afforded by an Ex-Parte Application which are otherwise utilized in cases of extreme urgency, surreptitiously veiled the circumstances under which the Judgment/order of the Foreign Court made on May 1, 2018 was granted. It is apparent from the circumstances of this case that this Honourble Court was unaware of the fact that the Judgment/order of Foreign Court was made without jurisdiction and as such a nullity. There is therefore no basis upon which the Court should have registered the Foreign Judgment (which was itself null and void). Indeed the law is settled that '*one cannot put something on nothing an expect it to stand*'. See **Macfoy V. U.A.C Ltd (1961) 3 All ER, 1169**.

4.32. Accordingly, the Order of this Honourable Court made on May 25, 2018, purporting to register the Judgment/order of the Foreign Court dated May 1, 2018 must consequently suffer the same fate of the latter – a nullity.

4.33. We respectfully refer your Lordship to the case of **Anthony Okoro V. the State (2012) 4 N.W.L.R. (Pt. 1290) 351 at 379** where the Court pronounced on the appropriate treatment of a null order of Court when it held thus:

**"When a Judge makes a null Order or one without jurisdiction it is advisable but not mandatory to go to Court to set it aside. The only reason for going to Court is to have it put on record that it has been set aside…"**

4.34. Assuming but not conceding that the Judgment/order of the Foreign Court made on May 1, 2018 was indeed valid, it is our humble contention that same will still be caught up by the provision of Section 6 (1) (a) (v) of the Foreign Judgment (Reciprocal Enforcement) Act as the enforcement of the said Foreign Judgment/order purports to impose an automatic <u>stay of all entities (including all departments, agencies and instrumentalities of any foreign government)</u> from *taking any action to obtain possession of property of the Plaintiff/Respondent's estates or to exercise control over property of the estate* which if enforced will curtails the sovereign powers of the Federal Government of Nigeria to deal with the oil blocks covered under OMLs 120 and 121 (*being assets belonging to the Federal Government of Nigeria but held by Allied Energy Plc. with the economic interest accruing therefrom assigned to the Plaintiff/Respondent and charged in favour of the Interested Party/Applicant*).

4.35. My Lord, owing to the continued breach of material terms of the Term Loan Facility Agreement between the Parties by the Plaintiff/Respondent (Erin Petroleum Nigeria Limited) thereby triggering an event of default, the interested party/Applicant had by an instrument dated May 18, 2018 (six days prior to the Order of this Honourable Court dated May 25, 2018) exercised its right of the enforcement of the security provided under the Deed of Legal Charge dated May 14, 2015. between the Plaintiff/Respondent (Erin Petroleum Nigeria Limited) and the Interested Party/Applicant dated May 14, 2014 by appointing Bashorun J.K. Randle of J.K Randle Professional services as the Receiver/Manager over the Plaintiff/Respondent (Erin Petroleum Nigeria Limited).

4.36. My Lord, the appointment of the Receiver/Manager by the Interested Party/Applicant prior to the registration of the Judgment/order of the Foreign Court made on May 1, 2018 has therefore rendered the said order academic as a principal act which it seeks to restrain has already occurred. The law is settled that one cannot restrain a completed act.

4.37. We therefore humbly urge your Lordship to resolve this issue in favour of the Applicant and set aside the Order of the this Honourable Court,

registering the Order/Judgment of the United States Bankruptcy Court for the Southern District of Texas.

## 5.0   **CONCLUSION**

**5.1.** In view of the arguments canvassed above, we humbly urge this Honourable Court to hold as follows:

5.1.1. That the Judgment/order of the United States Bankruptcy Court of the Southern District of Texas, Houston Division, made on May 1, 2018 was made without jurisdiction.

5.1.2. That the Judgment/order of the United States Bankruptcy Court of the Southern District of Texas, Houston Division, made on May 1, 2018 having been made without jurisdiction, is null and void.

5.1.3. That the Plaintiff/Respondent (Erin Petroleum Nigeria Limited) is a Nigerian company registered at the Corporate Affairs Commission (CAC), and a separate legal entity from Erin Energy Corporation (a United States of America registered company). Therefore, an order made by the United States Bankruptcy Court on the application of Erin Energy Corporation, cannot bind the Plaintiff/Respondent (Erin Petroleum Nigeria Limited).

