## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **ERIN ENERGY CORPORATION,** *et al.,*[1] | § | **Case No. 18-32106** |
| | § | |
| **Debtors.** | § | **Chapter 11** |
| | § | |
| | § | **(Jointly Administered)** |

### EXPEDITED MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO RETAIN AND COMPENSATE PROFESSIONALS UTILIZED IN THE ORDINARY COURSE OF BUSINESS

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY-FOUR (24) DAYS FROM THE DATE YOU WERE SERVED WITH THIS PLEADING. YOU MUST SERVE A COPY OF YOUR RESPONE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**EXPEDITED RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EXPEDITED BASIS, THEN YOU WILL HAVE LESS THAN 24 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EXPEDITED CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**

**A HEARING WILL BE CONDUCTED ON THIS MATTER ON JUNE 19, 2018 AT 9:00 A.M. IN COURTROOM 404, 515 RUSK, HOUSTON, TEXAS 77002.**

---

[1] The last four digits of Erin Energy Corporation's ("ERN") federal tax identification number are 9798. The other Debtors in these cases are: Erin Energy Limited ("EEL"); Erin Energy Kenya Limited ("EEKL"); and Erin Petroleum Nigeria Limited ("EPNL"). The Debtors' service address is: 1330 Post Oak Blvd., Suite 2250, Houston, TX 77056.

TO THE HONORABLE MARVIN ISGUR, U.S. BANKRUPTCY JUDGE:

The above captioned debtors and debtors in possession (collectively, the "Debtors"), by and through their undersigned proposed attorneys, hereby file this Expedited Motion for Entry of an Order Authorizing the Debtors to Retain and Compensate Professionals Utilized in the Ordinary Course of Business (the "Motion"), and respectfully submit as follows:

## I.
## JURISDICTION AND VENUE

1.      The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory authority for the relief requested herein is §§ 105(a), 330, and 331 of Title 11 of the United States Code (the "Bankruptcy Code"), and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## II.
## BACKGROUND

3.      On April 25, 2018 (the "Petition Date"), the Debtors, filed voluntary petitions for relief (the "Bankruptcy Cases") under chapter 11, title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Court").  The Debtors continue to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  These Bankruptcy Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).

4.      ERN operates through its subsidiaries as an independent oil and gas exploration and production ("E&P") company focused on energy resources in Africa with headquarters located at 1330 Post Oak Blvd., Suite 2250, Houston, Texas 77056.  In total, ERN has ten (10)

wholly owned subsidiaries and one partially owned subsidiary. EEL is a wholly owned subsidiary of ERN organized under the laws of the Cayman Islands. EEL was founded in 2012 and is also the parent of EEKL. EPNL is a limited company incorporated under the laws of the Federal Republic of Nigeria. Founded in 2009, EPNL is currently the main operating subsidiary of ERN in Nigeria and accounts for almost all of ERN's revenues.

5.      EEKL is a subsidiary of EEL and is organized under the laws of the Republic of Kenya. Founded in 2012, EEKL is the operating subsidiary of ERN in the country of Kenya. Although EEKL holds two licenses in the country, there are no ongoing operations in Kenya.

6.      The Debtors focus their efforts on acquiring and developing high-potential E&P assets in Sub-Saharan Africa, and exploring those assets through strategic partnerships with national oil companies, indigenous local partners, and other independent oil companies. The Debtors' current asset portfolio consists of five licenses across Nigeria, Ghana and The Gambia covering an area of approximately 1.5 million acres. The Debtors' strategic acquisitions and aggressive E&P strategies have helped sustain their growth and success.

7.      A number of factors – including regulation and the prolonged commodity downturn – have had a material adverse effect on the Debtors' financial condition. The most significant impact has been in Nigeria where certain pending legal matters (the "Nigerian Litigation") culminated in armed agents acting for the benefit of NAE boarding the EPNL offtake vessel and seizing valuable assets. NAE's wrongful actions resulted in ERN and EPNL's inability to operate and market crude oil from the Oyo Field offshore from Nigeria.

8.      The disruption of operations in Nigeria coupled with the Debtors' inability to service mounting debt obligations and other trade payable obligations has resulted in a severe cash-flow shortage. Through these Bankruptcy Cases, the Debtors seek protection and

3

enforcement of the automatic stay with respect to the Debtors' assets while the Debtors seek alternative sources of funding pending resolution of the Nigerian Litigation.

