THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ERIN ENERGY CORPORATION, *et al.*, | § | Case No. 18-32106 |
| | § | |
| | § | (Jointly Administered) |
| Debtors.[1] | § | |
| | § | |

### OBJECTION OF PUBLIC INVESTMENT CORPORATION SOC LTD. TO DEBTOR'S EMERGENCY MOTION FOR A FINAL ORDER AUTHORIZING THE DEBTORS TO INCUR POST-PETITION SECURED INDEBTEDNESS

TO THE HONORABLE MARVIN ISGUR,
UNITED STATES BANKRUPTCY JUDGE:

Public Investment Corporation Soc. Ltd. (**PIC**) respectfully files this objection to the *Debtor's Emergency Motion Pursuant to 11 U.S.C. §§ 105, 361, and 364 and Federal Bankruptcy Rules 2002, 4001, and 9004 for a Final Order Authorizing the Debtors to Incur Post-Petition Secured Indebtedness*, Dkt. No. 28 (the **Motion**).[2]

In support thereof, PIC respectfully states as follows:

### PRELIMINARY STATEMENT

1. The Debtors once again seek to erode PIC's collateral position without providing PIC any adequate protection. This time, rather than attempting to use PIC's restricted cash collateral outright, as was already litigated and denied, the Debtors propose to obtain post-

---

[1] The last four digits of Erin Energy Corporation's (**ERN**) federal tax identification number are 9798. The other Debtors in these cases are: Erin Energy Limited (**EEL**); Erin Energy Kenya Limited (**EEKL**); and Erin Petroleum Nigeria Limited (**EPNL**). The Debtors' service address is: 1330 Post Oak Blvd., Suite 2250, Houston, Texas 77056.

[2] Capitalized terms used but not defined herein shall have the meanings given to them in the Motion.

petition financing secured by a senior priming lien on PIC's restricted cash and other collateral. As with the cash collateral litigation, (i) this is being pursued on an emergency basis with little notice to PIC and (ii) the Debtors cannot meet their burden to adequately protect PIC.

2. In May, PIC objected to the Debtors' use of its cash collateral on the basis that (i) it would not be adequately protected and (ii) such use would not be an exercise of sound business judgment where the Debtors have no revenue, business, or cash. Moreover their prospects depend, among other contingencies, on the resolution of litigation in Nigeria and the ability to access oil sale proceeds in the hands of foreign creditors. Several weeks later, none of these things has changed, the cases have gotten even more speculative, and the Debtors remain just as willing to roll the dice at the expense of creditors. On one business day's notice they propose to grant to a shareholder first priority liens on all of their assets for an amount that will only last them for a few weeks. Such liens include priming liens on cash collateral of PIC that this Court has already determined the Debtors cannot use because they cannot provide adequate protection for PIC's interest.

3. The Debtors' fixation on short-term survival at any cost, regardless of the impact on other parties, is amply demonstrated by their failure to make any showing in the Motion whatsoever as to adequate protection, or to even articulate a theory to that end. Instead, they propose to affirmatively abdicate all responsibility on this point, as well as tie the hands of the Court, by agreeing that any payment or granting of adequate protection without the consent of the DIP Lender is an express Event of Default under the proposed loan. The fact that the Debtors do not even attempt to meet their burden of proof under section 364(d)(2) of the Bankruptcy Code justifies denial of the Motion.

4. The Motion, filed at the close of business Friday afternoon to be heard on Tuesday morning, simply extends the Debtors' practice throughout these cases of seeking to

exploit the collateral and assets of other parties, on essentially no notice, for the purposes of buying time for a defunct and administratively insolvent business. It appears that the main use of the financing is simply to continue paying estate professionals and keep employees on staff to await litigation outcomes that may never happen, being justified as preservation of the alleged going concern value that was abandoned by these Debtors long ago. In the circumstances, the entry into financing on such stringent terms is not an exercise of sound business judgment.

## BACKGROUND

5. PIC is the assignee of the secured claims of Mauritius Commercial Bank Ltd. (**MCB**) in respect of certain loans advanced by MCB to ERN and EPNL under a Pre-Export Finance Facility Agreement concluded on February 6, 2017 (the **MCB Facility**). Its collateral includes, among other things, amounts on deposit in a debt service reserve account with MCB and an assignment of EPNL's interest, including as to payment, in a crude oil contract dated January 18, 2017, between EPNL and Glencore Energy UK Ltd. *See* Accounts Pledge Agreement (Dkt No. 48, Ex. 17); Sales Contract Security Assignment (Dkt. No. 48 Ex. 16).

6. On May 4, 2018, the Debtors filed a motion (the **Cash Collateral Motion**) seeking the turnover and use of the approximately $10 million in cash collateral then on deposit with MCB. After an interim order permitting the use of $620,000, followed by several rounds of briefing, it was determined that PIC would not be adequately protected for the use of its cash collateral. Transcript of Oral Argument May 29, 2018 at 90, *In re Erin Energy Corporation, et al.*, No. 18-32106 (Bankr. S.D. Tex. May 9, 2018); Transcript of Oral Argument May 31, 2018 at 72, *In re Erin Energy Corporation, et al.*, No. 18-32106 (Bankr. S.D. Tex. May 31, 2018).

