

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
06/25/2018

| | |
|---|---|
| In re: | Chapter 11 |
| ERIN ENERGY CORPORATION, *et al.*,[1] | Case No. 18-32106 |
| Debtors. | (Jointly Administered) |

**INTERIM ORDER (I) AUTHORIZING DEBTORS TO OBTAIN POSTPETITION**
**SECURED FINANCING; AND (II) MODIFYING THE AUTOMATIC STAY**

Upon the motion, dated June 15, 2018 (the "**Motion**"), of Erin Energy Corporation (the

"**Company**"), Erin Energy Limited ("**EEL**"), Erin Petroleum Nigeria Ltd. ("**EPNL**") and Erin

Energy Kenya Limited ("**EEKL**" and collectively with the Company, EEL and EPNL, the

"**Borrowers**" and each, a "**Borrower**"), each as debtor and debtor-in-possession (collectively,

the "**Debtors**") in the above-captioned cases (the "**Cases**") as of the date of the filing of their

respective petitions for relief (the "**Petition Date**"), for an interim order under sections 105, 361,

362, 363(c), 364(c)(1), 364(c)(2), 364(c)(3), 364(d) and 364(e) of title 11 of the United States

Code, 11 U.S.C. §§ 101, et seq. (as amended, the "**Bankruptcy Code**"), and Rules 2002, 4001

and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "**Bankruptcy Rules**"),

and Rule 4001-1 of the Bankruptcy Local Rules of the United States Bankruptcy Court for the

Southern District of Texas (the "**Local Rules**"), seeking:

      (I)    authorization for (a) the Borrower to obtain up to $1,100,000 in principal
amount of postpetition financing (the "**DIP Loan**") pursuant to the terms and conditions
set forth in a non-amortizing multi-draw senior secured term loan note (the "**DIP Note**")

---

[1] The last four digits of Erin Energy Corporation's ("ERN") federal tax identification number are 9798. The other Debtors in these cases are: Erin Energy Limited ("EEL"); Erin Energy Kenya Limited ("EEKL"); and Erin Petroleum Nigeria Limited ("EPNL"). The Debtors' service address is: 1330 Post Oak Blvd., Suite 2250, Houston, TX 77056.

in favor of Greg Holcombe (the "**DIP Lender**") and in form and substance similar to Exhibit A hereto, and other documentation executed by the DIP Borrowers reasonably acceptable to the DIP Lender (collectively, including the DIP Note, the "**DIP Documents**"), and local law guarantees and security documents executed by each of Erin Energy International Ltd. ("**EEIL**"), Erin Energy Ghana Limited ("**EEGHL**"), Erin Energy Gambia A5 Ltd. ("**EEGALA5**") and Erin Energy Gambia Ltd. (together with EEGALA5, "EEGAL", and together with EEIL and EEGHL, each a "*Guarantor*" and collectively, the "**Guarantors**") and their subsidiaries (together with the DIP Documents and the Local Law Documents (as defined below), the "**Loan Documents**"; the foregoing loan facility, the "**DIP Facility**");

(II)     authorization for the Debtors to execute and deliver the DIP Note and the other DIP Documents and to perform such other and further acts as may be necessary or appropriate in connection therewith or reasonably requested by DIP Lender; and

(III)     to schedule, pursuant to Bankruptcy Rule 4001, a hearing (the "**Interim Hearing**") on the Motion to be held before this Court to consider entry of the proposed order annexed to the Motion (the "**Interim Order**").

The Interim Hearing having been held by this Court on June 19, 2018; and this Court having considered all of the pleadings, documents and other papers of record filed in the Cases in connection with the Interim Hearing, including the officer's affidavit and related first day pleadings filed substantially contemporaneously with the Motion; and upon the record made by the Debtors at the Interim Hearing, and after due deliberation and consideration and sufficient cause appearing therefor;

**IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED,** that:

1.     *Jurisdiction*.  This Court has core jurisdiction over the Cases, this Motion, and the parties and property affected hereby pursuant to 28 U.S.C. § 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The Debtors are continuing to operate their respective businesses and manage their respective properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  An official committee of unsecured creditors (the "**Committee**") was appointed in the cases on May 16, 2018.

102385753.1

2.     _Notice_.  On June 15, 2018, the Debtors filed the Motion with this Court and pursuant to Bankruptcy Rules 2002, 4001 and 9014, and the Local Rules, the Debtors provided notice of the Motion and the Interim Hearing by email, when available, or by traditional mail to: (a) the Office of the United States Trustee for the Southern District of Texas; (b) the Debtor's secured creditors; (c) counsel for the Committee, and (d) the parties listed on the Debtors' master service list (collectively, the "**Notice Parties**").  Given the nature of the relief sought in the Motion, this Court concludes that the form, scope and timing of the foregoing notice was sufficient and adequate under the circumstances and complies with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable law, and no further notice relating to the Interim Hearing or Motion is necessary or required.

3.     _Findings Regarding The DIP Facility_.

(a)     _Good Cause_.  Good cause has been shown for the entry of this Interim Order.  The Debtors have an immediate need to obtain the DIP Loan under the DIP Documents, in order to, among other things, permit the orderly continuation of their businesses, preserve the going concern value of the Debtors, make payroll and satisfy other working capital and general corporate purposes of the Debtors.  The DIP Facility is necessary to ensure that the Debtors have sufficient working capital and liquidity to preserve and maintain the going concern value of the Debtors' estates.   Accordingly, the Debtors and their estates will suffer immediate and irreparable harm unless the Debtors are immediately authorized to obtain the DIP Loan under the DIP Facility on the terms and conditions set forth in this Interim Order.

(b)     _No Alternative Sources of Financing_.  The Debtors believe they are unable to obtain financing on more favorable terms from sources other than the DIP Lenders pursuant to, and for the purposes set forth in, this Interim Order and the DIP Documents and believe they

102385753.1

are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtors also believe they are unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code without the Debtors granting the DIP Liens (as defined in <u>paragraph 6</u> below) and the Super-Priority Claims (as defined in <u>paragraph 7</u> below), in each case on the terms and conditions set forth in this Interim Order and the DIP Documents.

