UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION


| | | |
|---|---|---|
| IN RE: | ) | CASE NO:  18-32106 |
| | ) | CHAPTER 11 |
| | ) | |
| | ) | Houston, Texas |
| ERIN ENERGY CORPORATION, ET AL., | ) | |
| | ) | Thursday, July 12, 2018 |
| | ) | (2:00 p.m. to 3:10 p.m.) |
| | ) | |
| Debtors. | ) | |

HEARING

BEFORE THE HONORABLE MARVIN ISGUR,
UNITED STATES BANKRUPTCY JUDGE


<u>APPEARANCES</u>:                CONTINUED ON PAGE 2 CONTINUED ON PAGE 2


For Debtors:            MATTHEW S. OKIN, ESQ.
                        Okin & Adams, LLP
                        1113 Vine Street, Suite 201
                        Houston, TX 77002

Court Recorder:         Samantha Warda

Clerk:                  Jesus Guajardo

Transcribed by:         Exceptional Reporting Services, Inc.
                        P.O. Box 18668
                        Corpus Christi, TX 78480-8668
                        361 949-2988


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

**APPEARANCES FOR:**            CONTINUED


Greg Holcombe,               MELANIE GRAY, ESQ.
Proposed DIP Lender:         Winston & Strawn, LLP
                             1111 Louisiana, 25th Floor
                             Houston, TX 77002


Public Investment Corp:      BRADLEY R. FOXMAN, ESQ.
                             Vinson Elkins
                             2001 Ross Ave, Suite 3700
                             Dallas, TX 75201


Bumi Armada Entities:        JOHN D. CORNWELL, ESQ.
                             Munsch Hardt Kopf & Harr, PC
                             700 Milam Street, Suite 2700
                             Houston, TX 77002


Committee of Unsecured       IRA D. KHARASCH, ESQ.
Creditors:                   Pachulski Stang Ziehl & Jones
                             10100 Santa Monica Blvd.
                             13th Floor
                             Los Angeles, CA 90067

                             JOHN MORRIS, ESQ.
                             Pachulski Stang Ziehl & Jones
                             780 Third Avenue, 34th Floor
                             New York, NY 10017


Zenith Bank Plc:             CHARLES A. BECKHAM, JR., ESQ.
                             MARTHA WYRICK, ESQ.
                             Haynes & Boone, LLP
                             1221 McKinney, Suite 2100
                             Houston, TX 77002

1          **Houston, Texas; Thursday, July 12, 2018; 2:00 p.m.**

2                        **(Call to Order)**

3              **(Mr. Rawlins Appearing Telephonically)**

4          **THE COURT:**  All right.  We're here in the Erin Energy

5    Corporation case.  It is 18-32106.  I'll take appearances here

6    in court and then we'll see if we have any additional

7    appearances on the telephone.

8          **MR. OKIN:**  Good afternoon, your Honor, Matthew Okin

9    on behalf of the Debtors.

10         **THE COURT:**  Good afternoon, Mr. Okin.

11         **MS. GRAY:**  Good morning, your Honor, Melanie Gray on

12   behalf of the DIP lender, Greg Holcombe.

13         **THE COURT:**  Good afternoon, Ms. Gray.

14         **MR. KHARASCH:**  Good afternoon, your Honor, Ira

15   Kharasch and John Morris of Pachulski Stang on behalf of the

16   Creditors Committee.

17         **THE COURT:**  Good afternoon, Mr. Kharasch.

18         **MR. FOXMAN:**  Good afternoon, your Honor, Brad Foxman

19   on behalf of the Public Investment Corporation of South Africa.

20         **THE COURT:**  Good afternoon, Mr. Foxman.

21         **MR. CORNWELL:**  Good afternoon, your Honor, John

22   Cornwell on behalf of the Bumi Armada entities.

23         **THE COURT:**  Good afternoon, Mr. Cornwell.

24         **MR. BECKHAM:**  Good afternoon, your Honor, Charles

25   Beckham and Martha Wyrick on behalf of Zenith Bank Plc.

1          **THE COURT:**  Good afternoon, Mr. Beckham.

2          Mr. Beckham, I read the -- I've read several things

3    from your --

4          **MR. BECKHAM:**  Yes, your Honor.

5          **THE COURT:**  -- clients but one of them was the notice

6    of their compliance with our order and I just wanted to express

7    the Court's appreciation to their recognition of what had

8    occurred and it was appreciated.  So thank you for letting me

9    know that.

10          **MR. BECKHAM:**  You're welcome, your Honor.  Thank you.

11          **THE COURT:**  Thank you.  All right.

12          Mr. -- are there any appearances on the phone?  If

13    so, you'll need to press "5*."  All right.

14          I'll get this other case off the screen.

15          Mr. Okin, go ahead.

16          **MR. OKIN:**  Your Honor, as we said in our notice that

17    we filed on Monday, the Debtor does not have the support of the

18    Committee or at this point the DIP lender for a final budget.

19    Given the fact that we do not have support on the final budget

20    and, therefore, no ability to operate this week as it already

21    stands, much less going forward from here, the Debtor's board

22    met and determined that it was in the estate's best interest

23    not to proceed.

24          We've taken the tact since that determination was

25    made to try to act in a manner that minimized both the

1   administrative expenses that were being incurred just naturally

2   as we got up to this point and try not to get involved in any

3   further disputes with the Committee or any other party that

4   would run up any additional administrative expenses leading up

5   to this point.  It was, in fact, the litigation expense

6   associated with the fight with the Committee over conversion or

7   not conversion that really brought about this crisis.  I

8   believe without that expense, we might have been able to work

9   out a budget with the DIP lender.

10          So given the fact that the DIP lender had made his

11  choice not to agree on a budget and we hadn't convinced the

12  Committee that a Chapter 11 trustee would make more sense,

13  we've attempted to conduct ourselves in a way that as best as

14  possible minimized those expenses.  I will point out to the

15  Court that despite that, we have been letting employees, as

16  best we can, know that the Debtor has no budget to go forward.

17  We've had a little trouble getting that message to Nigeria in

18  such a way that we've actually -- I'm not convinced that

19  everybody in Nigeria has actually been let go.

20          And similarly, all of the officers who had been

21  running this Debtor in Houston have stayed on this week

22  assisting with that process despite the fact that there is no

23  money in the budget for this week to pay them and although we

24  have no specific authority to do so, there is money in the bank

25  and regardless of how this hearing goes, I'd ask the Court to

 1   look kindly upon them and perhaps as part of the conversion

 2   authorize that the excess funds -- no new funds beyond the

 3   amount the Court previously authorized but excess funds that

 4   were not spent otherwise, that those be approved to be used to

 5   pay the officers who did shepherd this through to at least

 6   this, you know, somewhat consensual resolution -- not

 7   consensual but at least not adversarial.

 8          But given that, your Honor, we don't intend to

 9   proceed with the DIP loan with a final order.  I agree with the

10   DIP lender's view that the interim order provides all the

11   relief that's necessary to get us where we need to be.  We

12   don't intend to put on any evidence otherwise and as we said in

13   our notice, we don't intend to put on any evidence opposing the

14   Committee's motion to convert.

15          Given that, I think I'll step aside unless the Court

16   has questions and allow other parties --

17          **THE COURT:**  Okay.  I have a question for you and

18   maybe for Ms. Gray and maybe this goes to others as well, which

19   is -- and this is something beyond my experience.  If you have

20   an interim order that doesn't result in a final order, do we

21   need to enter an order that says the interim order is now final

22   so that we then make it no longer an interlocutory order?  Or

23   what do we do so that that order takes on the finality for any

24   appellate purposes?  Maybe we do nothing and it becomes final

25   by operation of law?  I don't know and I'm hoping somebody else

1    here has run into the problem.

