# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | § | |
| | § | |
| **ERIN ENERGY CORPORATION, *et al.*,[1]** | § | **Case No. 18-32106** |
| | § | |
| Debtors. | § | **Chapter 11** |
| | § | |
| | § | **(Jointly Administered)** |

## FINAL FEE APPLICATION COVER SHEET

| Name of Applicant: | Okin Adams LLP | |
|---|---|---|
| Applicant's professional role in case: | Debtors' Counsel | |
| Date order of appointment signed: | June 19, 2018 [Doc. No. 228] | |
| | Beginning of Period | End of Period |
| Time period covered by this Application: | April 26, 2018 | July 12, 2018 |
| Time period covered by prior Applications: | N/A | N/A |
| Total amounts awarded in all prior Applications: | N/A | |
| Total fees requested in this Application: | $324,689.50 | |
| Total professional fees requested in this Application and in all prior Applications: | $324,689.50 | |
| Total actual professional hours covered by this Application: | 701.70 | |
| Average hourly rate for professionals: | $431.43 | |

---

[1] The last four digits of Erin Energy Corporation's ("ERN") federal tax identification number are 9798. The other Debtors in these cases are: Erin Energy Limited ("EEL"); Erin Energy Kenya Limited ("EEKL"); and Erin Petroleum Nigeria Limited ("EPNL"). The Debtors' service address is: 1330 Post Oak Blvd., Suite 2250, Houston, TX 77056.

| | |
|---|---|
| Total paraprofessional fees requested in this Application: | $1,876.50 |
| Total actual paraprofessional hours covered by this Application: | 13.90 |
| Average hourly rate for paraprofessionals: | $135.00 |
| Reimbursable expenses sought in this Application: | $7,599.94 |
| Application Costs: | $2,000.00 |
| Total to be Paid to Priority Unsecured Creditors: | TBD |
| Anticipated % Dividend to Priority Unsecured Creditors: | TBD |
| Total to be Paid to General Unsecured Creditors: | TBD |
| Anticipated % Dividend to General Unsecured Creditors: | TBD |
| Date of Confirmation Hearing | N/A |
| Indicate whether plan has been confirmed | NO |

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **ERIN ENERGY CORPORATION,** *et al.*,[2] | § | **Case No. 18-32106** |
| | § | |
| **Debtors.** | § | **Chapter 11** |
| | § | |
| | § | **(Jointly Administered)** |

FINAL FEE APPLICATION OF
OKIN ADAMS LLP, COUNSEL FOR THE DEBTORS,
<u>FOR THE PERIOD APRIL 26, 2018 THROUGH JULY 12, 2018</u>

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU.  IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE.  IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY.  YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN TWENTY-ONE (21) DAYS OF THE DATE THIS WAS SERVED ON YOU.  YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED.  IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU.  IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING.  UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE TO GRANT THE RELIEF REQUESTED IN THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

Okin Adams LLP ("Okin Adams" or "Applicant"), counsel to Debtors Erin Energy Corporation ("ERN"), Erin Petroleum Nigeria Limited ("EPNL"), Erin Energy Kenya Limited ("EEKL"), and Erin Energy Limited ("EEL") (collectively, the "Debtors"), files this Final Fee

---

[2] The last four digits of Erin Energy Corporation's ("ERN") federal tax identification number are 9798. The other Debtors in these cases are: Erin Energy Limited ("EEL"); Erin Energy Kenya Limited ("EEKL"); and Erin Petroleum Nigeria Limited ("EPNL").  The Debtors' service address is: 1330 Post Oak Blvd., Suite 2250, Houston, TX 77056.

Application for the period April 26, 2018 through July 12, 2018 ("Application") and states the following in support thereof:

### JURISDICTION AND BACKGROUND

1.      This Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334 and the Standing Order of Reference of the U.S. Bankruptcy Court for the Southern District of Texas. This is a core proceeding under 28 U.S.C. § 157(b) and venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

2.      On April 25, 2018 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11, Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Court").  By Order entered July 12, 2018, the jointly administered cases were converted to chapter 7 effective July 13, 2018 [Doc. No. 297].  Ronald J. Sommers is the appointed chapter 7 trustee for these cases.

