UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 7 |
| ERIN ENERGY CORPORATION, *et al.*,1 | Case No. 18-32106 |
| Debtors. | (Jointly Administered) |

SUMMARY COVER SHEET
TO FIRST AND FINAL APPLICATION
FOR ALLOWANCE AND PAYMENT OF
COMPENSATION AND REIMBURSEMENT OF EXPENSES
OF PACHULSKI STANG ZIEHL & JONES LLP, AS COUNSEL
FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
FOR THE PERIOD FROM MAY 24, 2018 THROUGH JULY 13, 2018

> **THIS APPLICATION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE APPLICATION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN TWENTY-ONE (21) DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE APPLICATION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE APPLICATION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE TO GRANT THE RELIEF REQUESTED IN THE APPLICATION AT THE HEARING.**
>
> **REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEYS.**

---

1 The last four digits of Erin Energy Corporation's federal tax identification number are 9798. The other Debtors in these cases are: Erin Energy Limited; Erin Energy Kenya Limited; and Erin Petroleum Nigeria Limited. The Debtors' service address is: 1330 Post Oak Blvd., Suite 2250, Houston, TX 77056.

| Name of Applicant: | Pachulski Stang Ziehl & Jones LLP |
|---|---|
| Applicant's Professional Role in Case | Counsel to the Committee |
| Indicate whether this an interim or a final application | Final |
| Effective date of order approving professional's retention: | May 24, 2018 |
| Time period covered by this Application: | 05/24/18 – 07/13/18 |
| Amount of retainer received in case: | N/A |
| Total fees applied for in this application: | $486,587.75[2] |
| Total *professional* fees applied for in this application | $450,960.25 |
| Total *professional* hours covered by this Application: | 594.80 |
| Average hourly rate for *professionals*: | $758.17 |
| Total *paraprofessional* fees requested in this Application: | $25,627.50 |
| Total *paraprofessional* hours covered by this Application | 67.70 |
| Average hourly rate for *paraprofessionals*: | $378.55 |
| Reimbursable expenses sought in this Application: | $26,145.14 |
| Total to be Paid to Priority Unsecured Creditors: | TBD |
| Anticipated % Dividend to Priority Unsecured Creditors: | TBD |
| Total to be Paid to General Unsecured Creditors: | TBD |
| Anticipated % Dividend to General Unsecured Creditors: | TBD |
| Date of Confirmation Hearing: | N/A |
| Indicate whether plan has been confirmed: | No |

---

[2] This amount is inclusive of $10,000 estimated for future billing in connection with the preparation, prosecution and review of fee applications and for amounts not yet processed in PSZJ's accounting system. The total amount of compensation sought prior to that estimate is $476,587.75.

2

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re:<br><br>ERIN ENERGY CORPORATION, *et al.*,[1]<br><br>Debtors. | Chapter 7<br><br>Case No. 18-32106<br><br>(Jointly Administered) |

**FIRST AND FINAL APPLICATION FOR ALLOWANCE AND**
**PAYMENT OF COMPENSATION AND REIMBURSEMENT**
**OF EXPENSES OF PACHULSKI STANG ZIEHL & JONES LLP,**
**AS COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED**
**CREDITORS FOR THE PERIOD FROM MAY 24, 2018 THROUGH JULY 13, 2018**

Pachulski Stang Ziehl & Jones LLP ("PSZJ" or the "Firm"), counsel to the Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtors (collectively, the "Debtors"), hereby files its final fee application for the period from May 24, 2018 through July 13, 2018 (the "Application"). In support of the Application, PSZJ respectfully states as follows:

**PRELIMINARY STATEMENT**

1. Despite the size and short duration of these chapter 11 cases, the estates' professionals were required to grapple with unique legal questions and challenges throughout the course of these cases, and were often met with vigorous objections and advocacy on the other side. These cases involved contested oil mining and lease interests off the coast of Africa, pending litigation in Nigeria concerning the seizure of the estate's floating production storage and offloading vessel, and the constant risk of piracy and theft of the estate's only tangible asset

---

[1] The last four digits of Erin Energy Corporation's federal tax identification number are 9798. The other Debtors in these cases are: Erin Energy Limited; Erin Energy Kenya Limited; and Erin Petroleum Nigeria Limited. The Debtors' service address is: 1330 Post Oak Blvd., Suite 2250, Houston, TX 77056.

