UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>ERIN ENERGY CORPORATION, ET AL[1],<br><br>　　　　　　　　　Debtors. | Case No. 18-32106<br><br>(Chapter 7)<br><br>(Jointly Administered) |

**EMERGENCY MOTION FOR ORDER (I) APPROVING SURCHARGE PURSUANT TO 11 U.S.C. § 506(C) AGAINST CRUDE OIL, OIL MINING LEASES, PRODUCTION SHARING CONTRACT, AND GENERAL INTANGIBLES, (II) GRANTING PRIMING LIENS ON SUCH ASSETS, AND (III) PROVIDING THAT SUCH OBLIGATIONS SHALL SURVIVE DISMISSAL**

IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY-ONE (21) DAYS FROM THE DATE YOU WERE SERVED WITH THIS PLEADING. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.

EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

---

[1] The last four digits of Erin Energy Corporation's federal tax identification number are 9798. The other Debtors in these cases are: Erin Energy Limited; Erin Energy Kenya Limited; and Erin Petroleum Nigeria Limited.

TO THE HONORABLE MARVIN ISGUR, UNITED STATES BANKRUPTCY JUDGE:

Ronald J. Sommers, in his capacity as chapter 7 trustee (the "Trustee") for the estate of Erin Petroleum Nigeria Limited ("EPNL" or the "Debtor"), files this emergency motion (the "Motion") pursuant to sections 105(a), 349(b), and 506(c) title 11 of the United States Code (the "Bankruptcy Code") for entry of an order, substantially in the form annexed hereto (the "Proposed Order"), (i) approving a surcharge of the Trustee's expenses incurred with respect to the maintenance and disposition of assets in which Zenith Bank Plc ("Zenith") has a first lien security interest, (ii) granting the Trustee priming liens in such assets *pari passu* with any liens of Bumi Armada Berhad or related entities (collectively, "Bumi"), and (iii) providing that the surcharge and the provisions of the order shall survive the dismissal of the Debtor Erin Petroleum Nigeria Limited's bankruptcy case. In support of the Motion, the Trustee respectfully submits the following:

## EMERGENCY CONSIDERATION

1. The Trustee requests that this Motion be considered on an emergency basis because of potential ruling by this Court on Zenith's pending motion to dismiss. Despite the extensive efforts of the Trustee to preserve the assets in which Zenith holds first-lien security interests and facilitate a consensual disposition of such assets that resolves ownership disputes and the progress made thereto, Zenith has elected to proceed with its motion to dismiss the chapter 7 bankruptcy case of EPNL (the "Motion to Dismiss").

2. A ruling on the Motion to Dismiss is scheduled for October 16, 2018. If the Court enters an order dismissing EPNL's case prior to consideration of this Motion, the Trustee will not have a forum to obtain the relief requested herein. Therefore, emergency consideration on or before ***October 16, 2018 at 9:00 a.m. (CT)*** or prior to a ruling by this Court on the Motion to Dismiss is necessary to protect the Trustee and the chapter 7 estate of EPNL.

2

## JURISDICTION

3.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

4.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5.  The statutory predicates for the relief sought herein are Bankruptcy Code §§ 105(a), 349(b), and 506(c).

## BACKGROUND

### A. Case Background

6.  On April 25, 2018 ("Petition Date"), the Debtor, along with 3 affiliated entities filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the Bankruptcy Court.

7.  On June 27, 2018, the Official Committee of Unsecured Creditors filed an expedited motion to convert the cases to chapter 7 [ECF No. 260].

8.  On July 12, 2018 ("Conversion Date"), the Court entered an Order Converting the cases. The Trustee was appointed on July 13, 2018.

9.  Prior to the Conversion Date, Zenith filed the Motion to Dismiss. An evidentiary hearing on the Motion to Dismiss was held on October 3, 2018. A ruling on the Motion to Dismiss is scheduled for October 16, 2018.

