1              IN THE UNITED STATES BANKRUPTCY COURT

2              FOR THE SOUTHERN DISTRICT OF TEXAS

3                      HOUSTON DIVISION

4  IN RE:                        §       CASE NO. 18-32106-H1-7
                                 §
5  ERIN ENERGY CORPORATION AND   §       HOUSTON, TEXAS
   OFFICIAL COMMITTEE FOR        §
6  UNSECURED CREDITORS,          §       FRIDAY,
                                 §       FEBRUARY 22, 2019
7              DEBTORS.          §       9:30 A.M. TO 10:02 A.M.

8
             #532 - MOTION FOR RELIEF FROM STAY; AND
9               #533 - APPLICATION FOR ADMIN FEES

10
             BEFORE THE HONORABLE MARVIN ISGUR
11              UNITED STATES BANKRUPTCY JUDGE

12

13
       APPEARANCES:              SEE NEXT PAGE
14
       COURT RECORDER:           RUBEN CASTRO
15
       COURT CLERK:              RUBEN CASTRO
16

17

18

19
                  TRANSCRIPTION SERVICE BY:
20
             JUDICIAL TRANSCRIBERS OF TEXAS, LLC
21                935 ELDRIDGE ROAD, #144
                  SUGAR LAND, TEXAS 77478
22         Tel: 281-277-5325 ▼ Fax: 281-277-0946
23              www.judicialtranscribers.com

24
       Proceedings recorded by electronic sound recording;
25         transcript produced by transcription service.

1                          APPEARANCES:

2

3    FOR THE MOVANT,
     ROBERT LENOIS:                GRANT & EISENHOFER, PA
4                                  Gordon Z. Novod, Esq.
                                   485 Lexington Avenue
5                                  New York, NY  10017
                                   646-722-8500
6
                                   GRANT & EISENHOFER, PA
7                                  Michael J. Barry, Esq.
                                   123 Justison Street, 7th Fl.
8                                  Wilmington, DE  19801
                                   302-622-7065
9
                                   ANDREW & SPRINGER, LLC
10                                 Craig J. Springer, Esq.
                                   3801 Kennett Pike
11                                 Building C, Suite 305
                                   Wilmington, DE  19807
12                                 302-504-4957

13
     FOR DR. CASE LAWAL:           JACKSON WALKER, LLP
14                                 Elizabeth C. Freeman, Esq.
                                   1401 McKinney St., Ste. 1900
15                                 Houston, TX  77010
                                   713-752-4200
16
                                   JACKSON WALKER, LLP
17                                 Christopher R. Bankler, Esq.
                                   2323 Ross Ave., Ste. 600
18                                 Dallas, TX  75201
                                   214-953-6000
19
     FOR LEE P. BROWN,
20   WILLIAM J. CAMPBELL, AND
     J. KENT FRIEDMAN:             NORTON ROSE FULBRIGHT US LLP
21                                 Jason Lee Boland, Esq.
                                   Julie Goodrich Harrison, Esq.
22                                 John J. Byron, Esq.
                                   1301 McKinney, Ste. 5100
23                                 Houston, TX  77010
                                   713-651-4769
24

25

1                    APPEARANCES (cont'd):

2

3   FOR JOHN HOFMEISTER,
    IRA WAYNE MCCONNELL, AND
4   HAZEL R. O'LEARY:              HUNTON ANDREWS KURTH, LLP
                                   Joseph Rovira, Esq.
5                                  Ashley L. Harper, Esq.
                                   600 Travis, Ste. 4200
6                                  Houston, TX  77002
                                   713-220-4013

7

8   FOR THE TRUSTEE,
    RONALD SOMMERS:                KASOWITZ BENSON TORRES, LLP
9                                  R.J. Shannon, Esq.
                                   Kyung Shik Lee, Esq.
10                                 1415 Louisiana Street
                                   Suite 2100
11                                 Houston, TX  77002
                                   713-220-8800

12
    ALSO APPEARING:                RONALD SOMMERS
13                                 CHAPTER 7 TRUSTEE

14

15  SPECIAL COUNSEL TO THE
    TRUSTEE:                       DIAMOND MCCARTHY, LLP
16                                 Michael David Fritz, Esq.
                                   909 Fannin, Ste. 2900
17                                 Houston, TX  77002
                                   713-333-5100

18

19

20

21

22

23

24

25

1      HOUSTON, TEXAS; FRIDAY, FEBRUARY 22, 2019; 9:30 A.M.

2              THE CLERK:  All rise.

3              THE COURT:  Please be seated.

4          All right.  First case we're going to call is the

5  Erin Energy Corporation case.  It's 18-32106.

6              We'll take any appearances in court followed by

7  those on the phone.

