**THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **ERIN ENERGY CORPORATION, *et al.,*[1]** | § | **Case No. 18-32106** |
| | § | |
| **DEBTORS.** | § | **(Chapter 7)** |
| | § | |
| | § | **(Jointly Administered)** |

**MOTION TO ENFORCE THE AUTOMATIC STAY AGAINST (I) THE DEPARTMENT
OF PETROLEUM RESOURCES OF THE GOVERNMENT OF NIGERIA, AND (II)
THE NIGERIAN MANGER\RECEIVER, FOR ACTUAL DAMAGES FOR VIOLATION
OF THE AUTOMATIC STAY AND THE CRUDE OIL ORDER, PUNITIVE DAMAGES
AND FEES AND COSTS PURSUANT TO BANKRUPTCY CODE § 105, 362 541 AND
BANKRUPTCY RULE 9014**

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE.  IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY.  YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU.  YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED.  IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU.  IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING.  UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

TO THE HONORABLE MARVIN ISGUR, UNITED STATES BANKRUPTCY JUDGE:

---

[1] The last four digits of Erin Energy Corporation's federal tax identification number are 9798.  The other Debtors in these cases are: Erin Energy Limited; Erin Energy Kenya Limited; and Erin Petroleum Nigeria Limited.  The Debtors' service address was: 1330 Post Oak Blvd., Suite 2250, Houston, TX 77056, but all correspondence regarding the Debtors should be addressed to the chapter 7 trustee Ronald J. Sommers, Nathan Sommers Jacobs, 2800 Post Oaks Blvd, #6100, Houston, Texas 77056.

Ronald J. Sommers, chapter 7 trustee (the "Trustee") for the estates of Erin Energy Corporation ("Erin Parent" or the "Company") and Erin Petroleum Nigeria Limited ("EPNL"), and the following holders of allowed chapter 7 administrative claims, Kasowitz Benson Torres LLP, Diamond McCarthy LLP, Stout LLP and Moyes & Co. (collectively, the "Chapter 7 Administrative Claimants" and together with the Trustee, the "Movants") file this Motion to Enforce the Automatic Stay Against (I) the Department of Petroleum Resources of the Government of Nigeria, and (II) the Nigerian Manager\Receiver, For Actual Damages for Violation of the Automatic Stay and the Crude Oil Order, Punitive Damages and Fees and Costs Pursuant to Bankruptcy Code §§ 105, 362 and 541 and Bankruptcy Rule 9014 (the "Motion"), and would respectfully represent to the Court as follows:

## JURISDICTION

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief sought herein are Bankruptcy Code §§ 105(a), 342, 362, 541, 1109 and Bankruptcy Rule 9014[2].

4.      The automatic stay provision of 11 U.S.C. § 362 applies extraterritorially and protects a bankruptcy court's *in rem* jurisdiction globally by way of *in personam* jurisdiction over

---

[2] In re Ballard, 502 B.R. 311 (Bankr. S.D. Ohio 2013)(the court agrees with the other judges within the Sixth Circuit and the majority of other courts who have addressed the issues and hold that an adversary proceeding is not required to recover damages for violations of the automatic stay).

those taking action that the stay prohibits. *In re Bernard L. Madoff Inv. Secs. LLC*, 474 B.R. 76 (S.D.N.Y.2012) (a foreign creditor's filing of a declaratory judgment action in a foreign jurisdiction on the merits of a bankruptcy preference action it violates the automatic stay, and the bankruptcy court can enjoin the creditor and its agents from filing any further proceedings against the trustee, the debtor's estate, or the estate's assets in any domestic or foreign jurisdiction); *In re Lykes Bros. S.S. Cp.*, 191 B.R. 935, 936 (Bankr. M.D.Fla. 1995); cf. *In re Lykes Bros. S.S. Co. v. Hanseatic Marine Serv.*, 207 B.R. 282, 288 (Bankr. M.D. Fla. 1997).

5.      Congress expressed its intent that the bankruptcy courts have jurisdiction over a bankruptcy estate's property "*wherever located and by whomever held*." (emphasis supplied) 11 U.S.C § 541(a); 28 U.S.C. § 1334(e); 28 U.S.C. § 157(a); 28 U.S.C. §151; see H. R. Rep. No. 82-2320 at 15 (1952) reprinted in 1952 U.S.C.C.A.N. 1960, 1976 (stating that the addition of the "wherever located" language to the statute "ma[de] clear that a trustee in bankruptcy is vested with the title of the bankrupt property which is located without, as well as within, the United States."). Just as this congressional intent expressed in federal statute establishes the extraterritoriality of the automatic stay, the *same congressional intent establishes the extraterritoriality of the Bankruptcy Court's injunctive power to enforce the Bankruptcy Code under § 105(a)*. 11 U.S.C. §105(a), 362(k); 474 B.R. at 85. See *e.g., Thurmond v. Rajapakse (In re Rajapakse)*, 346 B.R. 233, 235-36 (Bankr. N.D. Ga. 2005)

6.      Movants are entities whose grievances fall within the zone of interest protected by §362 of the Bankruptcy Code and therefore have standing to bring this Motion. The claims set forth by the Movants in this Motion are not abstract question or a generalized grievance more properly addressed by the legislative branch. *St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d

533 (5th Cir. 2009) (When 11 U.S.C. § 1109(b) is read in conjunction with §362(k), it becomes clear that Congress did not enact §362(k) solely for the benefit of the debtors. The Fifth Circuit held that debtors and creditors are entities whose grievances fall "within the zone of interests" protected by §362(k)).

## INTRODUCTION OF KEY PLAYERS AND KEY DATES

7.      The United States Trustee appointed Ronald J. Sommers as the chapter 7 trustee (the "Trustee") for the Debtors Erin Energy Corporation and its 3 sister subsidiaries (the "Erin Debtors") on July 13, 2018 (the "Chapter 7 Petition Date" or "Conversion Date").

