**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| IN RE: ) | CHAPTER 7 |
| ) | |
| ERIN ENERGY CORPORATION, ) | Case No. 18-32106 |
| ) | |
| Debtors. ) | (Jointly Administered)[1] |

**TRUSTEE'S MOTION TO AUTHORIZE PAYMENTS ON ACCOUNT OF DIP OBLIGATIONS, ALLOWED ADMINISTRATIVE EXPENSES, AND THE ADEQUATE PROTECTION CLAIM ASSERTED BY PUBLIC INVESTMENT CORPORATION SOC. LTD.**

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

Ronald J. Sommers, in his capacity as chapter 7 trustee (the "<u>Trustee</u>") for the estate of Erin Energy Corporation, Erin Energy Ltd., and Erin Petroleum Nigeria Limited (collectively, the "<u>Debtors</u>"), files this Motion (the "<u>Motion</u>") seeking an order authorizing the Trustee to make payments on account of **(a)** the obligations of the Debtors' bankruptcy estates incurred pursuant to the *Final Order (A) Modifying the Interim Order (I) Authorizing the Debtors to Obtain*

---

[1] The jointly administered cases are Erin Energy Corporation (Case No. 18-32106), Erin Energy Ltd. (Case No. 18-32107), and Erin Petroleum Nigeria Limited (Case No. 18-18-32108). At the commencement of the chapter 7 cases, the case of Erin Energy Kenya Limited (Case No. 18-32108) was also jointly administered with the other Erin debtors by the Trustee. The Erin Energy Kenya Limited case was closed on December 17, 2021.

*Postpetition Secured Financing; and (II) Modifying the Automatic Stay; and (B) Granting Other Relief* [ECF No. 296] and the Order Authorizing Certain Payments and Order Converting Cases [ECF No. 297] (the "DIP Obligations"), **(b)** allowed chapter 7 administrative expense claims (the "Chapter 7 Administrative Expenses"), **(c)** allowed chapter 11 administrative expense claims (the "Chapter 11 Administrative Expenses"), and **(d)** the adequate protection claim of Public Investment Corporation Soc Ltd. asserted in Claim No. 46 in the Erin Energy Corporation case for the use of cash collateral (the "PIC Adequate Protection Claim"). Additionally, the Trustee seeks approval to pay additional administrative expenses that are or may become allowed and certain related relief. In support of the Motion, Trustee respectfully states as follows:

## PRELIMINARY STATEMENT

1. Subject to the Court's approval of the Chapter 7 Trustee's Motion under 11 U.S.C. §§ 105(A) and 363, Bankruptcy Rules 6004 and 9019 and Local Rule 9013-1 for Approval of the Delaware Settlement [ECF No. 655] (the "Delaware Litigation 9019") and the payment of the settlement amounts provided for therein, the Trustee will have sufficient funds to satisfy the DIP Obligations, Chapter 7 Administrative Expenses, the Chapter 11 Administrative Expenses, and the PIC Adequate Protection Claim and ultimately make a distribution to unsecured creditors.

2. The proceeds from underlying litigation (the "Delaware Litigation") are unencumbered by prepetition liens. Erin Energy Corporation was the only plaintiff in the Delaware Litigation. The secured creditors who were active in the Debtors' cases have liens attaching to the assets of Erin Petroleum Nigeria. The remaining creditors asserting secured claims have liens

2

attaching to other assets.[2] The Delaware Litigation was, however, expressly included in the collateral subject to the liens securing the DIP Obligations.

3.  The Trustee believes that the prompt payment of the amounts covered by this Motion is consistent with the Trustee's duties under section 704(a)(1) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3009 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The outstanding DIP Obligations are incurring interest at a 10% annual rate. The Chapter 7 Administrative Expenses and Chapter 11 Administrative expenses reflect amounts that the Court has already ordered could be paid subject to the Trustee obtaining sufficient unencumbered funds, and in some instances amounts that the Court directed the Trustee to pay when funds were available. And the PIC Adequate Protection Claim would be paid either as a priority claim (as reflected in its proof of claim) or pursuant to a motion by PIC for adequate protection or an administrative expense claim before funds can be paid to general unsecured creditors. Authorizing the distribution requested herein will benefit the chapter 7 estates and advance the administration of these cases.

