United States Bankruptcy Court
Southern District of Texas
**ENTERED**
July 31, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 18-32106 |
| ERIN ENERGY | § | |
| CORPORATION, *et al.*, | § | |
| Debtors. | § | Jointly Administered |
| | § | CHAPTER 7 |

## MEMORANDUM OPINION

Armada Oyo Limited ("Armada") and Bumi Armada (Singapore) Pte Ltd ("BASPL" and together "Bumi") seek entry of an order finding that Erin Energy Corporation ("EEC") is jointly liable on their $11,435,956.86 administrative expense claim against Erin Petroleum Nigeria Limited ("EPNL"), the wholly owned subsidiary of EEC. Bumi argues that EEC should be held jointly liable on the claim because it expended costs reimbursable against EEC under § 503(b)(1)(A) of the Bankruptcy Code as "the actual, necessary costs and expenses of preserving the estate." Bumi also claims entitlement to an administrative expense claim because of the Erin Group's failure to perform lease obligations under § 365(d)(5) of the Bankruptcy Code.

The application for administrative expenses against EEC is denied. Any post-petition costs expended by Bumi were necessary only to the preservation of EPNL's estate. EEC also did not fail to perform any lease obligations under § 365(d)(5) of the Bankruptcy Code. Because there has been no substantive consolidation of the Erin Group's bankruptcy cases, Bumi does not have an administrative expense claim against EEC.

## BACKGROUND

Armada and BASPL are international offshore energy facilities and service providers. Armada was the owner of a floating production and storage offloading vessel ("FPSO"), a vessel used for crude oil

exploration and production operations. On February 17, 2014, Armada entered into a Contract of Bareboat Charterparty ("Charterparty Contract") with Oceanic Consultants Nigeria Limited ("Oceanic"), where Armada agreed to charter the FPSO to Oceanic. ECF No. 704-13. On the same day, BASPL entered into a Contract of Provision of Operational and Maintenance Serves for FPSO Armada Perdana in the Oyo Field Development ("O&M Contract" together with Charterparty Contract forming the "Contracts") with Oceanic, where BASPL agreed to provide operational maintenance services to Oceanic in connection with its operations on the FPSO. ECF No. 704-16.

On March 25, 2014, Oceanic novated its interest under the Contracts to EPNL (f/k/a CAMAC Petroleum Limited) by an individual Deed of Novation for each contract dated March 25, 2014. ECF Nos. 704-14, 704-17. That same day, EEC (f/k/a Camac Energy Inc.), the 100% parent of EPNL, executed parent company guarantees and indemnities in favor of Armada with respect to EPNL's payment and performance obligations under the Contracts. ECF Nos. 704-15, 704-18.

On April 25, 2018, EEC, EPNL, and other Erin Group entities each filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. ECF No. 1; Case No. 18-32109, ECF No. 1. The Court entered an order directing joint administration of the Chapter 11 cases on May 1, 2018. ECF No. 15.

On May 31, 2018, the Court entered the *Interim Order for Adequate Protection*, granting Bumi a "first lien on oil aboard the FPSO Armada Perdana [that] secures all obligations incurred after the granting of the lien, to the extent that such obligations are incurred for the preservation, protection and safety of the ship, its crew or its cargo." ECF No. 162 at 1. On June 27, 2018, the Court entered the *Order Modifying the Automatic Stay with Respect to Demobilization Preparations of FPSO Bumi Armada*, which provided Bumi with relief from the stay to take certain actions to demobilize the FPSO. ECF No. 258.

On July 12, 2018, the Court converted the Chapter 11 cases to cases under Chapter 7 of the Bankruptcy Code. ECF No. 297. On July 17, 2018, the Court entered an order that the Contracts were rejected. ECF No. 311. The Court also issued a final order granting stay relief to Bumi to take all necessary actions to demobilize the FPSO. ECF Nos. 311, 312.