5.1.4. That the Interested Party/Applicant was not afforded fair hearing in the grant of the Order by the United States Bankruptcy Court as well as in the registration of same before this Honourable Court, and as such, any such Orders, which violate the Constitutional rights of the Interested Party/Applicant ought to be set aside.

5.1.5. That the registration of the Judgment/order of the United States Bankruptcy Court of the Southern District of Texas, Houston Division, made on May 1, 2018 by an Order of this Honourable Court dated May 25, 2018 is consequently null and void, same being made upon a null foreign judgment/order.

5.1.6. That enforcement of the Judgment/order of the United States Bankruptcy Court of the Southern District of Texas, Houston Division, made on May 1, 2018 would be contrary to public policy as same purports to curtail the sovereign right of the Federal Government of Nigeria from dealing with assets belonging to it.

5.1.7. That the Court seized with jurisdiction to hear and entertain matters relating to business reorganization or arrangement and compromise with creditors involving a Company registered under Nigerian Law is the Federal High Court of Nigeria to the exclusion every other Court.

5.1.8. That the act sought to be restrained by the Judgment/order of the United States Bankruptcy Court of the Southern District of Texas, Houston Division, made on May 1, 2018 has been performed by the Interested Party/Applicant prior to the Order of this Honourable Court made on May 25, 2018 and constitutes a completed act.

**5.2.** We humbly urge your Lordship to resolve the issues in favour of the Interested Party/Applicant.

## 6.0.  LIST OF AUTHORITIES CITED

### STATUTES

1. Companies and Allied Matters Act, Cap C20 LFN, 2004 (CAMA)
2. Foreign Judgment (Reciprocal Enforcement) Act, Chapter F35. (Chapter 152 LFN 1990)
3. The 1999 Constitution of the Federal Republic of Nigeria (as amended) 'CFRN'

### CASES

1. Akinbinu V. Oseni (1992) 1 N.W.L.R. (Pt 215) 97 Pp.101 para. H
2. Anthony Okoro V. the State (2012) 4 N.W.L.R. (Pt. 1290) 351 at 379
3. Buhari v. Yusufu [2003] 14 NWLR (Pt. 841) 446.
4. C. C. B. Plc v. A. G. Anambra State [1992] 8 NWLR (Pt. 261) 528
5. Dairo V U.B.N. Plc 16 N.W.L.R (Pt. 1059) 99 (p. 130, paras. C-E)
6. Kokoro-Owo V. Lagos State Govt. (2001) 11 N.W.L.R. (Pt. 723) 237 Pp. 246 paras. D-F
7. Macfoy V. U.A.C Ltd (1961) 3 All ER, 1169.
8. Madukolu v Nkemdilim (1962) 2 SCNLR 341
9. Nwankwo v. Yar'Adua [2011] 13 NWLR (Pt. 1263) 81 at 133
10. Saraki V. FRN (2016) 3 N.W.L.R. (Pt. 1500) 531 Pp. 588 – 589 paras. F-A
11. Yakubu V. F.M.B.N Ltd (2015) 11 N.W.L.R. (Pt. 1470) 232
12. Yar'adua V Yandoma (2015) 4 N.W.L.R. (Pt. 1448) 123 Pp. 156, Paras. B-D

DATED THIS 4ᵀᴴ DAY OF JUNE, 2018

KENNA

*SIGNED BY:* Nimma Jo-Madugu (Miss)



Prof. Fabian Ajogwu, SAN
Charles Nwabulu, ACArb
Okechukwu Ekweanya, Esq
Kelvin Erhonsele, ACIArb
Abisola Yusuf (Miss)
Nimma Jo-Madugu (Miss)
Oluyemi Adebo, Esq
Chinonye Nnaji (Miss)
Paliechi Nonye-Okoronkwo (Miss)
(Applicants' Counsel)
KENNA PARTNERS
8, Ogunyemi Road
Palace Way, Oniru,
Victoria Island, Lagos.
cnwabulu@kennapartners.com
Phone: 08158390704

FOR SERVICE ON:

1. The Plaintiff/Respondent
   C/o its Counsel
   Wuyi Ogunyike
   Plot 1649, Olosa Street
   Victoria Island
   Lagos