## III.
## RELIEF REQUESTED

9.        By this Motion, the Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A**: (a) authorizing, but not directing, the Debtors to retain and compensate the OCPs (as defined below) on a postpetition basis in accordance with the procedures set forth in **Exhibit 1** annexed to **Exhibit A** attached hereto and incorporated by reference herein (the "OCP Procedures"),[2] without the need for each OCP to file formal applications for retention and compensation pursuant to sections 327, 328, or 330 of the Bankruptcy Code; and (b) granting related relief.

10.        For the sake of clarity, individual retention applications have been, or will be, filed for any professionals that the Debtors seek to employ in connection with the conduct of the chapter 11 cases (the "Chapter 11 Professionals").   The Chapter 11 Professionals will be permitted to be compensated and reimbursed only in accordance with applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Court Rules of the United States Bankruptcy Court for the Southern District of Texas, the United States Trustee Fee Guidelines, and any orders entered in the Bankruptcy Cases governing professional compensation and reimbursement for services rendered and expenses incurred.

## IV.
## THE ORDINARY COURSE PROFESSIONALS

11.        The Debtors employ a number of attorneys, accountants, consultants and other non-professionals across various countries in the ordinary course of their businesses

(collectively, the "OCPs").  The OCPs provide services for the Debtors in a variety of matters unrelated to these Bankruptcy Cases, including specialized legal services, accounting services, business advisory, auditing and tax services, and certain consulting services relating to, among other things, corporate, litigation, financial, tax, regulatory, and environmental matters.  The services rendered by the OCPs during the pendency of these Bankruptcy Cases are necessary to the day-to-day operations of the Debtors' businesses.  However, the burden of requiring each OCP to prepare and file fee and employment applications, and attend hearings on the applications, is inefficient and cost-prohibitive.  In light of the significant costs associated with the preparation of employment applications for professionals who will receive relatively modest fees, the Debtors submit that it would be impractical for the Debtors and their legal advisors to prepare and submit individual applications and proposed retention orders for the OCPs.

12.     A nonexclusive list of the Debtors' OCPs (the "OCP List") is attached hereto as **Exhibit B**.  The Debtors may also seek to employ additional OCPs, as necessary, in the course of these Bankruptcy Cases, subject to procedures set forth herein.  The Debtors submit that the continued employment and compensation of such OCPs in accordance with the OCP Procedures set forth in **Exhibit 1** annexed to **Exhibit A** is in the best interests of the Debtors' estates, their creditors, and other parties in interest.  The OCPs have significant knowledge, expertise, and familiarity with the Debtors and their international operations.  Although the Debtors anticipate that the OCPs will wish to continue to provide services to the Debtors during these Bankruptcy Cases, many would not be in a position to do so if the Debtors cannot pay them on a regular basis.  And without such knowledge, expertise, and familiarity that the OCPs have, the Debtors undoubtedly would incur additional and unnecessary expenses in educating and retaining

---

[2] The Debtors also seek to reserve the right to retain additional OCPs from time to time during these chapter 11 cases, as the need arises, by filing a list or lists of such additional professionals and complying with the notice

replacement professionals.  Accordingly, the Debtors' estates and their creditors are best served by avoiding any disruption in the professional services that are required for the day-to-day operations of the Debtors' businesses.

## V.
## THE DEBTORS' PROPOSED OCP PROCEDURES

13.     The OCP Procedures set forth in **Exhibit 1** annexed to **Exhibit A** will establish a streamlined process for the retention and compensation of OCPs during these Bankruptcy Cases upon notice to the following key parties: (i) the Office of the United States Trustee; (ii) the Official Committee of Unsecured Creditors; (iii) the Debtors' secured creditors; and (iv) all other creditors and parties in interest subscribing to the Court's ECF or listed on the Debtors' service list (collectively, the "Notice Parties").

14.     The OCP Procedures enable the Debtors to employ OCPs upon the filing of a declaration of disinterestedness, substantially in the form annexed as **Exhibit 2** to **Exhibit A**, attached hereto and incorporated by reference herein (each, a "Declaration of Disinterestedness"), which will state that the respective OCP does not have any material interest adverse to the Debtors or their estates.  Additionally, the Notice Parties will have an opportunity to object to any proposed retention pursuant to the OCP Procedures.  The OCP Procedures further provide that fees paid to OCPs, excluding costs and disbursements, may not exceed $50,000.00 per month on average over a rolling three-month period while these Bankruptcy Cases are pending (the "OCP Cap").  To the extent that fees payable to any OCP exceed the OCP Cap, the OCP shall file a fee application (a "Fee Application") with the Court for the amount in excess of the OCP Cap in accordance with sections 330 and 331 of the Bankruptcy Code, the

---

requirements set forth in the OCP Procedures.