7. By the Motion, the Debtors seek approval of up to $1.1 million in post-petition financing that accrues interest at 10.0% per annum. Motion pg. 5. Such financing is proposed to be secured by first priority liens over all prepetition and postpetition assets of the

Debtors of any kind, including cash, cash equivalents, bank accounts, causes of action, and avoidance actions, and any proceeds of the foregoing. Motion pg. 7-8. Such liens are proposed to be senior priority priming security interests and liens with respect to essentially all existing liens other than those previously granted by order of the Court. Motion pgs. 8-9. With certain limited exceptions, no future liens or security interests, whether for post-petition financing, adequate protection, or otherwise, that are senior or *pari passu* may be granted without the consent of the DIP Lender. *Id*. The Events of Default include, among other things, (i) the Court's grant of any lien or claim that is senior to or *pari passu* with the claims of the DIP Lender, (ii) the payment or granting of adequate protection with respect to prepetition debt without the prior written consent of the DIP Lender, and (iii) any modification of the automatic stay without the prior written consent of the DIP Lender. Motion pg. 6. The proposed DIP Order contains additional features such as the waiver of the surcharge under section 506(c) of the Bankruptcy Code. DIP Order ¶ 9.

## OBJECTION

### I.     PIC is Not Adequately Protected

8.     Section 364(d)(1) of the Bankruptcy Code permits a debtor to obtain credit secured by a senior or equal lien on property only if the debtor is unable to obtain such credit otherwise and "there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted." 11 U.S.C. § 364(d)(1). The debtors bear "the burden of proof on the issue of adequate protection." 11 U.S.C. § 364(d)(2).

9.     As the Court is aware, the issue of adequate protection has already been the subject of extensive briefing, testimony, and argument in these cases, and PIC respectfully refers the Court to the briefs submitted in connection with the Cash Collateral Motion and the transcripts of the hearings. Section 361 of the Bankruptcy Code provides examples of adequate protection for the purposes of both sections 363 and 364. It is intended to incorporate the reasoning of Judge

4

Hand, in *In re Murel Holding Corp.*, that a secured creditor should be fully compensated for the use of its collateral. S. REP. NO. 95-989, 95th Cong., 2d Sess. 127-128 (1978) ("The indubitable equivalent language is intended to follow the strict approach taken by Judge Learned Hand in *In Re Murel Holding Corp*, 75 F.2d 941 (2nd Cir. 1935)."); in *In Re Murel Holding Corp*, 75 F.2d 941, 942 (2nd Cir. 1935) ("It is plain that 'adequate protection' must be completely compensatory. . .").

10. The Debtors did not demonstrate adequate protection in the context of the Cash Collateral Motion, and this Motion is simply another bite at the same apple to the extent the Debtors seek to prime any security interests or liens of PIC. Given the lack of liquid assets in these cases and that parties can have no real expectation of cash from operations, borrowing $1.1 million secured by a senior priming lien on cash collateral is not materially different from simply using $1.1 million of cash collateral in the first place, with the ultimate result that the Motion shifts the funding burden, and risk, back to PIC. In fact, it is worse, because the 10% interest on the proposed loan will only increase the loss. As such, the Motion effectively spends cash collateral that the Debtors have already been denied the right to access directly. PIC is not any better protected now than it was in May, and it is unnecessary to relitigate issues that the parties have already briefed and argued before this Court.

11. Even taking the Motion on its own merits, the Debtors fall far short of sustaining their burden under section 364(d)(2) because they do not even try to articulate a theory of adequate protection for the secured creditors that they propose to prime. Indeed, the only mention of adequate protection in the Motion is prohibitive, as the payment or granting of adequate protection with respect to prepetition debt is an Event of Default and the grant of senior or *pari passu* liens for adequate protection or other purposes is expressly forbidden, in each case without the consent of the DIP Lender. Motion, pgs. 6, 9. The Debtors therefore propose a post-petition

financing arrangement under section 364 that would appear to be violated by compliance with section 364. 11 U.S.C. § 364(d).

## II.  *The Motion is Not Supported by Good Business Judgment*

12. A proposed post-petition financing arrangement must also be in accord with the sound exercise of business judgment. *See In re Laffite's Harbor Dev. I, LP*, 17-36191-H5-11, 2018 WL 272781 at *3 (Bankr. S.D. Tex. Jan. 2, 2018) ("While certain favorable terms may be permitted as a reasonable exercise of the debtor's business judgment, bankruptcy courts do not allow terms in financing arrangements that convert the bankruptcy process from one designed to benefit all creditors to one designed for the unwarranted benefit of the postpetition lender.").