   (c) *Reasonably Equivalent Value*.  The terms of the DIP Facility pursuant to this Interim Order are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.  The Debtors require both additional financing under the DIP Facility under the terms of this Interim Order for legitimate business purposes and in order to satisfy their postpetition liquidity needs.  After considering all of their alternatives, the Debtors have concluded, in an exercise of their sound business judgment, that the financing to be provided by the DIP Lender pursuant to the terms of this Interim Order and the DIP Documents represents the best financing presently available to the Debtors.

   (d) *Good Faith*.  The DIP Documents have been the subject of extensive negotiations conducted in good faith and at arm's length among the Debtors and the DIP Lender. All DIP Obligations (as defined in <u>paragraph 4(a)</u> below) have been, and shall be deemed to have been, extended by the DIP Lender in "good faith" as such term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections set forth therein, and shall be entitled to, and are hereby granted, the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is stayed, vacated, reversed, amended or modified on appeal or otherwise.

(i)    *Approved Budget*. Attached to this Interim Order as Exhibit B is an initial four week cash flow Budget under the DIP Note setting forth on a line-item basis the Debtors' anticipated cumulative cash receipts and expenditures and all necessary and required cumulative expenses which the Debtors expect to incur during the period covered by the initial Approved Budget (defined below). The Borrowers shall (starting July 12, 2018) deliver to the DIP Lender and counsel to the Committee by 11:59 p.m. (New York time), on Thursday of each week, rolling 13-week cash flows, together with a reconciliation for the prior week and the cumulative period from the Petition Date. No Debtor or Guarantor shall pay any expenses or other disbursements other than those set forth in the Approved Budget. For the avoidance of doubt, the initial Budget is approved solely through July 6, 2018 (the "**Approved Budget**.") The Approved Budget is an integral part of this Interim Order and has been relied upon by the DIP Lender in deciding to consent, or not otherwise object, to entry of this Interim Order.

(e)    *Immediate Entry of Order*. The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and Local Rule 4001-2(b). Absent granting the relief set forth in this Interim Order, the Debtors' estates will be immediately and irreparably harmed. Consummation of the DIP Facility in accordance with this Interim Order and the DIP Documents are, therefore, in the best interest of the Debtors' estates.

4.    *Authorization Of The DIP Facility And The DIP Documents*.

(a)    *Maximum Amount*. The terms and conditions of the DIP Note are hereby approved on an interim basis. The Debtors are hereby authorized to enter into and perform the transactions contemplated by this Interim Order and the DIP Documents and, in the case of the Borrower, to borrow under the DIP Note up to an aggregate principal of $1,100,000 (One Million One Hundred Thousand Dollars) on an interim basis subject to the terms of the DIP Note for working capital and other general corporate purposes of the Debtors pursuant and subject to the terms and conditions of this Interim Order and the DIP Documents (for the avoidance of doubt, the Debtors are authorized to use borrowed amounts to pay professionals the Debtors have

102385753.1

retained in Africa, to the extent allocated in the Approved Budget). All borrowings under this Interim Order and the DIP Documents shall be funded into a cash collateral account in the name of the DIP Lender over which the DIP Lender shall have sole dominion and control and such monies shall be subject to withdrawal and use by Borrower therefrom, all subject to the terms and conditions of the DIP Documents, this Interim Order and any cash management order entered, or to be entered, by the court in this Case. For purposes of this Interim Order, the term "**DIP Obligations**" shall mean and include all amounts owing under the DIP Note or other DIP Documents (including, without limitation, all "Obligations" as defined in the DIP Note) and shall include the principal of, interest on, fees, costs, expenses and other charges owing in respect of, such amounts (including, without limitation, any reasonable attorneys', accountants', financial advisors' and other fees, costs and expenses that are chargeable or reimbursable by or to the DIP Lender under this Interim Order, the DIP Note, the other DIP Documents or otherwise in relation to the DIP Facility), and any indemnity claims, in each case whether contingent or otherwise and whether arising before or after the Petition Date.

(b)     *Further Assurances*. In furtherance of the foregoing and without further notice, motion or application to, order of, or hearing before, this Court, each Debtor is authorized to perform all acts and to execute and deliver all instruments and documents that the DIP Lender, as applicable, determines to be reasonably required or necessary for the Debtors' performance of their obligations under the DIP Documents or this Interim Order, including without limitation:

(i)     the execution and delivery of, and performance of the transactions contemplated by, the DIP Documents;

(ii)     the execution, delivery and performance of one or more amendments, waivers, consents or other modifications to and under the DIP Documents, including any such matters respecting the Approved Budget, in each case in such form as the Debtors and the DIP Lender may agree, and no further approval of this Court shall

be required for non-material amendments, waivers, consents or other modifications to and under the DIP Documents;

(iii)    the payment to the DIP Lender of the DIP Obligations as and when due as set forth in this Interim Order or the DIP Documents; and

(iv)    the prompt performance of all other acts required under or in connection with this Interim Order or the DIP Documents, including, without limitation, prompt delivery to the DIP Lender of such reporting and financial information and access to the Debtors' books and records, in each case, as may be reasonably requested by the DIP Lender from time to time.

(c)    *No Impairment*.  Upon execution and delivery of the DIP Documents, the DIP Documents shall constitute valid and binding obligations of the Debtors, be enforceable against the Debtors in accordance with the terms of this Interim Order and the DIP Documents and shall be incorporated by reference as part of this Interim Order.  No obligation or liability owed, or payment, transfer or grant of security, to the DIP Lender under the Interim Order or any DIP Document shall be stayed, restrained, impaired, disgorged, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable non-bankruptcy law (including without limitation, under sections 502(d) or 548 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or be subject to any defense, reduction, setoff, recoupment or counterclaim, whether in the Cases or any other subsequent proceedings under the Bankruptcy Code, including, without limitation, any Chapter 7 proceeding if any of the Cases are converted to a case under Chapter 7 of the Bankruptcy Code (collectively, the "**Successor Case**").  The DIP Obligations, once paid by any Debtor, shall be indefeasible and non-refundable.