2            **MR. OKIN:**  I think your Honor needs to enter an order

3    because I think there is an order for final relief set for

4    hearing today.  Regardless of how you rule, whether you rule

5    just denying final relief, I think the interim order does state

6    that even if final relief is not granted, the protection is

7    granted in that order and the carve-out for the Chapter 7

8    trustee are approved.

9            **THE COURT:**  Well, it does do all of that but I

10   just --

11           **MR. OKIN:**  But I think you need to enter some order

12   today, your Honor.

13           **THE COURT:**  And what would you prefer that it say to

14   protect everyone's rights?

15           **MR. OKIN:**  I think, all things being equal, I'd

16   prefer it say that the protections and the rights granted in

17   the interim order are now final with nothing -- and no further

18   relief is granted.

19           **THE COURT:**  All right.

20           **MR. OKIN:**  But I will let other people opine on it.

21           **THE COURT:**  Thank you.

22           Why don't we deal with what do we do about the DIP

23   order before we get to the dismissal conversion Chapter 11

24   trustee issue?

25           **MR. OKIN:**  Your Honor, and when we get to -- if

1  dismissal is an issue, we do want to be heard on that because

2  we do -- if a conversion is --

3        **THE COURT:**  Well, Mr. Beckham has basically filed a

4  cross motion for dismissal.  I don't know if he's standing on

5  that or not but I think it's here.

6        **MR. OKIN:**  I don't know if it's -- I wasn't clear on

7  whether it was a separate hearing today.  I wasn't -- if we're

8  going to consider that, we do want to be heard on that as well,

9  your Honor.

10        **THE COURT:**  Yeah.  I guess my gut is it's -- it would

11  be kind of a mess to convert it today and set his dismissal

12  motion for Tuesday and then dismiss that and if we need more

13  time to prepare for dismissal, then I would put off the

14  conversion question probably but I'm a little bit -- I don't

15  think this is rocket science to deal with dismissal versus

16  conversion and that we could probably take it up today without

17  a whole lot more notice.  But I'm perfectly willing to listen

18  to people that say that they need more time to deal with it but

19  I don't want to do these things piecemeal, I don't think.

20        **MR. OKIN:**  We can address the DIP loan first, your

21  Honor.  I'll just point out that from the Debtor's perspective

22  and the officers and directors of the Debtor, the parent is a

23  publicly traded company.  It's listed in both South Africa and

24  the United States.

25        **THE COURT:**  All right.

1      **MR. OKIN:**  These officers and directors have duties

2  to parties beyond just a closely held group of shareholders.

3  Dismissal of this case would be something that they would all

4  definitely oppose.  It's not something we're prepared to deal

5  with today.

6      **THE COURT:**  I'm going to definitely give you a chance

7  to deal with that if -- I don't know whether Mr. Beckham's

8  client is going to push it, not push it.  I haven't heard from

9  him but all I'm saying is before we ever get to that, I want to

10  deal with Ms. Gray's client and get their order done

11  appropriately -- and, again, it's an area of the law that I'm

12  not familiar with.  I hate to be ignorant about it but I am --

13  on do I do nothing?  Do I say the interim is now final?

14      **MR. OKIN:**  Okay.

15      **THE COURT:**  And so let me hear from others as to what

16  we need to do.

17      **MS. GRAY:**  Your Honor, Melanie Gray.  And I

18  apologize.  I did not announce Justin Rawlins is on the phone

19  for appearances purposes but he is on the line in case the

20  judge may have any questions for him.

21      Your Honor, we have not researched whether the

22  interim order would become final by operation of law.  We do

23  not believe that a final order is necessary because of the

24  protections that are already in.  With regard to an appeal,

25  given that there will not be any more funding under the

1    existing interim order and DIP note, it seems as if any appeal

2    would be moot because you wouldn't -- there wouldn't be

3    anything to reverse, if you will, by virtue of the protections

4    under 364(e).

5         THE COURT:  Yeah, I don't want to get into or

6    disagree or agree with that because that will be the Appellate

7    Court's right to decide if it's moot.  I just want to --

8         MS. GRAY:  Absolutely.

9         THE COURT:  -- I just want to be sure that if I

10   needed -- so you think I can do nothing and your client is

11   fine?

12        MS. GRAY:  Would be protected.  We are -- having said

13   that, your Honor, we are not opposed to a simple order and I

14   think we included a statement to this effect in the filing that

15   we made this morning setting forth the DIP lender's position on

16   conversion that if the Court or the parties believe that an

17   order, you know, deeming or conferring finality (indisc.).  We

18   are not opposed to that.  We did not come with an order in

19   hand --

20        THE COURT:  No, I --

21        MS. GRAY:  -- but we would not be opposed to it.

22   Thank you.

23        THE COURT:  Thank you.

24        On the phone, let me get the one appearance we have

25   here.  Mr. Estefan?  Mr. Estefan, did you want to appear?

1    317-296-5991.  So we can't hear you.  I'm not sure why.  Let me

2    be sure we don't have anything muted.

3             **MR. RAWLINS:**  Your Honor, I think you did unmute --

4    this is Justin Rawlins of Winston Strawn.  If my line's been

5    muted, I don't know -- you know --

6             **THE COURT:**  Ah, I'm just -- I've got you listed as

7    Mr. Estefan but that's great.  So thank you for the appearance.

8             **MR. BECKHAM:**  Your Honor, Charles Beckham on behalf

9    of Zenith Bank.  Relative to the DIP order, Ms. Gray and I have

10   been conferring with each other for the last couple of days.

11   You saw, no doubt, that we filed a motion -- or a response to

12   the final DIP, objecting to it on the basis that it appears

13   that from the language in the interim order that the DIP lender

14   intended to -- or maybe not intended to but could potentially

15   prime the first lien of Zenith Bank.

16            **THE COURT:**  I think that in her response the very

17   last sentence says, we didn't because we agreed to be

18   subordinate -- somebody that's subordinate to them and,

19   therefore, mathematically we are subordinated to them.  It's

20   kind of if A is greater than B, then B is greater than C, then

21   A is greater than C kind of sentence.  So --

22            **MR. BECKHAM:**  And Ms. Gray have been discussing

23   exactly that point.  And she has advised me that her client --

24   she can correct me if I'm wrong here -- did not intend to prime

25   Zenith Bank to the extent that it was senior to Mauritius.

1          **THE COURT:**  Right.

2          **MR. BECKHAM:**  And I have proposed -- sent over a

3   draft of the order to her this morning and we've been tinkering

4   with the language exactly how to capture that concept.  Of

5   course, Zenith Bank believes it has a first lien on everything

6   and -- or substantially all the assets in Nigeria and I think

7   the DIP lender believes that that may be the case but since we

8   weren't here and objecting at the interim phase, they're

9   willing to go as far as we're not trying to prime you with

10  respect to anything that the second lienholder has a valid lien

11  on and I think everybody believes that the collateral package

12  is approximately the same.  I don't know that.

13          And -- but we have some -- we have a draft or

14  proposed order.  I have a stick.  If the Court would like to

15  look to the order, it's very brief.  It's only two pages --

16  which attempts to capture the concept that we have and might be

17  helpful to resolve it with the Court.

18          **THE COURT:**  Ms. Gray?

19      **MS. GRAY:**  David, are you done?  I don't want to --

20          **MR. BECKHAM:**  No, I'm -- yeah, I'm done.

21      **MS. GRAY:**  Great.

22          Thank you, your Honor.  Certainly, you know,

23  everybody is agreement to the extent that Mauritius had a --

24  has a second lien on collateral which Zenith also has a lien

25  on.  We are junior.  However, because it is still unclear at

1    this point whether or not that collateral package is

2    coextensive --

3              **THE COURT:**  Right.