3.      ERN operated through its subsidiaries as an independent oil and gas exploration and production ("E&P") company focused on energy resources in Africa with headquarters located in Houston, Texas.  In total, ERN had ten (10) wholly owned subsidiaries and one partially owned subsidiary.  EEL was a wholly owned subsidiary of ERN organized under the laws of the Cayman Islands.  EEL was founded in 2012 and was also the parent of EEKL.  EPNL was a limited company incorporated under the laws of the Federal Republic of Nigeria.  Founded in 2009, EPNL was the main operating subsidiary of ERN in Nigeria and accounted for almost all of ERN's revenue.

4.      EEKL was a subsidiary of EEL and was organized under the laws of the Republic of Kenya.  Founded in 2012, EEKL was the operating subsidiary of ERN in the country of

3

Kenya.  Although EEKL held four licenses in the country, there were no ongoing operations in Kenya as of the Petition Date.

5.       The Debtors focused their efforts on acquiring and developing high-potential E&P assets in Sub-Saharan Africa, and exploring those assets through strategic partnerships with national oil companies, indigenous local partners, and other independent oil companies.  The Debtors' asset portfolio as of the Petition Date consisted of five licenses across Nigeria, Ghana and The Gambia covering an area of approximately 1.5 million acres.

6.       A number of factors – including regulation and the prolonged commodity downturn – had a material adverse effect on the Debtors' financial condition.  The most significant impact was in Nigeria where certain pending legal matters culminated in armed agents of Nigerian Agip Exploration Limited ("NAE") boarding the EPNL offtake vessel and seizing valuable assets.  NAE's wrongful actions resulted in ERN and EPNL's inability to operate and market crude oil from the Oyo Field offshore Nigeria.  The disruption of operations in Nigeria coupled with the Debtors' inability to service mounting debt obligations and other trade payable obligations resulted in a severe cash-flow shortage.

7.       The Debtors first contacted Okin Adams in April 2018 about the possibility of a chapter 11 filing.  Okin Adams was retained prepetition and continued to advise the Debtors on bankruptcy related matters through conversion.

8.       On June 19, 2018, the Court issued an *Order Authorizing Employment of Okin Adams LLP as Bankruptcy Counsel to the Debtors* [Doc. No. 228]. (A copy of Doc. No. 228 is attached hereto as **Exhibit A**).

9.       On June 25, 2018, the Court entered the *Interim Order (I) Authorizing Debtors to Obtain Postpetition Secured Financing; and (II) Modifying the Automatic Stay* (the "Interim DIP

4

Order") [Doc. No. 247].   The Interim DIP Order provides for a Carve Out (as defined in the Interim DIP Order) from the DIP lender's collateral and super-priority claims for all of approved professional fees incurred by Okin Adams and other professionals prior to the conversion of these case.   Further, to the extent funds have not been fully advanced by the DIP Lender, the Interim DIP Order provides for the DIP Lender to advance funds post-conversion to pay approved fees of chapter 11 professionals.   *Id*.

10.     The professional services for which Okin Adams requests compensation and allowance in this Application were performed during the Debtors' Chapter 11 cases between April 26, 2018 and July 12, 2018 (the "Conversion Date").[3]   No agreement or understanding exists between Okin Adams and any other person with respect to the sharing of compensation sought herein, except that the compensation approved by the Court will be shared among Okin Adams' partners, associates, and personnel as authorized under the Bankruptcy Code.

## FINAL FEE APPLICATION

7.     **Scope of Fee Application.**   Okin Adams makes this Final Fee Application pursuant to 11 U.S.C. § 331 for approval of compensation for professional services rendered and for reimbursement of out-of-pocket expenses actually and necessarily incurred by Okin Adams in the representation of the Debtors during the period of April 26, 2018 through July 12, 2018 ("Application Period").