– 380,000 barrels of crude oil onboard the FPSO Armada Perdana in the Oyo Field fifty miles off the coast of Nigeria.

2. In addition to the operational challenges faced by the Debtors, they also entered bankruptcy without any funds available to operate their business or administer their chapter 11 cases. Despite these significant operational and financial challenges, and the associated risk of non-payment, PSZJ assumed the role of counsel to the Committee.

3. In an effort to preserve unencumbered assets for the benefit of general unsecured claims, the Committee opposed the Debtors' requests for use of cash collateral and postpetition financing. As a result of this opposition, the Committee was able to successfully negotiate the terms of a limited postpetition financing package that (a) provided estate professionals with a carve-out from the postpetition lender's liens and superpriority claims, and (b) provided $458,000 to a chapter 7 trustee to pursue litigation and manage the wind down of these estates.

4. The Committee also played an instrumental part in limiting the financial losses of these estates by successfully filing and prosecuting its motion to convert these cases less than three months after the petition date.

5. The fees and expenses requested by PSZJ pursuant to this Application are commensurate with the complexities and litigious nature of these cases. Although these chapter 11 cases were converted to cases under chapter 7, the Committee, with the guidance of its professionals, was able to negotiate a responsible and well-funded transition to chapter 7, while limiting any further encumbrances of the estates' assets, thereby preserving value for the benefit of general unsecured creditors.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7. The bases for the relief requested herein are sections 330 and 331 of Title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014-1 and 2016-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Local Rules").

**BACKGROUND**

8. On April 25, 2018 (the "Petition Date"), each of the Debtors filed a voluntary petition with this Court under chapter 11 of the Bankruptcy Code. Until July 13, 2018 (the "Conversion Date"), the Debtors were operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

9. On May 4, 2018, the Debtors filed the *Debtor's Emergency Motion for Interim and Final Orders (I) Authorizing Use of Cash Collateral Pursuant to Section 363(c) of the Bankruptcy Code; (II) Granting Adequate Protection for the Use Thereof; and (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001 as to Use of Cash Collateral* [Docket No. 28] (the "Cash Collateral Motion").

10. On May 9, 2018, the Court entered its Cash Collateral Order [Docket No. 55], allowing the Debtors' interim use of $620,000 of cash collateral through May 23, 2018. On May 31, 2018, however, following further proceedings, the Court denied the Debtors' further use of cash collateral. See May 31 Hrg. Tr. at 72:9 – 74:10.

5

11. On May 16, 2018, the Office of the United States Trustee appointed the Committee pursuant to section 1102 of the Bankruptcy Code. The Committee, as reconstituted on May 30, 2018, consisted of the following five members: (i) Baker Hughes; (ii) Schlumberger Overseas S.A.; (iii) Transocean Offshore Gulf of Guinea VII; (iv) AOS Orwell Limited; and (v) Armada Oyo Limited. On May 24, 2018 the Committee voted to retain the Firm as its counsel, subject to Court approval.

12. On June 6, 2018, the Committee filed the *Application of the Official Committee of Unsecured Creditors of the Debtors to Retain and Employ Pachulski Stang Ziehl & Jones LLP as Counsel Effective May 24, 2018* [Docket No. 176] (the "Retention Application"). On July 2, 2018, the Court entered the *Order Authorizing and Approving the Employment of Pachulski Stang Ziehl & Jones LLP as Counsel to the Official Committee of Unsecured Creditors of the Debtors Effective May 24, 2018* [Docket No. 277] (the "Retention Order").

13. On June 15, 2018, the Debtors filed their *Emergency Motion Pursuant to 11 U.S.C. §§ 105, 361, and 364 and Federal Bankruptcy Rules 2002, 4001, and 9004 for a Final Order Authorizing the Debtors to Incur Post-Petition Secured Indebtedness* [Docket No. 203] (the "DIP Motion"), seeking this Court's approval of $1.1 million of short-term debtor-in-possession financing.

14. On June 18, 2018, the Committee filed its objection [Docket No. 218] to the DIP Motion, explaining that the proposed postpetition financing was a "bridge to nowhere" and that the cases should be converted to chapter 7 to avoid the incurrence of additional indebtedness.