### B. Property Subject to Zenith's First Lien Security Interest

10. Zenith has asserted a first lien security interest in substantially all of the assets of EPNL. *See Addendum to Proof of Claim of Zenith Bank PLC*, Claim No. 10, at pp. 5-6. The assets subject to Zenith's asserted security interest include (i) the approximately 380,000 barrels of oil (the "Crude Oil") contained in the floating production and storage and offloading unit Armada Perdana (the "FPSO"), (ii) Oil Mining Leases 120 and 121 (the "OMLs") located offshore Nigeria, (iii) the Production Sharing Contract (the "PSC") relating to the Oyo Filed, (iv) EPNL's equipment

3

and inventory (the "Inventory") under the jurisdiction of the Federal Republic of Nigeria, and (v) causes of action (the "Causes of Action" and together with the Crude Oil, OMLs, PSC, and other EPNL tangible and intangible assets, the "Zenith Collateral[2]") held by the EPNL. No party has challenged the validity or priority of Zenith's security interests in the Zenith Collateral.

### C. Actions Taken By the Trustee and Professionals to Protect and Dispose of the Zenith Collateral and Accrual of Related Expenses

11. The Trustee has worked diligently and borne substantial professional and out-of-pocket expenses to preserve the value of the Zenith's collateral for the benefit of Zenith, junior lienholders, and unsecured creditors. Each of these actions were essential to preserve the value of the Zenith Collateral and many of which were consented to or urged by Zenith and the other parties asserting interests in the Zenith Collateral. The expenses to EPNL's estate for preserving the Zenith Collateral and shepherding the assets toward sale are at least $550,000, as of September 30, 2018, which amount continues to accrue as the Trustee continues to pursue liquidation of the Zenith Collateral, and specifically the Crude Oil.

(i) Efforts of the Trustee

12. While not compensated, the Trustee has spent an incredible number of hours to take control of the Zenith Collateral in wake of the conversion of EPNL's bankruptcy case from chapter 11 to chapter 7. The Trustee has worked diligently to determine the assets of EPNL, interviewed former management, and, at the request of the creditors and parties in interest asserting claims to the Crude Oil, participated in in person meetings in London, many lengthy international and national conference calls to negotiate a settlement term sheet, analyze the availability of purchasers

---

[2] For purposes of this Motion and the Trustee's request, the Trustee does not ask for a surcharge against the Inventory upon which Zenith asserts a security interest as the Trustee has agreed prior to the hearing on the Motion to Dismiss to abandon this Inventory. Therefore, the Trustee does not seek to assert a claim against what has been defined as the Nigerian Personal Property in other pleadings abandoning such assets.

for the Crude Oil, communicate with Bumi, the owner of the FPSO, and, handle as many of the administrative tasks associated with making sure the Crude Oil was insured and protected, all for the primary benefit of Zenith and then to the estate.

13. The Trustee has further incurred out-of-pocket expenses (in addition to the professional fees related to the activities described below) to preserve the Zenith Collateral. At the specific request of the creditors with claims against the Crude Oil, the Trustee attended negotiations in London regarding the disposition of the Crude Oil and numerous telephonic follow-up negotiations. The Trustee was an essential party to these negotiations and no meaningful progress would have been possible absent the Trustee's participation. The Trustee has also incurred other, less sizable out-of-pocket expenses necessary to advance the process of maintaining and future disposition of the Zenith Collateral.

(ii) <u>Efforts of Attorneys Diamond McCarthy LLP and Kasowitz Benson Torres LLP</u>

14. The Trustee engaged counsel to assist in preserving the Zenith Collateral. The Trustee's attorneys have worked diligently to assist the Trustee in securing and preserving the Zenith Collateral for the benefit of Zenith, other parties with interests in the assets, and EPNL's estate. In connection with the time spent on these matters, the estate of EPNL has incurred expenses in the form of professional fees.

15. Since the Conversion Date, the Trustee's attorneys have been involved in meetings and negotiations to reach a consensual resolution of the disposition of the Crude Oil in light of the litigation taking place in Nigeria among Zenith, Nigerian Agip Exploration Limited ("<u>NAE</u>"), Public Investment Corporation Soc Ltd. ("<u>PIC</u>"), EPNL, Allied Energy Plc ("<u>Allied</u>"), and CAMAC Energy Holdings Limited ("<u>CEHL</u>"). In connection with participating in these meetings and negotiations, the Trustee's attorneys expended extensive resources and time tracking down,

gathering, and reviewing collateral documents to confirm the security interests and rights of the various parties. The participation of the Trustee's attorneys was necessary to continue moving negotiations among the parties at this time. The creditors asserting interests against the Crude Oil requested and invited the Trustee and his counsel's active participation in the negotiations regarding the disposition of the Crude Oil.