8              MR. NOVOD:  Good morning, Your Honor.  Gordon

9  Novod of the law firm of Grant & Eisenhofer.  I'm here on

10  behalf of the Movant with respect to the two matters today.

11  Joining me in court are my partner, Michael Barry and from

12  my firm, as well as Mr. Craig Springer from Andrews &

13  Springer.

14              THE COURT:  Thank you.  Good morning.

15              MS. FREEMAN:  Good morning, Your Honor.  Elizabeth

16  Freeman and Chris Bankler on behalf of Dr. Kase Lawal.

17              MR. BOLAND:  Good morning, Judge.  Jason Boland of

18  Norton Rose Fulbright on behalf of Lee Brown, William

19  Campbell, and Kent Friedman.  I'm joined by my colleagues,

20  Julie Harrison and John Byron.

21              THE COURT:  Thank you.

22              MR. ROVIRA:  Good morning, Your Honor.  Joseph

23  Rovira from Hunton Andrews Kurth on behalf of John

24  Hofmeister, Ira Wayne McConnell, and Hazel O'Leary.  And

25  here with me today is Ashley Harper from my firm.

1          THE COURT:  Thank you.

2          MR. SHANNON:  Good morning, Your Honor.

3  R.J. Shannon of Kasowitz Benson & Torres, here representing

4  the Trustee.  Kyung Lee is also here representing the

5  Trustee and the Trustee is here, as well.

6          THE COURT:  Thank you.

7          MR. FRITZ:  Good morning, Your Honor.  Michael

8  Fritz, Diamond McCarthy, LLP, Special Counsel to the

9  Trustee.

10         THE COURT:  Thank you.

11         So I'm going to make a couple of statements, then

12  we're going to take a break and then I'm going to cover my

13  other 9:30 hearing.  I didn't realize we'd have this big of

14  a presentation this morning in this.

15         I don't understand, given the responses I filed

16  that -- I've read that were filed, why the Trustee cannot

17  intervene as an additional party-in-interest or as a true

18  party-in-interest, leaving the existing Plaintiff in place

19  if that's what's required in Delaware and letting the

20  Delaware courts sort out what happens in that situation.

21         I don't understand, in other words, why the

22  Trustee isn't an additional party in some capacity, given

23  that he is, at a minimum by everyone's standards, the true

24  beneficial owner here.

25         And given the Trustee's response and I think then

1   the response by the Movant, why the Trustee wouldn't be

2   granted exclusive authority to direct counsel with respect

3   to all litigation and settlement matters, because if he is

4   -- if this, in fact, a directive claim, I think you-all

5   readily admit it's the Trustee's call.

6            So I don't know why we have a fight.  And I would

7   like to hear, maybe for about just a few minutes why there's

8   a fight before we take any evidence about it and then

9   adjourn to see if there really is a fight.  I got it that

10  the Defendants only want to defend this one time, but if, in

11  fact, it's a joint prosecution by both parties, I think

12  that's exactly what happens.  It does need to get prosecuted

13  once.

14           There are insurance issues to be resolved and the

15  insurers need to be able to make their positions, but I

16  don't see the problem with having two Plaintiffs.

17           So let me -- I'm going to start by the Movants and

18  ask whether I'm just missing something entirely, but

19  otherwise.  And then I'll hear from the Trustee, and then

20  I'll hear from the Putative Delaware Defendants.

21           MR. BARRY:  Your Honor, Michael Barry from Grant &

22  Eisenhofer for the Movant.

23           Procedurally and under Delaware law, when there is

24  a derivative claim that is pending, there is a function

25  under which a board of directors were substituted by the

1   Trustee can step in and take over the prosecution of that

2   case.  It's under a case called "*Zapata*."

3          THE COURT:  Right.

4          MR. BARRY:  We have not seen that exercise in the

5   context of a bankruptcy of the Trustee, but in theory, it

6   wouldn't -- in theory under Delaware law that might work.

7          The problem, though, is not that we don't -- we

8   all agree that the real party-in-interest ultimately is the

9   company and the Trustee has the authority over that asset.