8.      The Erin Debtors originally sought to reorganize under chapter 11 of the Bankruptcy Code by filing for relief under chapter 11 on April 25, 2018 (the "Chapter 11 Petition Date") with the Bankruptcy Court.

9.      The Chapter 7 Administrative Claimants are professionals retained by the Trustee to assist him with the liquidation of the Erin estates. They collectively have allowed interim chapter 7 administrative claims in the aggregate amount of $748,628.89.[3]

---

[3] See Order Granting First Interim Application for Allowance of Compensation and Reimbursement of Expenses of Moyes & Co. in the amount of $62,310.00 [Dkt. 524]; Order Granting Stout Risius Ross, LLC's First Interim Application for Allowance of Compensation and Reimbursement of Expenses in the amount of $91,795.75 [Dkt. 525]; Order Granting First Interim Application for Allowance of Compensation and Reimbursement of Expenses of Kasowitz Benson Torres LLP in the amount of $349,789.04 [Dkt. 526]; and Order Granting First Interim Application for Allowance of Compensation and Reimbursement of Expenses of Diamond McCarthy LLP in the amount of 244,734.10 [Dkt. 527].

4

10.     DPR is the Department of Petroleum Resources, the agency of the Federal Republic of Nigeria ("Nigeria"), with authority over oil and gas operations in Nigeria. DPR was a creditor of EPNL. On Schedule F, the Debtor EPNL scheduled DPR as a creditor in the following manner:

2.3
Dept. of Petroleum Resources,                              $189,784.00 (Not D,U or C)
(DPR)Upstream & Downstream Ops
7 Kofo Abayaomi Street
Victoria Island Lagos
NIGERIA

11.     The Debtors provided DPR notice of the commencement of the Erin Parent and, specifically, EPNL's chapter 11 bankruptcy cases. DPR has had and continues to have knowledge and constructive knowledge of the Erin bankruptcy cases and has been provided notice of the Erin bankruptcy cases since the Chapter 11 Petition Date.

12.     The United States Trustee established October 19, 2018 as the chapter 7 deadline for creditors to file proofs of claims and November 13, 2018 as the chapter 7 deadline for governmental entities to file proofs of claims against the Erin debtors (the "Proof of Claim Deadlines").

13.     DPR did not file a proof of claim in the 4 Erin debtors' chapter 7 cases by the Proof of Claim Deadlines.  DPR is no longer a creditor of EPNL as it failed to file a proof of claim in the chapter 7 case of EPNL or any other Erin debtors.

14.     Zenith is the Debtors' primary secured lender in Nigeria, who has a first lien on all the assets of the Debtor EPNL in Nigeria.

15.     The EPNL/Receiver/Manager appointed by Zenith and whose appointment was authorized by the Crude Oil Order is Chuma Maduekwe, 127 Eti Osa Way, Dolphin Estate, Ikoyi Lagos.

5

16.     DPR undertook to unilaterally and secretly cancel the OMLs 120 and 121 in January 2019, confiscate the Crude Oil on the FPSO and the Proceeds from the Sale of the FPSO in April of 2019, and directed parties to violate the Crude Oil Order on July 1, 2019, long after DPR no longer had a claim against either Erin Parent or EPNL as the DPR, having had actual notice of the Erin Parent and EPNL bankruptcies and conversion of the bankruptcy cases to cases under chapter 7 of the Bankruptcy Code failed to file Proofs of Claims. Therefore, the DPR did not have claims against the Erin Parent and EPNL which it could assert and form the basis of a claim against the OMLs and the Crude Oil. Without a claim, the DPR violated the automatic stay and the Crude Oil Order by directly interfering, without any basis in law or fact, in the efforts of the Manager\Receiver from undertaking his duties to sell the Crude Oil and distribute the Proceeds in accordance with the priority waterfall established in the Crude Oil Order.

## CRUDE OIL ON THE FPSO

17.     The saga of the disposition of the Crude Oil begins long before the Chapter 11 Petition Date[4].  As of the Chapter 7 Petition Date, the Debtor EPNL had been unable to offload and sell 380,000 barrels of oil (the "Crude Oil") contained in a floating production and storage and offloading unit Armada Perdana (the "FPSO" or the "Perdana") 48 miles off the coast of Nigeria since January 30, 2018.

18.     The Trustee and his professionals engaged in over 3 months of extended discussions and negotiations with representatives and counsel for Zenith Bank, Plc ("Zenith"),

---

[4] The dispute among the parties over the Crude Oil has a long history. The Trustee has set forth his understanding of the dispute in his Emergency Motion to Obtain Authority to Market Debtor's Crude Oil in the FPSO Pursuant to Bankruptcy Code Sections 105(a and 363(b) [Dkt. No. 397], 9/24/2018, and Declaration re: First Day Motions by Sakiru Adefemi (Femi) Ayoade[Dkt. No. 5], 4/26/2018.

Nigerian Agip Exploration Limited ("NAE"), Public Investment Corporation Soc. Ltd ("PIC"), Armada Oyo Limited ("AOL") and its affiliate Bumi Armada (Singapore) Pte. Ltd. ("BASPL" and together with AOL, "BUMI"), to settle the disputes among the parties as to the ownership of and division over the proceeds of the sale of the Crude Oil and entered into the Settlement Agreement.

19.     The Trustee conducted all his negotiations at arms-length, in a transparent manner and believed during the entire time and through the date of the hearing on approval of the Settlement Agreement that all parties having rights to the Crude Oil had been identified as set out in the agreement. As set out below, no party objected to the entry of the Crude Oil Order defined below.