4.  While the Trustee could make at least some of the payments contemplated in this Motion even absent further order, the Motion serves to provide notice to parties in interest. Any party asserting that the proceeds of the Delaware Litigation are encumbered by a valid lien will have the opportunity to respond to the Motion and obtain a hearing. Any party that believes that the payments are not in accordance with the priority set out in the Bankruptcy Code will also have

---

[2] For example, Oltasho Nigeria Limited asserts a claim against Erin Energy Corporation for its guarantee of an obligation of Erin Petroleum Nigeria Limited ("EPNL") that is secured by a lien on the equity securities that Erin Energy Corporation holds in Erin Energy Ltd. Additionally, the lien of various the various taxing authorities did not attach to intangible property like the Delaware Litigation. *See Enter. Leasing Co. of DFW v. Larson King, LLP*, 326 B.R. 112, 114–16 (Bankr. N.D. Tex. 2005). While these liens appear to be valid—subject to future challenge by the Trustee or other party with standing—they do not attach to the proceeds of the Delaware Litigation.

that opportunity. Absent an objection and evidence demonstrating such a lien or other reason that the payments should not be made, however, the Court should grant the relief requested herein.

## JURISDICTION AND VENUE

5. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

6. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The Court can grant a final order with respect to the relief requested in this Motion.

7. The bases for the relief requested herein are under Bankruptcy Code §§ 105(a), 725, 726, and 503; Rule 3009 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and prior orders of the Court allowing compensation and reimbursement of expenses to professionals in these cases.

## FACTUAL BACKGROUND

**A. Background and Status of the Cases**

8. On April 25, 2018 ("Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

9. The Official Committee of Unsecured Creditors filed an emergency motion to convert the Debtors' chapter 11 cases to cases under chapter 7 of the Bankruptcy Code on June 27, 2018.

10. On July 12, 2018 ("Conversion Date"), the Court entered an order converting the cases from chapter 11 to chapter 7.

11. On July 13, 2018, the Office of the United States Trustee appointed Ronald J. Sommers as the chapter 7 trustee for the Debtors' estates. Mr. Sommers remains the chapter 7 trustee.

4

12. The principal remaining assets of the Debtors' estates are causes of action against third parties and certain other rights to payment. The Trustee has been pursuing these causes of action and rights to payment on behalf of the Debtors' estates and continues to do so.

13. The Trustee has recently resolved the Delaware Litigation and filed a motion for approval of the settlement on October 23, 2023 [ECF No. 655] (the "Delaware Litigation 9019"). If approved by the Court, the Trustee anticipates that the settlement amounts will allow the Trustee to pay the DIP Obligations, all administrative expenses, and ultimately make a distribution to unsecured creditors of Erin Energy Corporation.

**B. DIP Obligations**

14. While the cases were proceeding under chapter 11, the Debtors sought approval to obtain post-petition financing from Gregory Holcombe (the "DIP Lender"). The Court authorized the Debtors to obtain the financing on an interim basis in an order entered on June 25, 2018 [ECF No. 247] (the "Interim DIP Order"). On information and belief, the Debtors drew approximately $445,000 under the post-petition facility, not including funding fees and reimbursable attorneys fees, while the cases were proceeding under chapter 11.

15. There was significant opposition to the final approval of the post-petition financing in the amount requested by the Debtors. The Committee objected to its final approval [ECF No. 218] and the DIP Lender declined to approve an ongoing budget. Zenith Bank Plc. ("Zenith Bank") opposed the post-petition financing to the extent that it would prime Zenith Bank's liens [ECF No. 291]. The Court ultimately entered a final order that incorporated the Interim DIP Order with certain changes agreed to by Zenith Bank [ECF No. 296] before converting the cases from chapter 11 to chapter 7.

16. In its order converting the cases [ECF No. 297], the Court directed the DIP Lender to make $458,000 available to the Trustee under the post-petition facility. The Trustee drew

5

$229,000 under the facility and used those funds to pay certain expenses necessary to administer the cases, including required bank fees, storage fees for the Debtors' physical assets, preservation of information required to pursue litigation, and payments to Gambian and Nigerian counsel approved by the Court.