Following the petition date, Bumi delivered to the Erin Group invoices for the payment of certain fees and expenses provided for in the Contracts. ECF No. 678 at 22–25. On October 18, 2018, Bumi filed proofs of claims against both EPNL and EEC, asserting claims arising under the Contracts and EEC's guarantees. On that date, the Court entered the *Order (I) Approving Abandonment of Property and (II) Lifting the Automatic Stay on Such Abandoned Property*, which authorized the Chapter 7 trustee to abandon all interests in about 380,000 barrels of crude oil contained on the FPSO. ECF No. 470 at 1. The order established a waterfall of distribution for the sale proceeds among the parties. ECF No. 470 at 2–4.

The trustee represented that in May 2019, the Department of Petroleum Resources in Nigeria terminated the mining leases and stated it would take possession of all the crude oil on the FPSO and distribute the proceeds according to "old royalties that were owned by the previous owners of the OML." ECF No. 602 at 5. Bumi represented that, due to the Nigerian government's position, it sold the FPSO in September 2019. ECF No. 703 at 9. Bumi also represented that the Nigerian government refused to honor the Court's order granting a lien on the crude oil and has in fact taken possession of the crude oil. ECF No. 722 at 22.

On November 17, 2023, the Court entered the *Order Granting Trustee's Emergency Motion to File Requests for Payment of Certain Administrative Expense Claims*, which established January 31, 2024, as the deadline to submit administrative expense claims for necessary costs of administrating the bankruptcy cases or preserving the Erin Group's estates that arose between the petition date and December 31,

2018. ECF No. 662 at 2. Bumi filed its application for an administrative expense claim on January 30, 2024. ECF No. 678. The application asserts administrative expense claims against both EEC and EPNL.

The Court held a hearing on the application on April 15, 2024. That same day, the Court entered the *Order Allowing Administrative Expense Claim Against EPNL*. ECF No. 708. The Order entered an agreed administrative expense claim of $11,435,956.86 against EPNL. ECF No. 708 at 1. The Court took under advisement the issue of whether EEC is jointly liable with EPNL on the administrative expense claim.

## JURISDICTION

The District Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(a). Venue is proper in this District pursuant to 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2). The dispute has been referred to the Bankruptcy Court under General Order 2012-6.

## DISCUSSION

Bumi's application for an administrative expense claim against EEC is denied. The Contracts, which provide the basis for the administrative expense claim, are with EPNL. Bumi's post-petition services under those Contracts provided no actual benefit to the EEC estate. EEC also did not have any lease obligations under the Contracts subject to § 365(d)(5) of the Bankruptcy Code. Because there was no substantive consolidation of the EEC and EPNL estates, Bumi is not entitled to an administrative expense claim against EEC.

### I. BUMI IS NOT ENTITLED TO AN ADMINISTRATIVE EXPENSE CLAIM AGAINST EEC UNDER § 503(B)(1)(A) OF THE BANKRUPTCY CODE

Section 507 of the Bankruptcy Code governs the priorities for distribution of estate assets. *See* 11 U.S.C. § 507(a). Administrative expenses are given priority over all other unsecured claims, other than domestic support obligations and certain trustee expenses. *Id.* Section

503(b) of the Bankruptcy Code provides a non-exclusive list of administrative expense claims. *See* 11 U.S.C. § 503(b).

Bumi seeks an administrative expense claim against EEC under § 503(b)(1)(A) of the Bankruptcy Code. Section 503(b)(1)(A) defines as an administrative expense the "actual, necessary costs and expenses of preserving the estate." *Id.* § 503(b)(1)(A). "[T]o qualify as an 'actual and necessary cost' under section 503(b)(1)(A), a claim against the estate must have arisen post-petition and as a result of actions taken by the trustee [or debtor-in-possession] that benefitted the estate." *In re Whistler Energy II, L.L.C.*, 931 F.3d 432, 441 (5th Cir. 2019) (quoting *In re Jack/Wade Drilling, Inc.*, 258 F.3d 385, 387 (5th Cir. 2001)). Expenses are attributable to the actions of the bankruptcy estate where evidence demonstrates "either a direct request from the debtor-in-possession or other inducement via the knowing and voluntary post-petition acceptance of desired goods or services." *Id.* at 443. For an action to benefit the estate, the action must be truly necessary to the estate. *Whistler Energy II, L.L.C.*, 931 F.3d at 443; *In re Talen Energy Supply, LLC*, No. 22-90054, 2023 WL 2816683 (Bankr. S.D. Tex. Apr. 6, 2023), at *5 (quoting *In re Northstar Offshore Grp., LLC*, 628 B.R. 286, 299 (Bankr. S.D. Tex. 2020)); *see also In re Bouchard Transportation Co., Inc.*, 74 F.4th 743, 753–55 (5th Cir. 2023) (analyzing necessity as a separate element).