Bankruptcy Rules, the Local Bankruptcy Rules, the United States Trustee Fee Guidelines, and any applicable orders of the Court, unless the U.S. Trustee agrees otherwise.

15.     By this motion, the Debtors are not requesting authority to pay prepetition amounts owed to OCPs, if any.

## VI.
## BASIS FOR REQUESTED RELIEF

16.     Section 327 of the Bankruptcy Code requires court approval for the employment of "professional persons," retained to represent or perform services of the estate.  In determining whether an entity is a "professional" within the meaning of section 327 of the Bankruptcy Code and, therefore, must be retained by express approval of the court, courts generally consider whether such entity is involved in the actual reorganization effort, rather than a debtor's ongoing business operations.  *See, e.g. Comm. Of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 619 (Bankr. S.D.N.Y. 1986) ("[T]he phrase 'professional persons,' as used in § 327(a), is a term of art reserved for those persons who play an intimate role in the reorganization of a debtor's estate.").  In making this determination, courts often consider the following factors in determining whether an entity is a "professional" within the meaning of section 327 of the Bankruptcy Code:

a.     whether the entity controls, manages, administers, invests, purchases, or sells assets that are significant to the debtor's reorganization;

b.     whether the entity is involved in negotiating the terms of a plan of reorganization;

c.     whether the entity is directly related to the type of work carried out by the debtor or to the routine maintenance of the debtor's business operations;

d.     whether the entity is given discretion or autonomy to exercise his or her own professional judgment in some part of the administration of the debtor's estate;

7

e.      the extent of the entity's involvement in the administration of the debtor's estate; and

f.      whether the entity's services involve some degree of special knowledge or skill, such that it can be considered a "professional within the ordinary meaning of the term.

*See, e.g., In re First Merchs. Acceptance Corp.*, No. 97-1500 (JIF), 1997 WL 873551, at \*3 (D. Del. Dec. 15, 1997) (listing factors); *see also In re Am. Tissue, Inc.*, 331 B.R. 169, 174 (Bankr. D. Del. 2005) (applying the *First Merchs*. Factors and holding that litigation consulting firm was not a "professional" for section 327 purposes); *In re Riker Indus., Inc.*, 122 B.R. 964, 973 (Bankr. N.D. Ohio 1990) (not requiring section 327 of the Bankruptcy Code approval of the fees of a management and consulting firm that performed only "routine administrative functions" and whose "services were not central to [the] bankruptcy case"); *In re Fretheim*, 102 B.R. 298, 299 (Bankr. D. Conn. 1989) (only those professionals involved in the actual reorganization effort, rather than debtor's ongoing business, require approval under section 327 of the Bankruptcy Code).  The foregoing factors must be considered as a whole when determining if an entity is a "professional" within the meaning of section 327 of the Bankruptcy Code.  None of the factors alone is dispositive.  *See First Merchs.*, 1997 WL 873551, at \*3 ("In applying these factors, the Court stresses that no one factor is dispositive and that the factors should be weighed against each other and considered in toto.").

17.     Upon consideration of all the factors, and because the OCPs will not be involved in the administration of these Bankruptcy Cases, the Debtors do not believe that the OCPs are "professionals" requiring formal retention proceedings under section 327 of the Bankruptcy Code.  Instead, the OCPs will provide services in connection with the Debtors' ongoing business operations, which services are ordinarily provided by non-bankruptcy professionals. Nevertheless, to provide clarity and an opportunity for oversight, the Debtors seek the relief

requested herein to establish clear mechanisms for retention and compensation of the OCPs pursuant to the OCP Procedures and thereby avoid any subsequent controversy with respect thereto.

18.     The Debtors respectfully submit that: (a) the retention of the OCPs as provided herein is reasonably necessary for the day-to-day operations of the Debtors' businesses; (b) expenses for the OCPs will be monitored closely by the Debtors; and (c) the OCPs will not perform substantial bankruptcy-related services without filing an application with the Court for separate retention as a non-ordinary course professional.