13. In *Laffite*, Judge Brown denied post-petition financing premised on a priming lien on substantially all debtor assets, including avoidance actions, on the basis that the debtors' business reorganization prospects were "highly speculative." The debtors had tried and failed to find buyers for their properties and their "primary hope for reorganization" involved a lengthy investor solicitation process and an "uncertain result." *Id*. at *3. Any hope for recovery by the primed secured lender was "dependent on Debtors' speculative scheme to obtain Chinese investment from individuals wishing to relocate to the United States." *Id*.

14. Likewise, the Debtors have no operations or revenues and their prospects for rehabilitation turn not on the viability of their business plan or on any actual restructuring but on a series of speculative outcomes that begin, but do not end, with a resolution of foreign litigation in their favor. Nothing has changed in this regard since the Cash Collateral Motion, and the only real benefit of the proposed financing, other than for the DIP Lender and the employees and professionals who stand to be paid, is that the Debtors continue to survive at least through the Nigerian hearings currently scheduled to occur in June and July. If the results of those hearings are, as with the hearing in May, inconclusive, then as indicated by the budget attached to the

Motion, the Debtors will have exhausted approximately all of their cash by the second week of July.

15. The $1.1 million the Debtors seek to borrow will therefore only sustain them for approximately four weeks in which no actual restructuring will occur at all. In return, the DIP Lender will receive senior priming liens on all assets of the Debtors, including cash collateral, and any future payment of adequate protection, grant of a senior or *pari passu* lien, or modification of the automatic stay without the consent of the DIP Lender will constitute an Event of Default. These cases remain little more than incremental attempts to buy time, and the Motion is essentially the last try before the Debtors and their assets become subject to the control of the DIP Lender who is an existing shareholder. *In re Def. Drug Stores, Inc.*, 145 B.R. 312, 317 (Bankr. App. 9th Cir. 1992) ("Thus, courts look to whether the proposed terms would prejudice the powers and rights that the Code confers for the benefit of all creditors and leverage the Chapter 11 process by granting the lender excessive control over the debtor or its assets as to unduly prejudice the rights of other parties in interest."). In the circumstances, it is unclear why the Debtors do not simply dismiss their cases or convert to chapter 7 and liquidate (though doing so would also constitute an Event of Default under the Motion).

16. Finally, the Debtors' cases were designated as complex chapter 11 cases by order of this Court dated May 1, 2018, and the Motion does not comply with the requirements for post-petition financing motions under either the *General Order in the Matter of Procedures for Complex Chapter 11 Cases* (**Texas Procedures**) or the *United States Bankruptcy Court for the Southern District of Texas Procedures for Complex Chapter 11 Bankruptcy Cases* (the **SDTX Procedures**). Under the Texas Procedures, the grant of a lien over avoidance actions requires a showing of "extraordinary circumstances," and under Rule 4(C)(vii) of the SDTX Procedures, the waiver or limit of estate surcharge rights under 11 U.S.C. § 506(c) is a "significant provision" that

must be listed in a separate section of a post-petition financing motion and separately justified. The Motion proposes to do both of these things but makes no showing with respect to either of these requirements. *Laffite*, 2018 WL 272781 at *3 ("This Court's Procedures for Complex Chapter 11 Bankruptcy Cases identifies terms which may be proper in DIP financing motions. The order provides with regard to liens on avoidance actions that the Debtor must show extraordinary circumstances. None are shown here. Similarly, the order disfavors limitations on surcharge of the lender's collateral under Section 506(c).").

## **CONCLUSION**

17.     For the foregoing reasons, PIC respectfully requests that this Court deny the Motion and grant such other and further relief as it deems just and proper.

Dated: June 18, 2018
Houston, Texas

        **VINSON & ELKINS LLP**

        */s/ Bradley R. Foxman*
        Rebecca L. Petereit (Texas Bar No. 24062776)
        Bradley R. Foxman (Texas Bar No. 24065243)
        Trammell Crow Center
        2001 Ross Avenue, Suite 3700
        Dallas, Texas 75201-2975
        Tel: (214) 220-7700
        rpetereit@velaw.com
        bfoxman@velaw.com

        and

        **ALLEN & OVERY LLP**

        Laura R. Hall (*pro hac vice* pending)
        Ken Coleman (*pro hac vice* pending)
        1221 Avenue of the Americas
        New York, New York 10020
        Tel: (212) 610-6300
        Laura.Hall@AllenOvery.com
        Ken.Coleman@AllenOvery.com

        ***COUNSEL FOR PUBLIC INVESTMENT CORPORATION SOC. LTD.***

## **CERTIFICATE OF SERVICE**

I certify that on June 18, 2018, I caused a copy of the foregoing document to be electronically served by the CM/ECF for the United States Bankruptcy Court for the Southern District of Texas on all parties subscribing thereto.

/s/ *Bradley R. Foxman*
Bradley R. Foxman