(d)    *Interest, Fees, Costs and Expenses*.  The DIP Obligations shall bear interest at the rates (including at the default rate after the occurrence of an Event of Default on the terms set forth in the DIP Note), and be due and payable (and paid), as set forth in, and in

102385753.1

accordance with the terms and conditions of, this Interim Order and the DIP Documents, in each case without further notice, motion or application to, order of, or hearing before, this Court. The Debtors shall pay on demand all reasonable fees, costs, expenses and other charges payable under the terms of the DIP Documents, in each case whether or not the DIP Note and transactions contemplated therein are consummated and whether or not such amounts are included in the Approved Budget or arose before or after the Petition Date. None of such fees, costs and expenses payable pursuant to this paragraph shall be subject to separate approval by this Court (but this Court shall resolve any dispute as to the reasonableness of any such fees, costs and expenses) and no recipient of any such payment shall be required to file any interim or Interim fee application. The Debtors shall pay the fees, costs and expenses provided for in this paragraph promptly, and in any event not later than ten (10) days after the invoices for such fees, costs and expenses shall have been submitted to the Debtors (which invoices may be redacted to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine). The Debtors (or DIP Lenders at his election) shall promptly provide copies of such invoices to the respective counsel to the Committee and the U.S. Trustee. The Debtors, Committee, and the U.S. Trustee may object to the reasonableness of the fees, costs and expenses included in any professional fee invoice submitted by the DIP Lender; provided that, any such objection shall be filed with this Court and served on counsel to the DIP Lender no later than ten (10) days after the objecting party's receipt of the applicable professional fee invoice; and further provided, in the event of a timely objection to any such invoice, the Debtor shall nonetheless pay the entire invoice minus the amount at

102385753.1

issue, subject to the rights of the objecting parties to have a hearing on Interim disposition. The Debtors shall indemnify the DIP Lender (and other applicable parties) to the extent set forth in the DIP Documents.

(e)   *Guarantors; Pledgors*.   Each Debtor hereby agrees that such Debtor is jointly and severally liable for, and hereby absolutely and unconditionally guarantees to the DIP Lender and his successors and assigns, the full and prompt payment when due (whether at maturity or earlier, by reason of acceleration or otherwise, and at all times thereafter) and performance of, all DIP Obligations owed or hereafter owing to the DIP Lender by each other Debtor. Each Debtor agrees that (a) its guaranty obligation hereunder is a present and continuing guaranty of payment and performance and not of collection, (b) its obligations under the Interim Order and any DIP Document shall not be discharged until the indefeasible payment and performance, in full, in cash of the DIP Obligations on an Interim basis, and the termination of the lending commitments under the DIP Documents, has occurred; and (c) its guaranty obligations hereunder shall be, and are, absolute and unconditional for all purposes in these Cases and any Successor Case.

(f)   *Conditions Precedent*.   In addition to any conditions precedent contained in the DIP Documents, it is a condition precedent to the DIP Lender's willingness to provide the DIP Facility that (i) this Interim Order shall have been entered by this Court and such order shall be in form and substance acceptable to the DIP Lender and (ii) the DIP Lender shall receive first priority security interests in (a) all of the equity interests in EEGHL to the extent owned by EEIL (granted by EEIL pursuant to a Cayman law pledge agreement), (b) all of the equity interests of EEGHL held by a Debtor, and (c) all of the assets of EEGAL (granted by EEGAL pursuant to Cayman law security agreement and a Gambian law security agreement) (all such foreign law

security documents, collectively, the "**Local Law Documents**"); provided that any grant of liens on the assets of EEGAL will be conditioned upon first getting necessary government approvals to grant such liens; provided further that, upon entry of this Interim Order, prior to entry into the applicable Local Law Documents, the DIP Lender will make funds available to the Borrowers under the DIP Note, subject to the Approved Budget, while such governmental approvals are being sought in good faith, it being understood that the Debtors shall provide the DIP Lender with reasonable assurances regarding progress towards entry into and consummation of the Local Law Documents and the granting of all other liens contemplated by the DIP Note.

(g)     *Corporate Authorization.*  The Debtors have represented to the Court that they have obtained all corporate authorizations necessary or required to enter into the DIP Documents, to obtain financial accommodations pursuant to the DIP Facility including the DIP Loan and to grant the liens, claims and other rights to the DIP Lender as set forth therein.  No further board of directors, member, shareholder or other approval or resolutions shall be necessary or required to consummate, effect or validate the transactions contemplated in the DIP Documents or in this Interim Order.  Nothing herein shall be deemed to release any director or officer of a Debtor from his or her applicable fiduciary duties or otherwise.

5.     *Permitted Use.*

(a)     *Generally.*  Notwithstanding anything in this Interim Order to the contrary, the Debtors may use proceeds of the DIP Facility, and incur DIP Obligations, solely in accordance with and pursuant to the terms and conditions set forth in the DIP Documents and this Interim Order, including, without limitation, pursuant to the Approved Budget, but in all events only until the occurrence of the Termination Date (as defined in paragraph 8 below) and regardless of whether the Debtors have expended the entire proceeds of the DIP Facility

102385753.1

permitted by the terms of this Interim Order prior to the Termination Date (but subject to the Debtors' reservation of rights contained in underline paragraph 8 below). Notwithstanding the foregoing, if the DIP Lender in its sole discretion advances funds, provides other extensions of credit to the Debtors in excess of any financial covenants, availability formulae, or other terms and conditions (or any other limitations in the DIP Documents, including, without limitation, the Approved Budget), such advances and extensions of credit shall be entitled to, and are hereby granted, the rights, priorities, benefits and protections of this Interim Order; *provided* that the principal amount of the DIP Loan available to Debtors on a cumulative basis shall not exceed the maximum amount permitted to be borrowed under this Interim Order and the DIP Documents without further order of this Court.