4              **MS. GRAY:**  -- with each, we do believe we're entitled

5    to the priming that we sought in the motion for approval of the

6    interim and we sought --

7              **THE COURT:**  Well, you wouldn't have a problem

8    entering an order that said that you're junior to Zenith to the

9    extent that Mauritius is junior to Zenith?

10             **MS. GRAY:**  Not at all.  Not at all.  And we could do

11   that and wrap it up with a final -- making the interim a final

12   as well and accomplish -- I hate the expression "kill two birds

13   with one stone" because I like birds but, anyway, we could

14   accomplish everything by approaching it that way.  Thank you.

15             **THE COURT:**  Mr. Foxman.

16             **MR. FOXMAN:**  Thank you, your Honor.  We just rise to

17   make clear that we don't think that the collateral was

18   coextensive but the way that the Court suggested would work,

19   you know, to-the-extent-type language.

20             **THE COURT:**  Okay.

21             **MR. FOXMAN:**  We just want to make sure we don't

22   decide one way or the other about who is first on what.

23             **THE COURT:**  And I think under the circumstances, the

24   to-the-extent is probably the right way to go.  I also think

25   this isn't going to matter but that's a different question.

1    What's the Committee's position?

2         MR. KHARASCH:  Your Honor, I should -- the

3    Committee's position is that we would prefer -- we'd actually

4    support Zenith Bank on its position that they were not primed

5    at all.  I think that was the clear intent of the hearing, that

6    there was no prime and the Court made no finding of adequate

7    protection for such a priming of their lien.

8         Our worry -- the reason why we have a stake in this

9    is that if there is an implied failure of adequate protection

10   for some reason, some collateral that was not coextensive,

11   we've got another super priority claim against the unencumbered

12   assets that we've been trying to, you know, build a wall

13   around.  So that would be our worry that, again, if there's

14   some kind of priming, it was that its claim on some asset that

15   PIC does not have a lien on or -- then there could be some kind

16   of potential failure of adequate protection and, again, we're

17   looking at another super -- potential super priority claim.

18        THE COURT:  But that could only be to the extent of

19   the prime which maxes out at the DIP amount of the loan, right,

20   minus whatever they recover from their other collections?

21        MR. FOXMAN:  Correct.

22        THE COURT:  So --

23        MR. FOXMAN:  Correct.

24        THE COURT:  Okay.  Could I see your stick,

25   Mr. Beckham?

1          **MR. BECKHAM:**  Yes, your Honor.

2          **THE COURT:**  Ms. Gray, do I need to turn on the

3   join.me so that your partner can watch what we're doing?

4          **MS. GRAY:**  No, I think that he trusts me with this

5   much.  Thank you, your Honor.

6          **THE COURT:**  He's a --

7          **MS. GRAY:**  Justin, speak up if you would like to be

8   able to see the revisions.  I just know that --

9          **MR. RAWLINS:**  I've seen the proposal, your Honor.  I

10  don't need to.

11         **THE COURT:**  Thank you.

12         **MS. GRAY:**  Okay.

13         **MR. BECKHAM:**  Your Honor, one comment with respect to

14  the order.  The draft that will appear on your screen, the --

15  Ms. Gray and I have discussed the deletion of the first

16  paragraph on the second page.

17         **THE COURT:**  Hold on just a minute because I'm not --

18         **MR. BECKHAM:**  Okay.

19         **THE COURT:**  Let me get it open.

20         **MR. BECKHAM:**  All right.

21         **THE COURT:**  Here's what's on the stick.  Which order

22  do you want me to try and look at?  Is it the red-line of the

23  interim?

24         **MR. BECKHAM:**  I think it would be helpful for you to

25  look at the DIP order, object -- not the -- I'm sorry -- the

16

1   order on --

2            **THE COURT:**  That one?

3            **MR. BECKHAM:**  Yes.

4            **MS. WYRICK:**  Your Honor, that's the correct one, the

5   modification.

6            **THE COURT:**  I think you're the person who knows,

7   Ms. Wyrick.

8            **MR. BECKHAM:**  That is correct, your Honor.

9            **THE COURT:**  It cannot be opened because there are

10  problems with the contents.

11           **MS. WYRICK:**  Well, I also have the CD, your Honor.

12  Do you have a CD reader?

13           **THE COURT:**  Word found unreadable content.  Hold on.

14  If I open the red-line, maybe I can get there.  Well, that

15  didn't work.  Yeah, let's just read it.  Oh, this is an insert

16  to the current order?

17           **MR. BECKHAM:**  That would be what the insert would

18  read.  Actually the order is a separate document which

19  incorporates that language.

20           **THE COURT:**  Oh, and that's the one that I couldn't

21  get open.

22           **MR. BECKHAM:**  I believe so, your Honor.

23           **THE COURT:**  I better take your CD.

24           **MS. WYRICK:**  Do you want me to --

25           **THE COURT:**  Yeah, I better take the CD.  Thank you.

1        **(Pause)**

2              **THE COURT:**  Same problem.

3              **MR. BECKHAM:**  I do have a hard copy, your Honor.

4              **THE COURT:**  Okay.  Let me take that.  Thank you.

5              **MR. BECKHAM:**  And I can also give you the -- a red-

6    line for the language that was changed from the prior order.

7              **THE COURT:**  Yeah, let me just take a look.

8              **MS. SPEAKER:**  You can also receive it on the stick --

9              **MR. BECKHAM:**  Oh, we don't?  Okay.

10             Here is the language, your Honor, which is the

11   paragraph that we have proposed changing.  But with respect to

12   the draft --

13             **THE COURT:**  Is this the same one which is included in

14   what you handed up?

15             **MR. BECKHAM:**  Yes, your Honor.  The red-line shows

16   the differences from the prior Paragraph 5C of the interim DIP

17   order.

18             **THE COURT:**  I think that this is going to get into

19   too many findings that people aren't going to know about today

20   in terms of the validity of your means.  Can I take a different

21   stab at it?

22             **MR. BECKHAM:**  Yes, your Honor.

23             **THE COURT:**  Let me just -- let me see if I can get

24   there and I'm -- I think I can get there in a simpler way but

25   maybe not.  The interim order is what ECF number?  Does anyone

18

1    know?

2           **MS. GRAY:**  The docket number?

3           **THE COURT:**  Correct, the docket number of the interim

4    order.

5           **MS. GRAY:**  Your Honor, it's 203.

6           **THE COURT:**  Thank you.  203 is a motion.

7           **MR. BECKHAM:**  291 perhaps, your Honor.

8           **THE COURT:**  291?  No, that's the interim order, the

9    one that he signed.

10          **MS. GRAY:**  Your Honor, it is 247.

11          **MR. BECKHAM:**  Oh, okay.

12          **THE COURT:**  I got it.  Thank you.

13          **MR. BECKHAM:**  And, your Honor, to certify the order

14   that we tendered up, the first paragraph on the second page

15   describing the validity of the security interest --

16          **THE COURT:**  Right.

17          **MR. BECKHAM:**  -- we are willing to take that out.

18          **THE COURT:**  Oh, okay.

19          **MR. BECKHAM:**  That may help you.  We weren't trying

20   to take advantage.  So the operative paragraphs would be that

21   first paragraph on Page 1 of the order, the second one

22   providing that you entered the interim order and then the third

23   one which has the red-line language relative to --

24          **THE COURT:**  Okay.  Does that work for you, Ms. Gray,

25   if we take out the first paragraph on Page 2 and then leave in

1    the red-line changes?

2           **MS. GRAY:**  Your Honor, it doesn't because there is a

3    possibility that there is collateral in which Zenith holds the

4    first lien and Mauritius does not have a second lien.