8.     **Compensation sought.**   During the Application Period, Okin Adams expended an aggregate total of 701.70 hours for professional services rendered on behalf of the Debtors.   As such, Okin Adams seeks compensation for the following during the Application Period:

---

[3] Following the Conversion Date, Okin Adams has provided services necessary to assist the Chapter 7 Trustee in administering the Debtors' bankruptcy estates.   As a result, Okin Adams reserves the right to file an additional fee application for fees incurred during the chapter 7.   In accordance with the Carve Out provisions set forth in paragraph 11 of the Interim DIP Order, such fees up to $50,000 will also be included in the Carve Out.

| Fees: | $ 324,689.50 |
| Expenses: | $ 7,599.94 |
| Application Costs: | $ 2,000.00 |
| **TOTAL:** | **$ 334,289.44** |

An accounting of the date such services were rendered and the time expended, together with a description of the services rendered by person and by date is attached hereto as **Exhibit B**. **Exhibits B** also contains a breakdown of the hourly rates charged by Applicant's personnel, setting forth the number of hours expended by individual attorneys in connection with representation of the Debtors during the Application Period.

9.      **Expenses.**   During the Application Period, Okin Adams incurred reimbursable expenses in connection with its representation of the Debtors in the amount of $7,599.94.  All of these expenditures represent necessary and reasonable costs incident to the performance of Okin Adams' services to the Debtors.  The reimbursable expenses also are summarized in the attached **Exhibit B**.  The expenses requested in the Application conform to the guidelines as found in the General Order 2001-5, dated May 3, 2001, entitled Guidelines for Attorney Fee Applications − Reimbursement of Expenses.

10.     **Total Compensation Sought.**   Okin Adams seeks a total final award of $**334,289.44** in fees and expenses for services rendered on behalf of the Debtors during the Application Period.

11.     Okin Adams' standard rates are consistent with fees charged by Okin Adams' peers in similar cases.  Further, all professional services for which an allowance is requested were reasonable and necessary for services rendered on behalf of the Debtors in this case.  The rates charged by Okin Adams for services rendered by its attorneys are the same as the rates

6

charged on similar matters, without considering the size and degree of responsibility, difficulty, complexity, and results achieved.

12.     **Summary of Services.**   During the Application Period, Okin Adams performed work primarily in eleven different areas: case administration; asset analysis and recovery; relief from stay/adequate protection proceedings; meetings of and communications with creditors; fee/employment applications; fee/employment objections; assumption/rejection of leases and contracts; other contested matters; business operations; financing/cash collateral; and Board of Directors matters.   The professional hours and rates per task for those categories in the application period are summarized below:

13.     ***B110 – Case Administration.***   The work performed under this category involved drafting first day motions, and various administrative and miscellaneous tasks performed on behalf of Debtors in preparation for filing the bankruptcy cases and attending certain hearings. This also includes conversations with the Debtors financial advisors discussing case strategy, receipt and review of notices of court filings and document production requests and litigation materials.  Okin Adams billed 103.10 hours to this task code with a blended rate of $433.17 for a total amount billed of $44,660.00.

14.     ***B120 – Asset Analysis and Recovery.***   The work performed under this category relates to analysis of transactions and issues regarding the Debtors' assets in Africa, including the various transactions with Nigerian Agip Exploration Limited.  Also included were the review and analysis of certain derivative litigation pleadings against the Debtors, and preparation of a motion and domestication order to extend the automatic stay and protect the Debtors' African assts.  Okin Adams billed 90.20 hours to this task code with a blended rate of $470.52 for a total amount billed of $42,441.00.

7

15.     ***B140-Relief from Stay/Adequate Protection.***   The work performed under this category relates to the motions filed by Nigerian Agip Exlporation Limited and Bumi Armada (Singapore) Pte. Ltd.'s for relief from the automatic stay, including review of pleadings and communications with the creditors and Debtors' Nigerian counsel regarding the proceedings. Also included were legal research, and the drafting of responses and proposed orders related to the motions, and attending the hearing on the motions.  Okin Adams billed 29.80 hours to this task code with a blended rate of $477.77 for a total amount billed of $14,237.00.