15. On June 25, 2018, the Court entered the *Interim Order (I) Authorizing Debtors to Obtain Postpetition Secured Financing; and (II) Modifying the Automatic Stay*

6

[Docket No. 247] (the "Interim DIP Order"). To address the Committee's concerns, the Court conditioned the postpetition financing on, among other things, (i) a Carve Out (as defined in the Interim DIP Order) from the postpetition lender's collateral and super-priority claims for all approved professional fees incurred by PSZJ and other professionals prior to the Conversion Date; and (ii) a requirement to fund $458,000 to a chapter 7 trustee to the extent the chapter 11 cases are converted to cases under chapter 7.

16. On June 27, 2018, after an extensive investigation into the assets and liabilities of the Debtors and a risk-benefit analysis of pending litigation in Nigeria, the Committee filed its *Expedited Motion to Convert Cases to Chapter 7* [Docket No. 260] (the "Motion to Convert").

17. On July 12, 2018, the Court entered its *Order Authorizing Certain Payments and Order Converting Cases* [Docket No. 297] (the "Conversion Order"). As a result of the Committee's negotiations with the Debtors and postpetition lender, the Conversion Order mandated that the postpetition lender make $458,000 available to the chapter 7 trustee.

**SUMMARY OF PROFESSIONAL COMPENSATION
AND REIMBURSEMENT OF EXPENSES REQUESTED**

18. This Application has been prepared in accordance with sections 330 and 331 of the Bankruptcy Code, Rules 2014 and 2016 of the Bankruptcy Rules, and Rules 2014-1 and 2016-1 of the Local Rules.

19. Attached hereto as Exhibit A is a true and correct copy of the detailed time descriptions, organized by project codes. A summary of services provided by project code and by professionals is also included on Exhibit A. No fees were billed after the Conversion Date other than as pertaining to the preparation of the final fee applications of the Committee's professionals.

7

20. PSZJ seeks final allowance of fees for professional services rendered during the period from May 24, 2018 through July 13, 2018 (the "Application Period") in the amount of $476,587.75 and reimbursement of actual and necessary expenses incurred during the Application Period in the amount of $26,145.14 for a total allowance of $502,732.89, plus fees and costs incurred in the preparation of this Application. During the Application Period, PSZJ's attorneys and paraprofessionals expended a total of 662.5 hours for which compensation is requested.

21. The requested fees and expenses reflect a voluntary write-off of $33,067.07, consisting of fees in the amount of $32,989.25 and expenses in the amount of $77.82.

22. The fees charged by PSZJ in these cases are billed in accordance with its existing billing rates and procedures set forth in the Retention Application.

23. PSZJ's rates for the services rendered by its professionals and paraprofessionals in these chapter 11 cases are the same rates that PSZJ charges for professional and paraprofessional services rendered in comparable non-bankruptcy matters. Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable non-bankruptcy cases in a competitive national legal market.

**SUMMARY OF LEGAL SERVICES RENDERED**

24. The services rendered by PSZJ during the Application Period can be grouped into the categories set forth below. PSZJ attempted to place the services provided in the category that best relates to such services. However, because certain services may relate to one or more categories, services pertaining to one category may in fact be included in another category. These services performed, by categories, are generally described below; with a more

detailed identification of the actual services provided set forth on <u>Exhibit A</u>, which identifies the attorneys and paraprofessionals who rendered services relating to each category, along with the number of hours for each individual and the total compensation sought for each category.

    **A.**    <u>**Project Category: Bankruptcy Litigation**</u>

25. During the Application Period, the Firm, among other things: (i) prepared for hearings on contested matters; (ii) corresponded with counsel to the Debtors regarding negotiations with NAE and derivative litigation counsel; (iii) engaged in extensive discovery in connection with the use of cash collateral and postpetition financing issues; (iv) drafted 2004 motions directed to Lawal and PIC; (v) conducted an investigation regarding potential insider claims; (vi) reviewed and analyzed Zenith Bank's motion to dismiss and objections thereto; (vii) prepared and prosecuted an objection to the Debtors' proposed postpetition financing facility; and (viii) prepared and prosecuted the Motion to Convert;

    **Fees:**    **$265,492.00**    **Hours:**    **346.60**

    **B.**    <u>**Project Category: Case Administration**</u>

26. This category includes work related to administering the cases in an efficient manner. During the Application Period, the Firm, among other things: (i) reviewed and analyzed pleadings filed in various courts and conferred and corresponded regarding the same; (ii) participated on calls with counsel for the Debtors, Committee members, and other parties regarding the case; (iii) maintained and updated task lists; (iv) maintained a memorandum of critical dates; (v) prepared a due diligence list; and (vi) prepared Committee's organizational documents.