16. Due to the complex nature of the disputes in the United States and Nigeria, the parties believed, and continue to believe, that a consensual resolution was and is still the optimal business solution among the parties, and, the Trustee's active participation and consent has been and will continue to be required. The Trustee's involvement was and is still necessary to avoid the potential for an administrative expense of one of these creditors, Bumi, which continues to grow each day, and, could swamp the assets available to the approximately $400 million of estimated unsecured claims against EPNL.

17. The Trustee's evaluation of the Nigerian Personal Assets and his decision to abandon certain of the Zenith Collateral and making such collateral available for satisfaction of Zenith's claim was also work that benefitted the secured creditor Zenith. On September 21, 2018, the *Trustee filed the Notice of Trustee's Proposed Abandonment of Personal Property Owned by Erin Petroleum Nigeria Limited and Located at Specified Warehouses in Nigeria* [ECF No. 393]. The abandonment was effective on October 3, 2018, at 9:00 a.m. The work of the Trustee's attorneys was necessary to effectuate this abandonment and make the assets available for Zenith to exercise its rights under Nigerian law.

18. Further, at the outset of the case, the Trustee's attorneys expended considerable effort to safeguard the Debtors' electronic records located in Houston, Texas. Without these efforts, the business records of EPNL would have been lost. This would have made prosecuting

EPNL's causes of action—in which Zenith has asserted a security interest—extremely challenging and expensive, if not impossible. Further, the related information technology support was also necessary to preserve the value of the causes of action for Zenith and EPNL's other creditors.

    (iii)    <u>Efforts of Financial Advisor Stout Risius Ross, LLC</u>

19. The Trustee engaged Stout Risius Ross, LLC ("<u>Stout</u>") to provide the Trustee financial advisory services related to the Debtors' Chapter 7 Cases. In this capacity, Stout has also done substantial work to preserve the Zenith Collateral from which Zenith has benefited.

20. Stout has determined the location of the Zenith Collateral, analyzed whether the storage locations of the Zenith Collateral required rental payments, and assisted the Trustee and his attorneys with respect to securing insurance for the Zenith Collateral. These efforts enabled the Trustee and his attorneys to effectively and efficiently preserve the Zenith Assets, inuring to the benefit of the Zenith as the first lien secured party.

21. In addition, Stout has provided necessary support to the Trustee and his attorneys in the context of the negotiations. Stout's efforts allowed the Trustee and his attorneys to advance negotiations for the consensual resolution of sale of the Crude Oil as well as the abandonment of the Inventory.

**D.    Benefit of the Actions of the Trustee and His Professionals to Zenith and the Zenith Collateral**

22. The efforts of the Trustee and his professionals to preserve the Zenith Collateral and drive forward negotiations surrounding the ultimate disposition of the Zenith Collateral have benefited Zenith (and all other parties claiming an interest in the Zenith Collateral) far in excess of their attendant expense.

23. If the Trustee and his professionals had not taken action to account for and secure the Zenith Collateral, it is likely that the value of the Zenith Collateral would have either

diminished or been at commercially unreasonable risk of diminishing. The Trustee accounted for and secured the Inventory in Nigeria, insured the valuable assets, and protected EPNL's business records, and thus the value of any causes of action, from being lost. Without this stewardship, there would have existed a commercially unreasonable possibility that the Inventory would suffer conversion, loss, or damage. With respect to the business records, the loss without the Trustee's intervention was almost certain under the circumstances.

24. The involvement of the Trustee and his professionals in the negotiations with respect to the Crude Oil has substantially advanced the ball toward the ultimate sale of the Crude Oil, which will ultimately benefit Zenith. The creditors and parties in interest recognized that the Trustee had the authority under Bankruptcy Code §§ 363 or 554 to the monetization of the Crude Oil and specifically requested that the Trustee participate in the efforts to reach a consensual resolution among the parties.

25. The efforts of the Trustee and his professionals have determined that Zenith has a first lien and PIC has a second lien in the Crude Oil and an agreement between the relevant parties is close to being reached. As the various parties announced to the Court at the October 3, 2018, hearing, the parties are on the cusp of an agreement. The only remaining hurdle is the division of the proceeds from the sale of the Crude Oil between a creditor and a party in interest.