10          The issue is the insurance agreement.  Under the

11   language of the insurance agreement, if the Trustee is to

12   cooperate with a previously filed derivative action, they

13   could disclaim coverage, and we don't have coverage counsel

14   making an affirmative representation that they won't

15   disclaim coverage because of that.  And that, therefore,

16   presents the risk that a substantial asset of the estate

17   might not be available if they do something that would

18   intervene in the case and appear as cooperation.

19          So the issue is the insurance policy, and until

20   and unless the insureds stand up and say:  We will not

21   disclaim coverage under that provision of the insurer versus

22   insurer because if they get involved, then we have that

23   risk.  And it's the risk we're trying to avoid.

24          THE COURT:  Are the insurers here today?

25          MR. BARRY:  I don't think the insurers are

1  represented here today.  I think they're people are being
2  paid by the insurers who are providing defenses to the
3  underlying Defendants.

4          THE COURT:  Right, but they can't deal with --

5          MR. BARRY:  But they're not coverage counsel.

6          THE COURT:  -- they can't deal with coverage
7  questions, yeah.

8          MR. BARRY:  And that's the issue, Your Honor.

9          THE COURT:  Okay.  So, in fact, other than the
10  insurance issue, you would have no objection to the Trustee
11  taking action?

12          MR. BARRY:  I would have no objection to the
13  Trustee, if the insurance gets involved and doesn't disclaim
14  coverage, then the Trustee would have whatever rights it has
15  under *Zapata* to step in.

16          THE COURT:  Well, can't he just move to step in
17  without your client's consent?

18          MR. BARRY:  Because the language of the insurance
19  policy would then implicate the cooperation with the
20  pre-existing lawsuit.  That's the problem.  They can't file
21  their own lawsuit because it would be barred by the statute
22  of limitations and they arguably can't intervene in our
23  lawsuit because it would disclaim coverage.

24          THE COURT:  Can we do a DEC action?

25          MR. BARRY:  Against the insurance companies?  One

1  could do a DEC action against the insurance companies, but

2  it seems more efficient to lift the stay, get the dismissal

3  struck under Rule 60, under Delaware Rule 60, prosecute the

4  case and the money goes to the estate.

5  　　　　　THE COURT:  Yeah.  I guess I'm not convinced you

6  won't run into the exact same kind of problem, but let me

7  hear from the Trustee about whether he can intervene.

8  　　　　　MR. SHANNON:  Good morning, Your Honor.  R.J.

9  Shannon for the Trustee.

10  　　　　　That's exactly the Trustee's position.  We don't

11  believe that it necessarily will lose the insurance if we

12  intervene or we take these other procedural steps.  But the

13  Trustee has looked into this question a lot.  He has, you

14  know, through counsel analyzed things, and in his business

15  judgment believes that it would at least place a risk.  And

16  if not a risk of actually -- or even if it wasn't a loss,

17  we'd put a risk of --

18  　　　　　THE COURT:  Well, who would make the decisions if

19  he doesn't intervene?  Is he going to be the exclusive one

20  making decisions or is he derogating that to the Plaintiff?

21  　　　　　MR. SHANNON:  He would be --

22  　　　　　THE COURT:  I don't know that under the law I can

23  allow him to derogate the decisions.

24  　　　　　MR. SHANNON:  Your Honor, I will say that under

25  Delaware law, to settle a derivative action requires, you

1  know, court approval from the Delaware Court of Chancery,

2  that analyzes it in exact same way the Bankruptcy Court

3  does.

4          THE COURT:  Yeah, I don't think a Bankruptcy Court

5  can allow a Trustee to abandon his supervisory

6  responsibilities, if it's his asset.  I may be wrong about

7  that, and I'm willing to listen to argument about that or

8  have it briefed, but wouldn't we solve the problem of that

9  if the insurers were brought in?

10          MR. SHANNON:  It's possible, Your Honor.

11          THE COURT:  All right.  Who wants to take --

12          MR. NOVOD:  Your Honor, just pardon for speaking

13  with my colleague, as well, but -- Gordon Novod for the

14  Record.

15          I mean, there are cases where Chapter 7 Trustees

16  have -- at least in Chapter 7 cases, creditors have been

17  able to bring cases derivatively and have decision-making

18  authority over litigation.  It may not have happened in this

19  jurisdiction, but it's happened elsewhere.  We addressed

20  some of those in our papers and I can come back to Your

21  Honor, perhaps after five minutes with citations, but there

22  are actually cases that do that.

23          So it's not as if it hasn't happened before that a

24  Chapter 7 Trustee has not been the one to bring an avoidance

25  action or another action on behalf of its estate, and

1  ultimately have decision-making authority for it.  There

2  were certain cases --

3            THE COURT:  So who would have decision-making

4  authority for it?