20.     During the negotiations prior to the hearing on the settlement, at the hearing on the settlement regarding the Crude Oil, and until a few weeks ago, the Trustee was advised by the parties that the Department of Petroleum Resources (the "DPR") of the Government of Nigeria ("Nigeria") was entitled to and would only seek 12.5% royalties due upon the sale of the Crude Oil and did not oppose the sale of the Crude Oil as long as the parties to the dispute over the Crude Oil agreed. Therefore, the Trustee, and all the parties to the negotiations, assumed that if the Crude Oil sold for $30,000,000.00 hypothetically, the DPR would need to be paid its 12.5% royalty of $3,750,000.00 and budgeted that such amount would be paid from the proceeds (the "Proceeds") of the sale of the Crude Oil under the Settlement Agreement.

21.     Furthermore, during the entire negotiations over the three months, the DPR never raised an issue with the Trustee or, to the best of the Trustee's knowledge, any of the parties, imposed a deadline to sell the Crude Oil by December 31, 2018, or threatened to have the DPR confiscate the Crude Oil if not sold by that time.

22.     After months of tense and difficult negotiations, the parties to the dispute appeared and presented to Judge Isgur in early October 2018, an agreed order regarding the disposition of the Crude Oil and a division of the proceeds from the sale of the Crude Oil.

23.     At the first hearing on approval of such agreement, Judge Isgur worried over the scope of the relief from stay to be granted any party in Nigeria to be appointed by Zenith over the Crude Oil. Judge Isgur wanted to make sure the Nigerian Receiver\Manager and the Trustee did not mistake which asset each was responsible for. The Court agreed that Zenith, the secured lender, would be the only party who would have relief from the automatic stay, that Zenith would appoint the Nigerian Receiver\Manager and, therefore, as an agent of Zenith, the Nigerian Receiver\Manager would have relief from the automatic stay to take action against the Crude Oil, a property of EPNL.

24.     Judge Isgur's inquiries forced Zenith to provide the Court and the parties a clear answer. Such agreement was then incorporated into the order approved by the Bankruptcy Court.

## THE CRUDE OIL ORDER ONLY LIFTS THE AUTOMATIC STAY
## IN FAVOR OF ZENITH

25.     On October 18 2018, the Bankruptcy Court signed an Order (I) Approving Abandonment of Property and (II) Lifting the Automatic Stay on Such Abandoned Property (the (the "Crude Oil Order"). A copy of the Crude Oil Order is attached hereto as Exhibit A.

26.     The Crude Oil Order provides that the Trustee is authorized to abandon any and all interests in "Abandoned Property". Abandoned Property is defined to include the Crude Oil. See Notice of Trustee's Proposed Abandonment of Property, p.2, Dkt. No.471 (October 16, 2018) attached hereto as <u>Exhibit A-1</u>. The second paragraph of the Crude Oil Order specifically provides that the automatic stay is lifted **<u>ONLY</u>** in favor of Zenith:

> 2.  Notwithstanding anything to the contrary, the automatic stay provided in section 362 of the Bankruptcy Code, to the extent applicable, is hereby modified, lifted and/or otherwise terminated to allow Zenith Bank Plc ("Zenith") to exercise all remedies, if any, against or in respect of the Abandoned Property . . .

27.     The Crude Oil Order specifies that it is only Zenith who "shall irrevocably instruct any Receiver/Manager that is appointed that the Receiver/Manager must not exercise any control or dominion over any asset that is not Abandoned Property." Crude Oil Order, ¶ 2, page 2.

28.     The Crude Oil Order also specifies how the [Proceeds] from the disposition of the Crude Oil are to be handled by the Receiver/Manager to be appointed by Zenith, no one else. Crude Oil Order, ¶ 3, page 2.

29.     The Crude Oil Order further appoints the Zenith Receiver/Manager as the Escrow Agent, who will be the sole person entitled to handle and distribute the Proceeds. Crude Oil Order, ¶3.a.-h., pp. 2-4.

30.     The Court and the parties recognized that the sale of the Crude Oil would not take place immediately. Therefore, the parties built into the Crude Oil Order protections for BUMI in the event the Crude Oil was not sold prior to November 30, 2018, reserved parties' right to assert claims against the Crude Oil, and, the Court, specifically "reserve[d] its jurisdiction to interpret and enforce this Order." Crude Oil Order, ¶ 7, p. 5.

31.     The Crude Oil Order established and implemented a negotiated waterfall of distribution of the Proceeds from the sale of the Crude Oil. After payment of two royalties, one to the DPR and to CINL, the Crude Oil Order provided that the Trustee would receive the next $600,000.00 of the Proceeds from the sale of the Crude Oil. The condition precedent for the distribution was that each of the 4 Trustee professionals (the other 4 Movants) had to have submitted and have approved their fee applications (as the $600,000.00 would be used by the Trustee to pay these professionals).

32.     The Movants file this Motion because the DPR has announced that it is not complying with the Crude Oil Order and therefore the DPR  and the Nigerian Manager\Receiver are in  violation of the Crude Oil Order, and, by DRP taking action against the Crude Oil, property of EPNL, or such portion of the Crude Oil which constitute the $600,000.00, has violated the Crude Oil Order and the automatic stay of 11 U.S,C. § 362(a). Movants ask that the Court award actual damages of $600,000.00 against DPR and the Nigerian Manager\Receiver jointly and severally, and award Movants attorneys' fees and costs.

**THE PARTIES IN NIGERIA SEEK TO IMPLEMENT
THE CRUDE OIL ORDER**

33.     The DPR and the creditor parties met several times after entry of the Crude Oil Order in October 2018. The parties met on December 13, 2018, December 14, 2018 and on January 29, 2019. The two important topics in December 2018 and January 2019 were which parties would bear the cost of the Manager\Receiver and what BUMI was entitled to in light of the Crude Oil not having been sold by December 31, 2018.