17. Interest has accrued on the amounts borrowed under the post-petition facility at either the 10% standard rate or the 12% default rate. The Trustee requested a payoff amount from the DIP Lender and seeks to satisfy the DIP Obligations promptly to minimize the further accrual of interest. The payoff letter received from the DIP Lender is attached hereto as **Exhibit A** (the "DIP Payoff Letter").

18. The DIP Lender asserts that on December 15, 2023, the outstanding DIP Obligations will be not less than $1,335,432.46 and accrue interest at $370.96 per day from such date (the "DIP Payoff Amount"). The components of this amount are as follows:

| Item | Amount |
|---|---|
| Draws under the Facility | $674,000.00 |
| 3% Funding Fee for Draws | $20,220.00 |
| Interest on Principal at 10% | $453,565.46 |
| Winston & Strawn LLP fees incurred | $172,647.00 |
| Estimated attorney's fees through 12/15/23 | $15,000.00 |
| TOTAL: | $1,335,432.46 |

The Trustee has reviewed the components of the DIP Payoff Amount and believes that they each reflect valid DIP Obligations.

19. With respect to the fees for Winston & Strawn LLP, the Trustee has reviewed the invoices and the time records included therein for $169,357.78 of fees and expenses included in the DIP Payoff Amount. The DIP Lender previously circulated these invoices to the Trustee, counsel to the U.S. Trustee, and counsel to the Unsecured Creditors Committee pursuant to

paragraph 4(d) of the Interim DIP Order, and no party objected within the 10-day period required under the Interim DIP Order. The Trustee has not located an invoice for the remaining $3,289.22 of fees for Winston & Strawn LLP indicated in the DIP Payoff Letter but believes that an invoice for August 2018 services likely exists and the amount is consistent with the post-conversion fees sought for September and October 2018.[3] The DIP Lender has contacted Winston & Strawn LLP's accounting department to obtain the apparently missing invoice. The Trustee seeks authority to pay the full DIP Payoff Amount notwithstanding the missing, but likely existing, invoice to minimize the accrual of interest and to lock in the DIP Payoff Amount.

20. The DIP Payoff Amount reflects certain arguable concessions to the Trustee.[4] These include: (a) application of the 10% standard interest rate rather than the 12% default interest rate for the DIP Obligations, (b) application of interest only to the principal amount and not to reimbursable attorney's fees, and (c) waiver of various expenses and charges such as travel costs. Whether these are truly concessions or would be required under the applicable documents, delaying payment of the DIP Obligations would not result in a better result for the Debtors' estates. The DIP Payoff Letter reflects what the Trustee could reasonably hope to obtain after expensive litigation and the arguable concessions exceed the amount of the missing invoice.

---

[3] The following chart summarizes the invoices reviewed by the Trustee and the apparently missing invoice that the DIP Lender is tracking down:

| Invoice Date | Circulated w/o Objection? | Amount |
|---|---|---|
| 07/13/2018 | Yes | $132,078.97 |
| 08/21/2018 | Yes | $28,869.85 |
| Missing | Unknown | Unknown |
| 10/04/2018 | Yes | $3,343.26 |
| 11/05/2018 | Yes | $5,065.70 |
| | TOTAL: | At least $169,357.78 |

[4] For the avoidance of doubt, the Trustee reserves the right to assert that these arguable concessions are required even absent the agreement of the DIP Lender. The DIP Lender has a non-frivolous basis to assert that he would be entitled to the inverse of the arguable concessions, but there may be compelling arguments in the other direction (e.g., that the conversion of the cases to chapter 7 does not constitute a event of default because the DIP Lender indicated that he did not oppose conversion). The Trustee has not fully evaluated the respective strength of these hypothetical positions.

21. Further, as set out in the Interim DIP Order, the Delaware Litigation was among the collateral securing the DIP Obligations. With respect to some other collateral—in particular the oil and gas assets of Erin Petroleum Nigeria Limited ("EPNL")—the DIP Obligations are subordinate to at least some of the prepetition liens.[5] The Trustee has determined that those assets are either no longer in the EPNL estate[6] or are otherwise entirely subject to prepetition liens. That other collateral is unlikely to be available for satisfaction of the DIP Obligations.

22. The Trustee, through counsel, has analyzed the Debtors' schedules, the briefing filed by secured parties, the transcripts of hearings while the cases were pending in chapter 11, and proofs of claim filed in the Debtors' cases and has concluded that no other liens attach to the proceeds of the Delaware Litigation. The liens securing the DIP Obligations will therefore be the only interests that any other party has in the proceeds of the Delaware Litigation.