Bumi argues that it provided post-petition services to the Erin Group under the Contracts by expending resources to maintain the FPSO and preserve the crude oil contained on the FPSO. Bumi asserts that, because the Erin Group decided to continue receiving those services prior to rejecting the Contracts, they received post-petition benefits to their estates because Bumi covered maintenance costs that were the Erin Group's responsibility, by maintaining an option to have additional resources to restructure, and by preventing potential environmental liability that may have been incurred if the FPSO was abandoned. Accordingly, Bumi argues, it is entitled to an administrative expense claim for the value of its services.

Bumi's arguments are based on the premise that there is no meaningful distinction between EEC and EPNL because they were unified in their interest under the Contracts. Bumi essentially asks the Court to ignore the Erin Group's corporate structure and treat the various Erin entities as a single entity. Bumi does not explain the legal basis for making its assertion. As explained below, there has been no substantive consolidation of the Erin estates to justify treating the Erin entities as a single entity with combined assets and liabilities.

All services provided by Bumi in maintaining the operations of the FPSO were for the benefit of its contract counterparty—EPNL. Bumi's services did not provide any direct benefits to the EEC estate. Under the Charterparty Contract, Armada agreed to supply the FPSO to EPNL. ECF No. 704-13 at 7. Under the O&M Contract, BASPL operated and maintained the FPSO for EPNL's benefit. ECF No. 704-16 at 14–17. The FPSO was procured by EPNL for its crude oil exploration and production operations at the Oyo Field off the coast of Nigeria. ECF No. 76 at 18:14–19:21; ECF No. 70 at 2. EEC acted solely as a guarantor of the Contracts. ECF Nos. 704-15, 704-18. EEC did not have any direct interest in the operations at the oil field or the crude oil produced as a result of those operations, and Bumi did not have any obligations to EEC under the Contracts.

Bumi has failed to meet its burden to demonstrate how its services provided an actual and necessary benefit to EEC's estate. Bumi seems to argue that EEC essentially received a residual benefit to its estate by virtue of its 100% ownership of EPNL. To this point, Bumi makes two arguments: (1) by not choosing to reject the Contracts, EEC received the benefits of the optionality of Bumi's services; and (2) that its services in maintaining the FPSO and preserving the crude oil assisted in EEC's reorganization because the "sale proceeds would account for the entirety of EEC's revenue." ECF No. 703 at 4–5.

Bumi's first argument may be quickly dismissed. It is certainly possible that the optionality to retain services could provide an administrative benefit to EEC's estate. The mere availability of post-

petition services, without a showing of the actual benefit of the optionality, is insufficient to give rise to an administrative expense claim. Bumi must demonstrate how its services provided an actual benefit to EEC's estate. *See In re TransAmerican Nat. Gas Corp.*, 978 F.2d 1409, 1416 (5th Cir. 1992) ("The words 'actual' and 'necessary' have been construed narrowly: 'the debt must benefit [the] estate and its creditors.'" (quoting *NL Indus., Inc. v. GHR Energy Corp.*, 940 F.2d 957, 966 (5th Cir.1991), *cert. denied*, 502 U.S. 1032 (1992))).

Bumi's second argument is again based on a substantive consolidation theory. EEC having an interest in EPNL is not equivalent to EEC sharing EPNL's assets. It is EPNL's estate that would be entitled to a portion of the proceeds from the sale of the crude oil. ECF No. 470 at 2–4. The Court agrees that Bumi's services benefitted EPNL's estate by helping ensure that the oil is available for sale, which would provide additional resources for EPNL's reorganization. But the Court has already granted Bumi an administrative expense claim against EPNL for its services.