19.     Moreover, in light of the significant costs associated with the preparation of retention applications for professionals who will receive relatively modest fees, the Debtors submit that it would be impractical, inefficient, and extremely costly for the Debtors and their legal advisors to (a) prepare and submit individual applications and proposed retention orders for each OCP, (b) wait until such order is approved before such OCP renders services, and (c) withhold payment of the normal fees and expenses of the OCP until they comply with the compensation and reimbursement procedures applicable to Chapter 11 Professionals.  Therefore, the Debtors submit that it is in the best interests of all creditors and parties in interest to retain the OCPs in accordance with the OCP Procedures and avoid any disruption in the professional services that are required for the day-to-day operation of the Debtors' businesses.

20.     To the best of the Debtors' knowledge, none of the OCPs represent or hold any interest materially adverse to the Debtors or to their estates with respect to the matter in which the Debtors employ such OCPs.  Although some OCPs may hold unsecured claims against the Debtors in connection with services rendered to the Debtors prepetition, the Debtors do not believe that any of the OCPs have an interest materially adverse to the Debtors, their creditors, or

other parties in interest.  Furthermore, the OCP Procedures include a requirement that each OCP file a Declaration of Disinterestedness before an OCP can be compensated. Thus, section 327(e) of the Bankruptcy Code authorizes the Debtors to retain each OCP as special counsel.  By this Motion, the Debtors are neither requesting to pay prepetition amounts owed to any OCPs, if any, nor requiring the OCPs to waive any claims against the Debtors.

21.     Courts in this district and others have authorized debtors to employ OCPs in chapter 11 cases using similar retention and payment procedures.  *See e.g., In re Cobalt International Energy, Inc.*, Case No. 17-36709 (MI) (Bankr. S.D. Tex. Feb. 8, 2018); *In re Seadrill Ltd.*, Case No. 17-60079 (DRJ) (Bankr. S.D. Tex. Oct. 31, 2017); *In re Spectrum Jungle Labs Corp.*, Case No. 09-50455 (RBK) (Bankr. W.D. Tex. Mar. 9, 2009); *In re Am. Plumbing, Inc.*, Case no. 03-055789 (LMC) (Bankr. W.D. Tex. Nov. 12, 2003); *In re Mirant Corp.*, Case No. 03-46590 (DML) (Bankr. N.D. Tex. Aug. 1, 2003); *In re Encompass Svs. Corp.*, Case No. 02-43582 (WRG) (Bankr. S.D. Tex. Dec. 18, 2002).

**VII.**
**REQUEST FOR EXPEDITED CONSIDERATION**

22.     The Debtors submit that consideration of the Motion on an expedited basis is warranted because the Debtors have certain OCPs that are engaged, or will be engaged, to represent the Debtors in pending matters in foreign jurisdictions such that the prompt retention of such professionals is vital to the Debtors' ongoing business operations.

**VIII.**
**NOTICE**

23.     No trustee or examiner or has been appointed in these Bankruptcy Cases.  Notice of this Motion will be provided to: (i) the Office of the United States Trustee; (ii) the Official Committee of Unsecured Creditors; (iii) the Debtors' secured creditors; and (iv) all other

creditors and parties in interest subscribing to the Court's ECF or listed on the attached service list.

## IX.
## PRAYER FOR RELIEF

WHEREFORE, the Debtors respectfully request that the Court (i) grant this Motion, (ii) enter an Order, substantially in the form attached hereto as **Exhibit A**, authorizing the OCP Procedures, and (iii) grant such other and further relief as is just and proper.

Respectfully submitted this 13th day of June, 2018.

**OKIN ADAMS LLP**

By: _____*/s/ Matthew S. Okin*_____
      Matthew S. Okin
      Texas Bar No. 00784695
      mokin@okinadams.com
      David L. Curry, Jr.
      Texas Bar No. 24065107
      dcurry@okinadams.com
      John Thomas Oldham
      Texas Bar No. 24075429
      joldham@okinadams.com
      Ryan A. O'Connor
      Texas Bar No. 24098190
      roconnor@okinadams.com
      1113 Vine St., Suite 201
      Houston, Texas 77002
      Tel: 713.228.4100
      Fax: 888.865.2118

**PROPOSED ATTORNEYS FOR THE DEBTORS**

11

## CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2018, a true and correct copy of the foregoing document was served via the Court's ECF System on all parties requesting notice in this proceeding as well as the parties listed on the Debtors' service list by regular mail.

By: */s/ Matthew S. Okin*
Matthew S. Okin