      (b)    *No Duty to Monitor Compliance*. The DIP Lender may assume the Debtors will comply with the Interim Order, the Approved Budget and the DIP Documents and shall not: (i) have any obligation with respect to the Debtors' continued use of proceeds of the DIP Facility; (ii) be obligated to ensure or monitor the Debtors' compliance with any financial covenants, formulae, or other terms and conditions of this Interim Order or any DIP Document; or (iii) be obligated to pay (directly or indirectly from DIP Collateral) any expenses incurred or authorized to be incurred pursuant to this Interim Order or any DIP Document or be obligated to ensure or monitor that sufficient proceeds of the DIP Facility exists to pay such expenses. Notwithstanding the foregoing, the Carve-Out shall be available on the terms and conditions set forth in this Interim Order, and nothing in this sub-paragraph is meant to modify the rights of the Retained Professionals (defined below) and U.S. Trustee in and to the Carve-Out, irrespective of the identity of the party holding any Carve-Out funds.

(c)      *Restricted Payments; No Liens in DIP Loan and Proceeds*.  Except to the extent approved in writing by the DIP Lender or as expressly provided in this Interim Order or the DIP Documents (or approved by further order of the Court in accordance with paragraph 8 below), no Debtor shall use any DIP Loan or proceeds of the DIP Facility to pay (i) unless set forth on an Approved Budget, any administrative expense claims arising under section 503(b)(9) of the Bankruptcy Code; (ii) unless set forth on an Approved Budget, any prepetition unsecured claims (including prepetition priority unsecured claims), in each case of clauses (i) and (ii) whether pursuant to section 105, 363, 365 or any other provision of the Bankruptcy Code or otherwise; (iii) any other amount not set forth on an Approved Budget; or (iv) any amount otherwise restricted from payment under the DIP Note.  The DIP Loan, DIP Facility and proceeds thereof shall not be subject at any time to any security interest, lien or claim of any party (except DIP Lender), other than the Carve-Out or Senior Third Party Liens (defined below), and this Interim Order does not grant a security interest, lien or claim therein in favor of any party (except DIP Lender).  The Debtors shall not grant liens in any other order or agreement in the DIP Loan, DIP Facility or proceeds thereof.  For purposes hereof, "Senior Third Party Liens" shall mean (a) liens in any DIP Collateral granted by order of the Bankruptcy Court prior to entry of this Order, **including, without limitation, the first priority lien on the oil aboard the FPSO Armada Perdana granted to Armada Oyo Limited and Bumi Armada (Singapore) PTE. Ltd. pursuant to the Court's Order dated May 31, 2018 (Dkt. No. 162),** and (b) any liens and security interests of The Mauritius Commercial Bank Limited or the Public Investment Corporation Soc. Ltd. (together, the "**MCB Facility Parties**") that constitute valid, binding, enforceable and perfected liens and security interests, but solely to the extent such liens and security interests were, as of the Petition Date, valid, binding, enforceable, perfected and

non-avoidable liens and security interests of either MCB Facility Party (including any liens that may be granted as adequate protection to the MCB Facility Parties, but excluding any replacement liens in DIP Collateral that was not the collateral of any MCB Facility Party Lien as of the Petition Date)); provided that, Senior Third Party Liens shall not include liens on any causes of action, including without limitation, fraudulent conveyance actions and claims, for undue enrichment or otherwise, against Nigerian Agip Exploration Limited, and any other persons or entities involved in, or benefiting from, the seizure of crude oil owned by EPNL from the FSPO Armada Perdana pursuant to the Writ of Attachment and Sale of Goods against Allied Energy Plc ("**Allied**") and CAMAC International (Nigeria) Limited ("**CINL**"), including, without limitation, Allied and CINL.

(d)     *Budget Reports*.  The Debtors shall comply with all reporting requirements in respect of the Approved Budget as set forth and required by the DIP Note.

6.     *DIP Note; Liens*.

(a)     *Generally*.  The Debtors are authorized to enter into the DIP Note and all other DIP Documents and to perform in accordance with this Interim Order and the DIP Documents.

(b)     *DIP Liens*.  As security for the full and timely repayment of all of the DIP Obligations, the DIP Lender is hereby granted by each Debtor, pursuant to sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code valid, binding, enforceable, unavoidable and fully perfected security interests and liens (collectively, the "**DIP Liens**") in and upon all prepetition and postpetition real and personal, tangible and intangible property and assets of each of the Debtors of any kind or nature whatsoever, wherever located, whether now existing or hereafter acquired or arising, including, without limitation, all cash, cash equivalents, bank accounts,

accounts, other receivables, chattel paper, contract rights, inventory, instruments, documents, securities (whether or not marketable), equipment, goods, fixtures, real property interests, intellectual property, general intangibles, investment property, supporting obligations, letter of credit rights, commercial tort claims, one hundred percent (100%) of the capital stock of each Debtor's direct and indirect domestic and foreign subsidiaries, all inter-company notes held by the Debtors, trademarks, trade names, licenses, rights to payment including tax refund claims, and causes of action including avoidance actions for preferences, fraudulent conveyances, and other avoidance power claims under sections 544, 545, 547, 548, 549, 550, 552(b) and 553 of the Bankruptcy Code (the "**Avoidance Actions**") and the derivative class action styled *Lenios v. Lawal*, C.A. No. 11963-VCMR in the Court of Chancery of the State of Delaware (the "**Delaware Action**"), and any and all proceeds, products, offspring, rents and profits of all of the foregoing, including insurance proceeds (all of the foregoing, the "**DIP Collateral**"); provided, however, that the DIP Liens on the Avoidance Actions and the Delaware Action shall be limited to the proceeds of such actions.