5           **THE COURT:**  So if I add right before the semicolon

6    that's on the sixth-from-the-last line, "but only to the extent

7    that such liens are senior to the liens held by" --

8           **MS. GRAY:**  MCB --

9           **THE COURT:**  MCB?

10          **MS. GRAY:**  Yeah, whatever the defined term is.

11          **THE COURT:**  Does that then work?

12          **MS. GRAY:**  We believe it does.  However, I do think

13   that then that is somewhat inconsistent with the first ordered

14   paragraph on Page 1 that we did not intend to prime.  We came

15   in intending to prime everyone.  PIC, of course, objected

16   and --

17          **THE COURT:**  I think we just -- so if we take out the

18   last paragraph on the first page --

19          **MS. GRAY:**  Uh-huh.

20          **THE COURT:**  -- the first paragraph on the second page

21   and then you handwrite in language that clarifies that the

22   definition of the Zenith liens are only Zenith liens on which

23   Mauritius has a junior lien -- or property on which Mauritius

24   has a junior lien, then you're okay with it, right?

25          **MS. GRAY:**  That is correct, your Honor.

1          **THE COURT:**  And that works for your client?

2          **MR. BECKHAM:**  Your Honor, unfortunately I wasn't here

3     for the interim hearing and no objection was lodged by Zenith

4     Bank.  And while I cannot concede to and agree that we should

5     be subordinated because of a lack of adequate protection,

6     Zenith Bank does want the benefit of an order being entered.

7     So I think this is a suitable way of addressing the issue.

8          **THE COURT:**  I'm not asking you to agree to this --

9          **MR. BECKHAM:**  Okay.

10         **THE COURT:**  -- for the reasons that you've stated --

11         **MR. BECKHAM:**  Right.

12         **THE COURT:**  -- but we've already done what we've done

13    and I'm not going to go back and change what I did.

14         **MR. BECKHAM:**  I understand that.

15         **THE COURT:**  So to the extent that Zenith wants me to

16    change what I did, that's overruled.  Given that it's

17    overruled, now what would Zenith like me to do?

18         **MR. BECKHAM:**  I think the language works, your Honor.

19         **THE COURT:**  Thank you.

20         Yeah, Mr. Foxman?

21         **MR. FOXMAN:**  Your Honor, I think that works also but

22    we'd just like to take a look at it maybe on the projector is

23    that's okay or if you could just say it one more time before

24    it's entered.

25         **THE COURT:**  Well, what I'm going to do is I'm going

21

1    to hand it out and let somebody else handwrite in the precise

2    language and you can look over their shoulder.  Unfortunately,

3    because it's not coming up on either one of the pieces of

4    electronic media, I don't have that ability but you-all can

5    just handwrite it in.

6            **MR. FOXMAN:**  Okay.  Thank you, your Honor.

7            **THE COURT:**  Did you have a --

8            **MS. WYRICK:**  Your Honor, I do have a version on my

9    computer.  I'm more than happy to re-save it and see if that

10   works.

11           **THE COURT:**  That's -- if you have it on your

12   computer --

13           **MS. WYRICK:**  Yes, sir.

14           **THE COURT:**  -- is your computer plugged in?

15           **MS. WYRICK:**  Yeah, I've got it up right now.

16           **THE COURT:**  No, is it plugged into our system?

17           **MS. WYRICK:**  Oh, I've never done that but I can try.

18           **THE COURT:**  There's a little device in that little

19   door right in front of the monitor.

20           **MS. WYRICK:**  Okay.

21           **THE COURT:**  I think it's in front of the monitor.  On

22   Mr. Beckham's side of the monitor is where I'm thinking the

23   little door is.

24           **MS. WYRICK:**  Here?  Thanks.

25           **THE COURT:**  I think there should be a little device

 1  to plug into.  If not, there's one out of this front door.

 2  Right, that's the one.

 3          **MR. OKIN:**  Is it this one, your Honor?

 4          **THE COURT:**  Is it a --

 5          **MR. OKIN:**  It's an HDMI.

 6          **THE COURT:**  It'll work.  Either one will work.  Do

 7  you have an HDMI plug?

 8          **MR. OKIN:**  Yeah, she does.

 9          **MS. WYRICK:**  Thank you.

10          **THE COURT:**  There you go.  So what I want to do is

11  take out the last paragraph on the first page.  This is the

12  part that I'm ordering as opposed to your client agreeing to.

13  So that has to be deleted.  And then I want to take out that

14  paragraph that you're now pointing at.  I want to go back to

15  the title and I wanted to make it "Final Order."  Okay.  And

16  then go down to the single-spaced paragraph and on the seventh-

17  from-the-last-line, there's a semicolon and right before that

18  -- right before it's -- up, up, up, two more lines up.  Right

19  there.  Right before that semicolon --

20          **MS. WYRICK:**  Okay.

21          **THE COURT:**  Can you go back to the -- right before

22  the semicolon, not right after it.  Yes, comma, "But only to

23          the extent that the assets on which Zenith holds

24          liens and security interests are also subject to

25          liens and security interests held by the MCB facility

1          parties."  That's what I'm intending.  If that

2  doesn't work, people can object to it but I'm just trying to

3  cut through and get this done easily.

4          So given that I'm overruling your client's objection

5  to part of it, I'm going to allow the bank fully to participate

6  in the part that I'm not overruling.  Any objection?

7          **MR. BECKHAM:**  No, your Honor.  I think that language

8  works.

9          **THE COURT:**  Ms. Gray?

10          **MS. GRAY:**  No objection, your Honor.

11          **THE COURT:**  Mr. Foxman?

12          **MR. FOXMAN:**  No objection, your Honor.

13          **THE COURT:**  And the Committee?

14          **MR. KHARASCH:**  No objection.

15          **THE COURT:**  Thank you.

16          So I think what I'll do is give you back your flash

17  drive because you can't print from there, unfortunately.  I'll

18  get you to save that maybe as a PDF on the flash drive and then

19  we'll print it from there.

20          **MS. WYRICK:**  Yes, sir.

21          **THE COURT:**  Thank you.  All right.

22          Okay.  So now let's go towards dismissal and

23  conversion and Chapter 11 trusteeing issue.  Is there anyone

24  that currently is advocating the appointment of a Chapter 11

25  trustee?  I know the Debtor had indicated a preference but that

24

1    was before Ms. Gray's client said they wouldn't fund the

2    Chapter 11 trustee and I didn't know if you still wanted to

3    advocate for that or not.

4         **MR. OKIN:**  Your Honor, we've agreed not to advocate

5    for it.  We will -- and I've been instructed by the Debtor's

6    board to just once again inform the Court that the board

7    believes that the assets, especially the assets in Nigeria but

8    also in Gambia, will lose substantial value from the conversion

9    of this case to Chapter 7 and that were there a way to fund the

10   Chapter 11, that a Chapter 11 trustee would be far preferable

11   to a Chapter 7.  Given the lack of funding for it, we're not

12   going to waste court time or funds litigating that issue but we

13   do want to be sure the Court is aware that that's the Debtor's

14   management's position.

15        **THE COURT:**  In as much as there would be no money for

16   a Chapter 11 trustee to operate with, to the extent that that

17   is a good suggestion in the absence of that fact, I will

18   overrule any effort to appoint a Chapter 11 trustee provided

19   that I am not tying the hands of the Chapter 7 trustee.  If the

20   Chapter 7 trustee believes it's appropriate to come into court

21   and ask to do temporary operations or other things for which

22   emergency relief is appropriate, the Chapter 7 trustee would be

23   authorized to do that and to the extent that we dismiss the

24   case and a new Chapter 11 case is filed, I would not dismiss

25   with prejudice.