16.     ***B150-Meetings of and Communications with Creditors.***   The work performed under this category includes various correspondence with creditors and their counsel to discuss how the case may affect each creditor's claim, including correspondence with the Official Committee of Unsecured Creditors.  Okin Adams billed 23.30 hours to this task code with a blended rate of $517.81 for a total amount billed of $12,065.00.

17.     ***B160-Fee/Employment Applications.***   This category involved work performed by Okin Adams with regard to preparing and prosecuting the Debtors' applications to retain Okin Adams in this matter, including preparation of the motion, a verification in support thereof and proposed order granting same.  Also included in this category is the preparation and prosecution of the Debtor's application to retain Stout Risius Ross, LLC as financial advisors to the Debtor. Also included is preparation of an Ordinary Course Professionals motion, and correspondence with the United States Trustee regarding comments to the applications.  Okin Adams billed 18.90 hours to this task code with a blended rate of $340.05 for a total amount billed of $6,427.00.

18.     ***B170-Fee/Employment Objections.***   The work performed under this category involved a telephone conference with counsel for the Official Committee of Unsecured Creditors (the "Committee") regarding their employment application on behalf of the Committee.  Okin

8

Adams billed 0.9 hours to this task code with a blended rate of $450.00 for a total amount billed of $405.00.

19.    **B185-Assumption/Rejection of Leases and Contracts.**   This category involved work performed by Okin Adams to prepare and file a motion to reject the Debtors' office lease, multiple telephone conferences with the landlord regarding settlement of the lease rejection issue, and attending the hearing on the motion.  Okin Adams billed 9.90 hours to this task code with a blended rate of $332.27 for a total amount billed of $3,984.00.

20.    **B190-Other Contested Matters.**   The work performed under this category includes preparation and prosecution of a motion to hold Zenith Bank PLC in contempt of the automatic stay, analysis of proceedings brought by the Debtors in New York state court against the PIC and preparation of a motion to transfer venue and motion to substitute counsel.  Also included in this category is work performed in relation to the Committee's motion to convert the cases to chapter 7 and the various discovery issues related to that motion, including document production requests and depositions.  Okin Adams billed 204.00 hours to this task code with a blended rate of $442.84 for a total amount billed of $90,339.50.

21.    **B210-Business Operations.**   The work performed under this category includes analysis of the Debtors' D&O policy and issues regarding termination of the policy, correspondence with the D&O broker and counsel for Pasadena Insurance regarding the notice of cancellation and issues regarding stay violation.  Okin Adams billed 11.70 hours to this task code with a blended rate of $423.08 for a total amount billed of $4,950.00.

22.    **B230-Cash Collateral/Financing.**   This category relates to the preparation of a motion to use cash collateral and order granting same and all work performed in an effort to obtain entry of a final cash collateral order.   Included in this category is the briefing and

argument related to the Debtors' request that the Court order the Mauritius Commerce Bank to release the reserve funds it held and the subsequent dispute with PIC over the same issue.  In addition, this category includes the Debtors' negotiation of a Debtor in Possession loan (the "DIP Loan"), bringing the motion to approve the loan and the discovery related to that fight for approval of the loan.  As such, this category of work includes review of DIP Loan budgets, discussions with the Debtors, DIP lender, and Committee regarding the DIP Loan agreement, preparation of the interim DIP Loan motion and order, circulation to interested parties, revisions to the motion based on comments from the DIP lender's counsel and client, and preparation for and attendance at the hearings on the interim approval of the DIP Loan.  Okin Adams billed 199.00 hours to this task code with a blended rate of $501.16 for a total amount billed of $99,730.50.

23.    **_B260-Board of Directors Matters._**   The work performed under this category relates to preparation for and participation in the Debtors' Board of Directors meetings discussing the Debtors' bankruptcy cases and issues regarding conversion to Chapter 7.  Also included is work regarding the review, revision and approval of the meeting minutes.  Okin Adams billed 10.90 hours to this task code with a blended rate of $522.02 for a total amount billed of $5,690.00.

24.    No agreement or understanding exists between Okin Adams and any other person with respect to the sharing of compensation sought herein, except that the compensation approved by the Court will be shared among Okin Adams' partners, associates and personnel as authorized under the Bankruptcy Code.