    **Fees:**    **$9,021.50**    **Hours:**    **20.90**

C. **Project Category: Compensation of Professionals**

27. Time billed to this project code reflects time spend revising the final fee application of the Committee's financial advisor, Conway MacKenzie.

   Fees:  $476.00  Hours:  0.80

D. **Project Category: Executory Contracts**

28. During the Application Period, the Firm: (i) reviewed and analyzed a lease rejection motion and conferred and corresponded regarding the same; and (ii) corresponded with the Committee and Debtors regarding issues with respect to storage vessel.

   Fees:  $1,572.00  Hours:  1.80

E. **Project Category: Financial Filings**

29. During the Application Period, the Firm reviewed, analyzed, and prepared a summary analyzing the Debtors' schedules of assets and liabilities and statements of financial affairs.

   Fees:  $3,198.00  Hours:  8.40

F. **Project Category: Financing**

30. This category includes work related to the Debtors' proposed debtor in possession financing and use of cash collateral. During the Application Period, the Firm among other things: (i) reviewed and analyzed all financing related pleadings and documents; (ii) conferred with counsel and estate professionals regarding various cash collateral issues; (iii) reviewed and revised budgets; (iv) reviewed and analyzed draft cash collateral orders; (v) prepared memos to the Committee regarding various cash collateral issues; and (vi) prepared and prosecuted an objection to postpetition financing..

   Fees:  $55,306.50  Hours:  67.50

G.  **Project Code:  General Creditors' Committee**

31.  Time billed to this category relates to general Committee issues and meetings of creditors.  During the Application Period, the Firm, among other things: (i) communicated case status and pending matters with the Committee; (ii) participated in Committee calls; (iii) prepared case summary memos to the Committee; and (iv) prepared and revised Committee bylaws.

Fees:  $65,087.50   Hours:   87.40

H.  **Project Code:  Hearing**

32.  Time billed to this category includes work related to the various hearings held during the Application Period.  During the Application Period, the Firm, among other things, engaged in extensive preparation for and attended various hearings held in the chapter 11 cases, including the hearings on cash collateral and postpetition financing, lease rejection, and conversion.

Fees:  $14,299.00   Hours:   26.20

I.  **Project Code: Insurance Coverage**

33.  This category relates to the Debtors' insurance coverage.  During the Application Period, the Firm, among other things: (i) reviewed and analyzed the Debtors' insurance policies and proposed renewal of insurance policies; and (ii)  reviewed various financing orders with respect to their impact on insurance policies and proceeds.

Fees:  $19,379.50   Hours:   21.10

J.  **Project Code: Non-Working Travel**

34.  During the Application Period, the Firm incurred non-working time while traveling on case matters.  Such time is billed at one-half the normal rate.

11

     **Fees:**  **$21,851.25**    **Hours:**   **42.80**

  **K.**  **Project Code:  PSZJ Compensation**

    35.  Time billed to this project category relates to the preliminary preparation of this Application.

     **Fees:**  **$2,550.00**    **Hours:**   **6.80**

  **L.**  **Project Code:  PSZJ Retention**

    36.  This category relates to the Firm's retention in the chapter 11 cases. During the Application Period, the Firm, among other things: (i) prepared a retention application; and (ii) addressed issues raised by the U.S. Trustee to the proposed retention order.

     **Fees:**  **$2,322.00**    **Hours:**   **6.00**

  **M.**  **Project Code:  Retention of Professionals**

    37.  Time billed to this category relates to the retention of professionals other than the Firm.  During the Application Period, the Firm, among other things: (i) corresponded with potential Nigerian counsel; (ii) reviewed and analyzed the ordinary course professionals motion and drafted an objection thereto; (iii) filed the Committee's retention application of its financial advisor, Conway MacKenzie; and (iv) drafted a motion to reconsider order denying Conway MacKenzie's retention application.

     **Fees:**  **$7,726.00**    **Hours:**   **12.20**

  **N.**  **Project Code:  Stay Litigation**

    38.  This category relates to work regarding the automatic stay and relief from stay motions. During the Application Period, the Firm, among other things: (i) reviewed and analyzed various stay relief motions; and (ii) prepared related memoranda for the Committee.