26. The efforts of the Trustee and his professionals have also jumpstarted the necessary logistical and regulatory requirements for the sale of the Crude Oil. The Trustee has reached out and established a dialogue with Glencore Plc, a potential purchaser of the Crude Oil with a pre-petition contract, and discussed the steps necessary to begin monetization of the Crude Oil in tandem with what he thought would be the Nigerian receiver to sell the Crude Oil. The Trustee and his professionals continue to coordinate with Zenith and the relevant parties to achieve prompt

disposition of the Crude Oil. These steps are the direct result of the Trustee's involvement in the negotiations, which were requested by Zenith and other parties.

27. The expenses related to the Inventory that has already been abandoned by the Trustee have also inured to the benefit of Zenith. Such Inventory is now available for Zenith under the laws of Nigeria with respect to such property.

28. The efforts of the Trustee and estate professionals with respect to the Zenith Collateral were necessary to protect the value of the Zenith Collateral. This is reflected in that a significant portion of the work done by the Trustee and his professionals was at the behest of Zenith, Bumi, PIC, and NAE. The Trustee's presence and participation at three (3) meetings in London was requested by each of the relevant parties. When the negotiations broke down over a consensual settlement, certain of the parties requested the Trustee to proceed by way of motion under Bankruptcy Code § 363 to sell the Crude Oil.

29. The actions of the Trustee and his professionals in these cases have been motivated by the Trustee's desire to maximize the value of EPNL's assets. Zenith and the other parties with a security or other interest in these assets have benefited from the Trustee's expenditures to this effect. The Trustee and these parties have, by-and-large, *agreed* that the costs incurred were reasonable, necessary, and to their benefit and even *requested* that the Trustee incur such costs.

E. **Additional Expenses for the Benefit of the Zenith Collateral if the Case is Not Dismissed and Zenith, Bumi, PIC, and NAE are Not Able to Consensually Resolve Dispute.**

30. The Trustee provided Zenith, Bumi, and PIC an estimate of $550,000 in expenses incurred from Conversion Date through September 30, 2018, with a $50,000 budget to cover the Trustee's cost for the hearing on October 3, 2018 and his assistance in closing the transaction, provided that the parties proceeded with the abandonment of the Crude Oil under Bankruptcy Code § 554 on October 3, 2018 and contractually protected the administrative expenses of Bumi and the

9

Trustee. But because two of the parties could not agree on how to divide the proceeds and the principals were not available to make a decision even though the October 3 hearing had been on calendar for at least a month, the parties could not proceed on a global consensual basis.

31.     The $550,000 amount comprises the out-of-pocket expenses, accrued professional fees, insurance for the Zenith Collateral through September 30, 2018, and an estimate of $50,000 for costs of the Trustee through the hearing on October 3, 2018. As a result of the parties' inability to agree on a distribution under the abandonment concept, additional costs for the benefit of the disposition of the Crude Oil will accrue and such amount will be tabulated and presented to the Bankruptcy Court at the time of the hearing on this Motion.

## RELIEF REQUESTED

32.     By this Motion, the Trustee requests the entry of an order substantially in the form of the Proposed Order (i) approving a surcharge of the Trustee's expenses incurred with respect to the maintenance and disposition of the Zenith Collateral in an amount not less than $600,000.00, (ii) granting the Trustee and his professionals priming liens in the Zenith Collateral *pari passu* with any liens granted Bumi, and (iii) providing that the surcharge and the provisions of the order shall survive the dismissal of the EPNL's bankruptcy case.

## BASIS FOR RELIEF

### A. The Trustee is Entitled to Surcharge Zenith and the Zenith Collateral for Expenses and Costs Incurred

33.     Bankruptcy Code § 506(c) provides that "the trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim . . . ." To recover a surcharge, a trustee must establish "(1) the expenditure was necessary, (2) the amounts expended

where reasonable, and (3) the creditor benefitted from the expenses." *In re Domistyle, Inc.*, 811 F.3d 691, 695 (5th Cir. 2015) (quoting *In re Delta Towers, Ltd.*, 924 F.2d 74, 76 (5th Cir. 1991)).

34. Expenses need not be incurred solely for the benefit of a secured creditor for the expenses to be surcharged pursuant to Bankruptcy Code § 506(c). As the Fifth Circuit held in *In re Domistyle, Inc.*, the statute merely requires that the secured creditor actually have derived a benefit from the expenditure. *Id.* at 698-700.