5            MR. NOVOD:  Pardon?

6            THE COURT:  Who would have decision-making

7  authority?

8            Good morning.  Well, in certain of those cases it

9  was actually the litigant who had the decision-making

10  authority and you know, it's not as if, you know, this is --

11  to launch into hopefully not extended argument, but you

12  know, if one thinks of this in a case where you actually

13  have, you know, derivative standing or you have a Creditors

14  Committee in a Chapter 11 case, you know, oftentimes a

15  Debtor, depending on what the applicable authority here in

16  Louisiana, but you know, the applicable Debtor will retain a

17  party to at least be a part of that process.

18            But in a Chapter 7 it's not all the same, and this

19  is, in particular, a case where the Chapter 7 Trustee is not

20  necessarily disabled, but in a way disabled because of the

21  risk of the D&O policy and the way in which this language,

22  which this is -- I've compared the language in this D&O

23  policy to others that we've seen before.  It's a little bit

24  unusual in the way that it's drafted and written.

25            And you know, just to circle back, though, you

1  know, like the Trustee's counsel said, you know, this --

2         THE COURT:  I don't think it's -- I mean, I really

3  don't think it's my job to gang up on an insurance company

4  and I don't know why we're not bringing the insurance

5  company in and hearing what they have to say.  It may very

6  well be my job to rule against them, you know, or to rule

7  for them, but this almost sounds like you're asking me to

8  participate in the way around an insurance defense and that

9  doesn't sound like what I ought to be doing.

10        MR. NOVOD:  Well, what you should be doing, Your

11  Honor, and that's not the intent.  But you're here to -- you

12  know, at least the Chapter 7 Trustee's job is to maximize

13  value and to collect assets and to distribute that value.

14        THE COURT:  Well, that's his job.  That's not my

15  job.

16        MR. NOVOD:  That's right.  But one of them --

17        THE COURT:  My job is to enforce the law, so.

18        MR. NOVOD:  Right, but one of the maxims in the

19  Bankruptcy Code is to preserve value and maximize the value

20  of the estate for the benefit of creditors.

21        THE COURT:  That's not my job.  That seriously is

22  not my job.  I know some bankruptcy judges say that's their

23  job.  That is not my job.  My job is to rule fairly under

24  the law and sometimes that means Trustees lose.

25        If I'm supposed to always maximize the estate, I

1   don't need to hold trials.  I'll just sign Judgments for

2   Trustees all day long.  That's not my job.

3            MR. NOVOD:  No, but this is -- this is -- right.

4   I respect Your Honor in that position that you're stating,

5   but you know, the fact is here that you have a Trustee who

6   but for the particular language of the D&O policy would not

7   be able to bring the actions.  And you know, there is a --

8   you know, there is an action that's out there.  Courts have

9   authorized non-chapters --

10           THE COURT:  That doesn't belong to your client,

11  though.

12           MR. NOVOD:  -- it's a derivative --

13           THE COURT:  I mean, you really are asking me to

14  say that something that doesn't belong to your client that

15  we're going to proceed on that basis.

16           That may be the right way to go, but I don't think

17  I'm going to be anywhere close to prepared to do that

18  without bringing in the insurers.

19           MR. NOVOD:  Okay.

20           THE COURT:  Let me hear from anyone on --

21           MR. LEE:  Your Honor, Kyung Lee for the Record.

22           Mr. Sommers and I were just talking as other

23  parties were making their presentation.  One of the things

24  he is telling me is that in light of the things going on

25  today, he thinks that maybe the relief could be a little

1   narrower today, number one, just to lift the stay so that

2   the appeal can be prosecuted, and then in the meantime,

3   number two, the Trustee is saying:  We'll do what you want

4   us to do, which is we'll bring a DEC action in the

5   Bankruptcy Court to see if, in fact, we can intervene and --

6           THE COURT:  That's the same problem.  I don't see

7   how I can authorize somebody that doesn't own it, to

8   prosecute it.  The Trustee owns it.

9           MR. LEE:  I understand what you're saying.  And

10   let me tell you, Your Honor, we've been struggling with this

11   issue.  It's a very hard issue for the Trustee.

12           THE COURT:  I got it, and I'm not saying he's not

13   doing his job.  I think he is doing his job.  I've got to do

14   my job.