34.     The creditor parties never reported or mentioned a threat by the DPR to confiscate the Crude Oil if the Crude Oil was not sold by December 31, 2018.[5]

35.     In fact all parties worked towards finalizing the Terms of Settlement (the "TOS") to be supplied to the DPR on Monday February 11, 2019, and, for the creditor parties to be available to sign the TOS on February 11, 2019. The idea behind TOS was to create a document that could be signed by the creditor parties and the DPR in Nigeria consistent with the Crude Oil Oder to implement the sale of the Crude Oil in Nigeria.

36.     The creditor parties did not and could not have intended the TOS to be a new agreement, as the Crude Oil Order circumscribed the actions that could be taken by Zenith and by the creditors of the Debtors.

37.     Notwithstanding efforts by the creditor parties, the DPR did not respond. The February 11, 2019 meeting did not take place.

38.     Except for PIC obtaining approval for the TOS past the February 11, 2019 deadline, the creditor parties maintained the status quo position waiting for a response to a request for a meeting with the DPR.

39.     The DPR did not meet with the creditor parties in February of 2019 to approve the TOS or discuss the offload of the Crude Oil.

---

[5] A review of reports from attendees at the meeting by the Movants reveals that the topic of cancellation of the OMLs and the confiscation of the Crude Oil takes place for the first time at a meeting on April 9, 2019, wherein the DPR representative made known the position of the DPR and the secret actions the DPR had undertaken to retroactively back in January 2019 to cancel OMLs 120 and 121 as to either Allied only or as to Allied/CAMAC/Erin.

40.     The creditor parties continued to maintain the status quo again pending a response by the DPR to meet with them through March 2019. By this time, the TOS had been agreed to by all the parties and was waiting approval by the DPR.

41.     On March 20, 2019, the creditor parties circulated the notes from the previous meetings with the DPR and engaged in a series of teleconferences with representatives of the DPR.

42.     On March 26, 2019, Mr. Amadasu at the DPR informed the creditor group that the earliest he could meet with them was April 9, 2019 because he was travelling outside of Nigeria for official meetings.

43.     In March, Mr. Amadasu did not mention that the DPR had terminated OMLs 120 and 121 effective as of January 1, 2019 and taken actions internally at the DPR to confiscate the Crude Oil.

## DPR CANCELS THE OMLS AND CONFISCATES THE CRUDE OIL

44.     On or about April 9, 2019, senior officials of the DPR (including the Private Secretary to the Director of the DPR) met at the offices of Mr. Amadasu and the following creditor parties were present: 1. NAE (Thompson Okpoko), 2. Zenith (Senior Officials from Zenith Bank and Kenna Partners) 3. The Receiver Manager, and 4. BUMI (Mr. Jag the Operations Manager and F. O Akinrele & Co.).

45.     At the April 9, 2019 meeting, the DPR announced that the Ministry of Petroleum of Nigeria revoked OMLs 120 and 121. According to the DPR, had the parties concluded the offtake of the Crude Oil in December 2018, the DPR would not have taken this action,

46.     According to the DPR, a) the OMLs 120/121 no longer belonged to Allied/CAMAC/Erin and the Federal Government of Nigeria was free to invite any new bidder or

bidder in respect of a restart of both blocks; b) the Crude Oil is technically no longer available for distribution to the creditor parties and the Federal Government of Nigeria can unilaterally sell the Crude Oil to defray its royalties owed *from all parties, not just Erin*, and c) the FPSO would be demobilized and relocated under new arrangements to be made by the Federal Government of Nigeria.

47.    Since then, the Trustee and the Administrative Claimants have been told that the creditor parties would be approaching the DPR together. The Trustee drafted and circulated a letter of support for the efforts of the creditors to have the decision of the DPR overturned through negotiations.

48.    The creditor parties have since tried to conduct a meeting with the DPR, which has not occurred.

49.    The DPR has undertaken to sell the Crude Oil, not the Manager\Receiver.

50.    Crude Oil has been contracted for sale to Century Energy Services Limited by the DPR, not the Manager\Receiver.

51.    The DPR has rejected the need even comply with Court orders from Nigerian courts. "In view of the foregoing, the role of the Court appointed Valuer with respect to carrying out inspection and valuation of the crude oil is no longer necessary . . " July 1 Letter from Tolorunse J.A., DPR to The Registrar Federal High Court, attached hereto as Exhibit B.

52.    As of June 17, 2019, beyond the general information about the progress of the demobilization of the FPSO and the court order obtained to authorize the sale of the Crude Oil, the DPR has not to date provided any specific details of either the timing or steps taken thus far with regard to the off-take of the Crude Oil.

**ARGUMENTS AND LAW**

I.     **THE COURT SHOULD ENFORCE THE AUTOMATIC STAY AND IMPOSE SANCTIONS ON DPR AND THE NIGERIAN MANAGER\RECEIVER**

A.     **DPR Violated the Automatic Stay by Unilaterally Terminating the OMLs 120 and 121 in January 2019 and Confiscating the Crude Oil at the April 9, 2019 Meeting**

53.     The filing of a petition for relief under the Bankruptcy Code immediately operates as an automatic stay of "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of [the chapter 11 case]." 11 U.S.C. § 362(a)(1).  It is well established that contract-based claims arise at the time the contract is entered into, rather than upon the occurrence of subsequent events such as termination.  *See In re Chateaugay Corp.,* 102 B.R. 335, 351 (Bankr. S.D.N.Y. 1989) C[w]here the debtors' obligations stem from contractual liability, even a post-petition breach will be treated as a prepetition liability where the contract was executed prepetition") (quoting *In re Chateaugay Corp.,* 87 B.R. 779, 796 (S.D.N.Y.1988), *aff'd on other grounds sub nom.  Pension Benefit Guar. Corp. v. The LTV Corp.,* 875 F.2d 1008 (2d Cir. 1989), *rev'd on other grounds,* 496 U.S. 633 (1990)); *In re Riodizio, Inc.,* 204 B.R. 417, 424 n. 6 (Bankr. S.D.N.Y. 1997) (postpetition breach of a prepetition contract gives rise to only a prepetition claim); *Cohen v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group Inc.),* 138 B.R. 687, 696 n. 12 (Bankr. S.D.N.Y. 1992).