C. **Chapter 11 Administrative Expenses**

23. While the Debtors' cases were proceeding under chapter 11, their estates incurred substantial administrative expenses. The cases were contentions, as reflected in the ultimate outcome of conversion of the cases to chapter 7.

24. After appropriate notice, the Court entered orders allowing the following Chapter 11 Administrative Expenses that the Trustee seeks authority to pay through this Motion:

---

[5] There was disagreement as to the effect of the Interim DIP Order and the extent and priority of the liens securing the claims of Zenith Bank. Authorizing the payments contemplated in this Motion does not require resolving that dispute.

[6] In addition to other burdensome property, the Trustee abandoned the crude oil located on the FPSO Armada Perdana, a production sharing contract, certain Nigerian Oil Mining Leases, and related equipment pursuant to an agreed order with various secured parties. [ECF Nos. 470, 471].

| Dkt. | Claimant | Amount |
|---|---|---|
| 381 | Sout Risius Ross, LLC (Financial Advisor to the Debtors) | $261,940.50 |
| 382 | Okin Adams LLP (Attorney to the Debtors) | $244,948.24[7] |
| 480 | Conway Mackenzie, Inc (Financial Advisor to the Committee) | $242,113.89 |
| 481 | Pachulski Stang Sighl & Jones LLP (Attorney to the Committee) | $512,732.89 |
| | TOTAL: | $1,261,735.52 |

These Chapter 11 Administrative Expenses were allowed approximately five years ago and remain outstanding. The relevant orders are compiled in **Exhibit B** hereto.

25. Additional administrative expenses from the chapter 11 cases likely also exist. At a minimum, the Trustee believes that the United States Trustee's fees incurred pursuant to 28 U.S.C. § 1930 constitute valid obligations entitled to administrative expense priority and anticipates reconciling and paying these amounts in full.[8] The Trustee also seeks authority in this Motion to any additional administrative expenses incurred during chapter 11 if and when they become allowed and payable.

D. **Chapter 7 Administrative Expenses**

26. The Debtors' estates incurred additional administrative expenses after the cases were converted to chapter 7. Certain ordinary course administrative expenses have been paid pursuant to Bankruptcy Local Rule 2016-1(e). Additionally, certain administrative expenses related to compensation approved for Gambian and Nigerian counsel have also been paid pursuant to approval of the Court. However, the bulk of the allowed administrative expenses, comprising professional fees approved by the Court, remain outstanding.

---

[7] The Court allowed compensation and reimbursement of expenses of Okin Adams, LLP totaling $334,289.50. As reflected in the relevant application [ECF No. 344] and the Notice of Distribution of Retainer under Local Bankruptcy Rule 2016-1(c) [ECF No. 272], however, Okin Adams received distribution of its prepetition retainer in the amount of $89,341.20 while the cases were proceeding in chapter 11.

[8] The United States Trustee has filed proofs of claim asserting priority claims for such amounts. The Trustee anticipates reconciling the amounts and paying them on a per-debtor basis in connection with a final or interim distribution.

27. After appropriate notice, the Court entered orders allowing the following Chapter 7 Administrative Expenses that the Trustee seeks authority to pay through this Motion:

| *Dkt.* | *Claimant* | *Amount* |
|---|---|---|
| 524 | Moyes & Co. (Special Financial Advisor to the Trustee) | $62,310.00 |
| 525 | Stout Risius Ross, LLC (Financial Advisor to the Trustee) | $91,795.75 |
| 527 | Diamond McCarthy LLP (Former Attorney to the Trustee) | $244,734.10 |
| 630 | Kasowitz Benson Torres LLP (Former Attorney to the Trustee) | $457,128.78 |
| 651 | William G. West, P.C. (Accountant to the Trustee) | $44,679.50 |
| | TOTAL: | $900,648.13 |

These Chapter 7 Administrative Expenses were allowed between one and five years ago and remain outstanding. The relevant orders are compiled in **Exhibit C** hereto.