Bumi's argument that its continued maintenance of the FPSO provided a benefit in preventing potential environmental liability also does not pass muster. Bumi essentially asks for an inference that, had it not maintained the FPSO, an event would occur causing EPNL to face environmental liability, which would then cause EEC to expend resources to cover EPNL's liability. Bumi's potential prevention of this theoretical series of events is insufficient to place its claim against EEC ahead of other creditors. Bumi must show actual benefits to EEC's estate. It has failed to do so.

Bumi does not have an administrative expense claim against EEC under § 503(b)(1)(A) of the Bankruptcy Code.

## II. BUMI IS NOT ENTITLED TO AN ADMINISTRATIVE EXPENSE CLAIM AGAINST EEC UNDER § 365(D)(5) OF THE BANKRUPTCY CODE

Bumi also claims entitlement to an administrative expense claim against EEC under § 365(d)(5) of the Bankruptcy Code. Section 365(d)(5) provides:

> The trustee shall timely perform all of the obligations of the debtor . . . first arising from or after 60 days after the order for relief in a case under chapter 11 of this title under an unexpired lease of personal property . . . , until such lease is assumed or rejected notwithstanding section 503(b)(1) of this title, unless the court, after notice and a hearing and based on the equities of the case, orders otherwise with respect to the obligations or timely performance thereof.

11 U.S.C. § 365(d)(5). Courts have held that counterparties are entitled to an administrative claim when obligations under § 365(d)(5) are not performed. *In re Bella Logistics LLC*, 583 B.R. 674, 677–82 (Bankr. W.D. Tex. 2018).

Bumi argues that its "claims arising under the Charterparty for the period from and after 60 days following the Petition Date to the Contracts Rejection Date are entitled to administrative expense priority under section 365(d)(5) of the Bankruptcy Code." ECF No. 678 at 13. Bumi's argument fails. It attempts to consolidate EPNL and EEC as a single entity under the "Erin Group" with joint obligations to perform each other's duties under the Contracts. Even if the Charterparty Contract is considered a lease of personal property under § 365(d)(5), EEC did not have any post-petition obligations under that contract. EEC's only obligation under the Charterparty is as a guarantor of EPNL's obligations.

Bumi does not have an administrative expense claim against EEC under § 365(d)(5) of the Bankruptcy Code.

### III. BUMI IS NOT ENTITLED TO AN ADMINISTRATIVE EXPENSE CLAIM AGAINST EEC BECAUSE THERE WAS NO SUBSTANTIVE CONSOLIDATION OF THE EEC AND EPNL ESTATES

There has been no substantive consolidation of EEC's and EPNL's estates to justify treating Bumi's administrative expense claim against EPNL as one arising generally against the "Erin Group." Substantive consolidation is a mechanism for administering the estates of multiple related entities. *In re Babcock & Wilcox Co.*, 250 F.3d 955, 958 (5th Cir. 2001). "[S]ubstantive consolidation . . . 'usually results in, *inter alia*, pooling the assets of, and claims against, the two entities; satisfying liabilities from the resultant common fund; eliminating inter-company claims; and combining the creditors of the two companies for purposes of voting on reorganization plans." *In re Las Torres Dev., L.L.C.*, 413 B.R. 687, 692 (Bankr. S.D. Tex. 2009) (quoting *Babcock*, 250 F.3d at 958 n.5). "Essentially, substantive consolidation entails combining the assets and liabilities of separate and distinct entities into a single pool and treating those assets and liabilities as if they belong to one entity." *Id.* "By contrast, joint administration or administrative consolidation is merely a procedural device which enables a court to efficiently oversee multiple cases." *Id.* Joint administration does not affect the substantive rights of claimants or the respective debtor estates. *In re McKenzie Energy Corp.*, 228 B.R. 854, 874 (Bankr. S.D. Tex. 1998).

While the EEC and EPNL bankruptcy cases are jointly administered, the order granting joint administration indicated in clear terms that it did not effectuate a substantive consolidation. ECF No. 15 at 4. The claims against EEC and EPNL have been kept separate, and EEC cannot be held liable for any claims against EPNL.

Bumi does not have an administrative expense claim against EEC.

## CONCLUSION

A separate order will be entered.

SIGNED 07/31/2024

                                          Marvin Isgur
                              United States Bankruptcy Judge