(c)     *Other Priority Matters*.  Notwithstanding anything in this Interim Order to the contrary, the DIP Liens: (a) shall, pursuant to section 364(c)(2) of the Bankruptcy Code, constitute first priority security interests in and liens on all DIP Collateral that is not otherwise subject to any existing, valid and enforceable liens; (b) shall, pursuant to section 364(c)(3) of the Bankruptcy Code, constitute junior security interests in and liens on all DIP Collateral immediately junior in priority to any and all existing, valid and enforceable liens, including Senior Third Party Liens on or in the DIP Collateral; and (c) shall, pursuant to section 364(d) of the Bankruptcy Code, constitute senior priority priming security interests in and liens on all DIP Collateral (in all cases for clauses (a), (b) and (c) of this sub-paragraph, the DIP Liens shall be

subject to the Carve-Out and junior and subordinate to any Senior Third Party Liens). The DIP Liens shall at all times be senior to the following (i) any inter-company claim of any Debtor or any domestic or foreign subsidiary or affiliate of any Debtor, (ii) any security interest or lien which is avoided or disallowed or otherwise preserved for the benefit of any Debtor's estate under section 551 or any other provision of the Bankruptcy Code, and (iii) any other security interest or lien that is not a Senior Third Party Lien. The DIP Liens shall, as of the Petition Date, be deemed legal, valid, binding, enforceable, and perfected liens, not subject to subordination (except as expressly provided in this Interim Order), impairment or avoidance, for all purposes in the Cases and any Successor Case, in each case without the necessity of any further action, including the execution or delivery by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the DIP Lender of any DIP Collateral. Other than the Carve-Out and Senior Third Party Liens, no other liens or security interests, whether for postpetition financing, adequate protection or otherwise, whether arising pursuant to sections 363 or 364 of the Bankruptcy Code or otherwise, shall be senior or equal to or pari passu with the DIP Liens in these Cases or any Successor Case without the express written consent of the DIP Lender given in accordance with the DIP Documents (which consent may be withheld in his sole discretion). Without either (a) the prior written consent of the DIP Lender, which may be withheld in his sole discretion, or (b) the indefeasible payment and satisfaction in full, in cash of the DIP Obligations and termination of the lending commitments under the DIP Facility, all on an Interim basis, no security interest or lien shall be granted or allowed in the Cases or any Successor Case, whether for postpetition financing, adequate protection or otherwise, whether

arising pursuant to sections 363 or 364 of the Bankruptcy Code or otherwise, on any asset or property of any Debtor that is not subject to the DIP Liens in favor of the DIP Lender.

7.      *Super-Priority Claims*.  In addition to the DIP Liens, the DIP Lender is hereby granted, for all DIP Obligations, an allowed super-priority administrative expense claim pursuant to section 364(c)(1) of the Bankruptcy Code (the "**Super-Priority Claim**") against each Debtor and its respective estate.  Except for the Carve-Out, the Super-Priority Claim shall have priority over (i) all other costs and expenses of administration of any kind (and no cost or expense of administration shall be senior to, equal to, or pari passu with, the Super-Priority Claim), including those specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 363, 364, 503, 507, 546, 726, 1113 or 1114 or any other provision of the Bankruptcy Code or otherwise, in each case whether incurred in these Cases or any Successor Case, whether for adequate protection, the lack of, or failure to provide, adequate protection, or otherwise, and whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, and (ii) any inter-company claim of any Debtor or any domestic or foreign subsidiary or affiliate of any Debtor.  The Super-Priority Claims shall be deemed legal, valid, binding, and enforceable claims and expenses against the Debtors and their estates, and not subject to subordination, impairment or avoidance, for all purposes in the Cases and any Successor Case.  Subject to the Carve-Out, the Super-Priority Claim shall be payable from, and have recourse to, any and all property and assets of each Debtor, provided, however, any claims or recourse to property and assets encumbered by Senior Third Party Liens shall be subject to the rights of holders of Senior Third Party Liens.

8.      *Modification of Automatic Stay; Exercise of Remedies*.

(a)     Except as set forth in sub-paragraph (b) of this paragraph, which sub-paragraph exclusively governs the applicability of the automatic stay to any action by DIP Lender to foreclose on its security interests in and liens on any DIP Collateral granted hereunder, the Court hereby orders that the automatic stay pursuant to section 362 of the Bankruptcy Code is hereby modified as to the DIP Lender to permit such parties solely to perform the actions described in or permitted by this Interim Order, in each case without further notice, application or motion to, or order from the Court.  Consistent with the foregoing sentence, the DIP Lender is hereby granted leave to (i) receive and apply payments of the DIP Obligations and proceeds of the DIP Collateral, as applicable, (ii) file or record any financing statements, mortgages or other instruments or other documents to evidence the security interests in and liens upon the DIP Collateral provided by this Interim Order, (iii) charge and collect any interest, fees, costs and other expenses accruing at any time under this Interim Order or the DIP Documents, as applicable and to the extent authorized herein, (iv) give the Debtors any notice provided for in this Interim Order or the DIP Documents, as applicable, and (v)  upon the Termination Date (as defined below), but subject to the last sentence of this paragraph, and in each case without further notice, motion or application to, order of, or hearing before, this Court: (A) terminate the DIP Note and/or the other DIP Documents, (B) cease making the DIP Loan and/or suspend or terminate its lending commitments to the Debtors, (C) accelerate any or all of the DIP Obligations and declare such DIP Obligations immediately due and payable in cash, and/or (D) revoke any Debtor's right, if any, to use the DIP Collateral and proceeds of the DIP Collateral on the consensual terms and conditions described in this Interim Order and/or the DIP Loan and proceeds of the DIP Facility or to otherwise utilize the DIP Facility.  Notwithstanding anything to the contrary contained in this Interim Order, the Debtors reserve all rights to seek

authorization to use DIP Collateral of the DIP Lender on a non-consensual basis on and after the Termination Date upon five (5) business days' notice and hearing, and the DIP Lender reserves all right to object to, and contest, such authorization.