1            So in either event, if money comes in that would fund

2    that and if that's appropriate, I would allow either the

3    Chapter 7 trustee or the Debtor -- or the former Debtor to seek

4    that relief as appropriate.  So I'm going to -- that means

5    we're now limited to the question of conversion to 7 or

6    dismissal of the case.

7            I don't know how you-all want to proceed with that.

8    I probably -- I want to express maybe to Mr. Beckham one

9    concern that I have about dismissal that came up early in the

10   case and I don't know whether these allegations are

11   meritorious.  But early in the case, there was an issue of

12   whether the M&M -- the D&O policy -- excuse me -- was in

13   existence and needed funding and at that point, there was some

14   indication that there was a large D&O policy that might be

15   available.

16           And so I start the hearing thinking that I would want

17   a Chapter 7 trustee to be able to figure that answer out and

18   that dismissal would eliminate the ability to figure that

19   answer out --

20           **MR. OKIN:**  Your --

21           **THE COURT:**  -- but that's some bias I start the

22   hearing with.  Beyond that, I don't know.

23           **MR. OKIN:**  And, your Honor, if I could address that

24   because we did have new developments as of today.

25           **THE COURT:**  Okay.

1        **MR. OKIN:**  I received an email from Michael

2   Durrschmidt, who represents our insurance broker, forwarding on

3   an email from AIG informing us that they had decided due to

4   lack of payment to terminate the policy.  Now, we've done this

5   throughout the case where both AIG -- and I forget the other

6   carrier -- have periodically attempted to cancel for failure to

7   pay.  We've informed them we're in bankruptcy and they have

8   generally backed off but there are notices of cancellation that

9   have been sent and withdrawn and now another one that has been

10   sent and I do believe that dismissal of the case would result

11   in the cancellation of that policy which I believe is $30

12   million between all three policies.

13        **THE COURT:**  And has a demand been made?

14        **MR. OKIN:**  Well, a demand was made.  There is one

15   pending D&O lawsuit that was actually filed in Delaware

16   Chancery court.  It was dismissed.  That dismissal is on appeal

17   and has been stayed --

18        **THE COURT:**  Okay.

19        **MR. OKIN:**  -- due to the filing of this bankruptcy

20   case.  Demand was, I believe, made on the policies back at the

21   time that lawsuit was filed.  I don't believe termination of

22   these policies would directly affect coverage under that

23   particular claim although I certainly am not an expert on that

24   issue.

25        **THE COURT:**  Okay.

1     **MR. OKIN:**  Really the issue of retaining the policies
2  would go towards any other claims that have not been asserted.
3  I believe the claims that were asserted that are subject to
4  this dismissal motion or its appeal --
5          **THE COURT:**  Right.
6          **MR. OKIN:**  -- are outside most of applicable statute
7  of limitations.
8          **THE COURT:**  Okay.
9          **MR. OKIN:**  So I don't believe those claims are really
10  relevant to the issue but there are no other -- there have been
11  no other demands made on the policy and the policy would
12  terminate and it is a claims-made policy.  It would relate back
13  to -- it would eliminate any coverage for any events --
14          **THE COURT:**  Right.
15          **MR. OKIN:**  -- that have not already been asserted.
16          **THE COURT:**  So I just -- so, Mr. Beckham, I start to
17  hearing what sort of that concern of if I dismiss that the
18  general creditors of the estate are never going to see that
19  money and I need you to tell me how I get over that sort of
20  initial concern from some history in the case that you weren't
21  even here for and I know that.
22          **MR. BECKHAM:**  Thank you, your Honor.  I think I may
23  have a solution --
24          **THE COURT:**  All right.
25          **MR. BECKHAM:**  -- to that problem and it goes to

1   whether or not -- and obviously we filed a motion to dismiss

2   all of the cases.  The case that Zenith Bank is most concerned

3   with is the Erin Petroleum Nigeria Limited because that is the

4   borrower -- Zenith's borrower and that is the owner of the oil

5   and gas assets in Nigeria.

6           The -- I think that perhaps a solution for the Court

7   to consider would be to dismiss the Erin Petroleum Nigeria

8   Limited case, EP&L, but convert the parent case and the other

9   cases because I don't -- I've never reviewed the D&O policies

10  but I assume that the D&O policies are at the parent level

11  which is the public company which would be the most important

12  party to perhaps stay in bankruptcy and give a Chapter 7

13  trustee an opportunity to pursue those claims but I don't know

14  that --

15          **THE COURT:**  Well, if we're going to convert

16  everything else, that sort of takes away sort of the

17  schizophrenia that I was worried about at the beginning of the

18  hearing.  Should I convert everything without prejudice to then

19  a hearing on your motion to dismiss the Nigeria case after we

20  can get a Chapter 7 trustee up to speed to see if there's

21  anything there anyway?

22          And I'll give you a hearing now that I'll bind that

23  Chapter 7 trustee to and we'll do that in maybe three weeks

24  because I wouldn't let it go for long because it's a fair

25  argument that we ought to be taking them out differently but

1    without, I think, some appropriate study of the D&O policy to

2    see what effect that would have and maybe even getting a

3    Chapter 7 trustee to argue that he can recover value out of

4    Nigeria but he doesn't have much money to do that with, to be

5    real about it.

6            What do you think of that kind of a concept?

7            **MR. BECKHAM:**  I think that would be satisfactory,

8    your Honor.

9            **THE COURT:**  Let me hear from, really I guess, the

10   Committee then about converting everything but without

11   prejudice to a dismissal motion to be heard in roughly 21 days.

12   You know, we'll need to look at everybody's calendar about

13   something like that.

14           **MR. KHARASCH:**  Well, your Honor, obviously their

15   rights to file a motion to dismiss are what they are.  They can

16   always have a right to file a motion to dismiss even if you

17   convert the case, right.  You don't have to grant the motion.

18   What worries me is that the reality is what -- by the time a

19   Chapter 7 trustee gets named, appointed, no-parachutes down to

20   this case, reads the pleadings, you know, that 21 days in the

21   objection period is just not going to be enough for that

22   trustee to get up to speed, to realistically -- and I think

23   what's just going to happen is he's going to oppose it on the

24   -- and will say he needs more time.

25           I think if you're -- if we're going to set a hearing

1   date on that, I would hope your Honor -- it would be more like

2   45 days out to realistically give the trustee time.  I mean,

3   just -- I mean, to me, the whole idea of Zenith's position is

4   preposterous that, you know, an entity's first secured lender

5   that's probably fully secured has sat on the sidelines in this

6   -- well, actually they haven't sat on the sidelines.  They've

7   done everything they can to avoid this Court's rulings.  They

8   refuse to even protect their own interest on the grounds the

9   Court had no jurisdiction and then filed for a receiver in

10  Africa and were found in contempt by this Court.

11          And now they come back to tell us what's in the best

12  interest of the estate and all our constituents.  Your Honor,

13  we fought, you know, tooth and nail to protect the unencumbered

14  assets in this case and finally get a Chapter 7 trustee to look

15  at them, prosecute them, analyze them.  We now have a fund of

16  $458,000 available -- a war chest.

17          **THE COURT:**  So let me just ask you this.  If I set a

18  21-day status conference with a 45-day evidentiary hearing,

19  you'd be okay?

20          **MR. KHARASCH:**  Absolutely.

21          **THE COURT:**  Let me see if Mr. Beckham is okay with

22  that.

23          **MR. BECKHAM:**  That would be satisfactory, your Honor.

24          **THE COURT:**  Okay.  Can I ask the United States

25  Trustee whether you've already made a determination of whether

1    you're going to do a panel trustee or a special appointment in

2    this case?  For the record, I have a long history of not

3    telling them what to do.  This is totally informational so that

4    we know we're going and I'm not going to give you any input on

5    what's the best thing to do.