### *JOHNSON* FACTORS

25.     Bankruptcy courts have relied upon various factors to consider in awarding compensation in a bankruptcy case.  *See, e.g., Johnson v. Georgia Highway Express, Inc.*, 874 F.2d 714 (5th Cir. 1974).  Okin Adams' fees and expenses, as requested in this Application, are reasonable based on the following considerations, as outlined in *American Benefit Life Insurance Co. v. Braddock (In re First Colonial Corp. of America)*, 544 F.2d 1291 (5th Cir. 1977).

26.     **Time and Labor Required**.   The time spent in assisting, representing, and advising the Debtors in all matters concerning this chapter 11 case covering the Application Period totals 701.70 hours.  The number of hours spent in this case was reasonable given the size and complexity of this case.  The detail of the specific time entries described in **Exhibit B** reflect the reasonableness of the compensation requested, as all of the services identified were necessary to an adequate and effective representation of the Debtors in this case.

27.     **Novelty and Difficulty of Work**.   This case has required counsel to utilize substantial bankruptcy and financial expertise to assist the Debtors in the administration of this case.  This case involved particularly difficult issues involving the limits of the United States Bankruptcy Court's jurisdiction and the ability to coerce action by parties in other countries.  In addition, the case raised novel issues related to the use of cash collateral held by MCB and whether PIC would ultimately be able to obtain equitable subrogation.  Further, Okin Adams had to work closely with Nigerian counsel to understand the Nigerian legal issues raised in the dispute of NAE's execution on the Debtors' oil in Nigeria.  In short, during the brief two months

this case was a chapter 11, Debtors' counsel was required to advise and act on numerous highly complex areas of law including the law of a number of foreign jurisdictions.

28.     **Experience, Reputation, and Ability of Attorneys**.  Okin Adams is reputable, possesses ability adequate to perform the tasks outlined in this Application, has worked on numerous bankruptcies similar in size to this case and has represented both chapter 11 debtors and creditors' committees in bankruptcy cases of this size, as well.  The attorneys who provided the bulk of the services in this case during the Application Period reflected herein possess specialized skills in bankruptcy, business law and litigation to merit the award of the requested fees.  Okin Adams submits that it was only due to the experience and skill of its attorneys working on this matter, along with the substantial skill of the other professionals, that enabled these Debtors to survive in chapter 11 for as long as they did.

29.     **Skill Required**.  Representation of the Debtors in this chapter 11 case has required a specialized degree of skill and experience.  Okin Adams believes it has demonstrated the skills required help the Debtors operate in chapter 11 for as long as they did.

30.     **Preclusion of Other Employment**.  Because of the significant time commitment involved in this case and deadlines imposed upon Okin Adams, Okin Adams' ability to take on other substantial engagements was significantly limited.

31.     **Customary Fees**.  Okin Adams' professional services on behalf of the Debtors was necessary and directly contributed to the effective administration of this case.  All fees charged for Okin Adams' professionals were reasonable and are in line with the rates charged on similar matters, without considering size, degree of responsibility, difficulty, complexity, and results achieved.

32.    **Whether the Fees are Fixed or Contingent**.    The fees requested in this Application were calculated at normal hourly rates[4] charged by Okin Adams and are in line with those charged for similar work in this jurisdiction.

33.    **Time Limitations and Other Factors**.    The Debtors' case has been negotiated outside of the courtroom, but at times has required expedited action in certain instances throughout the Application Period.    Okin Adams performed its services on an expedited basis when needed and was successful in meeting the various deadlines imposed by the Bankruptcy Code and the Court.

34.    **Undesirability of the Case**.    As previously noted, this case involved significant issues of bankruptcy and foreign law.    Okin Adams was afforded approximately a week from the time of engagement to file the case.    At the time of filing, the Debtors had no clear source of funding operations or professional fees.    Given the shortness of the time afforded and the liquidity difficulties the Debtors were clearly experiencing, this case was less than desirable at the time Okin Adams agreed to take it on.    Despite these obvious difficulties, Okin Adams agreed to do so and devoted the full resources of the firm to assisting the Debtors in this process.