     **Fees:**  **$8,306.50**    **Hours:**   **14.00**

**ACTUAL AND NECESSARY EXPENSES INCURRED BY PSZJ**

39. PSZJ has incurred a total of $26,145.14 in expenses on behalf of the Committee during the Application Period. These expenses relate to (i) costs incurred in connection with traveling to and from Houston to attend certain hearings and meetings and (ii) and printing, postage, and related back office expenses. PSZJ customarily charges $0.10 per page for photocopying expenses. PSZJ's photocopying machines automatically record the number of copies made when the person that is doing the copying enters the client's account number into a device attached to the photocopier. PSZJ summarizes each client's photocopying charges on a daily basis.

40. With respect to providers of online legal research services (*e.g.*, Lexis), PSZJ charges the standard usage rates these providers charge for computerized legal research. PSZJ bills its clients the actual amounts charged by such services, with no premium. Any volume discount received by PSZJ is passed on to the client.

41. PSZJ believes that the foregoing rates are the market rates that the majority of law firms charge clients for such services. In addition, PSZJ believes that such charges are in accordance with the American Bar Association's ("ABA") guidelines, as set forth in the ABA's Statement of Principles, dated January 12, 1995, regarding billing for disbursements and other charges.

**THE REQUESTED COMPENSATION SHOULD BE ALLOWED**

42. Section 330 provides that a court may award a professional employed under section 328 of the Bankruptcy Code "reasonable compensation for actual, necessary services rendered . . . and reimbursement for actual, necessary expenses." *See* 11 U.S.C. §

330(a)(1). Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded . . . , the court should consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

43. PSZJ respectfully submits that the services for which it seeks compensation in this Application were, at the time rendered, believed to be necessary for, beneficial to, and in the best interests of, the Committee. During the Application Period, PSZJ worked diligently on behalf of the Committee to provide the best possible recovery to creditors. The services rendered by PSZJ were consistently performed in a timely manner commensurate with the complexity, importance, and nature of the issues involved.

44. PSZJ has a reputation for its expertise and experience in financial and bankruptcy reorganizations and restructurings and as noted above, the compensation is

reasonably based on customary compensation charged by other practitioners in non-bankruptcy cases. Based on an application of the above factors, PSZJ respectfully submits that the compensation requested herein is reasonable in light of the nature, extent and value of such services to the Committee and, accordingly, that approval of the compensation sought herein is warranted.

## STATEMENT OF PSZJ

45. The foregoing professional services performed by PSZJ were appropriate and necessary. The professional services were in the best interests of the Committee and other parties-in-interest. Compensation for the foregoing professional services as requested is commensurate with the complexity, importance and nature of the problems, issues or tasks involved. The professional services were performed in an appropriately expeditious and efficient manner.

## RESERVATION OF RIGHTS

46. It is possible that some professional time expended or expenses incurred by PSZJ or Committee member expenses incurred during the Application Period are not reflected in this Application. PSZJ reserves the right to file a supplemental fee application to submit additional fees and expenses not previously included in the Application but incurred prior to the date of the hearing on the Application.

## CONCLUSION

47. PSZJ respectfully requests that the Court enter an order, substantially in the form attached hereto as Exhibit B, (i) awarding PSZJ a final allowance of fees for the Application Period in the amount of $476,587.75; (ii) awarding PSZJ reimbursement for actual and necessary expenses incurred in the amount of $26,145.14; (iii) awarding fees and expenses

incurred in connection with the fee applications of the Committee's professionals after the Conversion Date; (iv) authorizing and directing the chapter 7 trustee to pay the allowed fees and expenses; and (v) granting such other or additional relief as is just and proper.

Dated:   September 26, 2018	PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Steven W. Golden*
Jeffrey N. Pomerantz (admitted *pro hac vice*)
Ira D. Kharasch (admitted *pro hac vice*)
Jason H. Rosell (admitted *pro hac vice*)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Telephone:  (310) 227-6910

Steven W. Golden (TX Bar No. 24099681)
780 Third Avenue, 34th Floor
New York, NY 10017
Telephone:  (212) 561-7700

*Counsel to the Official Committee
of Unsecured Creditors*

**CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the above and foregoing has been served by electronic transmission to all registered ECF users appearing in these cases.

Dated: September 26, 2018
New York, NY

*/s/ Steven W. Golden*
Steven W. Golden