35. Courts have construed benefit for purposes Bankruptcy Code § 506(c) to include Trustee and professional fees which have protected the value of collateral or aided in its ultimate sale. *See In re McCombs*, 436 B.R. 421, 449–50 (Bankr. S.D. Tex. 2010) (holding that property could be surcharged for chapter 7 trustee compensation); *In re Pudgie's Dev. of N.Y.*, 223 B.R. 421, 424 (Bankr. S.D.N.Y. 1998) (finding property could be surcharged for fees of chapter 11 debtor's counsel); *In re Cann & Saul Steel Co.*, 86 B.R. 413, 418 (Bankr. E.D. Pa. 1988) (holding that certain professional fees entitled to surcharge collateral); *In re AFCO Enterprises, Inc.*, 35 B.R. 512, 517–18 (Bankr. D. Utah 1983) (holding that a trustee was entitled surcharge property for trustee commission and professional fees); *In re Hotel Assocs., Inc.*, 6 B.R. 108, 112 (Bankr. E.D. Pa. 1980) ("We reiterate our earlier finding and conclude that the performance by the trustee of the investigative duties listed in our earlier Opinion can only serve to benefit the mortgagee here and is to be considered a reasonable cost of 'preserving' the property.").

36. Courts have also held that the necessity, reasonableness, and benefit are demonstrated in light of implicit or explicit consent. *See In re Senior-G & A Operating Co., Inc.*, 957 F.2d 1290, 1299–300 (5th Cir. 1992); *In re McCombs*, 436 B.R. at 447; *In re Consol. Cotton Gin Co., Inc.*, 347 B.R. 572, 580 (Bankr. N.D. Tex. 2006).

37. Here, the efforts of the Trustee have been focused on identifying, securing, and disposing of ENPL's assets, assets in which Zenith holds a first lien and security interest, save and except the priming adequate protection lien granted to Bumi by the Bankruptcy Court. The actions of the Trustee and the expenses of the estate incurred have been reasonable and necessary to preserve the value of the Zenith Collateral. The overall expenses and costs faced by the Trustee to this point in the case are reasonable in light of the complex nature of the dispute over the Crude Oil, the value of the Zenith Collateral, and overall circumstances of EPNL's bankruptcy case.

38. Moreover, many of matters for which the Trustee has incurred expenses and professional fees have been ***invited*** and ***requested*** by Zenith, Bumi, and PIC even though the parties knew the Trustee's position was that such amounts were chargeable to the Zenith Collateral. The case law is clear: where a secured lender consents to actions to protect or dispose of its assets, surcharge is appropriate.

39. It is not surprising that the goals of Zenith, the other parties claiming interests in the Zenith Collateral, and the Trustee are aligned. Like the liquidating trustee in *In re Domistyle*, 811 F. 3d 691, the Trustee has endeavored to preserve the value of the Zenith Collateral so he can ultimately satisfy all of EPNL's secured claims and achieve a distribution to unsecured creditors. The parties asserting interests in the Zenith Collateral want the same thing. Because Zenith holds a first lien security interest in substantially all of EPNL's assets, expenditures to preserve and liquidate assets of EPNL's estates necessarily benefit Zenith and other secured parties first. The earlier secured parties are paid, greater the chance that the estate has recovering and making a distribution to unsecured creditors.

40. As the result of the Trustee's efforts and accrued expenses, the Zenith Collateral has been preserved and insured; the parties are on the cusp of an agreement, as announced at the

October 3, 2018, hearing; preparations for the ultimate sale of the Crude Oil are underway with the Nigerian receiver; and a hearing is set for October 16, 2018, that will resolve the residual issues with respect to the sale of the Crude Oil in the event the parties are not able to reach a consensual resolution. The benefit inuring to Zenith through the work and expenses incurred by the Trustee far exceed the expenses incurred.

    **B.    The Court Should Grant the Trustee a Judicial Lien in the Zenith Collateral that are *Pari Passu* with Any Liens Granted to Bumi.**

    41.    Bankruptcy Code § 105(a) authorizes Courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code.]" Although § 105(a) does not create substantive rights, it provides a method for courts to enforce substantive rights pursuant to other provisions of the Bankruptcy Code. *See In re Rodriguez*, 396 B.R. 436, 460 (Bankr. S.D. Tex. 2008). Here, it is necessary and appropriate to provide the Trustee with liens in the Zenith Collateral the amount of the surcharge authorized pursuant to Bankruptcy Code § 506(c).