15           MR. LEE:  Understood.

16           THE COURT:  And I think that means I've got to

17   give the insurers an opportunity to be here.  It may not

18   require a full DEC action.  But just as I don't want to take

19   action without the insurers here is inappropriate.  I also

20   don't think the insurers ought to be able to get out of

21   coverage on a technical basis, and I need to hear their

22   arguments.

23           MR. LEE:  Understood.

24           THE COURT:  Let me hear from anybody on this side

25   that thinks we shouldn't bring in the insurers before we

1   make a decision.

2           MR. BOLAND:  You know, good morning again.  Jason

3   Boland on behalf of certain of the former D&Os of Erin

4   Energy.  Obviously I do not represent the insurance

5   carriers, so I don't know what their position would be, but

6   there's been a couple of statements about, you know, we

7   whole-heartedly agree with who owns this cause of action.

8   Obviously I think we all agree on in this room, but you

9   know, let's not lose sight of our initial objection to this

10  whole process, you know, is that they've asked to lift the

11  stay.  This isn't a derivative standing motion or a quest or

12  anything like that, so we're one step removed of what they

13  are even asking for at this point.

14          If Your Honor grants the stay relief, which we

15  don't think is appropriate.  There is no evidence, there

16  will be no evidence about that.  You would be granting the

17  stay to allow a Plaintiff to prosecute a cause of action to

18  which he does not own or control, Your Honor.

19          So I think there's a fundamental procedural issue

20  that's missing here to begin with.  I think Your Honor's

21  suggestion about a DEC action seems like a workable idea,

22  Your Honor.  We were a little surprised that the Trustee was

23  allowing or consenting to this process that would basically

24  delegate his fiduciary duties out to a third party, when you

25  know, no one has reached out to us or to insurance counsel

1  to see if they had a position.  We've had two hearings on

2  advancement of defense costs with respect to this same

3  answer.  The issue has never been raised.  No one has

4  reached out to us to talk about potential resolution or

5  settlement to see if that might be an option before we even

6  go down this path.

7         THE COURT:  They don't have to -- they don't have

8  to do that.

9         MR. BOLAND:  They don't have to, Your Honor.

10        THE COURT:  I'm here on a fairly narrow question

11  and I'm not going to make them settle with your clients.

12        MR. BOLAND:  And I don't know that we will settle,

13  Your Honor, but my point was there are other options before

14  fiduciary duties and rights to a cause of action or just

15  hand it off to a third party.

16        THE COURT:  So look, it's not beyond the scope of

17  what I might do once there was notice to the insurers.  If

18  there's a need to preserve the Delaware cause of action,

19  it's not beyond what I could do to order the Trustee to

20  intervene over the objection, which obviously we have of the

21  Plaintiff here, and to find that the Trustee's mere

22  intervention couldn't possibly be a breach of coverage.

23        But I wouldn't do that without having them here.

24        MR. BOLAND:  Sure.  We understand.

25        THE COURT:  And that would be an intervention just

1   solely to try and get the Rule 60 relief, not the

2   substantive relief.  Substantive relief might come after the

3   full DEC action.  So I'm not trying to get in the way of

4   getting this litigated, but the odds of me doing something

5   without the insurers here, I don't think is fair.

6           And I also understand, sort of, the unfairness of

7   what I'm saying, you know?  They're not here.  There's no

8   question in my mind that you, in representing the insured,

9   had to notify the insurers of what's going on, and I got

10  that.  But they're not here in the legal sense and I think

11  they need to be.

12          But I'm not suggesting that I want to put this off

13  for months while we get a DEC action going, and I don't want

14  anybody taking comfort in that.

15          I suspect they've got, in reality, plenty of

16  notice because of the way that your reports appropriately

17  would have gone to insurers.  I don't mean that in any

18  pejorative way towards them or towards any of the litigants,

19  but it's not going to be a surprise.  I will act quickly.

20  I'm here.  I got no vacations planned in the near future.

21      (Laughter)

22          THE COURT:  And -- but I just -- I'm not going to

23  do it without them here having an opportunity to speak, I

24  don't think, and so I'll -- let me -- if anybody else wants

25  to speak, that's fine; otherwise, I want you-all to take a

1  break and see if there's an organized way to get this done

2  with the appropriate people here.

3          Mr. Novod?

4          MR. NOVOD:  Your Honor, just I wanted to give the

5  citation I spoke of a minute ago.