54.     Any act to obtain or enforce a foreign judgment is likewise a violation of the automatic stay.  Under section 362(a)(6) of the Bankruptcy Code, a chapter 11 petition operates as a stay of "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title."  *See, e.g., In re Solutia Inc.,* 379 B.R. 473, 485 n.8

14

(Bankr. S.D.N.Y. 2007) (finding that, as used in section 362(a)(6) of the Bankruptcy Code, "assess . . . can mean to simply determine the size or value of something").

55.     Indeed, without relief from the stay, judicial actions and proceedings against the debtor are void *ab initio. Maritime Elec. Co., Inc. v. United Jersey Bank,* 959 F.2d 1194, 1206 (2d Cir. 1991) (citation omitted).  "Holding that judicial acts and proceedings in violation of the automatic stay are void *ab initio* is consistent with the stay's function of `enabl[ing] the bankruptcy court to decide whether it will exercise its power under section 502(b) of the Bankruptcy Code to establish the validity and amount of claims against the debtor or allow another court to do so, thereby preventing a chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts."' *Id.* at 1207 (quoting *Hunt v. Bankers Trust Co.,* 799 F.2d 1060, 1069 (5th Cir. 1986)) (internal citation and quotation marks omitted).

56.     The Movants seek to have the cancellation of OMLs 120 and 121 and confiscation of the Crude Oil and its sales proceeds (the "Proceeds") by the DPR to repay itself royalties owed to it by those other than EPNL (the "DPR Actions") declared invalid, void *ab initio*. The claims for which the DPR seeks to exercise the remedies of cancellation and confiscation of EPNL's assets arise out of conduct of EPNL that occurred well prior to Conversion Date.

57.     Moreover, DPR's acts in January of 2019 to cancel the OMLs 120 and 121 and then in April of 2019 to confiscate the Crude Oil and the Proceeds of the Crude Oil clearly constitute violations of the Crude Oil Order and the automatic stay because the DPR did not have "claims" against the Debtor after the Chapter 7 Proof of Claim Deadlines, when DPR did not file a proof of claim.

58.     As such, any cause of action seeking to determine the validity of the claims of the DPR against EPNL constitute "a proceeding against the debtor that was or could have been commenced before the commencement of [the chapter 11 case]."   11 U.S.C. § 362(a)(1). Accordingly, each of the causes of action forming the basis of the DPR is subject to the automatic stay, and the DPR Action is void *ab initio.  See Maritime Elec. Co.,* 959 F.2d at 1206.

59.     The directive by the DPR in its July 1, 2019 letter to the Receiver\Manager that he should not interfere with the Crude Oil sales process implemented by the DPR is another violation of the automatic stay and this Court's Crude Oil Order.[6] The demand by the DPR to the Manager\Receiver in this letter directly contradicts the clear wording of the Crude Oil Order. *See Advanced Computer Servs. of Michigan, Inc. v. Mai Sys. Corp.,* 161 B.R. 771, 774-75 (E.D. Va. 1993) (rejecting plaintiff's contention that suits for injunctive relief were equitable in nature (and not judicial actions) and thus exempt from the prohibition on the commencement or continuation of judicial actions set forth in section 362(a) of the Bankruptcy Code); *see also,* 3 COLLIER ON BANKRUPTCY § 362.03[3], at 362-15 (15th Ed. Rev. 2009) ("The stay includes actions seeking injunctive or similar relief as well as actions seeking money judgments").

60.     Under the Crude Oil Order ¶ 3.c. the Trustee is entitled to have Zenith pay from the proceeds of the sale of the Crude Oil $600,000. Indeed, any attempt to restrain a Trustee's ability to exercise his contractual rights is a violation of the automatic stay.  *See, e.g., In re Enron Corp.,* 300 B.R. 201, 212 (Bankr. S.D.N.Y. 2003) ("Courts have consistently held that contract rights are

---

[6] The mere abandonment of the Crude Oil did not lift the stay in favor of DPR.  First, the Crude Oil Order is clear: only Zenith has the stay lifted in its favor.  Second, 11 U.S.C. §362(a)(5), which protects "property of the debtor," still protects the Crude Oil from the DPR. *See Gasprom, Inc. v. Fateh (In re Gasprom, Inc.)*, 500 B.R. 598 (B.A.P. 9th Cir. 2013).

property of the estate, and that therefore those rights are protected by the automatic stay.")
(citations and internal quotations omitted); *Broadstripe, LLC v. Nat'l Cable Television Coop., Inc.
(In re Broadstripe, LLC),* 402 B.R. 646, 657 (Bankr. D. Del. 2009) (same); 3 COLLIER ON
BANKRUPTCY § 362.03[3], at 362-22 (15th Ed. Rev. 2009) ("As property of the estate, the
debtor's interests in [executory] contracts . . . are protected against termination or other
interference that would have the effect of removing or hindering the debtor's rights in violation of
section 362(a)(3).").[7]

61.   The July 1 Letter clearly evinces an intent to violate the intent and the terms and
conditions of the Crude Oil Order, in that the DPR intends not to distribute the $600,000 to the
Trustee.