28. Additional administrative expenses from the chapter 7 cases likely also exist or will come into existence. The largest of the anticipated additional administrative expenses will come from the fees and expenses of the Trustee's contingency litigation counsel (the "Contingency Counsel") retained to pursue the Delaware Litigation. Pursuant to the order approving the employment of the Contingency Counsel [ECF No. 591], they will be entitled to fees totaling 30% of the recovery to the estate and their out-of-pocket expenses. The Trustee anticipates the total will exceed $7.25 million, subject to an application and order of the Court. The Trustee's general bankruptcy counsel also intends to file an interim fee application that may be allowed after an order granting this Motion. And certain of the allowed Chapter 7 Administrative Expenses were for interim compensation and additional amounts may be sought and ultimately allowed on a final basis. The Trustee seeks authority in this Motion to pay any such administrative expenses if and when they become allowed and payable.

### E. PIC Adequate Protection Claim

29. At the outset of the Debtors' cases, Mauritius Commercial Bank Ltd. ("MCB") was holding approximately $10 million of the Debtors' cash as collateral to the Debtor's obligations to MCB. The Court entered an interim order [ECF Nos. 55] and amended order [ECF No. 113] authorizing the Debtors to utilize $620,000 of this cash collateral to fund its continued operations in chapter 11.

30. Prior to a final hearing on the Debtors' use of cash collateral, Public Investment Corporation Soc. Ltd. ("PIC") acquired the rights of MCB and stood in the shoes of MCB with respect to the continued and further use of cash collateral. PIC opposed a final order authorizing the Debtors to utilize additional cash collateral, arguing among other things that it was not adequately protected. The Court ultimately denied the further use of PIC's cash collateral requested by the Debtors.

31. On October 19, 2023, PIC filed a proof of claim against the Erin Energy Corporation bankruptcy estate [Claim No. 46] (the "PIC Proof of Claim"). PIC asserted that $620,000 of its asserted claim was entitled to priority under Bankruptcy Code § 507(a)(2). The attachment to the PIC Proof of Claim indicated that the basis for this priority was for adequate protection of the $620,000 of cash collateral utilized by the Debtors in chapter 11.

32. Over the course of administering these cases, the Trustee pursued litigation against PIC and PIC sought relief from stay to apply the remaining cash collateral toward its claim. The Trustee and PIC ultimately reached a resolution of their disputes, and the Trustee filed a motion [ECF No. 621] for approval of the settlement. The key points of the settlement were that (a) PIC would pay the Trustee $30,000 out of the cash collateral, (b) the Trustee would dismiss the litigation he was pursuing against PIC, (c) the PIC Proof of Claim and PIC's proof of claim against EPNL were deemed allowed and secured by the cash collateral, and (d) the automatic stay was

lifted with respect to the remaining cash collateral. The Court entered an order [ECF No. 623] approving the settlement on January 27, 2020.

33. The amount of the PIC Proof of Claim is already deemed allowed. While the Trustee could potentially object to dispute the priority of the $620,000 amount, he believes that PIC is entitled to an administrative expense for the diminution in the value of its security interest from the Debtors' use of the cash collateral while the cases were pending in chapter 11. Even if an objection based on the procedure of asserting the claim through a proof of claim were successful, the ultimate result would be that PIC would be entitled an administrative expense and the asserted priority after it filed a motion seeking the allowance of the administrative expense. The only difference would be the additional expenses incurred by the chapter 7 estates and PIC.

34. The Trustee seeks authority in this Motion to pay $620,000 to PIC. Additionally, to ensure that the claims register is accurate, the Trustee seeks language in the order granting the Motion that PIC file an amended proof of claim to reflect the payment of the PIC Adequate Protection Claim and the application of the approximately $9.4 million of cash collateral to the underlying claim pursuant to the previous settlement.

### RELIEF REQUESTED

35. The Trustee seeks the entry of an order, substantially in the form of the proposed order attached hereto (the "Proposed Order"), authorizing the Trustee to satisfy the DIP Obligations, Chapter 7 Administrative Expenses, Chapter 11 Administrative Expenses, and PIC Adequate Protection Claims. Additionally, the Proposed Order provides that the Trustee may pay additional administrative expenses that become allowed after its entry, directs PIC to file an amended proof of claim reflecting the partial satisfaction of its claim as a result of such payment and the cash collateral released to PIC, and grants related relief.