(b)    Upon the Termination Date, and after obtaining relief from this Court from the automatic stay upon hearing and five (5) business days' prior notice to respective counsel to the Debtors, Committee, and U.S. Trustee, the DIP Lender shall be entitled to foreclose or otherwise enforce its security interests in and liens on any or all of the DIP Collateral and/or to exercise any other default-related remedies against the DIP Collateral under the DIP Documents, this Interim Order or applicable law (all subject to the rights and interests of the holders of Senior Third Party Liens to the extent applicable) in seeking to recover payment of the DIP Obligations, including applying all monies subject to DIP Lender's control to payment of the DIP Obligations.  In addition to the Debtors' rights to seek authorization to use the DIP Collateral of the DIP Lender on a non-consensual basis on and after the Termination Date upon three (3) business days' prior notice and hearing, and the reservation of all rights of the DIP Lender to object to, and contest, such authorization as described above, the parties acknowledge and agree that with respect to any cause of the Termination Date, any and all rights and objections of the Committee to oppose the DIP Lenders' request to vacate the automatic stay are reserved in full.

(c)    If any holder of Senior Third Party Liens is granted relief from the automatic stay, then the DIP Lender shall automatically be granted co-extensive relief at such time.

(d)    As used in this Order, the term "**Termination Date**" means the earliest of (i) the date of the occurrence of an Event of Default under the DIP Note (after giving effect to

102385753.1

any cure period provided therein) that is not waived by DIP Lender in writing, and (ii) the Maturity Date.

9. _Waiver of Section 506(c) Surcharge_.  Subject to entry of an interim order on the DIP Facility, no costs or expenses of administration or other charge, lien, assessment or claim incurred at any time (including, without limitation, any expenses set forth in the Approved Budget) by any Debtor or any other person or entity shall be imposed or charged against the DIP Lender, his claims, or his interest in the DIP Collateral under section 506(c) of the Bankruptcy Code or otherwise, and the Debtors, on behalf of their estates, waive any such rights on behalf of all parties.  It is expressly understood by all parties that in making all such undertakings and proceeding in compliance with this Interim Order, the DIP Lender has relied on the foregoing provisions of this paragraph.  Notwithstanding any approval of or consent to an Approved Budget, nothing in this Interim Order shall constitute or be deemed to constitute the consent by the DIP Lender to the imposition of any costs or expense of administration or other charge, lien, assessment or claim (including, without limitation, any amounts set forth in the Approved Budget) against such party, his claims or his interest in the DIP Collateral under section 506(c) of the Bankruptcy Code or otherwise and no such consent shall be implied from any other action or inaction by such parties.

10. _No Lien Alteration_.  The receipt by the Debtors of any proceeds of the DIP Collateral or the comingling thereof shall not, and shall not be deemed to, affect, alter or otherwise modify the validity, priority or perfection of any liens in and/or claims against or other proceeds and such liens and claims shall continue to exist in and against such DIP Collateral or other proceeds in the possession of the Debtors, in each case with the same validity, priority and perfection as existed immediately prior to such receipt by the Debtors.

11. _Carve-Out_.

    (a)    _Generally_.  Notwithstanding anything to the contrary contained in this Interim Order, upon the occurrence of the Carve-Out Trigger Date (as defined below), the liens and claims granted to the DIP Lender and under the DIP Documents, shall be subject only to the payment, without duplication, of the following fees and expenses (the amounts set forth below, together with the limitations set forth therein, collectively, the "**Carve-Out**");

    (i)    to the extent awarded by the Bankruptcy Court, and at all times subject to the DIP Facility's requirement to fund the obligations set forth in paragraph 11(a)(ii)(a) and (b), (i) as of the Carve-Out Trigger Date, all accrued and unpaid fees and expenses incurred by persons or firms retained pursuant to pursuant to sections 327, 328 or 363 of the Bankruptcy Code (whether or not budgeted) by (A) the Borrowers, or (B) the Committee (such professionals of the Borrowers and the Committee collectively, "**Retained Professionals**"), and (ii) after the occurrence of the Carve-Out Trigger Date, all unpaid fees and expenses incurred by persons or firms retained by the Debtor or the Committee in an aggregate amount not to exceed $50,000 (inclusive of any prepetition retainer held by such person);

    (ii)    all reasonable and documented fees and expenses incurred by a trustee under section 726(b) of the Bankruptcy Code not to exceed (a) $458,000, solely to the extent these Cases are converted to cases under chapter 7 of the Bankruptcy Code on or before July 15, 2018 or (b) $25,000; and

    (iii)    the unpaid fees payable to the U. S. Trustee and Clerk of the Bankruptcy Court pursuant to section 1930 of Title 28 of the United States Code.

    (b)    _Carve-Out Trigger Date_.  As used herein, the term "**Carve-Out Trigger Date**" means the date on which the DIP Lender provides written notice to the respective counsel to the Debtors and the Committee that the Carve-Out is invoked, which notice shall be delivered only on or after the occurrence and continuation of an Event of Default under the DIP Note.  For the avoidance of doubt, the conversion of these Cases to cases under chapter 7 of the Bankruptcy Code are not Events of Default under the DIP Note and the DIP Lender's commitment to lend

shall not terminate upon conversion of these Cases to cases under chapter 7 of the Bankruptcy Code, provided, however, the conversion of any of these Cases to cases under chapter 7 of the Bankruptcy Code shall trigger the Carve-Out under paragraph 11(a)(i) of this Order and the date of entry of the order converting the Cases to Chapter 7 shall constitute the Carve-Out Trigger Date solely for purposes of paragraph 11(a)(i) of this Order.

(c)     *Obligation to Fund Chapter 7 Carve-Out*. Notwithstanding anything to the contrary in this Interim Order or the DIP Facility, in the event these Cases are converted to cases under chapter 7 of the Bankruptcy Code prior to July 15, 2018, the DIP Lender shall fund the applicable amount set forth in paragraph 11(a)(ii)(a) of this Interim Order.

(d)     *Reduction of Amounts*.  Subject to the terms and conditions of this Interim Order and the DIP Documents, the Debtors shall be permitted to pay compensation and reimbursement of reasonable fees and expenses of the Retained Professionals allowed and payable under sections 328, 330 and 331 of the Bankruptcy Code ("Professional Fees"), as the same may be due and payable, and such payments shall not reduce or be deemed to reduce the Carve-Out.  The dollar amounts available to be paid under the Carve-Out shall be reduced, dollar-for-dollar, by the aggregate amount of payments made on and after the Carve-Out Trigger Date to the Retained Professionals on account of their allowed fees and expenses (whether from the DIP Loan or any proceeds of the DIP Facility, or otherwise).  Subject to paragraph 4(a) herein, following the occurrence of the Carve-Out Trigger Date, the DIP Lender agrees to extend funds to the extent available under the DIP Facility to pay accrued and allowed Professional Fees and such payments shall reduce the Carve-Out, but in no event will reduce the reserved $458,000.00 set forth in paragraph 11(a)(ii).