6            **MS. LIVINGSTONE:**  Your Honor, Diane Livingstone for

7    the United States Trustee.  We would go to the panel for the

8    appointment and that can be done as soon as an order is

9    entered.  We can do that today.  However, I do know and have

10   been told that there are several panel trustees whose law firms

11   are involved in the case and if I get too many trustees who

12   can't serve and the rotation is just not providing us with a

13   trustee that doesn't have conflicts, I may make a special

14   appointment just to avoid -- you know, just to ensure that a

15   trustee is appointed without conflicts.  So one thing --

16           **THE COURT:**  So what I would --

17           **MS. LIVINGSTONE:**  -- I may do is send out the case to

18   the Chapter 7 trustees and have them tell me ASAP whether or

19   not they have a conflict and it will at least narrow it down.

20           **THE COURT:**  When would the election be if we wanted

21   you to -- if an election is going to occur --

22           **MS. LIVINGSTONE:**  Yes.

23           **THE COURT:**  -- what would be the earliest date on

24   which that could occur so we don't have an interruption in the

25   consistency of who the trustee is because I suspect this is a

32

1   case where you might get an election?

2           **MS. LIVINGSTONE:**  Right.  That's right.  Well, the

3   notice of the 341 meeting, the first would -- there has to be

4   21 days' notice but not more than 40.  So we'd be looking at at

5   least 21 days before the first meeting is set and the election

6   has to be held at the first meeting.

7           **THE COURT:**  Okay.

8           **MS. LIVINGSTONE:**  It could -- so it --

9           **THE COURT:**  Are you allowed -- I know under 11 you're

10  allowed to confer with the parties over who a trustee ought to

11  be.  Are you allowed to do that in a 7 or that's simply

12  prohibited, you can't even confer if you want to?

13          **MS. LIVINGSTONE:**  No.  In a Chapter 7, we go to a

14  wide rotation --

15          **THE COURT:**  Right.

16          **MS. LIVINGSTONE:**  -- unless there are -- for example,

17  because there's multiple cases, once one case has a trustee --

18          **THE COURT:**  Right.

19          **MS. LIVINGSTONE:**  -- we're going to appoint the same

20  trustee or at least get the same trustee but we don't consult

21  with the parties.

22          **THE COURT:**  Even if you decide that your panel can't

23  do it because it's too limited?

24          **MS. LIVINGSTONE:**  Well, if there's too -- I mean, if

25  there's no one on the panel that can't -- that cannot do it --

33

1          THE COURT:  Right.

2          MS. LIVINGSTONE:  -- then -- which we've never

3   actually had that situation.

4          THE COURT:  I don't mean there's no one.  I think

5   you've said though that if the panel got small enough, you

6   wouldn't be --

7          MS. LIVINGSTONE:  If the panel got small enough,

8   then --

9          THE COURT:  Could you then confer or would you be --

10  and, again, I'm not --

11         MS. LIVINGSTONE:  I think I would still try to go

12  random -- a random selection but --

13         THE COURT:  Okay.

14         MS. LIVINGSTONE:  -- I just -- it just depends.  I

15  mean, I know that there's at least three trustees on the panel

16  that -- currently that I know of that have -- that would have

17  conflicts.  So -- but we don't necessarily confer.  We just --

18  and like I said, normally we'll --

19         THE COURT:  Okay.

20         MS. LIVINGSTONE:  -- try to go through the process of

21  finding a trustee without a conflict in as random a manner as

22  we can.

23         THE COURT:  Okay.

24         MS. LIVINGSTONE:  But --

25         THE COURT:  I got it.  I really just wanted the

34

1   information.  I think you've given it to me and I hope you

2   don't take anything I've said as any sort of preference or the

3   way that you go about things.  I just --

4            MS. LIVINGSTONE:  No.

5            THE COURT:  -- wanted to know what the options that

6   you were confronting were.  Thank you.

7            MS. LIVINGSTONE:  Uh-huh.

8            THE COURT:  All right.  So on September -- excuse me

9   -- August the 6th at 9:30 in the morning, we will have a status

10  conference and preliminary hearing on the motion to dismiss as

11  to the Nigerian Debtor only.  And can I get that case number SO

12  we can counter it only in the one case?

13           MS. WYRICK:  Your Honor, the case number is 18-32109.

14           THE COURT:  I'm sorry, 18 --

15           MS. WYRICK:  32109.

16           THE COURT:  Okay.  So that preliminary hearing and

17  status conference on the motion to dismiss will apply only in

18  Case 18-32109 and not the other cases.  And then on September

19  the 5th at 9:00 o'clock in the morning, we will have an

20  evidentiary hearing on whether to dismiss Case 18-32109.  And

21  at those hearings, they will be without prejudice to the

22  decision that we've made today to convert the cases on the

23  grounds that I have not considered in those cases whether

24  dismissal is a superior alternative to conversion.  I am going

25  to defer that consideration until the 5th of September and I

1  don't want anything we're doing today to be thrown back in my

2  face or Mr. Beckham's face as to what's the best thing to do at

3  that hearing.

4         Any objection to those dates?  Anybody on vacation?

5  I've got plenty of time around there.  I just tried to live

6  with basically the 21 and 45 days that people had talked about.

7         **MR. BECKHAM:**  Your Honor, that works for Zenith Bank.

8         **THE COURT:**  Okay.  And then do we have a form of

9  order that converts that you-all want to use or do you just

10  want a one-sentence order that says these cases are all

11  converted to cases under Chapter 7?

12         **MR. KHARASCH:**  Your Honor, we weren't sure whether

13  the U.S. Trustee wanted special language.  We've seen other

14  jurisdictions where the U.S. Trustees would like certain

15  language to clean up some of the Chapter 11 stuff.  What --

16  maybe what the best thing to do is we have a proposed order.

17  If we can circulate it among the parties and try to get

18  everybody to sign off and file it in the morning.  If that

19  makes sense or a one-sentence order is fine depending on --

20         **THE COURT:**  Well, let me ask whether this causes any

21  injury to anybody, is me doing a one-sentence order and if the

22  parties decide they need more, then you-all are free to upload

23  a proposed amended order but that way, she can start appointing

24  the trustee --

25         **MR. KHARASCH:**  That makes sense.

36

1          **THE COURT:**  -- this afternoon and I don't want there

2   to be delay.

3          **MR. KHARASCH:**  We prefer that, your Honor.

4          **MR. OKIN:**  Your Honor, would it be possible -- I

5   mentioned it in the beginning.  We do have money that hasn't

6   been spent under the old budget.  Is it possible to get

7   authority to pay some of the outstanding wages or pay people

8   for the work that they did this week out of those funds,

9   especially given the fact that the Chapter 7 trustee has a

10  carve-out --

11         **THE COURT:**  Was that already authorized in the order?

12         **MR. OKIN:**  Unfortunately, no, your Honor.  As you may

13  remember, the hearing in Nigeria was set for last Friday.

14         **THE COURT:**  Right.

15         **MR. OKIN:**  And we agreed to fund the budget through

16  the end of last week.  We agreed to postpone this hearing a few

17  days in order to give ourselves the opportunity to go -- defer

18  some of the litigation costs until we saw what happened on

19  Friday which, as it turned out, was a good move because we did

20  save substantial funds and not --

21         **THE COURT:**  How much money are you needing?

22         **MR. OKIN:**  Well, we only have so much.  So it's

23  really not an issue of how much.  I'd have to actually --

24         **THE COURT:**  How about -- why don't you see how much

25  we're talking about and let's see what we hear from people?