35.    **Results Obtained**.    Okin Adams worked diligently with the Debtors in an effort to enable the Debtors to secure post-petition financing and attempt to recover and market the Debtors' assets.    Although the case was ultimately converted, Okin Adams was able to accomplish a number of key things:

- Okin Adams was able to get entry of a cash collateral order allowing the Debtors to use some of the funds held by PIC in a reserve account.

---

[4] The rates charged in this case are Okin Adams' regular rates effective January 1, 2018.  There may be older matters pending before this Court on which Okin Adams is still charging rates that were effective in prior years.

- Okin Adams assisted the Debtors in obtaining a DIP Loan—one that is currently funding the chapter 7 trustee.

- Okin Adams obtained an order holding Zenith Bank in contempt—effectively forcing their participation in this process.

- Okin Adams worked closely with Nigerian counsel to understand the dispute in Nigeria and make sense of the legal issues there—something that was able to be passed on to the chapter 7 trustee.

36. **Nature, Length and Professional Relationship with Client**.  Okin Adams has no previous relationship with the Debtors.

37. **Fees Awarded in Similar Cases**.  As more fully described above, Okin Adams submits that its services to the Debtors fully warrant the fees requested herein under the twelve factors identified by the Fifth Circuit and as are awarded in similar complex cases in the Southern District of Texas.

## PAYMENT REQUEST

38. On the Petition Date, Okin Adams held a retainer in the amount of $89,341.20 which it received from the Debtors prepetition.  In accordance with Local Bankruptcy Rule 2016-1(c), on July 5, 2018, Okin Adams filed and served a Notice of Distribution of Retainer [Doc. No. 272] providing notice of its intent to apply the retainer to outstanding fees and expenses.  Having received no objections to its Notice, on July 30, 2018, Okin Adams applied the retainer to its fees and expenses.  After application of the retainer, Okin Adams is still owed $242,948.24.

39. By this Fee Application, Okin Adams respectfully requests that the Court authorize and direct the Chapter 7 Trustee to draw down the remaining DIP Loan (exclusive of

the carve out for the Chapter 7 Trustee's own expenses) to pay outstanding fees and expenses in accordance with the Carve Out provisions of the Interim DIP Order.  Further, to the extent any funds subject to the DIP Lender's Super-Priority Liens or payable on account of the DIP Lender's Super-Priority Administrative Claim become available, Okin Adams requests that such funds be first used to pay the outstanding balance of Okin Adams' professional fees along with the fees of any other chapter 11 professional of the same priority.

## **CONCLUSION**

Based on the foregoing, Okin Adams LLP requests that this Court allow and authorize on a final basis the legal fees and reimbursable expenses incurred by Okin Adams for the Application Period in the amounts of $324,689.50 (fees), $7,599.94 (expenses), and $2,000.00 (application costs).  Therefore, Okin Adams seeks final allowance at this time of $334,289.44. Okin Adams further requests that this Court grant it any other legal or equitable relief to which it may be entitled.

Respectfully submitted on the 9th day of August, 2018.

Respectfully submitted,

**OKIN ADAMS LLP**

By:     /s/ *Matthew S. Okin*
        Matthew S. Okin
        Texas Bar No. 00784695
        mokin@okinadams.com
        David L. Curry, Jr.
        Texas Bar No. 24065107
        dcurry@okinadams.com
        John Thomas Oldham
        Texas Bar No. 24075429
        joldham@okinadams.com
        Ryan A. O'Connor
        Texas Bar No. 24098190
        roconnor@okinadams.com
        1113 Vine St., Suite 201
        Houston, Texas 77002
        Tel: 713.228.4100
        Fax: 888.865.2118

**ATTORNEYS FOR THE DEBTORS**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on August 9, 2018, I filed the foregoing pleading electronically, causing a true and correct copy of the foregoing to be served via the Court's EM/ECF electronic system to all parties consenting to service through same.

    /s/ *Matthew S. Okin*
    Matthew S. Okin

16