    42.    Granting the Trustee in the Zenith Collateral is necessary and appropriate to fulfil the substantive rights of Bankruptcy Code § 506(c). A security interest in the Zenith Collateral will allow the relevant parties to seek to enforce their rights in the appropriate forum even in the event that the Court grants Zenith's motion to dismiss. Absent such a right, the ability of the Trustee and his professionals to enforce their right to payment in the event of a dismissal is uncertain.

    **C.    The Order Granting the Surcharge against the Zenith Assets and Judicial Liens Supporting Such Surcharge Should Survive the Dismissal of EPNL's Bankruptcy Case.**

    43.    Ordinarily, dismissal of a bankruptcy petition results in a return to the prepetition status quo. *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 979 (2017). Bankruptcy Code §

349(b), however, allows courts, for "cause," to enter dismissal orders that do not reinstitute the status quo.

44. Although the limits of non-standard dismissal orders under Bankruptcy Code § 349(b) remain undefined, the Supreme Court has commented on the core purpose of the provision. In *Czyzewski v. Jevic Holding Corp.*, the Supreme Court said:

> [R]ead in context, this provision appears designed to give courts the flexibility to "make the appropriate orders to protect rights acquired in reliance on the bankruptcy case." H.R.Rep. No. 95–595, at 338; *cf., e.g., Wiese v. Community Bank of Central Wis.*, 552 F.3d 584, 590 (C.A.7 2009) (upholding, under § 349(b), a Bankruptcy Court's decision not to reinstate a debtor's claim against a bank that gave up a lien in reliance on the claim being released in the debtor's reorganization plan).

137 S. Ct. at 984–85. Modifying a dismissal order to provide that expenses and professionals fees surcharged to property and related liens will survive the dismissal falls squarely within *Jevic*.

45. The Trustee has incurred expenses and professional fees to protect and preserve the Zenith Collateral relying on the bankruptcy process and the availability of Bankruptcy Code § 506(c). . The Trustee's professionals continue to work to preserve and obtain the sale of the Zenith Collateral. This is exactly the "cause" contemplated in the Supreme Court's dicta in *Jevic*. The Court here should heed the Supreme Court and provide that the relief requested in the Proposed Order survive dismissal.

## CONCLUSION

WHEREFORE, the Trustee respectfully requests that this Court enter an order substantially in the form of the Proposed Order (i) approving a surcharge of the Trustee's expenses incurred with respect to the maintenance and disposition of assets in which Zenith Collateral in an amount not less than $600,000.00, (ii) granting the Trustee priming liens in the Zenith Collateral pari passu

with any liens granted Bumi, and (iii) providing that the surcharge and the provisions of the order shall survive the dismissal of the EPNL's bankruptcy case.

Dated:  October 5, 2018

Respectfully submitted,

KASOWITZ BENSON TORRES LLP

/s/ *Kyung S. Lee*
Kyung S. Lee (TBA No. 12128400)
Klee@kasowitz.com
R. J. Shannon (TBA No. 24108062)
RShannon@kasowitz.com
1415 Louisiana St., Suite 2100
Houston, TX 77002
Telephone: (713) 220-8800
Facsimile:  (713) 222-0843

*Proposed General Bankruptcy Counsel for Ronald J. Sommers, Chapter 7 Trustee*

-and-

DIAMOND McCARTHY LLP

/s/ *Michael D. Fritz*
J. Maxwell Beatty
Texas Bar No. 24051740
mbeatty@diamondmccarthy.com
Michael D. Fritz
Texas Bar No. 24083029
mfritz@diamondmccarthy.com
Two Houston Center
909 Fannin, 37th Floor
Houston, TX 77010
Telephone: (713) 333-5100
Facsimile: (713) 333-5199

*Counsel for Ronald J. Sommers, Chapter 7 Trustee*

## CERTIFICATE OF SERVICE

I hereby certify that on October 5 2018, a true and correct copy of this Motion was served on (i) all parties registered to receive ECF notification in the above captioned case and (ii) by first class U.S.P.S. mail on all parties on the Debtor's Master Service List.

*/s/ Kyung S. Lee*
Kyung S. Lee