6          THE COURT:  Thank you.

7          MR. NOVOD:  It was cited in paragraph 23 of our

8  papers, our reply that we filed, but it's *In re:  Pursue*

9  *Capital Management*, Bankruptcy Court, District of Delaware

10 case, 2018 Westlaw 6841364, and that's a case in which a

11 party, you know, -- and it distinguished the *In re: Cooper*

12 case that was cited by the D&O Defendants here, but you

13 know, in that particular case, they allowed a non-Debtor --

14 excuse me, a non-Chapter 7 Trustee and a Chapter 7 Trustee

15 context to pursue claims.

16         THE COURT:  Okay.  I think it's --

17         MR. NOVOD:  That all being said, Your Honor, the

18 last thing I would just highlight for the Record --

19         THE COURT:  -- pretty difficult to do.

20         MR. NOVOD:  The last thing I would just highlight,

21 Your Honor, is that, you know, it again, one, we move for

22 lifting the stay and permitting us to pursue claims on

23 behalf of estate whether one calls that a derivative

24 standing motion or not, it is what it is.

25         THE COURT:  I'm going to characterize it for what

1 it is.  I'm not looking to get you to file a new motion.  I

2 think it's unfair not to have the insurance here.

3          MR. NOVOD:  Fair enough, Your Honor.  Thank you.

4          THE COURT:  Thank you.

5          Can I get you-all to take a break and then come

6 back in in a few minutes?  I don't care if it's five minutes

7 or if it's 30 minutes.  Tell me when you're ready to make a

8 report.  If the report is that the parties want to proceed

9 with the evidentiary hearing today, we will do that.

10          But I'm going to take the evidence after I take my

11 other 9:00 o'clock hearing, so all I'm going to really take

12 is a status report when you-all are ready.

13          Thank you.

14          MR. NOVOD:  Thank you.

15      (Recess taken from 9:48 a.m. to 10:00 a.m.)

16                     AFTER RECESS

17          MR. LEE:  Your Honor, I told everybody that you

18 will take them up after this witness, or do you want us

19 to --

20          THE COURT:  No.  If you have an announcement to

21 make, let's go ahead and take the announcement right now,

22 then we'll start this witness so she won't be interrupted.

23          Mr. Novod, what's your deal?

24          MR. NOVOD:  Your Honor, again Gordon Novod for the

25 Record.

1          With respect to the two motions today, we're going

2  to be adjourning them to a date to be determined in the

3  future.  I think it's anticipated that a declaratory action

4  will be brought.  I'm going to let the Trustee's counsel

5  speak to that directly.

6          THE COURT:  All right.  Is there any objection to

7  an adjournment of these motions pending the filing of a

8  declaratory -- either full or partial declaratory judgment

9  action?

10          MR. FRITZ:  Your Honor, Michael Fritz for the

11  Record.

12          I just wanted to state that I think at this point

13  what might be prudent is before we immediately file the DEC

14  action is that we send a letter to each of the three

15  insurers asking if they'll simply stipulate to the

16  non-application of the IDI Exclusion.

17          And what we had envisioned is that we would send

18  that letter by Wednesday of next week, give them a week to

19  respond and I think as soon as possible after that week when

20  we have a case or controversy we can risk a DEC action on,

21  we will go ahead and file it.

22          THE COURT:  I'm not requiring you to do any of

23  those things, but I don't understand why you wouldn't.

24          MR. FRITZ:  Understood, Your Honor.  Thank you.

25          THE COURT:  All right.  Anybody else need to make

1   any announcements?

2        (No audible response.)

3            THE COURT:  Okay.  The two motions that are on

4   schedule for today are indefinitely abated, but we will

5   terminate the abatement quite quickly on motion by a party

6   that it's time to proceed with them.

7            So I anticipate if I receive such a motion, ruling

8   on it in an emergency basis, and I would encourage that any

9   such motion include a Certificate of Conference as to

10  whether there is an agreement about the termination of the

11  abatement.

12           Thank you.

13       (The parties thank the Court.)

14       (Hearing concluded at 10:02 a.m.)

15                          *  *  *  *  *

16           *I certify that the foregoing is a correct*

17  *transcript to the best of my ability produced from the*

18  *electronic sound recording of the proceedings in the above-*

19  *entitled matter.*

20  */S/ MARY D. HENRY*

21  *CERTIFIED BY THE AMERICAN ASSOCIATION OF*

22  *ELECTRONIC REPORTERS AND TRANSCRIBERS, CET**337*

23  *JUDICIAL TRANSCRIBERS OF TEXAS, LLC*

24  *JTT TRANSCRIPT #59985*

25  *DATE FILED:  FEBRUARY 27, 2019*