62.   Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any
order or judgment that is necessary or appropriate to carry out provisions of this title."  11. U.S.C.
§ 105(a).  The Court should, pursuant to section 362(a) and its section 105(a) power, issue an order
(i) declaring the DPR Actions void *ab initio* as a violation of the automatic stay; (ii) declaring that
DPR may not continue to pursue the DPR Actions in violation of the automatic stay; and (iii)
directing DPR immediately to withdraw any rulings, opinions, judgments or findings of any kind
by any tribunal or agency of the government of Nigeria adversely affecting in any way Erin's

---

[7] The right to proceeds pursuant to the Crude Oil Order is property of Erin Energy Corporation and EPNL's estates
and, therefore, are protected by the automatic stay. *See, e.g. U.S. v. Whiting Pools, Inc.,* 462 U.S. 198, 205 n.9 (1983)
("The scope of [section 541(a)(1) ] is broad. It includes all kinds of property, including . . . causes of action.") (quoting
H.R.Rep. No. 95-595, p. 367 (1977); S.Rep. No. 95-989, p. 82 (1978)); *Smart World Technologies, LLC v. Juno
Online Services, Inc. (In re Smart World Technologies, LLC),* 423 F.3d 166, 175 (2d Cir. 2005) ("Property of the
estate . . . includes, *inter alia,* 'all legal or equitable interests of the debtor . . as of the commencement of the case . . .
such as valuable causes of action.') (internal citations omitted). Now, based on conduct of DPR, DPR is interfering in
the estates' interest in $600,000 specifically carved out by agreement of the parties and approved by the Bankruptcy
Court.

interests in and to OMLs 120 and 121 and to the Crude Oil and its proceeds. This step is warranted in light of the harm EEC and EPNL's estates will suffer if DPR continues to pursue the DPR Actions.  If DPR does not cease its pursuit and implementation of the DPR Action, the Movants will be forced to incur substantial costs to seek relief in the Nigerian political and judicial systems.

## B.   The Manager\Receiver  Violated the Automatic Stay by Failing to Comply with the Crude Oil Order

63.     The automatic stay also prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."  11 U.S.C. § 362(a)(3).  Section 541 of the Bankruptcy Code defines "property of the estate" broadly to include "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. §541(a)(1).  Courts, including this Court, have consistently held that contract rights are property of the estate and any rights of the debtor thereunder are therefore protected by the automatic stay. *In re Baltimore Marine Indus.,* 476 F.3d 238, 240 (4th Cir. 2007) ("[a]mounts owed to the debtor under existing contracts are included within the estate"); *In re Enron Corp.,* 300 B.R. 201, 212 (Bankr. S.D.N.Y. 2003) ("contract rights are property of the estate . . . [and] are protected by the automatic stay"); *In re Enron Corp.,* 2006 WL 3140640, *4 (Bankr. S.D.N.Y. Oct. 3, 2006) ("[a] Termination Payment owed [to the debtor] is property of the debtor's estate").

64.     Pursuant to the terms of the Settlement Agreement approved by the Bankruptcy Court pursuant to the Crude Oil Order, the chapter 7 estate of EPNL is entitled to a payment of $600,000.00 as a third high priority claimant from the proceeds of the sale of the Crude Oil. The chapter 7 estate is entitled to payment of $600,000.00 upon the sale of the Crude Oil, as a third priority creditor  after the DPR has been paid its 12.5% of Royalties associated with the sale of the Crude Oil on the FPSO and 2.5% of the proceeds have been escrowed for CINL.

18

65.     The condition precedents have been met for the Trustee to be paid the $600,000. The Crude Oil has been sold. Sufficient proceeds from the sale of the Crude Oil exists to pay the $600,000.

66.     The purchaser of the Crude Oil is Century Energy Services Limited. ("CESL") CESL either holds such funds or has had such funds transferred to the DPR.

67.     Pursuant to ¶ 3 of the Crude Oil Order, "all of the proceeds (the "Proceeds") from any disposition shall be distributed to Zenith as an escrow agent. Zenith again is also the distribution agent for all the Proceeds.

68.     DPR's refusal to pay the Proceeds of the Crude Oil sale to Zenith is a violation of the Crude Oil Order.   Moreover, DPR's acts to confiscate the Proceeds constitute an act to "exercise control over property of the estate" and is prohibited by the automatic stay.   The Court should enter an order declaring the confiscation of the Proceeds of the Crude Oil sale (and especially the $600,000.00) as acts of DPR in violation of the Crude Oil Order and the automatic stay of Bankruptcy Code § 362(a) and directing the DPR, Zenith the Manager\Receiver or persons in control and in charge of such persons to immediately comply with all the terms and conditions of the Crude Oil Order and make all payments due to Zenith and the Trustee with respect to the Proceeds from the sale of the Crude Oil pursuant to the Crude Oil Order.

**C.     In the Alternative, DPR and the Receiver\Manager The Should be Held in Contempt for Violating the Stay and Court Should Impose Actual, Punitive and Fees and Costs Against Them**

69.     The automatic stay is one of the most fundamental debtor protections provided by the Bankruptcy Code.  *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Prot.,* 474 U.S. 494, 503 (1986).  It is well settled that Congress intended the scope of the automatic stay to be broad in

order to effectuate its protective purposes.  H.R. Rep. No. 95-595 at 340 (1977); S. Rep. No. 95-989 at 49 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5987, 6296-97; *see also In re Drexel Burnham Lambert Group Inc.,* 113 B.R. 830, 836 (Bankr. S.D.N.Y. 1990).  The automatic stay "centralize[s] all disputes concerning property of the debtor's estate in the bankruptcy court so that reorganization can proceed efficiently."  *Enron Corp. v. California ex rel. Lockyer (In re Enron),* 314 B.R. 524, 534 (Bankr. S.D.N.Y. 2004) (quoting *Shugrue v. Air Line Pilots Assoc., Int'l. (In re Ionosphere Clubs, Inc.),* 922 F.2d 984, 989 (2d Cir. 1990)); *Teachers Ins. & Annuity Ass 'n of Am. v. Butler,* 803 F.2d 61, 64 (2d Cir. 1986); 3 Collier on Bankruptcy ¶ 362.03 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2002).