**BASIS FOR RELIEF**

36. The overarching goal of chapter 7 of the Bankruptcy Code is the orderly and expeditious liquidation of a debtor's estate and distribution of the proceeds thereof. Bankruptcy Code § 704(a)(1) directs trustees to administer and close estates "as expeditiously as is compatible with the best interests of parties in interest . . . ." Bankruptcy Rule 3009 provides that "dividends to creditors shall be paid as promptly as practicable." And Bankruptcy Code § 105(a) empowers courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."

37. The relief sought in this Motion is both necessary and appropriate for the Trustee to perform his duties under the Bankruptcy Code. The satisfaction of the outstanding DIP Obligations, Chapter 7 Administrative Expenses, Chapter 11 Administrative Expenses, and PIC Adequate Protection Claim will advance these cases forward and are a step towards a distribution to unsecured creditors. The alternative would be to delay these payments while the claims resolution process continues. That would provide no benefit to anyone and make the determination of a final distribution more complex, thereby delaying the resolution of these cases. Further, seeking authority to make these payments by this Motion ensures that parties in interest have the ability to object to any of the proposed payments.

**A. Making the Payments Would Advance the Administration of the Debtors' Cases.**

    i.)    *Payment of the DIP Obligations*

38. The primary source of funds for the payments and distribution contemplated by this Motion is the proceeds of the Delaware Litigation. The Delaware Litigation is among the collateral securing the DIP Obligations. The Interim DIP Order, which was incorporated into the final order, expressly indicated that the liens securing the DIP Obligations attached to the proceeds of the Delaware Litigation.

13

39. The DIP Lender is the first party entitled to the proceeds of the Delaware Litigation. Under Bankruptcy Code § 725, the Trustee is required to dispose property of the estate in which another entity has a lien before a final distribution in the case.[9] The payment with respect to the DIP Obligations that would be accomplished by this Motion must happen prior to a final distribution to other creditors and fully administering these cases.

40. Moreover, avoiding unnecessary delay in satisfying the DIP Obligations is necessary to preserve the value of the Debtors' bankruptcy estates. Interest is accruing on the DIP Obligations at a 10% annual rate. The estates receive no countervailing benefit from that accruing interest while there are sufficient funds to satisfy the DIP Obligations.

    ii.) *Payment of the Chapter 7 Administrative Expenses and Chapter 11 Administrative Expenses*

41. After the disposition of collateral subject to liens or other interests, the next priority for distribution in a chapter 7 case are those claims that are entitled to priority under Bankruptcy Code § 507. 11 U.S.C. § 726(a). Under section 507, the claims with the first priority relevant here are allowed administrative expenses.[10] *See* 11 U.S.C. § 507(a)(2). Distributions to other creditors are only made if all administrative expenses are satisfied in full. *See* 11 U.S.C. § 726(a).

42. Paying the Chapter 7 Administrative Expenses and Chapter 11 Administrative Expenses sooner rather than later will facilitate the administration of the Debtors' estates and these chapter 7 cases. There will be one less moving part as the Trustee engages in the claims administration process and prepares for a final or interim distribution.

---

[9] Technically, secured claims do not get paid as such in chapter 7 cases. The Trustee either abandons the property if its liquidation would not benefit the estate or reduces the property to cash and disposes of the cash subject to liens in an amount to satisfy the claim under Bankruptcy Code § 725. The provisions of Bankruptcy Code § 726—governing distributions in chapter 7 cases—do not distinguish between secured and unsecured claims.

[10] While the Chapter 7 Administrative Expenses have priority over the Chapter 11 Administrative Expenses under Bankruptcy Code § 726(b), the Trustee anticipates that there will be sufficient unencumbered funds to satisfy all administrative expenses in full so they are addressed together here.