(e)      *Reservation of Rights on Professional Payments*.  Payment of any fees and expenses of the Retained Professionals pursuant to the Carve-Out shall not, and shall not be deemed to, (i) reduce any Debtors obligations owed to the DIP Lender or (ii) modify, alter or otherwise affect any of the liens and security interests of the DIP Lender in the DIP Collateral (or the DIP Lender's claims against the Debtors).  The DIP Lender shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any Retained Professionals (or of any other Person) incurred in connection with the Cases or any Successor Case, and nothing in this Interim Order or otherwise shall be construed to obligate such parties in any way to pay compensation to or to reimburse expenses of any Retained Professional or any other Person; provided that all liens and claims of the DIP Lender shall be subordinate to the Carve-Out to the extent set forth in this Interim Order.  Nothing herein shall impair, or be construed to impair, the ability of any party to object to any of the fees, expenses, reimbursement or compensation of the Retained Professionals.

12.     [Reserved].

13.     [Reserved].

14.     *Covenants*.  Except as expressly permitted by the DIP Documents, and in addition to any restrictions contained in the DIP Documents, the Debtors (i) shall not transfer any DIP Loan or proceeds of the DIP Facility to any of their non-Debtor affiliates or non-Debtor subsidiaries, (ii) shall not sell, lease or otherwise dispose of or transfer any DIP Collateral (other than in the ordinary course of any Debtor's business); provided that should the Debtors sell, lease or otherwise dispose of or transfer any DIP Collateral in breach of the covenant contained in this clause (ii), the Debtors shall hold the proceeds of such sale, lease or disposition in trust for the benefit of the DIP Lender, subject to the priorities of such parties in the items of the DIP

22

Collateral so disposed or transferred (subject to the reservation of rights contained in paragraph 19 below).

15.    [Reserved].

16.    [Reserved].

17.    *Perfection of the DIP Liens.*

(a)    The DIP Liens shall not be subject to challenge and shall attach and become valid, perfected, enforceable, non-avoidable and effective by operation of law as of the Petition Date without any further notice, act or action of or by any person or entity, and without the necessity of execution by the Debtors, or the filing or recordation, of any financing statements, security agreements, vehicle lien applications, mortgages, filings with the U.S. Patent and Trademark Office, or other documents.  If the DIP Lender hereafter requests that the Debtors execute and deliver to it any financing statements, security agreements, collateral assignments, mortgages, or other instruments and documents considered by him to be reasonably necessary or desirable to further evidence the perfection of the liens and security interests provided under this Interim Order, then the Debtors are hereby authorized at their sole cost and expense, to promptly execute and deliver such financing statements, security agreements, mortgages, collateral assignments, instruments, and documents, and the DIP Lender is hereby authorized to file or record such documents in their respective discretion, in which event all such documents shall be deemed to have been filed or recorded at the time and on the date of entry of this Interim Order, but with the priorities as set forth herein.

(b)    The DIP Lender may (in his sole discretion), but shall not be required to, file a certified copy of this Interim Order in any filing or recording office in any state, county or other jurisdiction in which any Debtor has real or personal property and such filing or recording

102385753.1

may be accepted and shall constitute sufficient evidence of perfection of such applicable parties'
interests in the DIP Collateral at the time and on the date of entry of this Interim Order, but with
the priorities as set forth herein.

18.    *Preservation Of Rights Granted Under This Order; 364(e) Protection*.

(a)    *Survival*.  The provisions of this Interim Order and any actions taken
pursuant hereto: (a) shall survive the occurrence of the Termination Date and/or entry of any
order: (i) converting any of the Cases to a case under chapter 7 of the Bankruptcy Code;
(ii) substantively consolidating any of the Debtors or their respective estates; (iii) dismissing or
closing any of the Cases; or (iv) confirming a plan of reorganization in any of the Cases (and,
pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors hereby waive any discharge
as to the DIP Obligations); and (b) shall continue in full force and effect notwithstanding the
occurrence of the Termination Date or entry of any such order.  The claims, liens, and security
interests granted pursuant to this Interim Order shall maintain their priority, validity and
perfection as provided by this Interim Order until all of the DIP Obligations are indefeasibly paid
in full in cash on an Interim basis and discharged (and all lending commitments terminated under
the DIP Facility) in accordance with the respective terms and conditions of this Interim Order
and the DIP Documents (as applicable).

(b)    *Section 364(e); Effect of Modification or Appeal*.  Based on the findings
set forth herein, in consideration for the financing provided under the DIP Facility, the DIP
Lender is entitled to, and hereby is granted, the full rights, benefits, privileges and protections of,
and provided by, section 364(e) of the Bankruptcy Code with respect to the DIP Obligations (and
related liens, claims, rights, remedies and benefits) created or authorized by this Interim Order in
the event that this Interim Order or any authorization or approval contained herein is

subsequently stayed, vacated, reversed, amended or modified on appeal.  Any subsequent stay, modification, reversal, amendment or vacation of this Interim Order shall not alter, modify or affect the validity, priority, perfection or enforceability of any claim, lien, or security interest of the DIP Lender authorized, created or granted pursuant to this Interim Order and outstanding immediately prior to the actual receipt of written notice by the DIP Lender of the effective date of such stay, modification, reversal, amendment or vacation.  Notwithstanding any such stay, modification, reversal, amendment or vacation, all obligations and other financial accommodations made or incurred pursuant to this Interim Order or the DIP Documents, all DIP Obligations incurred pursuant hereto prior to the actual receipt of written notice by the DIP Lender of the effective date of such stay, modification, reversal, amendment or vacation, shall be governed in all respects by the original provisions of this Interim Order and the DIP Lender shall be entitled to all of the rights, privileges, remedies, protections and benefits contained or granted in section 364(e) of the Bankruptcy Code, the DIP Documents, and this Interim Order including, without limitation, the DIP Liens and Super-Priority Claims.