37

1    Thank you.

2          **MR. OKIN:**  Your Honor, it would -- your Honor, it

3    would be about 75 to $80,000.  It's basically the remaining

4    employees' salaries through the 15th which is essentially this

5    weekend.  It's through Friday -- tomorrow.  That's how the

6    payrolls are calculated.  We were basically asking for the

7    Court to authorize to the extent the Debtor has money to fund

8    payroll through the end of this week for employees that worked

9    during this last payroll period.  To the extent the Debtor

10   doesn't have the funds, we wouldn't ask for it.

11         **THE COURT:**  All right.

12         **MS. GRAY:**  And, your Honor, I just want to protect

13   the record and also my client, needless to say.  We did just

14   fund the request for the third week in the amount of $75,000.

15   That was pursuant to the approved budget.  I'm just not certain

16   whether this request is pursuant to the approved budget or not.

17   Now, I just need to confer with my client with regard to --

18         **THE COURT:**  In other words --

19         **MS. GRAY:**  -- whether he's willing to waive.  If it's

20   not, that it be used --

21         **THE COURT:**  -- not pursuant to our order but pursuant

22   to a budget that your client had approved is what you're --

23         **MS. GRAY:**  Yes.

24         **MR. OKIN:**  I don't believe it all is pursuant to the

25   budget, your Honor, just to be clear.

1          **MS. GRAY:**  Yeah.

2          **THE COURT:**  I can address that.  What's the

3   Committee's position?

4          **MR. KHARASCH:**  Your Honor, we just clarified with

5   Debtor's counsel that, you know, our only concern was -- and I

6   believe this is true -- that this would not impact the $458,000

7   that would be funded to a Chapter 7 trustee.  So there would

8   still be that availability left on the DIP line.  Debtor's

9   counsel has affirmed that understanding and with that, we're

10  fine with it.

11         **THE COURT:**  So I'm going to approve this and the

12  reason I'm going to approve it is maybe different than what

13  you-all are saying because I think it's a very nice thing to

14  do.  I don't think I can do things just because they're nice.

15         My view is that the folks who were loyal enough to

16  stay are going to be critical for a Chapter 7 trustee to be

17  able to communicate with and that it is appropriate that those

18  folks' efforts in staying this week and doing work be

19  compensated in order to assure that the Chapter 7 trustee gets

20  their full cooperation.  I believe as a matter of law, they

21  have a duty of full cooperation anyway.  So I'm not saying that

22  part legally but practically trying to do the right thing by

23  these folks is going to make them more cooperative with the

24  Trustee and given that the Committee consents, I'm going to

25  leave it up to the lender to consent.

1           And let me see if I can get an order that works.  Can

2   you get the -- can you talk to your client?  But how quick --

3           **MS. GRAY:**  Yes, your Honor.  Let me step outside and

4   call him right now.

5           **THE COURT:**  Okay.  So I'm going to make this order --

6   I'm sorry.  Mr. Cornwell?

7           **MR. CORNWELL:**  I don't -- I'm sorry.  I didn't want

8   to interrupt.  I just wanted to tell you there's a couple

9   housekeeping matters that I'd like to discuss before the Court

10  leaves the bench.  Sorry to --

11          **THE COURT:**  Okay.  But not to do with this issue?

12          **MR. CORNWELL:**  Not to do with this, your Honor.

13          **THE COURT:**  Okay.  So if I make my conversion order

14  effective at 9:00 o'clock tomorrow morning and authorize these

15  payments if your client approves them at any time prior to

16  conversion, will that work?  Can I get the checks cut?

17          **MR. OKIN:**  Can you get them out today?  They say

18  "Yes."

19          **THE COURT:**  I don't know how else to do it because I

20  can't convert it and then let you spend the money.  Right?

21          **MS. GRAY:**  Correct.

22          **THE COURT:**  I've got to let you spend the money

23  before I convert it and so -- okay.

24          **MS. GRAY:**  May I be excused to go speak to

25  Mr. Holcombe?

1          **THE COURT:**  Well, I'm going to make an order that you

2   won't need to talk to him about it in advance.  You'll see.

3          **MS. GRAY:**  Okay.

4          **THE COURT:**  Just take a look at the screen.

5          **MR. OKIN:**  And, your Honor, on behalf of the

6   employees, we appreciate the Court's recognition of the fact

7   that they did stay on with a lot of uncertainty to try to get

8   this through to the point they did.  I think this is the

9   appropriate way to deal with it.

10         **THE COURT:**  Thank you.

11      **(Pause)**

12         **THE COURT:**  Let me hear objections.

13         **MR. FOXMAN:**  Your Honor, Brad Foxman on behalf of

14  PIC.  In Paragraph 1, instead of "existing cash on hand," if we

15  could change that to "advances under the DIP facility" just so

16  that there's not any ambiguity about the restricted cash, we

17  think that would be probably what the Court is intending there.

18         **THE COURT:**  That is what I'm intending.  Let me fix

19  that.

20         **MR. FOXMAN:**  Thank you, your Honor.

21         **MS. GRAY:**  Your Honor, assuming that the DIP lender

22  consents, we just want to be clear that he doesn't have any

23  additional funding obligation to fund things on the approved

24  budget that may not get paid because the employees are being

25  paid.

41

1           **THE COURT:**  Is it $415,000 exactly or --

2           **MS. GRAY:**  Four hundred and fifty-eight.

3           **MR. OKIN:**  Your Honor, if it helps, he's already

4    fully funded the prior obligation through the interim order.

5    There is no --

6           **THE COURT:**  Where does that money --

7           **MR. OKIN:**  It's in the Debtor's debtor-in-possession

8    account.  That's what we're asking for permission to spend.

9    The extra funds really just amount to a couple of miscellaneous

10   items --

11          **THE COURT:**  Okay.

12          **MR. OKIN:**  -- some payroll savings from prior

13   periods.  So it's -- but I don't think he has any remaining

14   obligation under the interim order other than the carve-out and

15   then the trustee carve-out.

16          **MS. GRAY:**  I think there's been a -- kind of a

17   miscommunication among the three of us.

18          **MR. OKIN:**  That money hasn't been funded, your Honor.

19   I think that may be what --

20          **THE COURT:**  Wait, which hasn't been funded?

21          **MS. GRAY:**  The 458 that has been reserved for the

22   Chapter 7 trustee.

23          **MR. OKIN:**  Well, really --

24          **MS. GRAY:**  Mr. Holcombe is obligated to fund that.

25          **THE COURT:**  Oh, I thought he said it had been funded.

42

1          **MR. OKIN:**  No, I'm sorry.

2          **THE COURT:**  Okay.  Let me see.

3          **MR. OKIN:**  I -- to be clear, your Honor, there are

4    three, essentially, tranches of the loan as it stands right

5    now.  There was three weeks of budget which was 458,000 and

6    change.  Your Honor asked the DIP lender if he would agree to

7    set aside an equivalent amount as a carve-out for a --

8          **THE COURT:**  Right.

9          **MR. OKIN:**  Chapter 7 trustee.

10          **THE COURT:**  Right.

11          **MR. OKIN:**  And then there is the difference which is

12   just slightly less than 200,000 which was essentially just the

13   carve-out for professionals and uncovered administrative

14   expenses.

15          **THE COURT:**  Let me try this again.

16          **MR. OKIN:**  So only the first 458,000 has been

17   advanced.  Everything else is still outstanding.

18          **MS. LIVINGSTONE:**  Your Honor, Diane Livingstone on

19   behalf of the United States Trustee.  Just to make sure my

20   Chapter 7 trustee is protected, 458 is still going?

21          **MR. OKIN:**  Yes.  That's the goal.

22          **MS. LIVINGSTONE:**  Okay.  All right, thank you.

23       **(Pause)**

24          **THE COURT:**  Let's try that.