70.    All actions taken in violation of the automatic stay are void and parties may be held in contempt. Contempt proceedings are the proper means of compensation and punishment for willful violations of the automatic stay.  *Mar. Asbestosis Legal Clinic v. LTV Steel Co., Inc. (In re Chateaugay Corp.),* 920 F.2d 183, 186-187 (2d Cir. 1990) (citing *Crysen/Montenay Energy Co. v. Esselen Assoc., Inc. (In re Crysen/Montenay),* 902 F.2d 1098, 1104 (2d Cir. 1990)).  *In re Sarno,* 1980 Bankr. LEXIS 4976 at * 5 ("creditors and their attorneys who obtain judgments and judgment liens in violation of the automatic stay provisions may be held in contempt.") *(citing In re Seafarer Fiberglass Yachts, Inc.,* 1 B.R. 358 (Bankr. E.D.N.Y. 1979).

71.    A finding of civil contempt is appropriate where the stay is knowingly violated in deliberate disregard of the law pertaining to the requirements for relief from stay.  *Fidelity Mortgage Investors v. Camelia Builders Inc.,* 550 F.2d 47, 51, 57 (2d. Cir. 1976).  Where the stay is knowingly violated in deliberate disregard of the Bankruptcy Code, the Court may impose sanctions for actual damages incurred by the estate, including costs and attorneys' fees. *Id.* at 57.

Knowledge of the automatic stay is inferred by knowledge of the debtor's bankruptcy filing.  *See In re Crawford,* 388 B.R. 506, 523 (Bankr. S.D.N.Y. 2008) ("[o]nce a party receives reasonable, actual notice of a bankruptcy filing, that party has the responsibility to ensure the stay is not violated").   It is incumbent upon parties who learn of a bankruptcy filing "to seek further information as to the applicability and scope of the automatic stay and the risk of damages for failure to obtain leave or clarification from the bankruptcy court."  *Id.*

72.     DPR's conduct is a blatant violation of the automatic stay.  DPR's has been aware of EPNL's bankruptcy since the Chapter 11 Petition Date. DPR was scheduled as an undisputed, non-contingent, liquidated unsecured creditor in EPNL's Schedule of Liabilities (the "Schedules"). DPR has been provided actual notice of EPNL's bankruptcy case.

73.     Notwithstanding its knowledge of the EPNL's bankruptcy, DPR violated over and over again right up to July 1, 2019, the automatic stay by taking the DPR Actions, unilaterally cancelling the OMLs and confiscating the Crude Oil and stating that they would apply all the Proceeds to debts owed to them from Allied/CAMAC and Erin, the Royalties owed from past and present owners of OMLs 120 and 121.

74.     DPR's actions constitute a knowing and willful violation of the Bankruptcy Code's provisions prohibiting "the commencement . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of [the chapter 11 case]," 11 U.S.C. § 362(a)(1), and "any act to obtain possession of property of

the estate or of property from the estate or to exercise control over property of the estate" 11 U.S.C. § 362(a)(3).[8]

75.     Under § 362(k), "an *individual* injured by any willful violation of [the automatic stay] shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."

76.     According to this Court in *In re Noram Resources, Inc.*, 2015 WL 5965654 (Bankr. S.D. Tex. 2015),  the Fifth Circuit has not expressly ruled on this issue, but the majority of circuits and a majority of lower courts within this circuit have held that corporate debtors cannot recover under § 362(k). *Milbank v. Philips Lighting Elec. N. Am. (In re Elcoteq, Inc.),* 521 B.R. 189, 204 n. 8 (Bankr.N.D.Tex.2014) (citing *In re San Angelo Pro Hockey Club, Inc.,* 292 B.R. 118, 124 (Bankr.N.D.Tex.2003). Here the Movants are the chapter 7 trustee and 4 administrative claimants.

77.     Therefore, the Court may invoke its civil contempt powers under § 105(a) to remedy violations of the automatic stay. *Sanchez v. Ameriquest Mortg. Co. (In re Sanchez),* 372 B.R. 289, 309 (Bankr.S.D.Tex.2007). 11 U.S.C. § 105(a) states that a bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Under the plain meaning of the statute, a bankruptcy court may issue a civil contempt order necessary or appropriate to carry out the provisions of the Bankruptcy Code. *See Placid Ref. Co. v. Terrebonne Fuel & Lube, Inc. (In re Terrbonne Fuel & Lube, Inc.),* 108 F.3d 609, 613 (5th

---

[8] Even assuming, *arguendo,* that DPR did not know about Debtors' bankruptcy petitions at the time it decided to take the DPR Actions, such actions are nonetheless void for violating the automatic stay.

Cir.1997). Unlike Noram where the trustee there could only recover under the contempt authority found in Bankruptcy Code § 105(a), the trustee and the Movants possess here a private right of action under Bankruptcy Code § 362(k).

78.     Civil contempt may only be employed in two situations: to coerce the defendant into compliance with a court order and/or to compensate the complainant for losses sustained. *Am. Airlines Inc. v. Allied Pilots Ass'n,* 228 F.3d 574, 585 (5th Cir.2000) (citing *United States v. United Mine Workers of Am.,* 330 U.S. 285, 303–04 (1947)). It *may not* be punitive. A punitive fine, no matter how nominal, may be considered criminal "if the contemnor has no subsequent opportunity to reduce or avoid the fine through compliance." *Int'l Union, United Mine Workers of Am. v. Bagwell,* 512 U.S. 821, 829 (1994). Criminal sanctions are not authorized under the contempt authority of § 105(a). *See Griffith v. Oles (In re Hipp, Inc.),* 895 F.2d 1503, 1521 (5th Cir.1990).