43. Further, an immediate distribution on account of the allowed administrative expenses is consistent with prior orders entered by the Court. Several of the orders allowing administrative expenses *directed* the Trustee to pay the allowed amounts upon obtaining sufficient funds to do so. [*See* ECF Nos. 381, 382, 480, 481, 630]. This is consistent with the general principle that administrative expenses should be paid as incurred and allowed, if practicable.[11]

    iii.)    *Payment of the PIC Adequate Protection Claim*

44. While the PIC Adequate Protection Claim has not been formally allowed by an order of the Court after notice and a hearing, the Trustee's position is that PIC is entitled to such an administrative expense claim. Under Bankruptcy Code § 507(b), a creditor is entitled to a super-priority administrative claim where purported adequate protection required under Bankruptcy Code §§ 362, 363, or 364 ultimately proves to be inadequate.[12] *See* 11 U.S.C. § 507(b). While courts have held that a creditor is not entitled to *super-priority* where the bankruptcy court found did not require adequate protection in the first instance, *see, e.g.*, *LNC Invs., Inc. v. First Fid. Bank*, 247 B.R. 38, 50 (S.D.N.Y. 2000), the structure of the statute indicates that the creditor would nevertheless be entitled to an ordinary-priority administrative expense for diminution in value of its security interest caused by the use of that collateral by the estate.[13] The Debtors used PIC's cash collateral to benefit their estates, and PIC's security interest declined in value as a result.

---

[11] Courts have discretion to determine when an administrative expense will be paid, considering (a) prejudice to the estate, (b) hardship to the claimant, and (c) potential detriment to other creditors. *See, e.g.*, *In re Garden Ridge Corp.*, 323 B.R. 136, 143 (Bankr. D. Del. 2005). Where there is no prejudice to the estate or other creditors, these factors support immediate payment of allowed administrative expenses.

[12] Such a "super-priority" administrative claim would nonetheless still be a chapter 11 administrative claim and thus subordinate to administrative expenses incurred in chapter 7. *See In re Flynn's Const., Inc.*, 166 B.R. 1, 2 (Bankr. D. Me. 1994).

[13] Bankruptcy Code § 507(b) only applies to provide super-priority status where a creditor has an otherwise allowable administrative expense claim arising from, *inter alia*, the bankruptcy estate's use of the creditor's collateral. If the use of cash collateral resulting in diminution of the value of the security interest and did not provide an administrative expense claim, a party would never be entitled to a super-priority administrative expense claim for the use of its cash collateral. A reduction in value of a party's security interest caused by the estate's use of the collateral entitles the secured claimant to an administrative expense claim. *See* 4 Collier on Bankruptcy ¶ 507.14; *Cf. In re Ralar Distributors, Inc.*, 166 B.R. 3, 6 (Bankr. D. Mass. 1994).

45. Seeking administrative expense status for the claim through the PIC Proof of Claim is questionable, but a successful objection would merely result in PIC filing a motion either seeking an administrative expense claim or adequate protection. Bankruptcy Code § 363(e) provides that a party may request adequate protection for property that is used by a bankruptcy estate "at any time." Nothing prevents PIC from filing a motion for allowance of an administrative expense at this time. Going through the process of an objection to claim would not benefit the Debtors' estates despite incurring attendant administrative expenses.

46. The same notice and opportunity to object that would be provided by requiring PIC to file an administrative expense motion would is provided by this Motion. Any party in interest who disagrees with the Trustee's evaluation and conclusion can oppose the Motion and request a hearing.

47. As with the DIP Obligations, Chapter 7 Administrative Expenses, and Chapter 11 Administrative Expenses, distributing funds on account of the PIC Adequate Protection Claim promptly will facilitate the administration of the Debtors' estates. It is something that must be addressed and paid before funds can be distributed to unsecured creditors. And the language in the Proposed Order with respect to the PIC Proof of Claim will further facilitate the claims resolution process.

**B.  This Motion Provides Due Process to Potentially Secured Claimants.**

48. While the Trustee could make some the payments contemplated by this Motion without further order of the Court,[14] the Motion still fulfills an important purpose in providing

---

[14] As indicated above, the Court has already authorized, and in some cases directed, the Trustee to pay the Chapter 7 Administrative Expenses and Chapter 11 Administrative Expenses. However, Bankruptcy Code § 725 requires notice and the opportunity for a hearing prior to a disposition of property to secured claimants. And the Trustee believes that this Motion provides the notice that might otherwise be required for the PIC Adequate Protection Claim. As this Motion is being filed prior to the granting of the Delaware Litigation 9019 and the receipt of proceeds thereunder, the Trustee believes that it makes sense to include the Chapter 7 Administrative Expenses and Chapter 11 Administrative Expenses in this Motion.

notice and opportunity to object for parties asserting secured claims. The liens securing the DIP Obligations did not prime the prepetition secured parties' liens. To the extent that a prepetition secured lender's liens attach to the proceeds of the Delaware Litigation, the proceeds should be distributed to secured claimants—subject to any surcharge under Bankruptcy Code § 506(c)—before distribution to other creditors.