19.     [Reserved].

20.     *Limitation On Use of the DIP Facility and DIP Collateral*.  Notwithstanding anything herein to the contrary, no portion or proceeds of the DIP Loan and DIP Facility, the DIP Collateral or the Carve-Out, and no disbursements set forth in the Approved Budget, shall be used for the payment of professional fees, disbursements, costs or expenses incurred in connection with: (a) objecting, contesting or raising any defense to the validity, perfection, priority, or enforceability of any amount due under the DIP Documents or any security interests, liens or claims granted under this Interim Order or the DIP Documents, or to secure such amounts; (b) asserting any claims, actions or causes of action against the DIP Lender or any of

his agents, affiliates, representatives, attorneys or advisors; (c) preventing, hindering or otherwise delaying the DIP Lender's assertion, enforcement or realization on the DIP Collateral in accordance with the terms and conditions of this Interim Order and the DIP Documents; or (d) seeking to amend or modify any of the rights granted to, or prosecuting any claims, actions or causes of action adverse to interests of, the DIP Lender under this Interim Order or the DIP Documents without the DIP Lender's prior written consent given in its sole discretion.

21.    *No Marshaling*.  Subject to entry of a final order on the DIP Facility, in no event shall the DIP Lender be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral.

22.    *No Subrogation*.  In no event shall any person or entity who pays (or through the extension of credit to any Debtor, causes to be paid) any of the DIP Obligations be subrogated, in whole or in part, to any rights, remedies, claims, privileges, liens or security interests granted in favor of, or conferred upon, the DIP Lender by the terms of the DIP Documents or this Interim Order or otherwise at law or contract or in equity, unless and until such time as all of the DIP Obligations have been indefeasibly paid in full in cash on a final basis and all lending commitments have been terminated under the DIP Facility and the DIP Lender shall have received a full release in connection therewith.

23.    *No Implied Waiver*.  The failure, at any time or times hereafter, of the DIP Lender to require strict performance by the Debtors of any provision of this Interim Order shall not waive, affect or diminish any right of such parties thereafter to demand strict compliance and performance therewith.  No delay on the part of any party in the exercise of any right or remedy under this Interim Order, the DIP Documents or otherwise at law or contract or in equity shall preclude any other or further exercise of any such right or remedy or the exercise of any other

right or remedy.  None of the rights or remedies of any party under this Interim Order or the DIP Documents or otherwise at law or contract or in equity shall be deemed to have been amended, modified, suspended or waived unless such amendment, modification, suspension or waiver is in writing and signed by the party against whom such amendment, modification, suspension or waiver is sought.  The DIP Lender does not waive, and expressly reserves, any and all claims, causes of action, defenses, rights and remedies it has or may have pursuant to any or all of the DIP Documents, the Bankruptcy Code and/or under applicable law, in contract or equity against or with respect to any Debtor and any other person or entity.  Except as expressly provided in this Interim Order, the obligations of the Debtors, and the rights, remedies, and priorities of the DIP Lender arising under or in connection with this Interim Order are in addition to, and are not intended as a waiver or substitution for, those granted to, or contained in favor of, such parties under any or all of the DIP Documents, the Bankruptcy Code and/or under applicable law or in contract or equity.

24.     *Order Governs*.   In the event of any conflict between the provisions of this Interim Order and the DIP Documents, the provisions of this Interim Order shall control and govern to the extent of such conflict.  All actions taken in connection with or in reliance on this Interim Order shall be reaffirmed in full as part of entry of an Interim order on the Motion.

25.     *Successors and Assigns*.   The provisions of this Interim Order and the DIP Documents shall, as applicable, be binding upon and inure to the benefit of the DIP Lender, and the Debtors and their respective estates, and their respective successors and assigns, including, without limitation, any trustee or other fiduciary hereafter appointed as a legal representative of any of the Debtors or their estates, whether in these Cases or any Successor Case.

102385753.1

26.     *No Consent to Plan of Reorganization*.  Nothing in this Interim Order shall be deemed to be, the consent to, or agreement to support or vote for, any disclosure statement or plan of reorganization filed by the Debtors or any other party in these Cases.  The rights, defenses and objections of all parties, including, without limitation, the Committee in connection therewith are hereby reserved.

27.     *Effectiveness*.  This Interim Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof, and there shall be no stay of execution of effectiveness of this Interim Order.  All objections to the entry of this Interim Order have been withdrawn or overruled and the Motion is approved on an interim basis on the terms and conditions set forth herein.  Pursuant to Bankruptcy Rule 7052, any findings of fact contained herein that may be construed as matters of law shall be treated as conclusions of law as if set forth below, and vice versa.

28.     Final Hearing; Final Order.

(a)     The Final Hearing to consider entry of a final order on approval of the DIP Facility is scheduled for July 12, 2018, at 2:00 p.m. (prevailing Central Time) at the United States Bankruptcy Court for the Southern District of Texas.

(b)     The proposed Final Order, along with the proposed 13-week budget, will be filed by July 6, 2018 at 4:00 p.m. (Central Time).

29.     Final Hearing Notice.  Within three (3) business days of entry of this Interim Order, the Debtors shall serve, by United States mail, first-class postage prepaid, (such service constituting adequate notice of the Final Hearing) notice of the entry of this Interim Order and of the Final Hearing (the "**Final Hearing Notice**") upon the Notice Parties and Committee counsel. The Final Hearing Notice shall state that any party in interest objecting to the entry of the

102385753.1

proposed Final Order shall file a written objection with the Clerk of the Bankruptcy Court no later than July 11, 2018 at 4:00 p.m. Central Time.

Dated: June 25, 2018
      Houston, TX

_____
Hon. Marvin Isgur
United States Bankruptcy Judge

102385753.1