25          **MS. GRAY:**  Your Honor, that is fine.  It provides

43

1   just -- Mr. Holcombe is on the line -- that the last, I think,

2   paragraph is the one most important to him -- is that the DIP

3   lender shall not incur any liability or responsibility or have

4   any additional funding obligation as accounts of the payment

5   authorized by Paragraph 1 of the order.  That's fine.

6          Now, as to Paragraph -- that upon conversion, the DIP

7   lender shall fund the 458,000, we'll need instructions with

8   regard to how to fund, where to fund and Mr. Holcombe is taking

9   his daughter to Perth on Monday -- or on Sunday and will be

10  gone all of next week.  So I just want to make certain --

11         **THE COURT:**  I'm not making it be instant.

12         **MS. GRAY:**  Okay.

13         **THE COURT:**  I just -- the trustee can give

14  instructions and the money will get funded.  What I wanted to

15  be clear on, that was the essence of the deal?

16         **MS. GRAY:**  Yes.  And that's fine.  As long as we get

17  that notice from the Chapter 7 trustee to fund, we will do so.

18         **THE COURT:**  I'm saying "as directed by the trustee."

19  I'm not setting a time limit.  I expect it to be reasonable and

20  if he's on an airplane, I don't think it would be reasonable to

21  expect him to fund it.  If his bank account is in Perth, maybe

22  he can get it funded while he's there.

23         Does this work for the Committee?

24         **MR. KHARASCH:**  Yes, your Honor.

25         **MS. GRAY:**  And, your Honor, Mr. Okin did point out --

1  and I'm just going to have to go back and review the interim

2  order -- that even the Chapter 7 trustee had to present an

3  approved -- or a budget for the DIP lender's approval but I can

4  -- if you give me a minute, I can point the Court to the

5  attention.  We don't mind funding it if it's still subject to

6  that provision of the interim order.

7            THE COURT:  Does that work?

8            MR. SPEAKER:  Yes, your Honor.

9            THE COURT:  Essentially I want a written record that

10  makes it clear that that 458 is yet to be funded.

11            MS. GRAY:  Yes.

12            THE COURT:  And I think that's what's got the

13  Committee worried.

14            MR. FOXMAN:  Your Honor, just to clean up at the end

15  of Paragraph 1, there's a "provided" that I think can come back

16  out.

17            THE COURT:  So what I'm intending to do by Paragraph

18  1 -- we're writing this on the fly in case there's any

19  ambiguity -- is I'm authorizing the Debtor to spend the money

20  but in accordance with 363, the authorization must come from

21  the DIP lender either that has previously given or may

22  subsequently give it because that money is now cash collateral

23  of the DIP lender.  So as long as there is appropriate 363

24  authorization, then the Debtor is authorized by me not to fund

25  those payroll amounts.  If the DIP lender chooses not to fund

45

1   it, then I have not ordered the DIP lender to fund it, which I

2   don't think I have authority to do but it's now available.

3          So this is the order that was uploaded -- or handed

4   to me by Ms. Wyrick --

5          **MS. WYRICK:**  Yes, your Honor.

6          **THE COURT:**  -- and let's be sure that I've got the

7   right one here that others can review.

8          Any objection to that order?  Okay.

9          Let me ask really the Debtor and the U.S. Trustee.

10  When do you want this conversion order entered?  Because it is

11  not effective as to conversion until 9:00 in the morning, can

12  it be entered this afternoon or does it need to be entered

13  tomorrow at 9:00 in the morning?  Does it matter?

14         **MS. LIVINGSTONE:**  No, it does not.  I mean, I can

15  start the vetting process in terms of conflict knowing that the

16  order is coming.  So this afternoon is fine.

17         **MR. OKIN:**  From our perspective, the sooner the

18  better, your Honor, since we --

19         **THE COURT:**  Okay.

20         **MR. OKIN:**  -- we're going to try to spend -- pay the

21  payroll.

22         **THE COURT:**  All right.  So I'm going to instruct the

23  clerk first this order gets entered.

24         So, Mr. Guajardo, I want you to enter that order

25  first and then I want you to enter this order next.  Thank you.

46

1          Mr. Cornwell?

2          **MR. CORNWELL:**  Thank you, Judge.  Apologies for my

3    interruption.  I thought you might leave the bench while we

4    conferred.

5          **THE COURT:**  I would have tried to.

6          **MR. CORNWELL:**  Appreciate that also.  Really just

7    housekeeping.  Obviously, some things have changed in the case.

8    Currently set for the 17th, next Tuesday, I believe, are the

9    two moving motions, the completion of the motion for relief

10   from stay and also the motion to compel assumption and

11   rejection.  We intend to have as of an hour ago Mr. Ellis

12   reappear in person.  There's no objection to any of the relief

13   on file from any of the parties.

14          Frankly, I would ask the Court to grant the relief

15   now although I appreciate maybe there's a need for a trustee to

16   review the merits of the motion.  I don't know that there's

17   anything the trustee could do with the FPSO on the field and

18   it's, frankly, not going to leave the field because of all of

19   the things that the Court has heard about before.  We've got to

20   offload the oil and get an order from Nigeria.  So --

21          **THE COURT:**  Well, let me ask you this.  Can I

22   authorize your client to appear by telephone?  He's testified

23   before us before, right?  We know him.  I think he can talk on

24   the phone and not have to fly over here.  I don't know what I'm

25   going to hear from the Chapter 7 trustee and it really does

47

1    seem a shame for him to fly over here for the 7 trustee either

2    to say, no objection or to make an argument where I sustain it

3    that says he needs X more days and I think it's a shame to have

4    your client fly over.  So I'm inclined to make a docket entry

5    that would authorize your client to testify by phone if

6    required.

7              Let me hear if anybody thinks that's unfairly

8    prejudicial to anyone here or to the prospective trustee?

9    Okay.  Would that --

10             **MR. CORNWELL:**  For the record, that --

11             **THE COURT:**  -- solve part of that problem?

12             **MR. CORNWELL:**  Yes, your Honor, that solves the

13   biggest part of our problem and --

14             **THE COURT:**  Yeah, I really don't want him flying over

15   here for a nonsense hearing, you know.

16             **MR. CORNWELL:**  Thank you for the accommodation.  And

17   for the record, we've already gotten his declaration entered

18   for these two motions.  It has, I think, all of his testimony

19   anyway but for cross examination purposes if it's needed --

20             **THE COURT:**  We'll do it by phone.

21             **MR. CORNWELL:**  -- him appearing by telephone is

22   perfectly fine with us.

23             **THE COURT:**  And, again, I don't know what I'm going

24   to hear from this Chapter 7 trustee and there's probably not

25   enough time for the new Chapter 7 trustee to figure out who's

48

1   on first by that day.

2          **MR. CORNWELL:**  Right, right.

3          **THE COURT:**  Okay.  What else do we need to clean up,

4   anything else?

5          **MR. CORNWELL:**  That's it for us.  Thank you, Judge.

6          **THE COURT:**  Does anyone else have anything else?

7   Okay.

8          To Mr. Okin, to Mr. Kharasch, it's been short-lived

9   but I certainly appreciated all the hard word that the lawyers

10  did obviously in both cases totally for the benefit of their

11  constituents and the clients that you represent and it was

12  awfully well done and I know that it's a disappointment to

13  everybody to have the case end so quickly but it was a pleasure

14  having all the good and hard work done.  So I thank you-all and

15  I'm sure that your constituents thank you for everything you do

16  for them.

17         I will be in adjournment until 5:00 o'clock and we'll

18  call Katz (phonetic) next.  Thank you.

19         **THE CLERK:**  All rise.

20      **(This proceeding adjourned at 3:10 p.m.)**

21

22

23

24

25

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____          _July 16, 2018_

TONI HUDSON, TRANSCRIBER