79.     The automatic stay is a self-executing injunction and constitutes a court order for contempt purposes. *Sanchez,* 372 B.R. at 311. A party may be found in civil contempt if it "violates an order of a court requiring in specific and definite language that a person do or refrain from doing an act." *Baddock v. Villard (In re Baum),* 606 F.2d 592, 593 (5th Cir.1979). There is no question that the automatic stay, defined by statute, is specific and definite. In a contempt action based on the automatic stay, the focus "is not on the subjective beliefs or intent of the contemnors in complying with the order, but whether in fact their conduct complied with the order at issue." *Knupfer v. Lindblade,* 322 F.3d 1178, 1191 (9th Cir.2003) (quoting *Hardy v. United States (In re Hardy),* 97 F.3d 1384, 1390 (11th Cir.1996).

80.     The Movants ask that the Court find that the DPR and the Nigerian Manager\Receiver have violated the automatic stay. Once that is found, Movants intend to

23

establish that an award is necessary to coerce compliance with a court order and to compensate for actual damages.

81.     Accordingly, the Movants respectfully request in the first instance that the Court declare the DPR Actions void as a violation of the automatic stay, declare that further pursuit of the DPR Actions by DPR or any one in concert with DPR is in violation of the automatic stay, direct DPR immediately to withdraw any edicts, rulings (both written and oral), judgments or orders issued by the DPR or its authorized agents terminating the ownership interest of EPNL's interest in the OMLs or the Crude Oil and directing all parties in the stream of commerce touching the Crude Oil or its proceeds to turn over to the Trustee the $600,000.00 due to the Trustee under the Settlement Agreement approved by the Bankruptcy Court in the Crude Oil Order, declare DPR's actions in undertaking the DPR Actions a violation of the automatic stay, and hold DPR and the Manager\Receiver in contempt for knowingly violating the automatic stay and not taking sufficient action to stop others from undertaking their responsibilities.   The Movants further request that the Court assess monetary sanctions against DPR and the Manager\Receiver for the attorneys' fees and other costs incurred by the estate in connection with the Motion, in bringing this Motion, and in enforcing its rights under the Settlement Agreement and the Crude Oil Order.

## <u>NOTICE</u>

82.     Notice of this Motion has been given to (i) the United States Trustee for the Southern District of Texas; (ii) all other applicable state and federal taxing authorities; (iii) all other parties known to the Trustee who have asserted or may assert liens, claims or interests in or against any of the Crude Oil; (iv) the Trustee's twenty (20) largest unsecured creditors; (v) all parties that have requested special notice pursuant to Bankruptcy Rule 2002; and (vi) all other

entities known to have expressed an interest in a transaction with respect to all or part of the Crude Oil.

83.    Notice to the DPR has been provided by email notice to them, including the representatives of DPR and other parties and their Nigerian representatives,  Zenith and its Nigerian counsel, PIC and its counsel, BUMI and its counsel, DPR and its counsel and the Nigerian Manager\Receiver and his counsel. Nigeria is not a party to the Hague Convention.

## NO PRIOR REQUEST

84.    No previous motion for the relief requested herein has been made to this or any other court.

## CONCLUSION

85.    Wherefore, the Movants respectfully request that the Court authorize the relief requested against DPR and the Nigerian\Receiver, including but not limited to imposition of an injunction to prohibit any control over the Crude Oil or its sales proceeds, voiding of the take over and confiscation of the OMLs and the Crude Oil, and the directive to implement the waterfall paragraph 3 provision of the Crude Oil Order by the Nigerian Manager\Receiver and Zenith; or, in the alternative, monetary damages in the amount of  US $600,000.00 or such portion of the sales price of the Crude Oil so as to realize the estate US $600,000.00 plus interest, and other reasonable attorneys' fees and costs associated with bringing this action, or, in the alternative, sanction the DPR and the Nigerian Manager\Receiver $1,800,000, trebling the damages caused as punitive damage claims for flagrant, willful violations of the automatic stay provision of 11 U.S.C § 362(a) and such other and further relief as the Court deems just and proper.

Dated: August 8, 2019.

Respectfully submitted,
DIAMOND McCARTHY LLP
*/s/ Michael D. Fritz*
Michael D. Fritz
Texas Bar No. 24083029
mfritz@diamondmccarthy.com
Two Houston Center
909 Fanning, 37th Floor
Houston, TX 77010
Telephone: (713) 333-5100
Facsimile: (713) 333-5199

*Counsel for Ronald J. Sommers, Chapter 7 Trustee for the estates of the Debtors and as an Administrative Claimant*

-and-

KASOWITZ BENSON TORRES LLP

*/s/  Kyung S. Lee*
Kyung S. Lee
TBA No. 12128400
klee@kasowitz.com
1415 Louisiana-Suite 2100
Houston, TX 77002
Telephone: (713) 220-8851
Facsimile: (713) 583-8765

*General Bankruptcy Counsel for Ronald J. Sommers, Chapter 7 Trustee for the estates of the Debtors and as an Administrative Claimant*

-and-

26

STOUT RISIUS ROSS, LLC

*/s/  Loretta Cross*
Loretta Cross
lcross@stout.com
1000 Main Street, suite 3200
Houston, TX 77002
Telephone: (713) 221-5141
Facsimile: (713) 583-8765

*Administrative Claimant*

-and-

MOYES & CO.

*/s/ Christopher P. Moyes*
Christopher P. Moyes
cmoyes@moyesco.com
520 Post Oak Blvd, Suite 275
Houston, TX 77027
Telephone: (281) 501-7100

*Administrative Claimant*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on August 8, 2019, a true and correct copy of the foregoing Motion was served on (i) all parties registered to receive ECF notification in the above captioned case, (ii) all parties with email addresses listed on the Debtor's Master Service List via email, and (iii) all other parties on the Debtor's Master Service List by U.S.P.S. first class mail, postage prepaid.  As to the DPR and the Nigerian Manager\Receiver, the undersigned certifies that file stamped copies were emailed to each by him on August 8, 2019, and will be followed up by mailings through the methods indicated above.


/s/*Kyung S. Lee*
Kyung S. Lee