49. The Trustee believes that the anticipated proceeds of the Delaware Litigation will be unencumbered. Nothing reflected in the record of this case indicates that the secured parties in these cases have liens attaching to those proceeds. Nonetheless, the relief requested in this Motion and provided for in the Proposed Order are necessary and appropriate to facilitate the administration of the chapter 7 bankruptcy estates and these cases.

## **CONCLUSION**

50. Based on the foregoing, the Trustee submits that the relief requested herein is necessary and appropriate, is in the best interests of the Debtors' bankruptcy estates and their creditors, and should be granted in all respects. The satisfaction of the DIP Obligations, Chapter 7 Administrative Expenses, Chapter 11 Administrative Expenses, and PIC Adequate Protection Claim would move these cases forward toward a final distribution, and this Motion provides notice and the opportunity to object to any parties asserting a lien that may attach to the proceeds from which the payments would be made. The Trustee therefore respectfully requests that the Court enter an order substantially in the form of the Proposed Order and grant such other and further relief as is appropriate.

[*Remainder of Page Intentionally Left Blank*]

Dated: November 10, 2023         Respectfully submitted**,**

                                    **SHANNON & LEE LLP**

                                    */s/R. J. Shannon*
                                    Kyung S. Lee
                                    State Bar No. 12128400
                                    klee@shannonleellp.com
                                    R. J. Shannon
                                    State Bar No. 24108062
                                    rshannon@shannonleellp.com
                                    2100 Travis Street, STE 1525
                                    Houston, Texas 77002
                                    Tel. (713) 714-5770

                                    *General Bankruptcy Counsel to Ronald J. Sommers, Chapter 7 Trustee*

## CERTIFICATE OF SERVICE

     I hereby certify that a true and correct copy of the foregoing document was served (a) at the time of filing, by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on all parties registered to receive such service and (b) within one business day of the filing, on the parties on the attached service list by U.S.P.S. first class mail.

                                    */s/R. J. Shannon*
                                    R. J. Shannon

## U.S.P.S. SERVICE LIST

Baker Botts LLP
Attorneys at Law
910 Louisiana Street
Suite 3000
Houston, TX 77002

NYSE
5660 New Northside Dr. NW
3rd Floor
Atlanta, GA 30328

Travel & More
7011 Harwin Drive
Suite 185
Houston, TX 77036

The Love Law Group
4008 Chartres St
Houston, TX 77004

John Michael
Stinson
6509 Edloe
Houston, TX 77055

Mindshift Technologies Inc
500 Commack Road
Suite 140
Commack, NY 11725

Ipreo Data, Inc.
1359 Broadway 2nd Floor
New York, NY 10018

Natural Resources Global Capital
Partner
29 Farm Street
London, England
UNITED KINGDOM W1J 5RL

Jackson Walker LLP
2323 Ross Avenue
Suite 600
Dallas, TX 75201

Pannell Kerr Forster of Texas, PC
5847 San Felipe, Suite 2600
Houston, TX 77057-3000

Workiva Inc
2900 University Blvd
Ames, IA 50010

Dudu Hlatshwayo
127 Greyvill Street
Kyalami Estates
Midrand
SOUTH AFRICA

Looper Goodwine, PC
1300 Post Oak Blvd
Suite 1250
Houston, TX 77489

Renmark Financial Communications
Inc.
1050-3400 De Maisonneuve West
West Montreal, Quebec
CANADA H3Z 3B8

Norton Rose Fulbright US, LLP
98 San Jacinto Boulevard
Suite 1100
Austin, TX 78701-4255

P2ES Holdings LLC
1670 Broadway, Suite 2800
Denver, CO 80202

Earl W. McNiel
Consultant
1606 Cambridge Oaks Circle
Houston, TX 77094

Broadridge ICS
300 Executive Drive
Edgewood, NY 11717

Canaccord Genuity Limited
88 Wood Street
London, England
UNITED KINGDOM EC2V 7QR

Johannesburg Stock Exchange
Private Bag X991174
Sandton, 2146
SOUTH AFRICA